RAYMOND H. AVER - SBN 109577
LAW OFFICES OF RAYMOND H. AVER
A Professional Corporation
10801 National Boulevard, Suite 100
Los Angeles, California 90064
Telephone: (310) 571-3511
email: ray@averlaw.com

General Insolvency Counsel for
DECO ENTERPRISES, INC.
Debtor and Debtor In Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA [LOS ANGELES DIVISION]**

| | |
|---|---|
| **In re:**<br><br>**DECO ENTERPRISES, INC.,**<br><br><br>**Debtor.** | **Case No. 2:20-bk-11846-BB**<br><br>**Chapter 11**<br><br>**NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION TO FEDERAL BANKRUPTCY COURT PURSUANT TO 28 U.S.C. § 1452(a)**<br><br>[Removal of State Court Action, Case No. 19STCV44475, assigned to Hon. Robert S. Draper, Department 78] |

**PLEASE TAKE NOTICE** that Deco Enterprises, Inc., the chapter 11 debtor and debtor in possession ("Deco" or "Debtor") hereby gives notice of removal to the United States Bankruptcy Court for the Central District of California [Los Angeles Division] of all claims and causes of action in the lawsuit captioned, *Benjamin Pouladian v.*

*Deco Enterprises, Inc., et al.*, filed in the Superior Court of the State of California, County of Los Angeles ("Superior Court"), Case No. 19STCV44475 ("Removed Action"). This Notice of Removal is filed in accordance with 28 U.S.C. §1452(a), Federal Rule of Bankruptcy Procedure 9027 and Local Bankruptcy Rule 9027-1.

In support of this Notice of Removal, Debtor states and alleges as follows:

Factual And Procedural Background

Deco is a California corporation. Deco is engaged in the business of manufacturing advanced-technology LED lighting fixtures and components.

Deco caused to be filed its voluntary petition under chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") on February 20, 2020 ("Petition Date").

Deco caused its bankruptcy case to be commenced to restructure its financial obligations. Deco's bankruptcy filing was precipitated by a multitude of factors, including the malfeasance of Benjamin Pouladian ("Pouladian"), a former officer and director of Deco, and a current minority shareholder.[1]

On March 26, 2020, Pouladian caused to be filed a general unsecured Proof Of Claim in the amount of $325,000, based upon "money loaned." On March 31, 2020, Pouladian caused to be filed a general

---

[1] Pouladian converted approximately 30 million credit card points for approximately $400,000.00; increased his salary, without the requisite approval of the board of directors, resulting in his receiving an excess salary of approximately $792,583.21 from 2014 to 2019; forged loan documents; and has interfered with Debtor's business and lender relationships.

unsecured Proof Of Claim in the amount of $453,504.03, based upon "Credit Card."[2]

Prior to the Petition Date, on December 10, 2019, Pouladian commenced the Subject Action. On January 10, 2020, Pouladian caused to be filed a First Amended Complaint against Deco and its Chief Financial Officer, Craig Allen. On January 21, 2020, Deco, ABS Capitol, LLC and Babak Sinai caused a cross complaint to be filed against Pouladian and his wife, Edith Pouladian. On February 19, 2020, Pouladian caused a cross complaint to be filed against Babak Sinai and a third party complaint to be filed against Siamak Sinai, Saman Sinai and Craig Allen. As of April 20, 2020, answers had been filed to the First Amended Complaint, the Cross Complaint and the Cross Complaint And Third Party Complaint.

Deco alleges in its Cross Complaint that beginning in August 2019, and continuing thereafter, Deco has discovered that Pouladian has engaged in the following wrongful acts:

- forging Babak Sinai's signature to obtain millions of dollars in loans without the required approval of all the shareholders;
- increasing his salary by $67,000, from $192,400 to $260,000, and in 2016 further increasing his salary by $78,000, raising his salary to $338,000;
- using Deco's credit cards, without authorization and approval to pay for his personal expenses, and in 2018

[2] Deco has not filed an objection to either Proof Of Claim, choosing instead to file the instant Notice Of Removal because any objection to the Proofs Of Claim would need to include a claim for affirmative relief, which would require an adversary proceeding.

alone, while Deco was encountering financial difficulties as a result of Pouladian's mismanagement, using Deco's credit cards to pay his personal expenses in the amount of $68,811;

- purporting to amend Deco's Articles of Incorporation without the required approval and vote of the shareholders, to attempt to create protection for his own misconduct that was known only to him;
- embezzling and converting more than $400,000 of Deco's assets by cashing out the value of the credit card rewards points on Deco's credit cards, for his personal use;
- representing to Deco's Chief Financial Officer that he wanted to write two $50,000 Deco checks to himself, so that he could inflate his income to the lender he was using to purchase a residence;
- committing insurance fraud by intentionally misclassifying employees to Deco's insurance company and subjecting Deco to the risk of insurance fraud;
- instructing and forcing employees to tamper with documents, resulting in complaints to Human Resources;
- making misrepresentations to a Deco customer, resulting in discontinuation of more than $2 million purchases from the customer;
- unprofessional misconduct toward employees, resulting in a lawsuit by an employee;
- signing agreements without first obtaining the required vote of the shareholders, ultimately resulting in a Stipulation For Judgment in the amount of $5 million;

- intentional disregard of Philips Lighting Holding's demands for rightful payment, resulting in a lawsuit and loss of more than $450,000;
- mismanaging Deco and ordering millions of dollars of excess inventory without the required approval of the shareholders;
- encumbering Deco with debt without authorization and/or the required vote of the shareholders;
- causing Deco to pay an additional $1.2 million in interest due to his afore described misconduct; and
- falsely accusing Deco's Chief Financial Officer, Craig Allen, of increasing his own salary and threatening Mr. Allen with years of litigation.

Based upon these allegations, Deco has plead causes of action for breach of fiduciary duty, constructive fraud, embezzlement/ conversion, breach of contact, breach of the implied covenant of good faith and fair dealing, fraud, abuse of control and corporate waste, and unjust enrichment against Pouladian and his wife.

Basis for Removal

28 U.S.C. section 1452(a) provides for removal to this Court of the claims asserted in the State Court Action.

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

The claim being asserted in a civil action and are not before the United States Tax Court or involve a civil action by a

governmental unit. Removal is therefore proper to the district court for the district where the civil action is pending, conditioned only upon such district court having jurisdiction of the causes of action.

28 U.S.C. section 1334(b) provides for the jurisdiction of this Court of the causes of action asserted in the State Court Action.

> Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Pursuant to General Order No. 13-05 of the United States District Court for the Central District of California, "all proceedings arising under Title 11 or arising in or related to a case under Title 11" to the bankruptcy judges for the Central District of California.

Section 1334(b) grants jurisdiction of civil proceedings related to cases under title 11. The most frequently cited case dealing with "related to" jurisdiction is *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984) in which the court stated that a civil proceeding is related to a bankruptcy case when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Almost every other court considering the issue, including the United States Supreme Court in *Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S. Ct. 1493, 1498-99, 131 L. Ed. 2d 403 (1995), has agreed in principle with Pacor's statement of the law.

As the Court of Appeals for the Sixth Circuit put it, "automatic" liability of the estate is not the *sine qua non* of related-to jurisdiction; all that is necessary is that there could "conceivably" be some effect upon the estate as a consequence of the

litigation in question.

> A key word in [the] test is "conceivable." Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on "the debtor's rights, liabilities, options, or freedom of action" or the "handling and administration of the bankrupt estate."

*Lindsey v. O'Brien, Tansky, Tanzer & Young Health Care Providers of Conn.* (*In re Dow Corning Corp.*), 86 F.3d 482, 491 *(quoting In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991))

In the instant case, the Removed Action directly involves allowance or disallowance of claims against the estate [28 U.S.C. §157(b)(2)(B)] and counterclaims by the estate against persons filing claims against the estate [28 U.S.C. §157(b)(2)(C)] Adjudication of the Removed Action will have an impact upon the provisions of the plan of reorganization to be proposed by Deco, and upon whether Pouladian may vote to accept or reject the plan.

Therefore, the claims being asserted in the Removed Action relate to this bankruptcy case and will have a significant impact upon the administration of the Debtor's estate. Based upon the foregoing, this Court has jurisdiction of the claims asserted in the Removed Action.

<u>Statement Upon Removal Of Whether Claims Or Causes of Action Are Core Or Non-Core</u>

Bankruptcy judges may hear and determine all core proceedings arising under title 11 in a case under title 11, and may enter appropriate orders and judgments, subject to review under 28 U.S.C. section 158. [28 U.S.C. §157(b)(1)] Core proceedings include, but are not limited to - matters concerning administration of the estate,

allowance or disallowance of claims against the estate, confirmations of plans and the other proceedings adjusting the debtor-creditor relationship. [28 U.S.C. §157(b)(2)]

Bankruptcy judges may also hear a proceeding that is not a core proceeding but this is otherwise related to a case under title 11. [28 U.S.C. §157(c)(1)]

Arguably, each of the claims can be labeled as core proceedings, albeit perhaps not constitutionally core, under the language of 28 U.S.C. section 157(b)(2). To the extent it is determined that one or more of the claims are non-core, Debtor consents to entry of final orders or judgment by this Court.

State Court Process and Pleadings

Attached as **Exhibit A** to this Notice Of Removal is a true and correct copy of the docket from the Removed Action, and the pleadings filed by the parties in the Superior Court action being removed to this Court.

Compliance with Notice and Service Requirements

Debtor has complied with all requirements of service of this Notice Of Removal as indicated on the attached proof of service. In addition, Debtor has complied with the requirement that this Notice Of Removal be served upon the Clerk of the Court for the Superior Court in which the State Court Action was filed.

///

///

Timely Removal

This Notice Of Removal has been timely filed.

Dated: May 20, 2020

LAW OFFICES OF RAYMOND H. AVER
A Professional Corporation

By: ______________________
RAYMOND H. AVER
General Insolvency Counsel for
DECO ENTERPRISES, INC.
Debtor and Debtor In Possession

## CASE INFORMATION



**Case Number:** 19STCV44475
BENJAMIN POULADIAN VS DECO ENTERPRISES, INC., ET AL.

**Filing Courthouse:** Stanley Mosk Courthouse

**Filing Date:** 12/10/2019
**Case Type:** Other Employment Complaint Case (General Jurisdiction)
**Status:** Pending

Click here to access document images for this case
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**07/24/2020** at 09:30 AM in Department 86 at 111 North Hill Street, Los Angeles, CA 90012
Order to Show Cause Re: Preliminary Injunction

**07/24/2020** at 09:30 AM in Department 86 at 111 North Hill Street, Los Angeles, CA 90012
Status Conference

**07/24/2020** at 14:00 PM in Department 78 at 111 North Hill Street, Los Angeles, CA 90012
Status Conference Re: Bankruptcy

**07/24/2020** at 14:00 PM in Department 78 at 111 North Hill Street, Los Angeles, CA 90012
Hearing on Demurrer - without Motion to Strike

**07/24/2020** at 14:00 PM in Department 78 at 111 North Hill Street, Los Angeles, CA 90012
Case Management Conference

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

ABS CAPITOL LLC - Cross-Complainant

ALLEN CRAIG - Non-Party

ALLEN CRAIG - Defendant

DECO ENTERPRISES INC. - Cross-Complainant

DECO ENTERPRISES INC. - Defendant

MOUSAVI AMY A. - Attorney for Non-Party

POULADIAN BENJAMIN - Plaintiff

POULADIAN BENJAMIN - Cross-Complainant

POULADIAN BENJAMIN - Cross-Defendant

POULADIAN EDITH - Cross-Defendant

SINAI BABAK - Cross-Complainant

SINAI BABAK - Cross-Defendant

SINAI SAMAN - Non-Party

SINAI SIAMAK - Non-Party

YATES JOHN R. - Attorney for Plaintiff

## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Documents Filed (Filing dates listed in descending order)

**05/20/2020** Notice (of Continued Hearings; Notice of case Management Conference)
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**04/30/2020** Certificate of Mailing for ((Court Order) of 04/30/2020)
Filed by Clerk

**04/30/2020** Minute Order ( (Court Order))
Filed by Clerk

**04/20/2020** Answer
Filed by Craig Allen (Defendant); Siamak Sinai (Non-Party); Craig Allen (Non-Party)

**04/20/2020** Answer
Filed by Babak Sinai (Cross-Defendant)

**04/20/2020** Answer
Filed by Saman Sinai (Non-Party)

**04/17/2020** Certificate of Mailing for ((Court Order) of 04/17/2020)
Filed by Clerk

**04/17/2020** Minute Order ( (Court Order))
Filed by Clerk

**03/23/2020** Notice Re: Continuance of Hearing and Order (- CMC)
Filed by Clerk

**02/28/2020** Summons (on Cross Complaint)
Filed by Benjamin Pouladian (Cross-Complainant)

**02/28/2020** Summons (on Cross Complaint)
Filed by Benjamin Pouladian (Cross-Complainant)

**02/21/2020** Minute Order ( (Order to Show Cause Re: Preliminary Injunction))
Filed by Clerk

**02/20/2020** Notice of Stay of Proceedings (Bankruptcy)
Filed by Deco Enterprises, Inc. (Defendant); Craig Allen (Defendant)

**02/19/2020** Cross-Complaint
Filed by Benjamin Pouladian (Cross-Defendant)

**02/19/2020** Declaration (of John Yates pursuant to C.C.P. ¿430.41 re Demurrer)
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**02/19/2020** Demurrer - without Motion to Strike
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**02/19/2020** Answer (TO CROSS-COMPLAINT)
Filed by Benjamin Pouladian (Cross-Defendant)

**02/18/2020** Supplemental Declaration ( of Benjamin Pouladian in Support of Motion for Preliminary Injunction)
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**02/18/2020** Reply (Brief in Support of Motion for Preliminary Injunction to Preserve Plaintiff Benjamin Pouladian 's Voting Rights as a 30% Shareholder of Defendant Deco Enterprises, Inc.)
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**02/13/2020** Declaration (of Amy A. Mousavi in Support of Opposition to Plaintfff's Preliminary Injunction)
Filed by Deco Enterprises, Inc. (Defendant); Craig Allen (Defendant)

**02/13/2020** Declaration (of Craig Allen in Support of Opposition to Plaintiff's Preliminary Injunction)
Filed by Deco Enterprises, Inc. (Defendant); Craig Allen (Defendant)

**02/13/2020** Opposition (to Plaintiff's Preliminary Injunction)
Filed by Deco Enterprises, Inc. (Defendant); Craig Allen (Defendant)

**02/03/2020** Declaration ( of Benjamin Pouladian in Support of Motion for Preliminary Injunction)
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**02/03/2020** Declaration (of John Yates in Support of Motion for Preliminary Injunction)
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**02/03/2020** Brief (Supplemental Brief in Support of Motion for Preliminary Injunction to Preserve Plaintiff Benjamin Pouladian's Voting Rights as a 30% Shareholder of Defendant Deco Enterprises, Inc.)
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**01/31/2020** Certificate of Mailing for ((Hearing on Ex Parte Application of Plaintiff Benjamin Pouladi...) of 01/31/2020)
Filed by Clerk

**01/31/2020** Minute Order ( (Hearing on Ex Parte Application of Plaintiff Benjamin Pouladi...))
Filed by Clerk

**01/31/2020** Order (for Temporary Restraining Order)
Filed by Benjamin Pouladian (Plaintiff)

**01/30/2020** Declaration (of Amy A. Mousavi In Support Of Opposition To Plaintiff's Ex Parte Application For Order Confirming Interim Preliminary Injunction)
Filed by Deco Enterprises, Inc. (Defendant); Craig Allen (Defendant)

**01/30/2020** Opposition (to Plaintiff's Ex Parte Application For Order Confirming Interim Preliminary Injunction))
Filed by Deco Enterprises, Inc. (Defendant); Craig Allen (Defendant)

**01/29/2020** Declaration (Declaration of John Yates in Support of Ex Parte Application of Plaintiff Benjamin Pouladian for Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding, and Regarding Notice Given of Ex Parte Application)
Filed by Benjamin Pouladian (Plaintiff)

**01/29/2020** Declaration (Declaration of Benjamin Pouladian in Support of Ex Parte Application of for Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding, and Regarding Notice Given of Ex Parte Application)
Filed by Benjamin Pouladian (Plaintiff)

**01/29/2020** Ex Parte Application (Ex Parte Application of Plaintiff Benjamin Pouladian for Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding)
Filed by Benjamin Pouladian (Plaintiff)

**01/21/2020** Cross-Complaint
Filed by ABS Capitol, LLC (Cross-Complainant); Babak Sinai (Cross-Complainant); Deco Enterprises, Inc. (Defendant)

**01/21/2020** Answer (TO FIRST AMENDED COMPLAINT)
Filed by Deco Enterprises, Inc. (Defendant); Craig Allen (Defendant)

**01/21/2020** Summons (Cross-Complaint)
Filed by Deco Enterprises, Inc. (Defendant)

**01/10/2020** Summons (on Complaint)
Filed by Benjamin Pouladian (Plaintiff)

**01/10/2020** Amended Complaint (1st)
Filed by Benjamin Pouladian (Plaintiff); Benjamin Pouladian (Plaintiff)

**12/20/2019** Notice of Case Management Conference
Filed by Clerk

**12/12/2019** Summons (on Complaint)
Filed by Benjamin Pouladian (Plaintiff)

**12/10/2019** Notice of Case Assignment - Unlimited Civil Case
Filed by Clerk

**12/10/2019** Civil Case Cover Sheet
Filed by Benjamin Pouladian (Plaintiff)

**12/10/2019** Complaint
Filed by Benjamin Pouladian (Plaintiff)

## PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Proceedings Held (Proceeding dates listed in descending order)

**05/14/2020** at 08:30 AM in Department 78
Case Management Conference - **Not Held - Advanced and Continued - by Court**

**05/14/2020** at 08:30 AM in Department 78
Hearing on Demurrer - without Motion to Strike - **Not Held - Advanced and Continued - by Court**

**04/30/2020** at 1:30 PM in Department 86
Court Order

**04/17/2020** at 11:42 AM in Department 78
Court Order

**04/08/2020** at 08:30 AM in Department 78
Case Management Conference - **Not Held - Advanced and Continued - by Court**

**02/21/2020** at 09:30 AM in Department 86
Order to Show Cause Re: (Preliminary Injunction) - **Held - Continued**

**01/31/2020** at 08:30 AM in Department 78
Hearing on Ex Parte Application (of Plaintiff Benjamin Pouladian for Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding) - **Held**

## REGISTER OF ACTIONS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Register of Actions (Listed in descending order)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
12/12/2019

**05/20/2020** Notice (of Continued Hearings; Notice of case Management Conference)
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**05/14/2020** at 08:30 AM in Department 78
Hearing on Demurrer - without Motion to Strike - **Not Held - Advanced and Continued - by Court**

**05/14/2020** at 08:30 AM in Department 78
Case Management Conference - **Not Held - Advanced and Continued - by Court**

**04/30/2020** at 1:30 PM in Department 86
Court Order

**04/30/2020** Minute Order ( (Court Order))
Filed by Clerk

**04/30/2020** Certificate of Mailing for ((Court Order) of 04/30/2020)
Filed by Clerk

**04/20/2020** Answer
Filed by Craig Allen (Defendant); Siamak Sinai (Non-Party); Craig Allen (Non-Party)

**04/20/2020** Answer
Filed by Babak Sinai (Cross-Defendant)

**04/20/2020** Answer
Filed by Saman Sinai (Non-Party)

**04/17/2020** at 11:42 AM in Department 78
Court Order

**04/17/2020** Certificate of Mailing for ((Court Order) of 04/17/2020)
Filed by Clerk

**04/17/2020** Minute Order ( (Court Order))
Filed by Clerk

**04/08/2020** at 08:30 AM in Department 78
Case Management Conference - **Not Held - Advanced and Continued - by Court**

**03/23/2020** Notice Re: Continuance of Hearing and Order (- CMC)
Filed by Clerk

**02/28/2020** Summons (on Cross Complaint)
Filed by Benjamin Pouladian (Cross-Complainant)

**02/28/2020** Summons (on Cross Complaint)
Filed by Benjamin Pouladian (Cross-Complainant)

**02/21/2020** at 09:30 AM in Department 86
Order to Show Cause Re: (Preliminary Injunction) - **Held - Continued**

**02/21/2020** Minute Order ( (Order to Show Cause Re: Preliminary Injunction))
Filed by Clerk

**02/20/2020** Notice of Stay of Proceedings (Bankruptcy)
Filed by Deco Enterprises, Inc. (Defendant); Craig Allen (Defendant)

**02/19/2020** Declaration (of John Yates pursuant to C.C.P. ¿430.41 re Demurrer)
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**02/19/2020** Demurrer - without Motion to Strike
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**02/19/2020** Cross-Complaint
Filed by Benjamin Pouladian (Cross-Defendant)

**02/19/2020** Answer (TO CROSS-COMPLAINT)
Filed by Benjamin Pouladian (Cross-Defendant)

**02/18/2020** Supplemental Declaration ( of Benjamin Pouladian in Support of Motion for Preliminary Injunction)
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**02/18/2020** Reply (Brief in Support of Motion for Preliminary Injunction to Preserve Plaintiff Benjamin Pouladian 's Voting Rights as a 30% Shareholder of Defendant Deco Enterprises, Inc.)
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**02/13/2020** Declaration (of Amy A. Mousavi in Support of Opposition to Plaintfff's Preliminary Injunction)
Filed by Deco Enterprises, Inc. (Defendant); Craig Allen (Defendant)

**02/13/2020** Declaration (of Craig Allen in Support of Opposition to Plaintiff's Preliminary Injunction)
Filed by Deco Enterprises, Inc. (Defendant); Craig Allen (Defendant)

**02/13/2020** Opposition (to Plaintiff's Preliminary Injunction)
Filed by Deco Enterprises, Inc. (Defendant); Craig Allen (Defendant)

**02/03/2020** Declaration ( of Benjamin Pouladian in Support of Motion for Preliminary Injunction)
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**02/03/2020** Declaration (of John Yates in Support of Motion for Preliminary Injunction)
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**02/03/2020** Brief (Supplemental Brief in Support of Motion for Preliminary Injunction to Preserve Plaintiff Benjamin Pouladian's Voting Rights as a 30% Shareholder of Defendant Deco Enterprises, Inc.)
Filed by Edith Pouladian (Cross-Defendant); Benjamin Pouladian (Cross-Defendant)

**01/31/2020** at 08:30 AM in Department 78
Hearing on Ex Parte Application (of Plaintiff Benjamin Pouladian for Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding) - **Held**

**01/31/2020** Certificate of Mailing for ((Hearing on Ex Parte Application of Plaintiff Benjamin Pouladi...) of 01/31/2020)
Filed by Clerk

**01/31/2020** Order (for Temporary Restraining Order)
Filed by Benjamin Pouladian (Plaintiff)

**01/31/2020** Minute Order ( (Hearing on Ex Parte Application of Plaintiff Benjamin Pouladi...))
Filed by Clerk

**01/30/2020** Declaration (of Amy A. Mousavi In Support Of Opposition To Plaintiff's Ex Parte Application For Order Confirming Interim Preliminary Injunction)
Filed by Deco Enterprises, Inc. (Defendant); Craig Allen (Defendant)

**01/30/2020** Opposition (to Plaintiff's Ex Parte Application For Order Confirming Interim Preliminary Injunction))
Filed by Deco Enterprises, Inc. (Defendant); Craig Allen (Defendant)

**01/29/2020** Declaration (Declaration of John Yates in Support of Ex Parte Application of Plaintiff Benjamin Pouladian for Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding, and Regarding Notice Given of Ex Parte Application)
Filed by Benjamin Pouladian (Plaintiff)

**01/29/2020** Ex Parte Application (Ex Parte Application of Plaintiff Benjamin Pouladian for Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding)
Filed by Benjamin Pouladian (Plaintiff)

**01/29/2020** Declaration (Declaration of Benjamin Pouladian in Support of Ex Parte Application of for Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding, and Regarding Notice Given of Ex Parte Application)
Filed by Benjamin Pouladian (Plaintiff)

**01/21/2020** Summons (Cross-Complaint)
Filed by Deco Enterprises, Inc. (Defendant)

**01/21/2020** Cross-Complaint
Filed by ABS Capitol, LLC (Cross-Complainant); Babak Sinai (Cross-Complainant); Deco Enterprises, Inc. (Defendant)

**01/21/2020** Answer (TO FIRST AMENDED COMPLAINT)
Filed by Deco Enterprises, Inc. (Defendant); Craig Allen (Defendant)

**01/10/2020** Summons (on Complaint)
Filed by Benjamin Pouladian (Plaintiff)

**01/10/2020** Amended Complaint (1st)
Filed by Benjamin Pouladian (Plaintiff); Benjamin Pouladian (Plaintiff)

**12/20/2019** Notice of Case Management Conference
Filed by Clerk

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP 12/12/2019

**12/12/2019** Summons (on Complaint)
Filed by Benjamin Pouladian (Plaintiff)

**12/10/2019** Notice of Case Assignment - Unlimited Civil Case
Filed by Clerk

**12/10/2019** Civil Case Cover Sheet
Filed by Benjamin Pouladian (Plaintiff)

**12/10/2019** Complaint
Filed by Benjamin Pouladian (Plaintiff)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP 12/12/2019

Electronically FILED by Superior Court of California, County of Los Angeles on 12/1219STCV44475 Sherri R. Carter, Executive Officer/Clerk of Court, by S. Ruiz,Deputy Clerk

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

Benjamin Pouladian

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, California 90012

CASE NUMBER: *(Número del Caso):*
19STCV44475

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John Yates, Yates Litigation, 16000 Ventura Boulevard, Suite 1000, Tenth Floor, Encino, CA 91436; (818) 381-5891

DATE: *(Fecha)* 12/12/2019 Sherri R. Carter Executive Officer / Clerk of Court Clerk, by *(Secretario)* Sergio Ruiz , Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of (specify): Deco Enterprises, Inc.

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☒ by personal delivery on *(date)*



Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form. Print this form | Save this form | Clear this form

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS

Superior Court of California County of Los Angeles

Los Angeles County Bar Association Litigation Section

Los Angeles County Bar Association Labor and Employment Law Section

Consumer Attorneys Association of Los Angeles

Southern California Defense Counsel

Association of Business Trial Lawyers

California Employment Lawyers Association

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – DISCOVERY RESOLUTION** | | CASE NUMBER: |

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

iii. Be filed within two (2) court days of receipt of the Request; and

iv. Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER |
| --- | --- |
| | |

**The following parties stipulate:**

Date:

_________________________ (TYPE OR PRINT NAME) ➤ _________________________ (ATTORNEY FOR PLAINTIFF)

Date:

_________________________ (TYPE OR PRINT NAME) ➤ _________________________ (ATTORNEY FOR DEFENDANT)

Date:

_________________________ (TYPE OR PRINT NAME) ➤ _________________________ (ATTORNEY FOR DEFENDANT)

Date:

_________________________ (TYPE OR PRINT NAME) ➤ _________________________ (ATTORNEY FOR DEFENDANT)

Date:

_________________________ (TYPE OR PRINT NAME) ➤ _________________________ (ATTORNEY FOR _____________)

Date:

_________________________ (TYPE OR PRINT NAME) ➤ _________________________ (ATTORNEY FOR _____________)

Date:

_________________________ (TYPE OR PRINT NAME) ➤ _________________________ (ATTORNEY FOR _____________)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | | CASE NUMBER: |

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **_www.lacourt.org_** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to ________ (INSERT DATE) for the complaint, and ________ (INSERT DATE) for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at _www.lacourt.org_ under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

________ (TYPE OR PRINT NAME) ➤ ________ (ATTORNEY FOR PLAINTIFF)

Date:

________ (TYPE OR PRINT NAME) ➤ ________ (ATTORNEY FOR DEFENDANT)

Date:

________ (TYPE OR PRINT NAME) ➤ ________ (ATTORNEY FOR DEFENDANT)

Date:

________ (TYPE OR PRINT NAME) ➤ ________ (ATTORNEY FOR DEFENDANT)

Date:

________ (TYPE OR PRINT NAME) ➤ ________ (ATTORNEY FOR ________)

Date:

________ (TYPE OR PRINT NAME) ➤ ________ (ATTORNEY FOR ________)

Date:

________ (TYPE OR PRINT NAME) ➤ ________ (ATTORNEY FOR ________)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| --- | --- | --- |
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **INFORMAL DISCOVERY CONFERENCE** (pursuant to the Discovery Resolution Stipulation of the parties) | | CASE NUMBER: |

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: ________________ (insert date 10 calendar days following filing of the Request)
3. Deadline for Court to hold Informal Discovery Conference: ________________ (insert date 20 calendar days following filing of the Request).
4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**<br>COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | | CASE NUMBER |

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
| --- | --- |
| | |

**The following parties stipulate:**

Date:

_______________________ ➤ _______________________
(TYPE OR PRINT NAME) (ATTORNEY FOR PLAINTIFF)

Date:

_______________________ ➤ _______________________
(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

_______________________ ➤ _______________________
(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

_______________________ ➤ _______________________
(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

_______________________ ➤ _______________________
(TYPE OR PRINT NAME) (ATTORNEY FOR ______________)

Date:

_______________________ ➤ _______________________
(TYPE OR PRINT NAME) (ATTORNEY FOR ______________)

Date:

_______________________ ➤ _______________________
(TYPE OR PRINT NAME) (ATTORNEY FOR ______________)

**THE COURT SO ORDERS.**

Date: _______________________ _______________________
JUDICIAL OFFICER

Superior Court of California, County of Los Angeles

# ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

**What is ADR?**

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration and settlement conferences. When ADR is done by phone or computer, it may be called Online Dispute Resolution (ODR). These "alternatives" to litigation and trial are described below.

**Advantages of ADR**

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees and witness fees.
- **Keeps Control with the parties:** Parties choose their ADR process and provider for voluntary ADR.
- **Reduces stress/protects privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

**Disadvantages of ADR**

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

**Main Types of ADR:**

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral "mediator" listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   Mediation may be appropriate when the parties
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   Mediation may not be appropriate when the parties
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

**How to arrange mediation in Los Angeles County**

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**

Parties may contact these organizations to request a "Resource List Mediation" for reduced-cost or free (for selected cases) mediation in person or with ODR (by phone or online).

- JAMS, Inc.: Case Manager (213) 253-9776 mdawson@jamsadr.com
- Mediation Center of Los Angeles: Case Manager: (833) 476-9145 info@mediationLA.org

These organizations cannot accept every case and they may decline cases at their discretion.

Visit www.lacourt.org/ADR.Res.List for important information and FAQs **before** contacting them.

NOTE: This service is not available for family law, probate or small claims.

b. **Los Angeles County Dispute Resolution Programs**

https://wdacs.lacounty.gov/programs/drp/

- Free, day- of- trial mediations at the courthouse for small claims, unlawful detainers (evictions) and, at the Stanley Mosk Courthouse, limited civil. No appointment needed.
- Free or low-cost mediations **before** the day of trial for these and other case types.
- For ODR by phone or computer for small claims or unlawful detainer (eviction) cases **before** the day of trial, visit http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c. Mediators and ADR and Bar organizations that provide mediation may be found on the Internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit: www.lacourt.org/division/civil/settlement

Los Angeles Superior Court ADR website: www.lacourt.org/division/civil/settlement
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

MAY 03 2019

Sherri R. Carter, Executive Officer/Clerk
By Rizalinda Mina, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE LOS ANGELES SUPERIOR COURT – MANDATORY ELECTRONIC FILING FOR CIVIL | FIRST AMENDED GENERAL ORDER |

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

a) **"Bookmark"** A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

b) **"Efiling Portal"** The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

c) **"Electronic Envelope"** A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

d) **"Electronic Filing"** Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

e) **"Electronic Filing Service Provider"** An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court. (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"** For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"** An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"** A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format. Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs. Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

ii) Bonds/Undertaking documents;

iii) Trial and Evidentiary Hearing Exhibits

iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format when technologically feasible without impairment of the document's image.

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

i) Depositions;

ii) Declarations;

iii) Exhibits (including exhibits to declarations);

iv) Transcripts (including excerpts within transcripts);

v) Points and Authorities;

vi) Citations; and

vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a separate digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted. (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

i) Any printed document required pursuant to a Standing or General Order;

ii) Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

iii) Pleadings and motions that include points and authorities;

iv) Demurrers;

v) Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

vi) Motions for Summary Judgment/Adjudication; and

vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

11) SIGNATURES ON ELECTRONIC FILING

For purposes of this General Order, all electronic filings must be in compliance with California Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil Division of the Los Angeles County Superior Court.

This First Amended General Order supersedes any previous order related to electronic filing, and is effective immediately, and is to remain in effect until otherwise ordered by the Civil Supervising Judge and/or Presiding Judge.

DATED: May 3, 2019

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

KEVIN C. BRAZILE
Presiding Judge

Electronically FILED by Superior Court of California, County of Los Angeles on 12/10/2019 05:44 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk
19STCV44475

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Robert Draper

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Fax: (818) 561-3925
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff
Benjamin Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| Benjamin Pouladian,<br><br>Plaintiff,<br><br>vs.<br><br>Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive<br><br>Defendants. | **CASE NO.:**<br><br>UNLIMITED JURISDICTION<br><br>Complaint for:<br><br>(1) Breach of Contract<br>(2) Violation of California Labor Code §2802<br>(3) Fraudulent Concealment<br>(4) Intentional Infliction of Emotional Distress<br>(5) Conversion |

Plaintiff Benjamin Pouladian ("Pouladian") for his complaint against Deco Enterprises, Inc., Craig Allen, Does 1 through 10, and each of them, alleges as follows:

1. Pouladian is a Founder and President of defendant Deco Enterprises, Inc. ("Deco") for approximately 14 years, beginning in 2005. Pouladian resigned as President in August 2019.

2. Deco is a California Corporation headquartered at 2917 South Vail Avenue in the City of Commerce. Deco is in the business of manufacturing and distributing lighting fixtures for residential, commercial and industrial applications.

3. Craig Allen ("Allen") is the Chief Financial Officer of Deco.



Yates Litigation

4. Defendants Does 1 through 10 are persons whose names are currently unknown to plaintiff, but on information and belief Does 1 through 10 are agents or employees of Deco, each of whom is in some manner legally responsible for the damages Pouladian has suffered and will suffer due to the actions of Deco.

5. For fourteen years, Pouladian's credit cards were entrusted to Deco as business credit cards. The company's Accounts Payable department which reported directly to Allen, routinely incurred substantial charges on the cards for business purposes, such as paying vendors, buying parts and supplies, paying for business insurances, and the like. Pouladian and Deco, under the issuers' card holder agreement, were both responsible for payment of the charges incurred.

6. Both Pouladian and Deco received the monthly statements for each credit card. For 14 years, Deco paid the monthly charges that the Deco's Accounts Payable department incurred for Deco's business expenses, and invariably did so within thirty days of receipt of the statements.

**FIRST CAUSE OF ACTION**

(For Breach of Implied Contract against Deco Enterprises, Inc. and Does 1 through 10)

7. Pouladian incorporates by this reference the allegations of paragraphs 1 through 6 of this complaint, as if set forth in full.

8. Deco has used Pouladian's American Express Business Platinum credit card, American Express Bonvoy business credit card, Chase Ink business credit card, and Citibank Visa credit card to make payments for and purchases of business-related items and expenses on Deco's behalf. The current outstanding account balances on these cards are, respectively, $356,993.33, $7,635, $74,596.82, and $7,022.64, for a total of $446,247.79. All balances are currently due and owing with interest and penalties accruing.

9. As a result of Deco's failure to pay the charges incurred for necessary business expenses, Pouladian has been forced to spend his own funds to try to protect his personal credit rating. To that end, Pouladian has made one minimum payment on the Citibank Visa card in the amount of $450. Pouladian also recently paid American Express $29,553 as the initial installment of a 36-month payment plan to requiring payment of $10,000 in each of the next 35 months to pay off the balance on the American Express Business Platinum credit card.



Yates Litigation

10. Pouladian has continued to receive monthly statements on each of these four business credit cards. Each month, Pouladian has forwarded the statements to Deco's CFO Allen, and requested Allen to instruct Deco's Accounts Payable department to pay the statements.

11. Despite multiple requests, Allen has not caused Deco to pay the statements, even though, on information and belief, Deco has funds available to pay the charges in full.

12. Deco's refusal to pay the debts incurred for Deco's benefit on Pouladian's credit cards has exposed Pouladian to a current liability of $446,247.79, which sum increases monthly as the issuers add fees and interest to the statement balances.

13. Deco's refusal and failure to pay the balances on the four credit cards constitutes a breach by Deco of a contract between Deco and Pouladian implied in law and from the long course of dealing between Deco and Pouladian.

14. Pouladian has been damaged by Deco's breach in the amount of $30,003 for payments made by Pouladian that should have been made by Deco. Pouladian also has a current liability of $446,247.79 and increasing for which Deco has refused to pay.

**SECOND CAUSE OF ACTION**

(For Violation of California Labor Code §2802 against Deco Enterprises, Inc. and Does 1 through 10)

15. Pouladian incorporates by this reference the allegations of paragraphs 1 through 6 and 8 through 14 of this complaint, as if set forth in full.

16. California Labor Code §2802(a) requires that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, . . . .." Section 2802(a) has been judicially interpreted to include business expenses incurred by an employee, such as the hundreds of thousands of dollars of business expenses that Deco's Accounts Payable department incurred on Deco's behalf using Pouladian's company authorized credit cards.

17. Deco's failure to reimburse Pouladian for the credit card charges incurred for business purposes is a violation of California Labor Code §2802.



Yates Litigation

18. Deco's violation renders it liable to Pouladian for full reimbursement well in excess of $400,000, interest on the unreimbursed sum, and attorneys' fees incurred by Pouladian to vindicate his rights.

**THIRD CAUSE OF ACTION**

(For Fraudulent Concealment against Craig Allen and Does 1 through 5)

19. Pouladian incorporates by this reference the allegations of paragraphs 1 through 6, 8 through 14, and 16 through 18 of this complaint, as if set forth in full.

20. The unpaid charges on Pouladian's credit cards began accruing in or about April 2019. On information and belief, Allen in approximately March or April 2019 had already decided that Deco would continue to use Pouladian's credit cards to cover its day to day business expenses but would cease paying the charges. On information and belief, Allen's goal was to superficially improve the cash flow of Deco, which at the time was struggling to remain in operation after several years of mismanagement and lack of financial oversight by Allen. On information and belief, Allen's goal was also to free up Deco's funds by not paying debts owed to Pouladian, and instead using the money saved to increase his own salary from about $130,000 to $250,000.

21. Allen failed to disclose to Pouladian Allen's intention to use Pouladian's credit cards for the benefit of Deco and himself, but not to pay the charges incurred on the cards.

22. Had Pouladian known of Allen's scheme, he would have immediately terminated all of the cards that Deco was using for day to day business expenses.

23. Allen's failure to disclose his intentions to Pouladian has caused damage to Pouladian in the amount of the unpaid charges which exist only because of Allen's fraudulent concealment of material facts from Pouladian.

24. Allen's concealment of his intention to prohibit Deco from paying the charges incurred on Pouladian's credit cards was malicious and fraudulent, and exemplary damages should be awarded against Allen to deter such behavior in the future.

///

///

///

Yates Litigation

**FOURTH CAUSE OF ACTION**

(For Intentional Infliction of Emotional Distress against Deco Enterprises, Inc., Craig Allen, and Does 1 through 5)

25. Pouladian incorporates by this reference the allegations of paragraphs 1 through 6, 8 through 14, 16 through 18, and 20 through 24 of this complaint, as if set forth in full.

26. Deco through its agents and employees knows that the charges currently pending on Pouladian's company credit cards were incurred for the legitimate business expenses of Deco. Deco is clearly aware of the 14-year history of its Accounts Payable department routinely using Pouladian's charge cards for Deco's business expenses, and Deco routinely paying Pouladian's company credit card charges within 30 days of receiving the statement.

27. Pouladian has repeatedly notified CFO Allen of the pending charges and requested that they be paid by Deco. Allen has never stated a reason why Deco refuses to pay the credit card charges incurred and indeed has never responded at all to Pouladian's requests. The charges have not been paid. On information and belief, Allen has intentionally withheld payment in order to superficially improve Deco's cash flow, and to have funds available to nearly double his own salary.

28. Deco and Allen both know since the filing by Pouladian of a claim for the unpaid business expenses with the California Department of Industrial Relations that Deco's refusal to pay the charges is unlawful. Allen continues to prevent Deco from paying the charges.

29. Deco through its agents and employees, and Allen, know that Pouladian's mother is currently battling cancer and that his mother's condition is a serious concern for Pouladian.

30. Deco's and Allen's intent is to inflict severe emotional distress on Pouladian by refusing to pay the pending credit card charges while knowing of the severe consequences to Pouladian.

31. Deco's and Allen's refusal to address, acknowledge and provide any reasonable resolution to the outstanding balances have caused Pouladian severe emotional distress measured by damages well above the minimum jurisdictional amount of the Superior Court.

Yates Litigation

32. Allen's intention to harm Pouladian while using the funds made available by his actions to nearly double his own salary is malicious and oppressive, and exemplary damages should be awarded against Allen to deter such behavior in the future.

**FIFTH CAUSE OF ACTION**

(For Conversion against Deco Enterprises, Inc. and Does 1 through 10)

33. Pouladian incorporates by this reference the allegations of paragraphs 1 through 6, 8 through 14, 16 through 18, 20 through 24, and 26 through 32 of this complaint, as if set forth in full.

34. Deco used the information on Pouladian's credit cards to obtain goods and services benefitting Deco in the amount of $446,247.79.

35. Deco's implied promise to Pouladian based on a 14-year course of dealing was that it would pay all charge's on Pouladian's credit cards incurred for the benefit of Deco.

36. Deco's refusal to pay the charges currently due on Pouladian's credit cards constitutes a misappropriation without Pouladian's consent of Pouladian's credit card information.

37. Pouladian has paid from his personal funds $30,003 that Deco should have paid, and Deco has wrongfully converted that sum to its own benefit.

38. Each payment on the charges now due that Pouladian makes from his personal funds will constitute a conversion by Deco of the sum paid.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff Benjamin Pouladian prays for relief against defendant Deco Enterprises, Inc., Craig Allen, Does 1 through 10, and each of them, as set forth below.

A. For a Court order requiring Deco to comply with California law and pay the credit card charges currently pending on Pouladian's company credit cards;

B. For damages for Pouladian's out of pocket payments in the amount of $30,003 plus interest thereon;

C. For additional damages for each of Pouladian's out of pocket payments made before this action is tried, plus interest thereon;

D. For damages for inflicting severe emotional distress on Pouladian;

Yates Litigation

E. For exemplary damages on the Third and Fourth Causes of Action;

F. For attorneys' fees as permitted by California Labor Code §2802(c);

G. For costs of suit; and

H. For such other and further relief as the Court may deem just and proper.

DATED: December 10, 2019

YATES LITIGATION

By: ______________________
JOHN R. YATES
Attorneys for Plaintiff
Benjamin Pouladian

Yates Litigation

Electronically FILED by Superior Court of California, County of Los Angeles on 12/10/2019 05:41 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk **CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
John R. Yates (SBN 120344)
Yates Litigation
16000 Ventura Boulevard, Suite 1000, Tenth Floor
Encino, California 91436
TELEPHONE NO.: (818) 381-5891 FAX NO.:
ATTORNEY FOR (Name): Plaintiff Benjamin Pouladian

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse, Central District

CASE NAME:
Benjamin Pouladian v. Deco Enterprises, Inc., Craig Allen, Does 1 - 10

## CIVIL CASE COVER SHEET

☑ **Unlimited** (Amount demanded exceeds $25,000)
☐ **Limited** (Amount demanded is $25,000 or less)

**Complex Case Designation**
☐ Counter ☐ Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER:
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☑ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☑ monetary b. ☐ nonmonetary; declaratory or injunctive relief c. ☑ punitive
4. Number of causes of action *(specify)*: Five
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 10, 2019
John R. Yates
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

### NOTICE

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

| SHORT TITLE: Benjamin Pouladian v. Deco Enterprsies, Inc., et al. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

**Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage<br>☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons<br>☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall)<br>☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270 Intentional Infliction of Emotional Distress<br>☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

| SHORT TITLE: Benjamin Pouladian v. Deco Enterprsies, Inc., et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Non-Personal Injury/ Property Damage/ Wrongful Death Tort | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3<br>1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| Employment | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | [X] A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1, 2, 3<br>10 |
| Contract | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2, 5<br>2, 5<br>1, 2, 5<br>1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case<br>☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11<br>5, 11<br>5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 5<br>1, 2, 3, 5<br>1, 2, 3, 8, 9 |
| Real Property | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels______ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6<br>2, 6<br>2, 6 |
| Unlawful Detainer | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

| SHORT TITLE: Benjamin Pouladian v. Deco Enterprsies, Inc., et al. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Judicial Review | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152 Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153 Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2, 8 |
| Provisionally Complex Litigation | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| Enforcement of Judgment | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160 Abstract of Judgment | 2, 6 |
| | | ☐ A6107 Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112 Other Enforcement of Judgment Case | 2, 8, 9 |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| Miscellaneous Civil Petitions | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123 Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124 Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190 Election Contest | 2 |
| | | ☐ A6110 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100 Other Civil Petition | 2, 9 |

| SHORT TITLE: Benjamin Pouladian v. Deco Enterprsies, Inc., et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: ☐ 1. ☑ 2. ☑ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | | | ADDRESS: 2917 Vail Avenue Commerce, CA 90040 |
|---|---|---|---|
| CITY: Commerce | STATE: CA | ZIP CODE: 90040 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: December 10, 2019

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).
5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br>12/10/2019<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: Romunda Clifton Deputy |
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | |
| **NOTICE OF CASE ASSIGNMENT<br>UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>19STCV44475 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✓ | Robert S. Draper | 78 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record Sherri R. Carter, Executive Officer / Clerk of Court

on 12/12/2019 By Romunda Clifton, Deputy Clerk
(Date)

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

**APPLICATION**
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

**PRIORITY OVER OTHER RULES**
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

**CHALLENGE TO ASSIGNED JUDGE**
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

**TIME STANDARDS**
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

**COMPLAINTS**
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

**CROSS-COMPLAINTS**
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

**STATUS CONFERENCE**
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

**FINAL STATUS CONFERENCE**
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

**SANCTIONS**
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

**Class Actions**
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

***Provisionally Complex Cases**
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

Electronically FILED by Superior Court of California, County of Los Angeles on 12/12/2019 [illegible] Sherri R. Carter, Executive Officer/Clerk of Court, by S. Ruiz,Deputy Clerk

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

Benjamin Pouladian

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, California 90012

CASE NUMBER: *(Número del Caso):*
19STCV44475

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John Yates, Yates Litigation; 16000 Ventura Boulevard, Suite 1000, Tenth Floor, Encino, CA 91436; (818) 361-5891

DATE: 12/12/2019 Clerk, by Sherri R. Carter Executive Officer / Clerk of Court Sergio Ruiz , Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. [X] as an individual defendant.
2. [/] as the person sued under the fictitious name of *(specify)*:
3. [ ] on behalf of (specify):

under:
- [ ] CCP 416.10 (corporation)
- [ ] CCP 416.20 (defunct corporation)
- [ ] CCP 416.40 (association or partnership)
- [ ] other *(specify)*:
- [ ] CCP 416.60 (minor)
- [ ] CCP 416.70 (conservatee)
- [ ] CCP 416.90 (authorized person)

4. [X] by personal delivery on *(date)*:



Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form | Save this form | Clear this form

SUM-110

# SUMMONS
## Cross-Complaint
## *(CITACION JUDICIAL–CONTRADEMANDA)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO CROSS-DEFENDANT:**
***(AVISO AL CONTRA-DEMANDADO):***

BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN, an individual; EDITH POULADIAN, an individual; and ROES 1 through 20

**YOU ARE BEING SUED BY CROSS-COMPLAINANT:**
***(LO ESTÁ DEMANDANDO EL CONTRADEMANDANTE):***

DECO ENTERPRISES, INC., a California Corporation; ABS CAPITOL, LLC, a California limited liability company; BABAK SINAI, an individual

**You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the cross-complainant. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.**

**There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site *(www.lawhelpcalifornia.org)*, the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.**

***Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por esqrito en esta corte y hacer que se entregue una copia al contrademandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California* (www.sucorte.ca.gov), *en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.***

***Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services,* (www.lawhelpcalifornia.org), *en el Centro de Ayuda de las Cortes de California* (www.sucorte.ca.gov), *o oniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.***

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California - County of Los Angeles
Stanley Mosk Courthouse
111 N Hill St, Los Angeles, CA 90012

SHORT NAME OF CASE *(from Complaint)*: *(Nombre de Caso)*:
Pouladian v. Deco Enterprises, et al.

CASE NUMBER: *(Número del Caso)*:
19STCV44475

The name, address, and telephone number of cross-complainant's attorney, or cross-complainant without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del contrademandante, o del contrademandante que no tiene abogado, es):* Amy A. Mousavi, Mousavi & Lee, LLP, 19200 Von Karman Ave., Suite 940, Irvine, CA 92612, (949) 864-9667
Thomas A. Pistone, Pistone Law Group, LLP, 19200 Von Karman Ave., Suite 940, Irvine, CA 92612, (949) 864-9660

DATE: *(Fecha)* Clerk, by *(Secretario)* ________________________, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons *(POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual cross-defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO ~~DEFENDANT~~:** THIRD PARTY DEFENDANTS
***(AVISO AL DEMANDADO):***

Siamak Sinai; Saman Sinai;Craig Allen; and Moes 1 through 10, inclusive

**YOU ARE BEING SUED BY ~~PLAINTIFF~~:** THIRD PARTY PLAINTIFF
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

Benjamin Pouladian

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, CA 90012

CASE NUMBER: *(Número del Caso):*
19STCV44475

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John Yates, Yates Litigation, 16000 Ventura Boulevard, Suite 1000, 10th Floor, Encino, CA 91436 (818) 381-5891

DATE: *(Fecha)* Clerk, by *(Secretario)* , Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of (specify):
   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*



Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form | Save this form | Clear this form

Electronically FILED by Superior Court of California, County of Los Angeles on 01/10/2020 03:53 PM Sherri R. Carter, Executive Officer/Clerk of Court, by D. Ramos,Deputy Clerk

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Fax: (818) 561-3925
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff
Benjamin Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| Benjamin Pouladian,<br><br>Plaintiff,<br><br>vs.<br><br>Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive<br><br>Defendants. | **CASE NO.: 19STCV44475**<br><br>HON. ROBERT S. DRAPER – DEPARTMENT 78<br><br>UNLIMITED JURISDICTION<br><br>First Amended Complaint for:<br><br>(1) Breach of Contract<br>(2) Violation of California Labor Code §2802<br>(3) Fraudulent Concealment<br>(4) Intentional Infliction of Emotional Distress<br>(5) Conversion<br>(6) Declaratory Relief<br><br>Complaint Filed December 10, 2019 |

Plaintiff Benjamin Pouladian ("Pouladian") for his complaint against Deco Enterprises, Inc., Craig Allen, Does 1 through 10, and each of them, alleges as follows:

1. Pouladian is a Founder and President of defendant Deco Enterprises, Inc. ("Deco") for approximately 14 years, beginning in 2005. Pouladian resigned as President in August 2019.

2. Deco is a California Corporation headquartered at 2917 South Vail Avenue in the City of Commerce. Deco is in the business of manufacturing and distributing lighting fixtures for residential, commercial and industrial applications.



Yates Litigation

3. Craig Allen ("Allen") is the Chief Financial Officer of Deco.

4. Defendants Does 1 through 10 are persons whose names are currently unknown to plaintiff, but on information and belief Does 1 through 10 are agents or employees of Deco, each of whom is in some manner legally responsible for the damages Pouladian has suffered and will suffer due to the actions of Deco.

5. For fourteen years, Pouladian's credit cards were entrusted to Deco as business credit cards. The company's Accounts Payable department which reported directly to Allen, routinely incurred substantial charges on the cards for business purposes, such as paying vendors, buying parts and supplies, paying for business insurances, and the like. Pouladian and Deco, under the issuers' card holder agreement, were both responsible for payment of the charges incurred.

6. Both Pouladian and Deco received the monthly statements for each credit card. For 14 years, Deco paid the monthly charges that the Deco's Accounts Payable department incurred for Deco's business expenses, and invariably did so within thirty days of receipt of the statements.

7. Pouladian is the owner of a 30% shareholding interest in Deco, and Deco and Pouladian are co-signatories, with the remaining three shareholders, of a Shareholder and Buy-Sell Agreement of Deco Enterprises, Inc.

**FIRST CAUSE OF ACTION**

(For Breach of Implied Contract against Deco Enterprises, Inc. and Does 1 through 10)

8. Pouladian incorporates by this reference the allegations of paragraphs 1 through 7 of this complaint, as if set forth in full.

9. Deco has used Pouladian's American Express Business Platinum credit card, American Express Bonvoy business credit card, Chase Ink business credit card, and Citibank Visa credit card to make payments for and purchases of business-related items and expenses on Deco's behalf. The current outstanding account balances on these cards are, respectively, $356,993.33, $7,635, $74,596.82, and $7,022.64, for a total of $446,247.79. All balances are currently due and owing with interest and penalties accruing.

10. As a result of Deco's failure to pay the charges incurred for necessary business expenses, Pouladian has been forced to spend his own funds to try to protect his personal credit

rating. To that end, Pouladian has made one minimum payment on the Citibank Visa card in the amount of $450. Pouladian also recently paid American Express $29,553 as the initial installment of a 36-month payment plan to requiring payment of $10,000 in each of the next 35 months to pay off the balance on the American Express Business Platinum credit card.

11. Pouladian has continued to receive monthly statements on each of these four business credit cards. Each month, Pouladian has forwarded the statements to Deco's CFO Allen, and requested Allen to instruct Deco's Accounts Payable department to pay the statements.

12. Despite multiple requests, Allen has not caused Deco to pay the statements, even though, on information and belief, Deco has funds available to pay the charges in full.

13. Deco's refusal to pay the debts incurred for Deco's benefit on Pouladian's credit cards has exposed Pouladian to a current liability of $446,247.79, which sum increases monthly as the issuers add fees and interest to the statement balances.

14. Deco's refusal and failure to pay the balances on the four credit cards constitutes a breach by Deco of a contract between Deco and Pouladian implied in law and from the long course of dealing between Deco and Pouladian.

15. Pouladian has been damaged by Deco's breach in the amount of $30,003 for payments made by Pouladian that should have been made by Deco. Pouladian also has a current liability of $446,247.79 and increasing for which Deco has refused to pay.

## SECOND CAUSE OF ACTION

(For Violation of California Labor Code §2802 against Deco Enterprises, Inc. and Does 1 through 10)

16. Pouladian incorporates by this reference the allegations of paragraphs 1 through 7 and 9 through 15 of this complaint, as if set forth in full.

17. California Labor Code §2802(a) requires that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, . . . .." Section 2802(a) has been judicially interpreted to include business expenses incurred by an employee, such as the hundreds of thousands of dollars of business

expenses that Deco's Accounts Payable department incurred on Deco's behalf using Pouladian's company authorized credit cards.

18. Deco's failure to reimburse Pouladian for the credit card charges incurred for business purposes is a violation of California Labor Code §2802.

19. Deco's violation renders it liable to Pouladian for full reimbursement well in excess of $400,000, interest on the unreimbursed sum, and attorneys' fees incurred by Pouladian to vindicate his rights.

**THIRD CAUSE OF ACTION**

(For Fraudulent Concealment against Craig Allen and Does 1 through 5)

20. Pouladian incorporates by this reference the allegations of paragraphs 1 through 7, 9 through 15, and 17 through 19 of this complaint, as if set forth in full.

21. The unpaid charges on Pouladian's credit cards began accruing in or about April 2019. On information and belief, Allen in approximately March or April 2019 had already decided that Deco would continue to use Pouladian's credit cards to cover its day to day business expenses but would cease paying the charges. On information and belief, Allen's goal was to superficially improve the cash flow of Deco, which at the time was struggling to remain in operation after several years of mismanagement and lack of financial oversight by Allen. On information and belief, Allen's goal was also to free up Deco's funds by not paying debts owed to Pouladian, and instead using the money saved to increase his own salary from about $130,000 to $250,000.

22. Allen failed to disclose to Pouladian Allen's intention to use Pouladian's credit cards for the benefit of Deco and himself, but not to pay the charges incurred on the cards.

23. Had Pouladian known of Allen's scheme, he would have immediately terminated all of the cards that Deco was using for day to day business expenses.

24. Allen's failure to disclose his intentions to Pouladian has caused damage to Pouladian in the amount of the unpaid charges which exist only because of Allen's fraudulent concealment of material facts from Pouladian.

Yates Litigation

25. Allen's concealment of his intention to prohibit Deco from paying the charges incurred on Pouladian's credit cards was malicious and fraudulent, and exemplary damages should be awarded against Allen to deter such behavior in the future.

**FOURTH CAUSE OF ACTION**

(For Intentional Infliction of Emotional Distress against Deco Enterprises, Inc., Craig Allen, and Does 1 through 5)

26. Pouladian incorporates by this reference the allegations of paragraphs 1 through 7, 9 through 15, 17 through 19, and 21 through 25 of this complaint, as if set forth in full.

27. Deco through its agents and employees knows that the charges currently pending on Pouladian's company credit cards were incurred for the legitimate business expenses of Deco. Deco is clearly aware of the 14-year history of its Accounts Payable department routinely using Pouladian's charge cards for Deco's business expenses, and Deco routinely paying Pouladian's company credit card charges within 30 days of receiving the statement.

28. Pouladian has repeatedly notified CFO Allen of the pending charges and requested that they be paid by Deco. Allen has never stated a reason why Deco refuses to pay the credit card charges incurred and indeed has never responded at all to Pouladian's requests. The charges have not been paid. On information and belief, Allen has intentionally withheld payment in order to superficially improve Deco's cash flow, and to have funds available to nearly double his own salary.

29. Deco and Allen both know since the filing by Pouladian of a claim for the unpaid business expenses with the California Department of Industrial Relations that Deco's refusal to pay the charges is unlawful. Allen continues to prevent Deco from paying the charges.

30. Deco through its agents and employees, and Allen, know that Pouladian's mother is currently battling cancer and that his mother's condition is a serious concern for Pouladian.

31. Deco's and Allen's intent is to inflict severe emotional distress on Pouladian by refusing to pay the pending credit card charges while knowing of the severe consequences to Pouladian.



Yates Litigation

32. Deco's and Allen's refusal to address, acknowledge and provide any reasonable resolution to the outstanding balances have caused Pouladian severe emotional distress measured by damages well above the minimum jurisdictional amount of the Superior Court.

33. Allen's intention to harm Pouladian while using the funds made available by his actions to nearly double his own salary is malicious and oppressive, and exemplary damages should be awarded against Allen to deter such behavior in the future.

**FIFTH CAUSE OF ACTION**

(For Conversion against Deco Enterprises, Inc. and Does 1 through 10)

34. Pouladian incorporates by this reference the allegations of paragraphs 1 through 7, 9 through 17, 17 through 98, 21 through 25, and 27 through 33 of this complaint, as if set forth in full.

35. Deco used the information on Pouladian's credit cards to obtain goods and services benefitting Deco in the amount of $446,247.79.

36. Deco's implied promise to Pouladian based on a 14-year course of dealing was that it would pay all charge's on Pouladian's credit cards incurred for the benefit of Deco.

37. Deco's refusal to pay the charges currently due on Pouladian's credit cards constitutes a misappropriation without Pouladian's consent of Pouladian's credit card information.

38. Pouladian has paid from his personal funds $30,003 that Deco should have paid, and Deco has wrongfully converted that sum to its own benefit.

39. Each payment on the charges now due that Pouladian makes from his personal funds will constitute a conversion by Deco of the sum paid.

**SIXTH CAUSE OF ACTION**

(For Declaratory Relief against Deco Enterprises, Inc. and Does 1 through 10)

40. Pouladian incorporates by this reference the allegations of paragraphs 1 through 7, 9 through 17, 17 through 98, 21 through 25, 27 through 33, and 35 through 39 of this complaint, as if set forth in full.

41. Pouladian contends that he retains his full 30% shareholding interest in Deco, while Deco claims that Pouladian has relinquished his shares, albeit in a manner not consistent with the Shareholder and Buy-Sell Agreement of Deco Enterprises, Inc. ("the Buy-Sell").

Yates Litigation

42. Pouladian contends that the Buy-Sell is in full force and effect, while Deco asserts that the Buy-Sell is no longer applicable due to the alleged insolvency of Deco.

43. A justiciable controversy has now arisen between Pouladian and Deco regarding Pouladian's status as a shareholder and the current applicability of the Buy-Sell Agreement.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff Benjamin Pouladian prays for relief against defendant Deco Enterprises, Inc., Craig Allen, Does 1 through 10, and each of them, as set forth below.

A. For a judgment declaring that Pouladian remains a 30% shareholder of Deco, and that the Buy-Sell Agreement is still in full force and effect;

B. For a judgment requiring Deco to comply with California law and pay the credit card charges currently pending on Pouladian's company credit cards;

C. For damages for Pouladian's out of pocket payments in the amount of $30,003 plus interest thereon;

D. For additional damages for each of Pouladian's out of pocket payments made before this action is tried, plus interest thereon;

E. For damages for inflicting severe emotional distress on Pouladian;

F. For exemplary damages on the Third and Fourth Causes of Action;

G. For attorneys' fees as permitted by California Labor Code §2802(c);

H. For costs of suit; and

I. For such other and further relief as the Court may deem just and proper.

DATED: January 10, 2020

YATES LITIGATION

By: ______________________
JOHN R. YATES
Attorneys for Plaintiff
Benjamin Pouladian

Yates Litigation

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436.**

On January 10, 2020, I served the foregoing document described as First Amended Complaint on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

**SEE ATTACHED LIST**

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 10, 2020, at Encino, California.

John R. Yates

Amy Mousavi, Esq.

Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Attorney for Respondent Deco Enterprises, Inc. and Craig Allen

19STCV44475

Electronically FILED by Superior Court of California, County of Los Angeles on 01/21/2020 05:11 PM Sherri R. Carter, Executive Officer/Clerk of Court, by V. Delgadillo,Deputy Clerk

SUM-110

# SUMMONS
## Cross-Complaint
## *(CITACION JUDICIAL–CONTRADEMANDA)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO CROSS-DEFENDANT:**
***(AVISO AL CONTRA-DEMANDADO):***
BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN, an individual; EDITH POULADIAN, an individual; and ROES 1 through 20

**YOU ARE BEING SUED BY CROSS-COMPLAINANT:**
***(LO ESTÁ DEMANDANDO EL CONTRADEMANDANTE):***
DECO ENTERPRISES, INC., a California Corporation; ABS CAPITOL, LLC, a California limited liability company; BABAK SINAI, an individual

**You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the cross-complainant. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.**

**There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site *(www.lawhelpcalifornia.org)*, the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.**

***Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por esqrito en esta corte y hacer que se entregue una copia al contrademandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California* (www.sucorte.ca.gov), *en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.***

***Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services,* (www.lawhelpcalifornia.org), *en el Centro de Ayuda de las Cortes de California* (www.sucorte.ca.gov), *o oniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.***

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California - County of Los Angeles
Stanley Mosk Courthouse
111 N Hill St, Los Angeles, CA 90012

SHORT NAME OF CASE *(from Complaint)*: *(Nombre de Caso)*:
Pouladian v. Deco Enterprises, et al.

CASE NUMBER: *(Número del Caso)*:
19STCV44475

The name, address, and telephone number of cross-complainant's attorney, or cross-complainant without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del contrademandante, o del contrademandante que no tiene abogado, es):* Amy A. Mousavi, Mousavi & Lee, LLP, 19200 Von Karman Ave., Suite 940, Irvine, CA 92612, (949) 864-9667
Thomas A. Pistone, Pistone Law Group, LLP, 19200 Von Karman Ave., Suite 940, Irvine, CA 92612, (949) 864-9660

DATE: *(Fecha)* 01/21/2020 Sherri R. Carter Executive Officer / Clerk of Court Clerk, by *(Secretario)* Veronica Delgadillo , Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons *(POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual cross-defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

Electronically FILED by Superior Court of California, County of Los Angeles on 01/21/2020 05:11 PM Sherri R. Carter, Executive Officer/Clerk of Court, by V. Delgadillo,Deputy Clerk

Amy A. Mousavi, Esq., SBN: 228388
MOUSAVI & LEE, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9667
amousavi@mousavilee.com

Thomas A. Pistone, Esq., SBN: 77774
PISTONE LAW GROUP, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9660
tpistone@pistonelawgroup.com

**Attorneys for Defendant Craig Allen, Cross-Complainant/Defendant Deco Enterprises, Inc., and Cross-Complainants ABS Capitol, LLC and Babak Sinai**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

| | |
|---|---|
| BENJAMIN POULADIAN<br><br>Plaintiff,<br><br>v.<br><br>DECO ENTERPRISES; CRAIG ALLEN; and DOES 1 through 10, inclusive,<br><br>Defendants.<br>---<br>DECO ENTERPRISES, INC., a California Corporation; ABS CAPITOL, LLC, a California limited liability company; BABAK SINAI, an individual;<br><br>Cross-Complainants;<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN, an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | Case No.: 19STCV44475<br>Dept.: 078<br>Assigned For All Purposes To: Hon. Judge Robert S. Draper<br><br>**CROSS-COMPLAINT FOR:**<br>**1. BREACH OF FIDUCIARY DUTY;**<br>**2. CONSTRUCTIVE FRAUD;**<br>**3. EMBEZZLEMENT/CONVERSION;**<br>**4. BREACH OF CONTRACT;**<br>**5. REACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**6. FRAUD;**<br>**7. ABUSE OF CONTROL AND CORPORATE WASTE;**<br>**8. UNJUST ENRICHMENT; AND**<br>**9. DECLARATORY RELIEF** |

## PARTIES AND GENERAL ALLEGATIONS

1. Cross-Complainant Deco Enterprises, Inc. (hereafter "DECO" or "CROSS-COMPLAINANT") is a California Corporation doing business in Los Angeles, California.

2. Cross-Complainant Babak Sinai, also known as Bob Sinai (hereafter "BOB SINAI"), is an individual doing business in Los Angeles, California. BOB SINAI is a shareholder of DECO.

3. Cross-Complainant ABS CAPITOL, LLC (hereafter "ABS") is a limited liability company organized under the laws of the State of California.

4. Cross-Defendant **Benjamin Pouladian**, also known as **Ben Petersen** (hereafter "POULADIAN"), is an individual doing business in Los Angeles, California. At all times relevant, POULADIAN was both the President of DECO and a Director of DECO.

5. Based upon information and belief, Cross-Defendant **Edith Pouladian** (hereafter or "EDITH POULADIAN"), is married to POULADIAN. At all times relevant, EDITH POULADIAN has participated in or benefitted from ill-gotten financial gains by POULADIAN, including the purchase of a residence along with POULADIAN.

6. At all times relevant, POULADIAN had a fiduciary duty to DECO and all of DECO's shareholders.

7. Cross-Complainants are unaware of the true names and capacities, whether individual, corporate, partnership, associate, or otherwise, of Cross-Defendants ROES 1 through 20, inclusive, and therefore, sues these Cross-Defendants by such fictitious names. Cross-Complainants are informed and believe, and on that basis allege that each of the Cross-Defendants designated as a Roe is legally responsible and liable in some manner for the events and happenings herein referred to, and when the true names and capacities of each such Roe is discovered, Cross-Complainants will seek leave to amend this Cross-Complaint by the insertion of each such name and capacity, and if necessary, apt and proper words to charge each.

8. Cross-Complainants are informed and believe, and on that basis allege that at all relevant times herein mentioned, each of the Cross-Defendants was the agent, servant, and employee of each of the other Cross-Defendants and in connection with the acts hereinafter alleged, was acting within the scope of such agency and employment, and each Cross-Defendant ratified each

and every act, omission, and thing done by every other Cross-Defendant named herein.

## FIRST CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

## (By DECO and BOB SINAI against POULADIAN and ROES 1-20)

9. Cross-Complainants incorporate by reference, as though set forth in full herein, paragraphs 1 through 8, inclusive.

10. In or about March 2005 DECO was registered as a California corporation with the Secretary of State of California.

11. DECO's shareholders consisted of three brothers, BOB SINAI, Saman Sinai, Siamak Sinai, and their cousin, POULADIAN.

12. At all times relevant, POULADIAN was not only was a trusted family member, but also the President and a Director of DECO.

13. In or about October 1, 2013, DECO and its shareholders entered into a **Shareholder and Buy-Sell Agreement** (hereafter "Shareholder Agreement"). A true and correct copy of said Shareholder Agreement is attached hereto as **Exhibit "1**."

14. Section 12.3 of the Shareholder Agreement requires the vote of all of the shareholders of DECO for certain actions, including but not limited to Amendment of the Articles of DECO, and incurring debts or liabilities in the aggregate amount of $50,000, annually.

15. In or about August of 2019, POULADIAN called all of the shareholders for a meeting. DECO's employee and Chief Financial Officer, Craig Allen, who has been named as a Defendant in this action, was also present during the meeting.

16. During that meeting, POULADIAN, for the first time, informed all of the shareholders and Craig Allen that POULADIAN had forged BOB SINAI's signature to incur millions of dollars in loans. POULADIAN also admitted that, through his fraudulent conduct, he had encumbered the real property owned by ABS as collateral for the DECO loans that POULADIAN had fraudulently obtained, despite the fact that POULADIAN was a fiduciary of DECO, since he was the President and a Director.

17. POULADIAN was very apologetic and told all present that he would forfeit his ownership shares in DECO to compensate for his misconduct. In response to a text message from BOB SINAI, on August 14, 2019, POULADIAN wrote "Ok. I give up my shares already I am out."

18. POULADIAN then resigned his positions as an officer and director of DECO.

19. At all times relevant, as an officer and director of DECO, POULADIAN owed DECO and its shareholders a fiduciary duty.

20. "A fiduciary relationship is '"any relation existing between parties to a transaction wherein one of the parties is . . . duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent." ' " (*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29 [130Cal.Rptr.2d 860].)

21. Beginning in August 2019, and continuing on, DECO and its shareholders have discovered that POULADIAN has breached his fiduciary duties by *inter alia*:

- Forging BOB SINAI's signature to obtain millions of dollars in loans without the required approval of all of the shareholders;
- Increasing his own salary by ***$67,600,*** from $192,400 to $260,000, and ***in 2016 further increasing his salary by $78,000,*** raising the salary to $338,000;
- Using DECO's credit cards, without authorization and approval, to pay for his personal expenses, and ***in 2018 alone***, while DECO was financially suffering as a result of POULADIAN's mismanagement, POULADIAN used DECO's credit cards to pay for his ***personal expenses in the amount of $68,811***;
- Puporting to amend the Articles of Incorporation without the required approval and vote of the shareholders, to attempt to create protection for his own misconduct that was known to him only;
- Embezzling and converting over Four Hundred Thousand Dollars ($400,000.00) of DECO's assets by cashing out the value of the credit card rewards points on DECO's

credit cards, for his personal use, including, based on information and belief, purchasing a house with his wife, in the amount of $5,000,000.00;

- informing Craig Allen, Chief Financial Officer of the company that POULADIAN wants to write two $50,000 checks to himself, so that in purchasing his house and obtaining a loan from the lender, POULADIAN could misrepresent his income to his lender. Mr. Allen objected and threatened to walk out;

- Committing insurance fraud by intentionally misclassifying employees to DECO's insurance company and subjecting DECO to a risk of insurance fraud;- POULADIAN instructed and forced employees to tamper with documents, resulting in complaints to Human Resources;

- Misrepresentation to a DECO customer, resulting in discontinuation of over Two Million ($2,000,000) purchases from the company;

- Shortly prior to his forfeiture of shares and resignation, POULADIAN purported to amend the buy-sell agreement, to value the company, which he knew was insolvent, at $100,000,000, for the purpose of obtaining life insurance (another example of his intent to defraud an insurance company);

- Unprofessional conduct towards employees, resulting in a lawsuit by an employee;

- Signing agreements without first obtaining the required vote of the shareholders, ultimately resulting in a Stipulation for Judgment in the amount of Five Million Dollars;

- POULADIAN's intentional disregard of Philips Lighting Holding's demands for rightful payment, resulting in a lawsuit and loss of over $450,000;

- mismanaging DECO and ordering Millions of Dollars of excess inventory without the required approval of the shareholders;

- Encumbering DECO with debt without authorization and/or the required vote of the shareholders;

- Causing DECO to pay an additional 1.2 Million Dollars in interest, due to POULADINA'S above described conduct; and

- Falsely accusing Craig Allen of increasing his own salary and threatening Mr.

Allen with years of litigation.

22. As a direct and proximate result of the POULADIAN's fraud, breach of his fiduciary duties and concealment of material facts, DECO has been damaged in the minimum amount of $5,000,000 or according to proof at trial.

23. By engaging in the aforementioned conduct, POULADIAN is guilty of oppression, fraud and malice, and has acted with an intent to vex, harass, injure and annoy DECO, BOB SINAI, and other shareholders, with a conscious disregard for their rights, and by reason thereof should pay DECO punitive damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**CONSTRUCTIVE FRAUD**

**(By all Cross-Complainants against POULADIAN and ROES 1-20)**

24. Cross-Complainants incorporate by reference, as though set forth in full herein, paragraphs 1 through 23, inclusive.

25. In or about March 2005, DECO was registered as a California corporation with the Secretary of State of California.

26. DECO's shareholders consisted of three brothers, BOB SINAI, Saman Sinai, Siamak Sinai, and their cousin, POULADIAN.

27. At all times relevant, POULADIAN was not only a trusted family member, but also the President and Director of DECO. At all times relevant, as an officer and director of DECO, POULADIAN owed DECO and its shareholders a fiduciary duty.

28. In or about October 1, 2013, DECO and its shareholders entered into a **Shareholder Agreement**. A true and correct copy of the said Shareholder Agreement is attached hereto as **Exhibit "1."**

29. Section 12.3 of the Shareholder Agreement requires the vote of all of the shareholders of DECO for certain actions, including but not limited to Amendment of the Articles of DECO and incurring debts or liabilities in the aggregate amount of $50,000, annually.

30. In or about August of 2019, POULADIAN called all of the shareholders for a meeting. DECO's employee and Chief Financial Officer, Craig Allen, who has been named as a Defendant

in this action, was also present during the meeting.

31. During that meeting, POULADIAN, for the first time, informed all of the shareholders and Craig Allen that POULADIAN has forged BOB SINAI's signature to incur millions of dollars in loans from the said lender. POULADIAN also admitted that through his fraudulent conduct, he has put up the real property owned by ABS as collateral for the DECO loans, that POULADIAN had obtained fraudulently, despite the fact that POULADIAN was a fiduciary of DECO since he was the President (an officer) and a Director.

32. Prior to August of 2019, POULADIAN had concealed from DECO and its shareholders that he had forged BOB SINAI's signatures on documents and had obtained millions of dollars in loans without obtaining approval of all of the shareholders.

33. POULADIAN was very apologetic and told all present that he will forfeit his shares in DECO. In response to a text message from BOB SINAI, on August 14, 2019, POULADIAN wrote to BOB SINAI "Ok. I give up my shares already I am out."

34. POULADIAN followed up with resigning his positions as an officer and director of DECO.

35. POULADIAN had also concealed from DECO and its shareholders that in 2018, POULADIAN had converted over $400,000 of DECO's assets, by cashing out credit card points that DECO had accumulated over the years, including the points on the American Express credit card for his personal use.

36. POULADIAN used the funds he converted from DECO's credit cards to purchase a house in July of 2018, with his wife EDITH POULADIAN, to purchase a house for over $5,000,000.00.

37. After POULADIAN left DECO, DECO discovered that POULADIAN had increased his own salary, without the approval of the board of directors and without the vote and approval of all of the shareholders, as required by the Shareholder Agreement. In 2015 alone, POULADIAN had increased his own salary by ***$67,600,*** from $192,400 to $260,000, and ***in 2016, by another $78,000,*** raising his salary to $338,000. Additionally, without approval or authorization, POULADIAN used DECO's credit cards for his personal expenses, and ***in 2018 alone***, and while DECO was financially suffering as a result of POULADIAN's mismanagement, POULADIAN

used DECO's credit cards to pay for his ***personal expenses in the amount of $<u>68,811</u>.***

38. DECO has since discovered that, unbeknownst to DECO and its shareholders, in 2016, POULADIAN had amended the Articles of Incorporation of DECO without the required vote of all DECO's shareholders.

39. By committing the acts alleged above, POULADIAN has breached his fiduciary duty to DECO and its shareholders, for his own personal gain, and his personal advantage, to the detriment of DECO and its shareholders.

40. As a direct and proximate result of the POULADIAN's fraud, breach of his fiduciary duties and concealment of material facts, DECO has been damaged in the minimum amount of $5,000,000 or according to proof at trial.

41. By engaging in the aforementioned conduct, POULADIAN is guilty of oppression, fraud and malice, and have acted with an intent to vex, harass, injure and annoy DECO, Bob Sinai and other shareholders, with a conscious disregard for their rights, and by reason thereof should pay DECO punitive damages in an amount to be determined at trial.

**<u>THIRD CAUSE OF ACTION</u>**

**EMBEZZLEMENT/CONVERSION**

**(By DECO against POULADIAN and ROES 1-20)**

42. CROSS-COMPLAINANT incorporates by reference, as though set forth in full herein, paragraphs 1 through 41, inclusive.

43. At all times relevant, DECO was the rightful owner of all of its property, including the credit cards, benefits of its credit cards, and all of its revenue.

44. In or about August of 2019, Cross-Complainants discovered that POULADIAN had intentionally interfered with their rights by committing the acts described, below.

45. In or about August 2019, POULADIAN admitted that without DECO's authorization and knowledge, POULADIAN had cashed the rewards points for DECO's business credit card, for which DECO had paid all along, in an amount over $400,000.00.

46. In or about August 2019, Cross-Complainants discovered that POULADUIAN, without DECO's authorization or consent, had increased his own salary by ***$67,600,*** from $192,400 to

$260,000, and ***in 2016, by an additional $78,000,*** raising his salary total to $338,000.

47. In or about August 2019, Cross-Complainants discovered that POULADUIAN, without DECO's authorization or consent used DECO's credit cards to pay for his personal expenses, and ***in 2018 alone***, while DECO was financially suffering as a result of POULADIAN's mismanagement, POULADIAN used DECO's credit cards to pay for his ***personal expenses in the amount of $68,811***.

48. As a direct and proximate result of POULADIAN's conduct, DECO has been damaged in the minimum amount of $5,000,000 or according to proof at trial.

**FOURTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(By DECO against POULADIAN and ROES 1-20)**

49. CROSS-COMPLAINANT incorporates by reference, as though set forth in full herein, paragraphs 1 through 48, inclusive.

50. In or about October 2013, DECO and its shareholders entered into the Shareholder Agreement.

51. Section 12.3 of the Shareholder Agreement requires the vote of all of the shareholders of DECO for certain actions, including but not limited to Amendment of the Articles of DECO and incurring debts or liabilities in the aggregate amount of $50,000, annually.

52. POULADIAN has breached the Shareholder Agreement by, inter alia:

- Incurring millions in debt without the required vote of all shareholders;
- Increasing his own salary by ***$67,600,*** from $192,400 to $260,000, and ***in 2016, by $78,000,*** raising his salary to $338,000;
- Using DECO's credit cards, without authorization and approval, to pay for personal expenses. ***In 2018 alone***, while DECO was financially suffering as a result of POULADIAN's mismanagement, POULADIAN used DECO's credit cards to pay for his ***personal expenses in the amount of $68,811***;
- Amending the Articles of Incorporation without the required approval and vote of the shareholders, to create protection for his own misconduct that was known to him only;

and

- Embezzling and converting over Four Hundred Thousand Dollars ($400,000.00) of DECO's assets by cashing out the value of the credit card reward points on DECO's credit cards, for his personal use, including, based on information and belief, purchasing a house with his wife, in the amount of $5,000,000.00.

53. DECO has performed all of its obligations, except as excused or prevented by POULADIAN.

54. As a direct and proximate result of POULADIAN's conduct, DECO has been damaged in the minimum amount of $5,000,000 or according to proof at trial.

**FIFTH CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(By DECO against POULADIAN and ROES 1-20)**

55. CROSS-COMPLAINANT incorporates by reference, as though set forth in full herein, paragraphs 1 through 54, inclusive.

56. In or about October 2013, DECO and its shareholders entered into the Shareholder Agreement.

57. It is undisputed that in every contract, there is an implied covenant of good faith and fair dealing. The covenant imposes on each party a duty to refrain from doing anything which would render performance of the contract impossible.

58. The covenant also imposes a duty on every party to the contract to do everything that a contract presupposes each party will do to accomplish its purpose.

59. POULADIAN has breached the implied covenant of good faith and fair dealing by, inter alia:

- Incurring millions in debt without the required vote of all shareholders;
- Increasing his own salary by ***$67,600,*** from $192,400 to $260,000, and ***in 2016, by $78,000,*** raising his salary to $338,000;
- Using DECO's credit cards, without authorization and approval, to pay for his personal expenses. ***In 2018 alone***, while DECO was financially suffering as a result of

POULADIAN's mismanagement, POULADIAN used DECO's credit cards to pay for his ***personal expenses in the amount of $68,811***;

- purporting to Amend the Articles of Incorporation without the required approval and vote of the shareholders, to create protection for his own misconduct that was known to him only; and

- Embezzling and converting over Four Hundred Thousand Dollars ($400,000.00) of DECO's assets by cashing out the value of the credit card reward points on DECO's credit cards, for his personal use, including, based on information and belief, for purchasing a house with his wife, in the amount of $5,000,000.00.

60. As a direct and proximate result of POULADIAN's conduct, DECO has been damaged in the minimum amount of $5,000,000 or according to proof at trial.

**SIXTH CAUSE OF ACTION**

**FRAUD**

**(By ABS against POULADIAN and ROES 1-20)**

61. Cross-Complainant ABS incorporates by reference, as though set forth in full herein, paragraphs 1 through 60, inclusive.

62. ABS is the owner of the real property on which DECO does business.

63. Siamak Sinai is both a shareholder of DECO and 50% owner of ABS. The other half is owned 25% by BOB SINAI and 25% by a family trust of which POULADIAN's parents are trustees.

64. In or about August 2019, CROSS-COMPLAINANT discovered that POULADIAN had encumbered the property of ABS by presenting false documents to Siamak Sinai, and switching the signature pages.

65. POULADIAN did that with the intent to defraud ABS, and with the intent to induce reliance for Siamak Sinai to sign the fake document, so that POULADIAN could switch the signature pages, for the purpose of putting up ABS' property as a collateral for the unauthorized debts of DECO.

66. This was a material fact and had Siamak Sinai, the managing member of ABS, known

about that, he would have never signed the document that was presented to him.

67. ABS reasonably relied on the concealment and misrepresentations of POULADIAN.

68. ABS relied on POULADIAN's representations to its detriment.

69. As a direct and proximate result of the POULADIAN's fraud, ABS has been damaged in an amount according to proof at trial.

70. By engaging in the aforementioned conduct, POULADIAN is guilty of oppression, fraud and malice, and has acted with an intent to vex, harass, injure and annoy ABS and its members, with a conscious disregard for their rights, and by reason thereof should pay ABS punitive damages in an amount to be determined at trial.

**<u>SEVENTH CAUSE OF ACTION</u>**

**ABUSE OF CONTROL AND CORPORATE WASTE**

**(By DECO against POULADIAN and ROES 1-20)**

71. CROSS-COMPLAINANT incorporates by reference, as though set forth in full herein, paragraphs 1 through 70, inclusive.

72. By virtue of his positions as DECO's President and Director, as well as a trusted family member, POULADIAN exercised control over DECO and its operations, and owed duties as a controlling person to DECO not to use his positions of control for his own personal interests, contrary to the interest of DECO.

73. POULADIAN's conduct amounts to an abuse of his control of DECO, in violation of POULADIAN's obligations to DECO.

74. As a result of POULADIAN's abuse of control, DECO has sustained and will continue to sustain damages and injuries for which it has no adequate remedy at law.

**<u>EIGHTH CAUSE OF ACTION</u>**

**UNJUST ENRICHMENT**

**(By DECO against POULADIAN, EDITH POULADIAN and ROES 1-20)**

75. CROSS-COMPLAINANT incorporates by reference, as though set forth in full herein, paragraphs 1 through 74, inclusive.

76. As fully set forth above, POULADIAN and his wife, EDITH POULADIAN, have been

unjustly enriched by millions of dollars, from POULADIAN's conversion of money and benefits at the expense and detriment of DECO and its shareholders.

77. DECO hereby demands that POULADIAN and EDITH POULADIAN return all of the ill-gotten gains, in an estimated amount of $5,000,000, but according to proof at trial.

**NINTH CAUSE OF ACTION**

**DECLARATORY RELIEF**

**(By DECO against POULADIAN, EDITH POULADIAN and ROES 1-20)**

78. CROSS-COMPLAINANT incorporates by reference, as though set forth in full herein, paragraphs 1 through 77, inclusive.

79. Through his mismanagement, breach of his fiduciary duties, fraud and conversion of funds, POULADIAN drove DECO to insolvency, to the extent that DECO could not even meet its payroll.

80. The Shareholder Agreement is terminated, as follows:

"Termination of Agreement. This Agreement shall terminate on:

(a) The written agreement of all parties;

(b) The dissolution, bankruptcy, **or insolvency of the Corporation**; or

(c) At such time as only one Shareholder remains." **Exhibit "1,"** Paragraph 13. [Emphasis added.]

81. At the time POULADIAN had admitted to forging the signature of BOB SINAI and converting DECO's credit card reward points in the amount of $400,000.

82. DECO contends that based on the express language of the Shareholder Agreement, the Shareholder Agreement has been terminated.

83. POULADIAN does not dispute that DECO is insolvent and in fact, in many communications admits that DECO is insolvent. POULADIAN however, for no reason other than to interfere with the business of DECO, alleges that the Shareholder Agreement has not been terminated.

84. DECO hereby requests a Judicial Declaration that based on the insolvency of DECO, which is an express condition to termination of DECO, DECO's Shareholder Agreement has been

terminated.

WHEREFORE, Cross-Complainants pray for damages against Cross-Defendants as follows:

1. For general damages in the amount of $5,000,000, but according to proof at trial;
2. For prejudgment interest;
3. Special and consequential damages;
4. Punitive damages;
5. Costs and attorneys' fees incurred in this action;
6. For a Declaration that the Shareholder Agreement has been terminated due to DECO's insolvency; and
7. Any other and further relief the court considers proper.

Dated: January 21, 2020

**MOUSAVI & LEE, LLP**
**PISTONE LAW GROUP, LLP**

**By:** /s/ Amy A. Mousavi
**Amy A. Mousavi, Esq.**
**Thomas A. Pistone, Esq.**

Attorneys for Defendant Craig Allen, Cross-Complainant/Defendant Deco Enterprises, Inc., and Cross-Complainants ABS Capitol, LLC and Babak Sinai

# EXHIBIT 1.

# SHAREHOLDER AND BUY-SELL AGREEMENT OF DECO ENTERPRISES, INC., A CALIFORNIA CORPORATION

THIS Shareholder and Buy-Sell Agreement (hereafter "Agreement") effective October ___, 2013, is entered into among Benjamin Pouladian, Saman Sinai, Siamak Sinai, and Babak Sinai (referred to collectively as "Shareholders" and individually as "Shareholder"), and Deco Enterprises, Inc., a California corporation (hereafter "Corporation"), with respect to all shares of the Corporation's capital stock now or hereafter outstanding, for the purpose of protecting the Corporation and the Shareholders, as well as providing continuity for the Corporation's business in the event of the occurrence of certain events discussed in this Agreement.

## AGREEMENT

## ARTICLE 1
## SHARES SUBJECT TO THIS AGREEMENT

1.01. Business of the Corporation. The business of the Corporation is manufacturing commercial lighting fixtures and/or any other business, and all matters that are lawful as authorized under the laws of the State of California.

1.02. Shareholders. Shareholders of the Corporation are Benjamin Pouladian, Saman Sinai, Siamak Sinai, and Babak Sinai.

1.03. Initial Shares, Consideration, etc. Each of the Shareholders owns the number of shares of common share listed below:

| Name | Shares Owned |
|---|---|
| Benjamin Pouladian | 30% |
| Saman Sinai | 30% |
| Siamak Sinai | 20% |
| Babak Sinai | 20% |

The shares listed above constitute all of the issued and outstanding capital shares of the Corporation. All of the shares listed above and any additional shares of the capital share of the Corporation that may be acquired by the Shareholders in the future shall be subject to this Agreement.

## ARTICLE 2
## CERTAIN DISCLOSURES, WAIVERS AND INDEMNIFICATIONS

2.01. Representations. Each of the Shareholders acknowledges and represents that:

(a) He has full authority to enter into this Agreement and the execution and performance under the terms of this Agreement would neither violate any laws nor constitute a default;

(b) This Agreement was prepared with his knowledge and consent;

(c) He was advised by counsel to consider seeking independent legal counsel to review this Agreement on his behalf;
(d) He had adequate time to seek the advice of independent counsel and to review this Agreement;
(e) He either obtained such advice or knowingly and intentionally chose not to seek such advice;
(f) He fully understands this Agreement and all of its terms and provisions, including, but not limited to, those provisions which significantly restrict his ability to sell, transfer or otherwise dispose of his shares; and
(g) The restrictions imposed upon his shares pursuant to this Agreement are reasonable.

2.02. Title. Each of the Shareholders represents and warrants that he/she is the record and beneficial owner of the shares referred to in Article 1 above and that he has not sold, transferred, pledged or otherwise encumbered any of those shares or his interest in those shares.

2.03. Indemnity. Each Shareholder agrees to indemnify and hold the Corporation and the other Shareholders harmless from and against any and all liabilities, costs or expenses, including reasonable attorneys' fees, resulting from or arising out of any sale, transfer or other disposition of his shares otherwise than in accordance with the terms and provisions of this Agreement.

## ARTICLE 3
## DISTRIBUTIONS

3.01. Determination of Net Income/Net Profit and Loss. The net profits or net losses of the Corporation for each fiscal year will be determined on a cash /accrual basis in accordance with generally accepted principles of accounting. Each Shareholder will share in the profits and losses in proportionate to his percentage of shares of the common stock of the Corporation.

3.02. Regular Distributions of Net Income. Subject to any retained earnings and to the statutory requirements related to corporate distributions, the net income of the Corporation will be distributed as authorized by the Board of Directors to the Shareholders in proportion to the number of shares of the Corporation owned by each Shareholder.

## ARTICLE 4
## LEGEND ON SHARE CERTIFICATES

4.01. Legend on Share Certificates. Each share certificate, whether presently owned or subsequently acquired, shall be subject to the following condition, as if it was printed on each share certificate:

> "The securities evidenced by this certificate may not be sold, transferred, assigned, pledged, hypothecated or otherwise disposed of except in accordance with, and are subject to, transfer upon certain events described in a shareholder/buy-sell agreement, dated October ____, 2013, between the issuer and the registered holder hereof, a copy of which agreement is on file at the principal office of the issuer. Any attempted transfer that would violate these limitations is void."

4.02. Deposit of Shares with Corporation. Concurrently with the execution of this Agreement, each Shareholder shall deposit his share certificates with the Secretary of the Corporation. Despite the endorsement and deposit, each Shareholder shall have the right to vote shares held of record and to receive dividends paid on them until the shares are sold or transferred, as provided in this Agreement.

## ARTICLE 5
## RESTRICTIONS ON TRANSFER

5.01. Restrictions on Transfer. To accomplish the purposes of this Agreement, any transfer, sale, assignment, hypothecation, encumbrance, or alienation of any of the shares of the Corporation, other than according to the terms of this Agreement is void, and transfers no right, title, or interest in or to those shares to the purported transferee, buyer, assignee, pledgee, or encumbrance holder. Each Shareholder shall have the right to vote shares held of record and to receive dividends paid on them until the shares are sold or transferred in accordance with this Agreement.

5.02. Transfers Are Void. A Shareholder may not, at any time, transfer all or any part of his shares to a spouse, ancestors or lineal descendants (whether natural or adopted) or the spouses of any of such persons. A Shareholder may, however, transfer the right to receive the economic interest in the Corporation, such as dividend or commissions, to other persons.

## ARTICLE 6
## RIGHT OF FIRST REFUSAL
## TRANSFER OF SHARES: VOLUNTARY OR OTHERWISE
## AND MANDATORY BUY-SELL PROVISIONS

6.01. No Right to Assign. Other than assignment or transfer to the Shareholder/Shareholders' Trust/Family Trust, this Agreement, or the rights hereunder, may not be assigned without prior written consent of all Shareholders. While this Agreement is in effect, no Shareholder shall have any right to assign, encumber, or dispose of his shares except as provided herein. The existence of the Agreement, however, shall not affect each Shareholder's right to vote his share and receive any dividends thereon until such time as he/she, or his/her personal representative, has received the purchase price for such share, as provided herein.

6.02. Right of First Refusal. The Corporation and Shareholders shall have the Right of First Refusal in any transfer of the shares of the common stock of the Corporation, whether voluntary or involuntary (death, disability, forced buyout, etc.). No Shareholder shall sell, transfer, pledge, encumber, hypothecate, or in any way dispose of any of his/her shares or any right or interest in them without obtaining prior written consent of the Corporation and of all other Shareholders, unless all of the following procedure set forth in this Section 6.02 of this Agreement is complied with as follows:

Shareholder's Duties:

(a) If a Shareholder desires to transfer any portion or all of his shares in the common stock of the Corporation, Shareholder shall first deliver to the Secretary of the

Corporation a written notice of his intention to transfer his shares (hereafter "Offer Notice"). The Offer Notice shall be in accordance with Section 16.02 of this Agreement regarding notices;

(b) The Offer Notice shall be accompanied by an executed counterpart of any document of transfer, which must include the **name and address of the proposed transferee** and specify the **number of shares to be transferred**, the **price per share, and the terms of payment** (hereafter **"Counterpart")**.

Corporation's Duties:

(c) Promptly on receipt of the notice, the Secretary of the Corporation shall forward a copy of the Offer Notice and the executed Counterpart to each member of the Corporation's Board of Directors, and within 15 days thereafter, a meeting of the Board of Directors shall be duly called, noticed, and held to consider the proposed transfer. For **45 days following notice to the Corporation** (45 days from the date the Offer Notice and Counterpart is served on the Secretary of the Corporation), Corporation shall have the option, but not the obligation, to purchase all or any part of the shares at the price and on the terms stated in the Offer Notice and Counterpart, or at a price determined in the same manner as is provided in Article 10 of this Agreement, **whichever price is lower**.

The Corporation's right to exercise the option and to purchase the stock is subject to the restrictions governing a corporation's right to purchase its own stock in *California Corporations Code* sections 500-501 and to any other pertinent governmental restrictions that are now, or may become, effective.

(d) **If the Corporation exercises the option** within the 45-day period, the Secretary of the Corporation **shall give written notice of that fact to the offering Shareholder**. The Corporation shall pay the purchase price in the manner provided in Section 8.02 of this Agreement.

(e) **If the Corporation DOES NOT exercise the option** within the 45-day period, the Secretary of the Corporation shall immediately forward a copy of the Offer Notice and the executed Counterpart to Shareholders (in accordance with Section 16.02 re: Notice) to the remaining Shareholders, who shall have the option, but not the obligation, to purchase any shares not purchased by the Corporation, at the price and on the terms stated in the Offer Notice and Counterpart, or at a price determined in the same manner as is provided in Article 10 of this Agreement, **whichever price is lower**.

Remaining Shareholders' Duties:

(f) Within 20 days after giving the notice, any Shareholder desiring to acquire any part or all of the shares offered shall deliver to the Secretary of the Corporation **a written election to purchase the shares or a specified number of them**. If the

total number of shares specified in the elections exceeds the number of available shares, each Shareholder shall have priority, up to the number of shares specified in his or her notice of election to purchase, to purchase the available shares in the same proportion that the number of the Corporation's shares that he or she holds bears to the total number of the Corporation's shares held by all Shareholders electing to purchase. The shares not purchased on such a priority basis shall be allocated in one or more successive allocations to those Shareholders electing to purchase more than the number of shares to which they have a priority right, up to the number of shares specified in their respective notices, in the proportion that the number of shares held by each of them bears to the number of shares held by all of them.

Corporation's further Duties:

(g) Within 10 days after the mailing of the notice to the Shareholders, the Secretary of the Corporation shall notify each Shareholder of the number of shares as to which his or her election was effective, and the Shareholder shall pay the purchase price in the manner provided in Article 9, and Section 8.02 of this Agreement.

(h) If the Corporation and the remaining Shareholders do not purchase all the shares set forth in the Offer Notice and Counterpart, all the shares may be transferred to the proposed transferee on the terms specified in the notice, at any time within 3 days after expiration of the Shareholders' option. The transferee will hold the shares subject to the provisions of this Agreement. No transfer of the shares shall be made prior to the end of 95 days after service of the Offer Notice and Counterpart by the offering Shareholder upon the Secretary of the Corporation, nor shall any change in the terms of transfer be permitted without a new notice of intention to transfer and compliance with the requirements of this Article 7 of the Agreement.

**Any transfer by any shareholder in violation of this paragraph shall be null and void and of no effect.**

6.03. Voluntary Disassociation. In the event a Shareholder no longer desires to be a Shareholder in the Corporation, the Shareholder must provide the Corporation with the Offer Notice. The Corporation and the remaining Shareholders shall have the option, but not the obligation, to purchase that Shareholder's shares of common stock of the Corporation using the procedures set forth in Section 6.02, at Fair Market Value as set forth in Article 9 of this Agreement, with payment terms as set forth in Section 8.02 of this Agreement. Since the offering Shareholder does not have an intended transferee other than Corporation and the Shareholders, the offering Shareholder does not need to provide the Corporation with a Counterpart.

6.04. Sale of Shares by Majority. In the event that the Majority shareholders want to sell their shares to a prospective Buyer, such sale shall include the sale of the shares of the minority shareholder, on the same terms and price as offered for the shares of Majority Shareholders.

//

## ARTICLE 7
## OBLIGATIONS OF TRANSFEREE

7.01. Obligations of Transferee. Unless this Agreement expressly provides otherwise, each transferee, or any subsequent transferee, of shares in the Corporation, or any interest in such shares, shall hold the shares or interest in the shares subject to all provisions of this Agreement and shall make no further transfers except as provided in this Agreement. Transfer of the shares shall not be entered on the books of the Corporation until an amended copy of this Agreement has been executed by the prospective transferee. Failure or refusal to sign such an amended copy of this Agreement shall not relieve any transferee from any obligations under this Agreement.

## ARTICLE 8
## PURCHASE ON OTHER EVENTS

8.01. Upon Death or Disability of a Shareholder. Upon the death or disability of a Shareholder, that Shareholder's estate/representative shall sell, and the Corporation shall purchase, all of the shares owned by the Shareholder at the time of the death or disability, for the price and upon the terms provided in Article 8 of this Agreement. **The estate or representative of deceased/disabled shareholder would only be entitled to the economic interest in the shares, i.e., cash value of the shares**. Each Shareholder's spouse agrees that, in the event of death or disability, the spouse would only be entitled to receive the cash value of the Shareholder's shares, as determined by Article 9 of this Agreement.

8.02. Upon Divorce. Each Shareholder and/or each Shareholder's spouse agrees that in the event of divorce, that Shareholder's spouse is only entitled to economic interest in the Corporation. This means that the Shareholder's spouse does not have the right to vote, or participate in any affairs of the Corporation. The value of the shares of each Shareholder is determined per Article 9 of this Agreement. Terms of payment of the spouse's interest are set forth in this Article 8, Sections 8.03 and 8.04.

8.03. Payment. The Corporation and other Shareholders shall have the right to pay for the shares as follows: forty percent (40%) of the value of the shares in cash; the balance in equal quarterly installments evidenced by a promissory note, the note payable twelve (12) months from the date of exercise of the option, with interest at the rate of prime plus six (6 %) per annum payable at its maturity. The promissory note shall include and be subject to the provisions of Section 8.05 hereof.

8.04. Payment in the event of Death or Disability or Divorce. In the event of death, disability, or divorce, however, if the Shareholders have purchased insurance, the insurance proceeds shall be used to pay for the purchase of the shares or spouse's interest in a divorce proceeding.

8.05. Promissory Note. Each promissory note given under this Articles 8 shall include and be subject to the following provisions:

(a) Each note shall provide that, if the payments are not received within 10 days of the due date under the note, such non-payment should be a Curable Default. In that event, the note holder shall provide the obligee under the note with a written

notice, giving the obligee 10 days to cure the default. If the Curable Default is not cured within ten (10) days, that shall be deemed as Non-Curable Default. In the event of a Non-Curable Default, at the election of the holder, all notes of the series shall, without further notice, immediately become due and payable;

(b) Each note shall provide that its maker agrees to pay the reasonable expenses of collection in the event of default, including reasonable attorneys' fees;

(c) Each note shall provide for prepayment, in whole or in part, at any time without penalty but only with the consent of the holder. Such right of prepayment shall apply to those notes last due in the series in inverse order; and,

(d) Each note shall be secured in a manner acceptable to all parties at the time the notes are given.

## ARTICLE 9
## VALUATION

9.01. Valuation. In the event of death, disability, divorce, voluntary transfer, or any other event triggering a buyout under this Agreement or under the mandatory provisions of the *California Corporations Code*, the Fair Market Value of the Corporation and the issued shares shall be determined as follows:

The Board of Directors shall select an accredited financial institution which will appraise and determine the Fair Market Value.

## ARTICLE 10
## INSURANCE

10.01. Insurance. The Corporation shall have the option, but not obligation, to purchase insurance on the lives of the Shareholders. This section shall only become operative after a unanimous decision, in writing, to purchase insurance on the lives of the Shareholders:

In the event that the Corporation elects to purchase insurance on lives of the shareholders, the Corporation shall apply for, and be the owner and primary beneficiary of, all life insurance policies subject to this Agreement and shall pay the premiums on all such policies as they fall due. The Corporation may apply policy dividends to the payment of premiums. Proof of premium payments shall be furnished by the Corporation whenever a Shareholder requests such proof. If the Corporation fails to pay a premium within ten (10) days after it falls due, the insured shall have the right to pay such premium and to be reimbursed therefore by the Corporation.

So long as this Agreement remains in effect, it is expressly agreed that the Corporation shall exercise none of the rights or privileges granted to it as owner by the terms of the policies (such as the right to borrow upon, surrender for cash, change the beneficiary, or assign a policy) except with the written consent of all the Shareholders.

//

Any addition of policies or other changes affecting the insurance under this Agreement shall be recorded in Schedule "C" attached hereto, and at all times, the provisions of this Agreement shall extend to all policies recorded in said Schedule "C".

Procedure. The procedure upon the death of a Shareholder shall be as follows:

(a) The Corporation, as beneficiary, shall promptly file claims to collect in cash the death proceeds of all the policies on the deceased Shareholder's life which are subject to this Agreement;

(b) Upon the collection of such proceeds and the qualification of a personal representative for the deceased Shareholder, the Corporation shall pay over to the personal representative an amount equal to the full proceeds collected, in part or in full payment for the deceased Shareholder's shares;

(c) If the death proceeds of all the policies on the deceased Shareholder's life are less than the total purchase price for his interest as provided herein, the Corporation shall either pay the balance forthwith in cash or, in lieu of such cash payment, shall execute and deliver to the personal representative a series of six (6) promissory notes of equal amount (except that the note last falling due may be for a lesser remaining balance), payable to his order. The first note shall be payable four (4) months after its execution date, and the remaining notes shall be payable at quarterly thereafter, with interest at the rate of ten (10%) per annum, the interest on each note shall be payable at its maturity. Each promissory note shall include and be subject to the provisions of Section 9 hereof; and,

(d) The personal representative of the deceased Shareholder shall promptly execute (and shall cause any other party or parties whose signatures may be necessary to transfer a complete title to the deceased Shareholder's shares to execute) and, concurrently with receipt of the full purchase price for the deceased Shareholder's shares (either in cash, or in cash and notes, as provided above), shall deliver all instruments necessary to effectuate the transfer of the deceased Shareholder's shares to the Corporation. Transfer of such shares shall be made free and clear of all taxes, debts, claims or other encumbrances whatsoever, except for that represented by any promissory notes given under Article 10, Paragraph (c) above.

## ARTICLE 11
## SHAREHOLDER WILLS AND REVOCABLE TRUSTS

11.01. Shareholder Wills and Revocable Trusts. Each Shareholder agrees to include in his/her will or revocable trust a direction and authorization to his or her executor or trustee to comply with the provisions of this Agreement and to sell his or her shares in accordance with this Agreement. However, the failure of any Shareholder to do so shall not affect the validity or enforceability of this Agreement.

//

## ARTICLE 12
## MANAGEMENT AND CONTROL

12.01. Board of Directors. The Corporation shall have four (4) directors, all of which shall be Shareholders of the Corporation. Each Shareholder named as a director shall remain a director so long as he/she is a Shareholder, and there is no violation of the terms of this Agreement. Any act or decision made by the Directors or the Shareholders may be evidenced in writing, executed by the requisite number of Shareholders as provided in this Agreement, or otherwise, as the Shareholders agree in writing.

During the term of this Agreement, the Directors will, when appropriate:

(a) Meet at least once annually to elect the Board of Directors and officers of the Corporation;

(b) Cause tax returns and reports to be sent to the Shareholders not later than 120 days after the close of the calendar/fiscal year, unless this requirement is expressly waived in the Bylaws of the Corporation;

(c) After filing the Corporation's original Articles of Incorporation, file any informational certificates that may be required by the California Secretary of State;

(d) Cause the Corporation to maintain the books, records, and other documents required by the *California Corporations Code*;

(e) Use best efforts to make sure the business of the Corporation is conducted in accordance with sound business practices;

(f) Within three months from execution of this Agreement, and thereafter at least once a year, meet and determine the salaries of the employees and officers of the Corporation.

12.02. President and Managing Officer. The President of the Corporation will be ___________________, who will be the Corporation's managing officer. The President will control the day-to-day operations of the business and affairs of the Corporation. At each annual meeting, the Shareholders will elect the officers of the Corporation.

12.03. Approval of All Shareholders. Notwithstanding the provisions in Sections 12.01 and 12.02 of this Agreement, the written consent of the all Shareholders holding 75% or more shares in the Corporation is required to approve the following actions:

(a) Mergers or consolidations involving the Corporation;

(b) Amendment or repeal of the Articles of Incorporation of the Corporation;

(c) Issuance of shares of any class or other rights relating to the issuance of shares of the Corporation;

(d) Transfer of all, or substantially all, the assets of the Corporation;

(e) Amendment of this Agreement;

(f) Acceptance of a new shareholder;

(g) Incurring debts or liabilities in the aggregate amount of $50,000 annually; and

(h) Voluntary Dissolution of the Corporation. Voluntary dissolution of the Corporation shall require the written consent of 50% of Shareholders.

12.04. Shareholders' Meetings. The Shareholders shall meet once annually. Although there will be no required Shareholders meetings except as the annual Shareholders meeting for taking any action specified in Sections 12.02 and 12.03, a special meeting may be called at any time by any Shareholder. The meetings can be conducted over the telephone and consents or approvals bearing the Shareholders' signatures may be obtained by facsimile or electronic mail.

## ARTICLE 13
## TERMINATION

13.01. Termination of Agreement. This Agreement shall terminate on:

(a) The written agreement of all parties;

(b) The dissolution, bankruptcy, or insolvency of the Corporation; or

(c) At such time as only one Shareholder remains.

## ARTICLE 14
## ARBITRATION

14.01. Arbitration. Any claim or controversy arising out of or relating to this Agreement, or arising out of or relating to the Corporation, or the rights or obligations of the Shareholders as shareholders, directors, officers, or employees of the Corporation will be determined by binding arbitration before a single arbitrator, at JAMS, AAA, or Judicate West, in Los Angeles County, California, according to their rules in effect at the time. Each party involved in an arbitration proceeding in accordance with this section will pay its own attorneys' fees, costs and expenses. The cost of conducting the arbitration proceeding itself, including the arbitrator's fees, will be borne by each party to it in proportion to the number of shares of the Corporation owned prior to the commencement of the proceeding.

//

//

## ARTICLE 15
## AMENDMENT

15.01. Amendment of Agreement. This Agreement may be amended only by written consent of all parties to the Agreement.

## ARTICLE 16
## MISCELLANEOUS PROVISIONS

16.01. Necessary Acts. All parties to this Agreement will perform any acts, including executing any documents that may be reasonably necessary to fully carry out the provisions and intent of this Agreement.

16.02. Notices. All notices, demands, requests, or other communications required or permitted by this Agreement shall be in writing and shall be deemed duly served when personally delivered to the party or to an officer or agent of the party, or when deposited in the United States mail, first-class postage prepaid, addressed to the Corporation at [address of Corporation's principal office], or to a Shareholder at the address appearing for him or her on the books and records of the Corporation, or at any other address the party may designate by written notice to the others.

16.03. Remedies. The parties will have all the remedies available to them for breach of this Agreement by law or in equity. The parties further agree that in addition to all other remedies available at law or in equity, the parties will be entitled to specific performance of the obligations of each party to this Agreement and immediate injunctive relief. The parties also agree that, if an action is brought in equity to enforce a party's obligations, no party will argue, as a defense, that there is an adequate remedy at law.

16.04. Attorneys' Fees. In the event of any litigation concerning this Agreement between the parties to this Agreement, or the parties to this Agreement and the estate of any deceased Shareholder, the prevailing party shall be entitled to, in addition to any other relief that may be granted, reasonable attorneys' fees.

16.05. Binding on Successors and Assigns. This Agreement will be binding on the parties to the Agreement and on each of their heirs, executors, administrators, successors, and assigns.

16.06. Severability. If any provision herein is unenforceable or invalid for any reason, the remaining provisions shall be unaffected by such a holding.

16.07. Governing Law. This Agreement shall be construed according to and governed by the laws of the State of California.

16.08. Entire Agreement. This instrument, and the referenced and attached Exhibits herein, constitutes the entire Shareholder Agreement of the Corporation and correctly sets forth the rights, duties, and obligations of each Shareholder and of each Shareholder to the other. Any prior agreements, promises, negotiations, or representations concerning the Agreement's subject matter not expressly set forth in this Agreement are of no force or effect.

16.09. <u>Agreement Available for Inspection.</u> An original copy of this Agreement duly executed by each of the Shareholders shall be delivered to the Secretary of the Corporation and maintained by the Secretary at the principal office of the Corporation, and shall be made available for inspection by any person requesting to see it.

16.10. <u>General Interpretation</u>. The terms of this Agreement have been negotiated by the parties hereto and the language used in this Agreement shall be deemed to be the language chosen by the parties hereto to express their mutual intent. This Agreement shall be construed without regard to any presumption or rule requiring construction (i) against the party causing all or any part of such instrument to be drafted or (ii) in favor of the party receiving a particular benefit under the Agreement. No rule of strict construction will be applied against any party hereto.

16.11. <u>Third Parties: No Interest</u>. Nothing in this Agreement (whether express or implied) is intended to or shall (i) confer any rights or remedies under or by reason of this Agreement on any persons other than the parties hereto and their respective successors and assigns, (ii) relieve or discharge the obligation or liability of any third person to any party hereto, or (iii) give any third person any right of subrogation or action against any party to this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement on October ___, 2013, and agree that the effective date shall be October ___, 2013.

Shareholders:

____________________________
Benjamin Pouladian

____________________________
Babak Sinai

____________________________
Siamak Sinai

____________________________
Saman Sinai

DECO ENTERPRISES, INC.

By: ____________________________

Its: President

parties hereto to express their mutual intent. This Agreement shall be construed without regard to any presumption or rule requiring construction (i) against the party causing all or any part of such instrument to be drafted or (ii) in favor of the party receiving a particular benefit under the Agreement. No rule of strict construction will be applied against any party hereto.

16.11. Third Parties: No Interest. Nothing in this Agreement (whether express or implied) is intended to or shall (i) confer any rights or remedies under or by reason of this Agreement on any persons other than the parties hereto and their respective successors and assigns, (ii) relieve or discharge the obligation or liability of any third person to any party hereto, or (iii) give any third person any right of subrogation or action against any party to this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement on October ___, 2013, and agree that the effective date shall be October 1, 2013.

Shareholders:

Benjamin Pouladian

Babak Sinai

Siamak Sinai

Saman Sinai

DECO ENTERPRISES, INC.

By: ______________

Its: President Benjamin Pouladian

**PROOF OF SERVICE**

**Pouladian v. Deco Enterprises, et al.**

**Los Angeles Superior Court**

**Case No. 19STCV44475**

I am employed in the county of Orange, State of California at **MOUSAVI & LEE, LLP.** I am over the age of 18 and not a party to the within action; my business address is 19200 Von Karman Avenue, Suite 940, Irvine, CA 92612.

On January 21, 2020 I served the foregoing document(s) described as: **CROSS-COMPLAINT FOR: 1. BREACH OF FIDUCIARY DUTY; 2. CONSTRUCTIVE FRAUD; 3. EMBEZZLEMENT/CONVERSION; 4. BREACH OF CONTRACT; 5. REACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; 6. FRAUD; 7. ABUSE OF CONTROL AND CORPORATE WASTE; 8. UNJUST ENRICHMENT; AND 9. DECLARATORY RELIEF** and **SUMMONS – CROSS-COMPLAINT** on the following interested parties in this action:

John R. Yates, Esq.
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, CA 91436

Telephone: (818) 281-5891
Fax: (818) 561-3925
jyates@yateslitigation.com

*Attorney for Plaintiff Benjamin Pouladian*

XX **BY MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons listed above and (1) deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid, or (2) placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY ELECTRONIC SERVICE VIA ONELEGAL EFILING SERVICE:** I served the above-entitled document(s) through the OneLegal E-Filing Service at www.onelegal.com addressed to all parties appearing on the electronic service list for the above-entitled case. A copy of the One Legal Service Receipt Page/Confirmation will be maintained with the original document(s) in this office.

**BY OVERNIGHT DELIVERY:** I enclosed the documents in a sealed envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses indicated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

**BY PERSONAL SERVICE:** I personally delivered the documents to the persons at the addresses indicated above. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

**BY EMAIL TRANSMISSION:** I caused the aforementioned document(s) to be served via electronic mail to the electronic addressee(s) listed on the attached mailing list. Such document was transmitted successfully from my e-mail address to the indicated addressee(s).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 21, 2020 at Irvine, California.

Cheyenne Villanueva, Declarant

Electronically FILED by Superior Court of California, County of Los Angeles on 01/21/2020 05:01 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Tang,Deputy Clerk

Amy A. Mousavi, Esq., SBN: 228388
MOUSAVI & LEE, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9667
Fax: (949) 622-8985
amousavi@mousavilee.com

*Attorneys for Defendants Deco Enterprises, Inc. and Craig Allen*

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

| | |
|---|---|
| BENJAMIN POULADIAN<br><br>Plaintiff,<br><br>v.<br><br>DECO ENTERPRISES; CRAIG ALLEN; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 19STCV44475<br>Dept.: 078<br>Assigned For All Purposes To: Hon. Judge Robert S. Draper<br><br>**DEFENDANTS DECO ENTERPRISES, INC. AND CRAIG ALLEN'S ANSWER TO FIRST AMENDED COMPLAINT**<br><br>Complaint Filed: 12/10/2019<br>Trial Date: Not Set |

//

//

//

**I.**

**GENERAL DENIAL**

Pursuant to *California Code of Civil Procedure* §431.30(d), Defendants DECO ENTERPRISES, INC. and CRAIG ALLEN (hereafter "DEFENDANTS"), file this Answer and General Denial to the First Amended Complaint of Plaintiff BENJAMIN POULADIN (hereafter "PLAINTIFF") in this action filed on January 10, 2020 (hereafter "FIRST AMENDED COMPLAINT"). DEFENDANTS deny, generally and specifically, each and every allegation contained in the FIRST AMENDED COMPLAINT, and deny that PLAINTIFF has suffered or will sustain injuries or damages in the sum or sums alleged, or at all.

**II.**

**AFFIRMATIVE DEFENSES**

For a further answer to the FIRST AMENDED COMPLAINT, and by way of affirmative defenses, DEFENDANTS allege as follows:

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim)**

1. The FIRST AMENDED COMPLAINT and each cause of action alleged therein, fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

**(Offset)**

2. If any of the causes of action alleged are found to have any value at all, PLAINTIFF's claims are subject to an offset.

**THIRD AFFIRMATIVE DEFENSE**

**(Lack of Standing)**

3. PLAINTIFF has no standing to assert the claims set forth in the FIRST AMENDED COMPLAINT.

**FOURTH AFFIRMATIVE DEFENSE**

**(Statute of Limitations)**

4. The claims set forth in the FIRST AMENDED COMPLAINT are barred by the

applicable statutes of limitation, including *CCP* §§ 335, 337, 338, 339 and 344.

**FIFTH AFFIRMATIVE DEFENSE**

**(Laches)**

5. The claims set forth in the FIRST AMENDED COMPLAINT are barred by laches.

**SIXTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate)**

6. DEFENDANTS are informed and believe, and upon that ground, allege that each purported cause of action of the FIRST AMENDED COMPLAINT is barred by reason of PLAINTIFF's failure to mitigate their alleged injuries, damages, and losses.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Waiver)**

7. DEFENDANTS are informed and believe, and upon that ground, allege that each purported cause of action in the FIRST AMENDED COMPLAINT is barred by the equitable doctrine of waiver.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Estoppel)**

8. DEFENDANTS are informed and believe, and upon that ground, allege that each purported cause of action in the FIRST AMENDED COMPLAINT is barred by the equitable doctrine of estoppel.

**NINTH AFFIRMATIVE DEFENSE**

**(Contribution/Apportionment)**

9. DEFENDANTS are entitled to contribution and/or apportionment of liability, in accordance with PLAINTIFF and other parties' fault as determined at trial.

**TENTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

10. DEFENDANTS are informed and believe, and upon that ground, alleges that, to the extent the PLAINTIFF seeks equitable relief, PLAINTIFF's inequitable conduct constitutes unclean hands and bars granting any relief.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(No damages)**

11. PLAINTIFF has not been injured nor have incurred any damages by DEFENDANTS.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Consent)**

12. PLAINTIFF's claims are barred by the doctrine of consent.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Performance Excused)**

13. DEFENDANTS are informed and believe, and thereon allege, that DEFENDANTS' performance is excused.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Lack of Authority)**

14. PLAINTIFF lacks authority to bring this lawsuit.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Failure of Consideration/Failure of Condition Precedent)**

15. PLAINTIFF's claims fail due to lack of consideration and a failure to meet a condition precedent.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Statute of Frauds)**

16. PLAINTIFF's claims fail due to the statute of frauds.

WHEREFORE, DEFENDANTS pray as follows:

1. That PLAINTIFF take nothing by way of his First Amended Complaint and that the First Amended Complaint be dismissed;

2. That DEFENDANTS be awarded attorneys fees and the costs of suit herein incurred; and

3. For such other and further relief as the Court may deem just and proper.

Date: January 21, 2020

Respectfully submitted,

MOUSAVI & LEE, LLP

By: /s/ Amy A. Mousavi
Amy A. Mousavi, Esq.
Email: amousavi@mousavilee.com
*Attorneys for Defendant Deco Enterprises, Inc. and Craig Allen*

# PROOF OF SERVICE

**Pouladian v. Deco Enterprises, et al.**

**Los Angeles Superior Court**

**Case No. 19STCV44475**

I am employed in the county of Orange, State of California at **MOUSAVI & LEE, LLP.** I am over the age of 18 and not a party to the within action; my business address is 19200 Von Karman Avenue, Suite 940, Irvine, CA 92612.

On January 21, 2020 I served the foregoing document(s) described as:

**DEFENDANTS DECO ENTERPRISES, INC. AND CRAIG ALLEN'S ANSWER TO FIRST AMENDED COMPLAINT**on the following interested parties in this action:

| | |
|---|---|
| John R. Yates, Esq.<br>YATES LITIGATION<br>16000 Ventura Boulevard<br>Tenth Floor, Suite 1000<br>Encino, CA 91436<br><br>Telephone: (818) 381-5891<br>Fax: (818) 561-3925<br>jyates@yateslitigation.com | *Attorney for Plaintiff Benjamin Pouladian* |

XX **BY MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons listed above and (1) deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid, or (2) placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY ELECTRONIC SERVICE VIA ONELEGAL EFILING SERVICE:** I served the above-entitled document(s) through the OneLegal E-Filing Service at ~~www.onelegal.com~~ addressed to all parties appearing on the electronic service list for the above-entitled case. A copy of the One Legal Service Receipt Page/Confirmation will be maintained with the original document(s) in this office.

**BY OVERNIGHT DELIVERY:** I enclosed the documents in a sealed envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses indicated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

**BY PERSONAL SERVICE:** I personally delivered the documents to the persons at the addresses indicated above. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a

receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

**BY EMAIL TRANSMISSION:** I caused the aforementioned document(s) to be served via electronic mail to the electronic addressee(s) listed on the attached mailing list. Such document was transmitted successfully from my e-mail address to the indicated addressee(s).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 21, 2020 at Irvine, California.

Cheyenne Villanueva, Declarant

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Fax: (818) 561-3925
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff Benjamin Pouladian
And Cross-Defendants Benjamin Pouladian
And Edith Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

Benjamin Pouladian,

Plaintiff,

vs.

Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive

Defendants.

DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,

Cross-Complainants,

v.

BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,

Cross-Defendants.

**CASE NO.: 19STCV44475**

HON. ROBERT S. DRAPER – DEPARTMENT 78

UNLIMITED JURISDICTION

**Ex Parte Application of Plaintiff Benjamin Pouladian for Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding;**

**Memorandum of Points and Authorities;**

**Declarations of John Yates and Benjamin Pouladian Filed Concurrently.**

[C.C.P. §§1297.91 *et seq.*, 1297.171]

Date: January 31, 2020
Time: 8:30 a.m.
Place: Department 78

**ACTION FILED:** December 10, 2019



Yates Litigation

Yates Litigation

## I.

## APPLICATION

This Application seeks an Order from this Court confirming the interim preliminary injunction awarded against Deco Enterprises, Inc. in the JAMS Arbitration proceeding *Benjamin Pouladian v. Deco Enterprises, Inc., Babak Sinai, Siamak Sinai and Saman Sinai,* JAMS Reference No. 1210037093.

### A. Identification of Attorneys and Parties

Plaintiff and cross-defendant in this action, and Claimant in the JAMS Arbitration, Benjamin Pouladian, are represented by John Yates, Yates Litigation, 16000 Ventura Boulevard, Suite 1000, Tenth Floor, Encino, California 91436, (818) 381-5891, email: jyates@yateslitigation.com. Edith Pouladian, a cross-defendant in this action but not a party to the arbitration, is also represented by John Yates.

Defendants or cross-defendants in this action, namely Deco Enterprises, Inc., ABS Capitol, LLC, Craig Allen, and Babak Sinai are represented by Amy A. Mousavi, Mousavi & Lee, LLP and Thomas A. Pistone, Pistone Law Group, LLP, who have the same address: 19200 Von Karman Avenue, Suite 940, Irvine, California 92612. Ms. Mousavi's telephone number and email address are (949) 864-9667 and amousavi@mousavilee.com. Mr. Pistone's telephone number and email address are (949) 864-9660 and tpistone@pistonelawgroup.com. In the arbitration proceeding, Ms. Mousavi represents Deco Industries, Inc., only, while Mr. Pistone represents Babak Sinai, Siamak Sinai, and Saman Sinai. In summary, all defendants, cross-complainants and respondents are represented by either Mr. Pistone or by Ms. Mousavi.

### B. Previous Ex Parte Applications

No previous ex parte applications have been made in this action by any party to the action or to the arbitration proceeding.

### C. Affirmative Factual Showing

As set forth in the Declarations of John Yates and Benjamin Pouladian filed in support of this Application, the preliminary injunction is only enforceable if this Court confirms the order as its own,, the earliest hearing date available in Department 78 for a motion on regular notice is June 9,

2020, and Mr. Allen, the CEO of Deco Enterprises, has already advised Mr. Pouladian that Deco has no plans to abide by the injunction and treat Mr. Pouladian as a 30% shareholder of Deco unless and until the injunction is made enforceable by this Court's confirmation of it.

## II.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. Brief Statement of Facts

Deco Enterprises, Inc. ("Deco") is a California corporation formed on March 16, 2005. Share ownership since inception has been 30% for Benjamin Pouladian, 30% for Saman Sinai, and 20% each for Babak Sinai and Siamak Sinai. Pouladian was President of Deco since the company was formed, until his resignation from the office in August 2019.

Deco manufactures and sells commercial lighting fixtures. Currently, Deco's gross receipts are $35,000,000 to $40,000,000 annually, its accounts receivable are approximately $3,000,000, and it holds inventory worth approximately $10,000,000. The Deco name is widely known among consumers of its products, which include many large corporations such as Rexel, CED and Graybar. The company currently employs approximately 50 persons.

Deco is a valuable company, but in the last 12 to 18 months Deco was compelled to take on more debt in order to sustain its ability to pay current obligations when due. Deco's primary lender, Siena Lending Group, LLC ("Siena"), required additional collateral to continue factoring Deco's receivables. Notwithstanding Siena's credit facility, Pouladian believes based on his knowledge of the financial condition of Deco through the date of his resignation that the company will need to be recapitalized in order to sustain operations over the long term.

### A. The Buy-Sell Agreement

All four shareholders and Deco entered into a Buy-Sell Agreement ("the Agreement") on October 1, 2013, which is attached the Pouladian Declaration. As pertinent here, for a recapitalization event of the kind that Deco will likely need in the near future, the Agreement provides that such must be approved by 75% of the shares of Deco. In practice that means that both Benjamin Pouladian and Saman Sinai, the two 30% shareholders, would need to approve to meet the threshold set by the Agreement.



Yates Litigation

**B. Deco's Claim That Pouladian Was No Longer A Shareholder**

Prior to the commencement of arbitration by Pouladian, Deco's attorney Amy Mousavi advised that Pouladian would have no input on any recapitalization event by Deco because he was no longer a shareholder in the company. Ms. Mousavi continued to take that position after arbitration was commenced.

In order to preserve his right to have a say so regarding any recapitalization event involving Deco, Pouladian commenced an arbitration through JAMS and elected an interim Emergency Arbitration Proceeding under JAMS Rule 2.0. JAMS duly appointed an emergency arbitrator, attorney Hiro N. Aragaki, to preside over the interim proceeding. Pouladian filed his Motion for a Preliminary Injunction / Temporary Restraining Order on January 10, 2020, respondents' attorneys Mousavi and Pistone filed their opposition document on January 22, the matter was argued in a telephonic hearing on January 23, and the arbitrator issued his detailed findings and order on January 24. The arbitrator's first ruling was that JAMS had jurisdiction over all parties to the arbitration. On the substantive issue of the injunctive relief requested, Mr. Aragaki ordered that:

1. Claimant's request for emergency injunctive relief is GRANTED in part and DENIED in part.
2. A temporary injunction to preserve the *status quo* in shall issue in favor of Claimant, enjoining Respondent Deco from standing in the way of Claimant's exercising his right to vote as a 30% shareholder.
3. This temporary injunction shall remain in place until the earlier of: (a) a contrary determination by the Arbitrator appointed to this case; (b) a determination on the merit's of Respondents' claim that Claimant relinquished ownership of his shares and is no longer a shareholder; or (c) other good cause shown.

Claimant, Plaintiff and Cross-Defendant Pouladian submits this Application so that the Court will confirm the interim injunction as stated above to render it enforceable by Pouladian.

Pouladian's Motion, Respondents' response, and the full opinion and order by the arbitrator are attached to the Declaration of John Yates for the convenience of the Court.



Yates Litigation

**C. The Court Should Confirm the Arbitrator's Interim Injunction as the Order of the Court**

C.C.P. §1297.92 permits a judge of the Superior Court to enforce any interim measure of protection awarded by an arbitrator:

> "Any party to an arbitration governed by this title may request from the superior court enforcement of an award of an arbitral tribunal to take any interim measure of protection of an arbitral tribunal pursuant to Article 2 (commencing with Section 1297.171) of Chapter 4. Enforcement shall be granted pursuant to the law applicable to the granting of the type of interim relief requested."

C.C.P. §1297.93(b) provides that the Court may grant "[a] preliminary injunction" . . . "to conserve goods which are the subject matter of the arbitral dispute." Plainly, Pouladian's voting rights may be considered a "good" which, just as plainly, is a subject of the arbitral dispute. In fact, under California law, the right to vote shares owned in a corporation is a recognized property right or "good." Meyberg v. Superior Court, 19 Cal.2d 336, 342 – 344 (1942) (temporary restraining order prohibiting shareholders from interfering with minority shareholder's right to vote shares upheld).

C.C.P. §1297.94 authorizes the Superior Court to "give preclusive effect to any and all findings of fact of the tribunal including the probable validity of the claim which is the subject of the award for interim relief and which the arbitral tribunal has previously granted in the proceeding in question . . .."

Here arbitrator Aragaki was requested to grant a preliminary injunction under the standards set forth in C.C.P. §527(a) elucidated as set forth below by the Supreme Court in White v. Davis, 30 Cal.4th 528, 554 (2003):

> "To obtain a preliminary injunction, a plaintiff ordinarily is required to present evidence of the irreparable injury or interim harm that it will suffer if an injunction is not issued pending an adjudication of the merits. (*See City of Torrance v. Transitional Living Centers for Los Angeles, Inc.* (1982) 30 Cal.3d 516, 526 [179 Cal. Rptr. 907, 638 P.2d 1304].)
>
> Past California decisions further establish that, as a general matter, the question whether a preliminary injunction should be granted involves two interrelated factors: (1) the likelihood that the plaintiff will prevail on the merits, and (2) the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief. As explained in *IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63,



Yates Litigation

> 69-70 [196 Cal. Rptr. 715, 672 P.2d 121]: 'This court has traditionally held that trial courts should evaluate two interrelated factors when deciding whether or not to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued.' As the court in *IT Corp.* further noted: 'The ultimate goal of any test to be used in deciding whether a preliminary injunction should issue is to minimize the harm which an erroneous interim decision may cause. [Citation.]'"

As stated in the arbitrator Aragaki's opinion, Pouladian demonstrated the probability of irreparable harm and that Deco would suffer little harm if the injunction requested were granted. Mr. Aragaki also found that Pouladian was likely to prevail on the issue of whether he was still a shareholder of Deco. Accordingly, the preliminary injunction as stated in Order No. 2 and reiterated above was granted.

The Court is entitled to adopt these findings as its own under C.C.P. §1297.94, and should do so given that Deco has already notified Pouladian that it will not abide by the injunction unless it is made enforceable. It must be made enforceable to preserve the Pouladian's rights as a Deco shareholder during the pendency of the arbitration proceeding.

DATED: January 29, 2020

YATES LITIGATION

By: [signature]
JOHN R. YATES
Attorneys for Plaintiff Benjamin Pouladian
And Cross-Defendants Benjamin Pouladian and Edith Pouladian

Yates Litigation

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436.**

On January 29, 2020, I served the foregoing document described as **Ex Parte Application of Plaintiff Benjamin Pouladian for Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding;**

on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

Amy Mousavi, Esq.
Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Thomas Pistone, Esq.
Pistone Law Group LLP
19200 Von Karman Ave, Suite 940
Irvine, California 92612
Email: tpistone@pistonelawgroup.com

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 29, 2020, at Encino, California.

[signature]
John R. Yates

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Fax: (818) 561-3925
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff Benjamin Pouladian
And Cross-Defendants Benjamin Pouladian
And Edith Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

Benjamin Pouladian,

Plaintiff,

vs.

Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive

Defendants.

---

DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,

Cross-Complainants,

v.

BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,

Cross-Defendants.

---

**CASE NO.: 19STCV44475**

HON. ROBERT S. DRAPER – DEPARTMENT 78

UNLIMITED JURISDICTION

**Declaration of John Yates in Support of Ex Parte Application of Plaintiff Benjamin Pouladian for Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding, and Regarding Notice Given of Ex Parte Application**

Date: January 31, 2020
Time: 8:30 a.m.
Place: Department 78

**ACTION FILED:** December 10, 2019



Yates Litigation

I, John Yates, state that:

1. I have personal knowledge of the facts set forth herein and first-hand knowledge of same. If called upon to testify and placed under oath I could and would testify competently thereto.

2. I am counsel of record for plaintiff and cross-defendant Benjamin Pouladian in this action and Mr. Pouladian as claimant in JAMS Arbitration Case No. 1210037093. I also represent cross-defendant Edith Pouladian in this action.

3. Between them, the defendants and cross-complainants in this action and the Respondents in JAMS Arbitration Case No. 1210037093 are represented by two attorneys: Amy Mousavi, Esq. of Mousavi & Lee, LLP, and Thomas Pistone of Pistone Law Group, LLP. Ms. Mousavi and Mr. Pistone have different telephone numbers and email addresses, but the same physical office address in Irvine.

4. On January 29, 2020 at 10:20 a.m. I called Ms. Mousavi's office a spoke with her receptionist, Cheyenne, who advised that Ms. Mousavi was in a conference. I gave Cheyenne the message that I was seeking confirmation on an ex parte basis of the interim injunction awarded in the arbitration proceeding, on Friday, January 31, 2020 at 8:30 a.m. in Department 78 of the Stanley Mosk Courthouse at 111 North Hill Street in Los Angeles. Cheyenne then advised that Mr. Pistone was in the same conference that Ms. Mousavi was in, and she transferred me to Mr. Pistone's voice mail, where I left the same message that I had just left with Cheyenne for Ms. Mousavi. I anticipate that either or both Ms. Mousavi or Mr. Pistone will appear and oppose the Ex Parte Application, either personally or by telephone. I followed the messages recounted above up with an email to both counsel at 10:30 a.m. I also later confirmed the above via a telephone call from Ms. Mousavi.

5. I checked the Court's online motion reservation system for the earliest available hearing date for a noticed motion. The earliest date in Department 78 is June 9, 2020.

///

///

///

///

///

Yates Litigation

6. A copy of the full opinion and order of arbitrator Hiro N. Aragaki in JAMS Arbitration Case No. 11210037093 are attached to this declaration as Exhibit 1. A copy of the Motion I submitted on behalf of Claimant Benjamin Pouladian to obtain interim injunctive relief is attached as Exhibit 2. A copy of the response to Claimant's Motion filed by Ms. Mousavi and Mr. Pistone is attached as Exhibit 3.

I swear under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 29th day of January 2020, at Los Angeles, California.

John Yates

Yates Litigation

# EXHIBIT 1

# JAMS ARBITRATION
## CASE REFERENCE NO. 1210037093

**BENJAMIN POULADIAN**

**Claimant,**

**and**

**DECO ENTERPRISES, INC., BABAK SINAI, SIAMAK SINAI, and SAMAN SINAI,**

**Respondents.**

---

## ORDER NO. 2 RE: CLAIMANT'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

RECITALS

Claimant filed a Demand with JAMS on December 10, 2019, raising the following issues for adjudication: (1) Is Claimant Benjamin Pouladian still a shareholder of Respondent Deco Enterprises, Inc. (hereinafter "**Deco**") ; and (2) Is the Shareholder and Buy-Sell Agreement of Respondent Deco still in force and effect as to the signatories to the Buy-Sell Agreement? These claims will hereinafter be referred to as the "**Declaratory Relief Claims**." On the same day, Claimant filed a First Amended Complaint in LA Superior Court (1) alleging that Respondent Deco, Deco CFO Craig Allen, and other individuals improperly charged business expenses to several of Claimant's credit cards without reimbursing Claimant, and (2) seeking damages for breach of contract, fraud, and Labor Code violations, among others. These claims will hereinafter be referred to as the "**Credit Card Claims.**"

On December 19, Claimant filed a letter with JAMS seeking appointment of an emergency arbitrator and seeking emergency relief to maintain the *status quo*. A telephonic hearing on Claimant's request for emergency relief was held on January 9, 2020, during which time the parties discussed the possibility of submitting this dispute to mediation in lieu of proceeding with the arbitration.

Claimant eventually declined the offer to mediate and on January 10, he filed a Motion for TRO and/or Preliminary Injunction (hereinafter the "**Motion**"). On the same day, he also filed an Amended and Supplemented Claims (hereinafter the "**ASC**"), which amends the

Demand by adding all of the Credit Card Claims.[1] Respondents were ordered to respond to the Motion by January 22, which they did. (*See* Scheduling Order No. 1.)

Now, having considered the submissions, proofs, and allegations of the parties I, the undersigned Emergency Arbitrator, find as follows.

ISSUES TO BE DECIDED

There are two issues at this stage of the proceedings.

The first is whether JAMS has jurisdiction over Claimant's Demand, as modified by the ASC. Respondents argue that Claimant has waived his right to arbitrate because he initially filed his Credit Card Claims in Superior Court. The Superior Court case is still pending.

The second issue is whether Claimant is entitled to emergency relief in order to preserve the *status quo*.

DISCUSSION

Issue #1

The Shareholder Buy-Sell Agreement of Deco Enterprises, Inc. (the "**Buy-Sell Agreement**") contains a broad-form arbitration clause, to the effect that "[a]ny claim or controversy arising out of or relating to this Agreement, or arising out of or relating to the Corporation, or the rights or obligations of the Shareholders as shareholders, directors, officers, or employees of the Corporation will be determined by binding arbitration before a single arbitrator at JAMS . . . in Los Angeles County, California, according to their rules in effect at the time." (Buy-Sell Agreement § 14, attached as Exh. 1 to the Motion.) This language is broad enough to encompass not just the Declaratory Relief Claims but also the Credit Card Claims.[2] The main argument raised by Respondent for why JAMS lacks jurisdiction over these claims is that Claimant waived his right to pursue arbitration by filing the Superior Court action. (Letter dated December 20, 2019 from Amy Mousavi to John Peterson [hereinafter "**Mousavi Letter**"], at 1 ("[O]n that same day, . . . Mr. Pouladian filed a Complaint in Los Angeles Superior Court *thereby* waiving his right to arbitration [emphasis added].").)

But simply filing a lawsuit, without more, does not constitute a waiver of the right to arbitration. *Saint Agnes Medical Center v. PacifiCare of California*, 31 Cal. 4th 1187, 1200-03 (2003). "The law favors arbitration, and waiver will not be 'lightly inferred.' The party claiming the other waived the right to arbitrate 'bears a heavy burden of proof.'" (*Id.* at 1195.) "In California, whether or not litigation results in prejudice also is critical in waiver determinations." (*Id.* at 1203.)

---

[1] I note, however, that the Superior Court action is still pending and that Craig Allen was not named in the ASC.

[2] The Credit Card Claims "relate to" the Corporation, a shareholder (Claimant Pouladian), and an officer (Craig Allen).

Respondents have failed to show any prejudice resulting from Claimant's filing of the Superior Court action. The Superior Court action is still in the pleading stage, and the most that Respondents have done in connection with that action is to file an Answer on January 21, 2020. (Respondents' Response to Scheduling Order No. 1 [the "**Response**"], at 2 n.1.) In addition, during the telephone conference on January 9 Claimant's counsel represented that he filed the Credit Card Claims in Superior Court in part because he did not realize that they were covered by the arbitration agreement. This was not a calculated tactic, in other words, to vex the Respondents by filing related claims in different forums. As soon as the issue was brought to Mr. Yates' attention, he amended the Demand and asserted the Credit Card Claims in arbitration. All that is left to be done is to stay or dismiss the Superior Court action.

Respondents assert that JAMS lacks jurisdiction over this matter because they have not participated in submitting the matter to arbitration, they have not participated in any arbitrator selection procedure, and they have not agreed to the arbitrator's jurisdiction. (Response at 2.) But because the Respondents agreed arbitrate all future disputes in section 14 of the Buy-Sell Agreement, they have sufficiently consented to this arbitration. There is no further requirement for Respondents to "participate[] in submitting" the matter to an arbitrator or otherwise "agree[] to jurisdiction." (*Id.*) Rule 2 of the JAMS Comprehensive Arbitration Rules, incorporated by reference into the parties' arbitration agreement, provides that (a) JAMS may appoint an Emergency Arbitrator; (b) the Emergency Arbitrator must disclose any ground that might affect his or her ability to be impartial or independent; and (c) any challenge to the Emergency Arbitrator must be made within 24 hours of receipt of these disclosures. (Rule 2(c)(ii).) I completed my initial disclosures on December 22, 2019 (as supplemented on January 14, 2020), and none of the Respondents has so far challenged me. The Rules further provide that the Emergency Arbitrator "has the authority to rule on his or her own jurisdiction and shall resolve any disputes with respect to the request for emergency relief." (Rule 2(c)(iii).)

I therefore find that, because Claimant has not waived his right to pursue arbitration and because the parties' arbitration agreement covers all of Claimant's claims, JAMS has jurisdiction over those claims.

Issue #2

Under JAMS Rule 2, a party is entitled to emergency relief if it has "shown that immediate and irreparable loss or damage will result in the absence of emergency relief" and the arbitrator determines that the party is otherwise entitled to such relief. (Rule 2(c)(iv).)

The standard for issuing a preliminary injunction in California state court involves two factors: "The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued." (*White v. Davis*, 30 Cal. 4th 528, 554 (2003) (quotations omitted).)

These considerations will be analyzed below.

### A. Likelihood of Success

The dispute between the parties appears to have arisen due to a disagreement about whether Claimant is still a shareholder of Respondent Deco. Respondents argue that Claimant relinquished his shares via a text message on August 14, 2019 and then again via e-mail on August 16. (Mousavi Letter, Exh. A.) Claimant counters that this was not an effective relinquishment of shares (a) under to the Buy-Sell Agreement or (b) because Claimant revoked it before it was accepted by Respondents.

Article 6 of the Buy-Sell Agreement sets forth the exclusive procedures to be followed anytime a shareholder seeks to "assign, encumber, or dispose of his shares." (Buy-Sell Agreement, art. 6.01.) In particular, when a shareholder seeks to voluntarily dissociate from the Company, the following procedure is to be followed: (a) The offering shareholder must submit a written "Offer Notice" to the Corporation Secretary pursuant to article 16.02; (b) a Board of Directors meeting must be duly called, noticed, and held to consider the Offer Notice and determine whether to purchase the shares on the terms stated in the Offer Notice or at a price determined by a third party financial institution, whichever is lower; (c) the Board must provide notice to the shareholder within 45 days if it elects to purchase the shares and if not, provide notice to the remaining shareholders of their right to purchase the shares. (*Id.* arts. 16.02, 16.03.) Respondents fail to counter Claimant's allegation that the procedure set forth in Article 6 was not followed.

Even if Article 6 is inapplicable, Claimant revoked his offer to relinquish his shares by an e-mail dated November 1, 2019—a fact that Respondents do not deny. (*See* Exh. 2 to Pouladian Decl.) Neither the August 14 text nor the August 16 e-mail were binding, irrevocable obligations. An offer may be revoked at any time before it is accepted or before the other party relies to its detriment. Respondents have not alleged that they accepted Claimant's offer to relinquish prior to November 1, 2019, or that they detrimentally relied on it in some way such that it would now cause them injury if Claimant were allowed to revoke the offer.

I therefore find that Claimant is likely to prevail on his claim that he is still a voting shareholder of Respondent Deco.

### B. Immediate and Irreparable Loss or Damage

Claimant argues that emergency relief is warranted in this case because, "[b]ased on my knowledge of Deco's sales and revenues in August, it is my belief that the company will need to take substantial measures to recapitalize in 2020," either through a merger with another entity, taking on additional debt, or "the wholesale transfer of Deco's assets to a new entity to receive financing from a new investor." (Pouladian Decl. ¶ 14.) Claimant also suspects that Respondents have been contemplating taking these measures in the very near future, in part because Claimant's attorney discovered that Respondent Babak Sinai had formed a new corporation, Sinai Development Group, LLC on November 27, 2019, and because Claimant's accountant—who also serves as Deco's accountant—advised Claimant that Deco had received "a high-level term sheet from a third party." (*Id.* ¶¶ 12, 13.)

Claimant is concerned about the impact of any such recapitalization because it would "in all likelihood involve a significant change in the shareholding structure of Deco," potentially resulting in a drastic reduction of his ownership share. (*Id.* ¶¶ 14, 15.) He fears that because Respondents are taking the position that he has relinquished his shares in Deco, they are proceeding with plans to recapitalize Deco without giving him the chance to vote on proposals about Deco's future. (*Id.* ¶ 14 ("I would like to have the opportunity to consider and accept or reject any proposals made, just like any other shareholder.").)

Under Article 12 of the Buy-Sell Agreement, any merger or consolidation, issuance of shares, transfer of corporate assets, acceptance of additional members, of assumption of debts or liabilities of $100,000 or more each requires the written consent of "all Shareholders holding 75% or more shares in the Corporation." (Buy-Sell Agreement, art. 12.03.) Deco's current ownership structure is as follows:

| | |
|---|---|
| Benjamin Pouladian | 30% |
| Saman Sinai | 30% |
| Siamak Sinai | 20% |
| Babak Sinai | 20% |

The upshot is that the only way to reach the 75% threshold is for *both* Claimant and Respondent Saman Sinai to vote their shares. In the normal course, therefore, Claimant's consent is crucial in order for any recapitalization to happen. Claimant fears that by denying that he is a shareholder, Respondents are attempting to prevent him from exercising his right to vote—a vote, moreover, that could be decisive as to whether Deco pursues any particular recapitalization option or resorts to other measures such as bankruptcy or voluntary dissolution.

I am satisfied that Claimant has established irreparable harm. If Claimant is unjustly prevented from casting a potentially decisive vote on the future of Deco, the injury to him will be difficult to calculate with reasonable certainty. Among other things, it would require the factfinder to speculate about the course of action Deco would have taken had Claimant been allowed to vote, as well as the difference in value between that alternative course of action and the course Deco ultimately takes for purposes of calculating damages. This appears to me to involve more than just a matter of compensating Claimant for the fair market value of his shares. It also has to do with compensating for the loss of the right to vote and participate in decisions about the future direction of Deco, a company that Claimant helped found. (*See* Pouladian Decl. ¶ 3.) In addition, if Deco is sold to a *bona fide* purchaser, Claimant may be prevented from recovering money damages against Deco or its successor. Courts have upheld preliminary injunctions in similar situations where a shareholder claims he is being prevented from voting his shares. (*See Meyberg v. Superior Court of Los Angeles County*, 19 Cal. 2d 336, 341 (1942) ("Courts of equity have power to protect the voting rights of shareholders as an incident of property ownership. . . . If a court of equity has the power to enjoin the voting of stock it also has the power to restrain unlawful interference with a stockholder's right to vote stock owned by him."); *In re XTF Global Asset Management, LLC*, 2010 WL 1116450 (N.Y. Sup. Ct. Mar. 1, 2020 (stating, in a case decided under New York law, that "respondent does not deny that it is

unable to meet its financial obligation to petitioner and does not deny that it is looking to restructure. It is not plausible that this could be done without irreparable harm to petitioner's position").)

**C. The Balance of Harms**

A final consideration is the balance of harms as between Claimant and Respondents. Here, Claimant is simply asking to preserve the *status quo* until a final determination can be made as to whether he has relinquished his shares. By contrast, Respondents have not articulated any concrete potential harm that Deco will suffer if Claimant is entitled to vote his shares. The fact that Claimant might (legitimately) vote in a manner that Respondents do not agree with, absent credible allegations of illegality or other misconduct, is not a cognizable harm that weighs in the balance.

**D. Scope of Injunction**

The caption to Claimant's motion seeks a TRO and/or Preliminary Injunction "prohibiting Respondent Deco . . . from treating Claimant as a non-shareholder of [Deco], and failing to adhere to the Shareholder Buy-Sell Agreement, during the pendency of this arbitration." (*See also* Motion at 9 (seeking an order "[e]njoining Deco from unilaterally declaring that Pouladian is no longer a shareholder, and that the Buy Sell Agreement does not apply").)

For the reasons elaborated during the telephonic hearing, I am reluctant to enjoin Respondent Deco from "failing to adhere" to the Buy-Sell Agreement, or from "declaring . . . that the Buy-Sell Agreement does not apply." This strikes me as too broad. Claimant has moreover failed to allege that Respondents are likely to repudiate the Buy-Sell Agreement in its entirety, other than with respect to his voting rights.

I am also reluctant to enjoin Respondent Deco from "declaring that Pouladian is no longer a shareholder." I see little imminent harm to Claimant if Deco simply declares that Pouladian is no longer a shareholder. The real harm to Claimant is if Deco were to *treat* Pouladian as if he were no longer a shareholder (regardless of what it declares).

Finally, I decline to enjoin Respondent Deco from "treating Claimant as a non-shareholder." This, too, strikes me as too broad. The crux of the issue raised by Claimant is the potential harm to him if he is prevented from exercising his right to vote as a 30% shareholder of Deco.

CONCLUSIONS AND ORDER

For the foregoing reasons, I hereby ORDER as follows:

1. Claimant's request for emergency injunctive relief is GRANTED in part and DENIED in part.

2. A temporary injunction to preserve the *status quo* in shall issue in favor of Claimant, enjoining Respondent Deco from standing in the way of Claimant's exercising his right to vote as a 30% shareholder.

3. This temporary injunction shall remain in place until the earlier of: (a) a contrary determination by the Arbitrator appointed to this case; (b) a determination on the merits of Respondents' claim that Claimant relinquished ownership of his shares and is no longer a shareholder; or (c) other good cause shown.

Dated: January 24, 2020

Hiro N. Aragaki
Emergency Arbitrator

# EXHIBIT 2

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Fax: (818) 561-3925
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Claimant
Benjamin Pouladian

**JAMS**

| | |
|---|---|
| Benjamin Pouladian,<br><br>Claimaint<br><br>vs.<br><br>Deco Enterprises, Inc.; Babak Sinai; Siamak Sinai; Saman Sinai,<br><br>Respondents. | **JAMS Reference No. 1210037093**<br><br>Emergency Arbitrator: Hiro Aragaki, Esq.<br><br>Claimant's Motion for Temporary Restraining Order and/or Preliminary Injunction Prohibiting Respondent Deco Enterprises, Inc. from Treating Claimant as a Non-Shareholder of Respondent, and Failing to Adhere to the Shareholder Buy Sell Agreement, During the Pendency of this Arbitration;<br><br>Declarations of Benjamin Pouladian and John Yates filed concurrently. |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## THE ARBITRATOR MAY REACH THE MERITS BECAUSE POULADIAN HAS NOT WAIVED ARBITRATION

Pouladian has filed suit in Los Angeles Superior Court to recover over $400,000 in unpaid business expenses owed to him by Deco. Such expenses are not obviously arbitrable under the Buy Sell Agreement, and even if they are, the suit was filed on December 10, 2019, and no answer or other responsive pleading has been filed by Deco. California law is very clear that simply filing a lawsuit, without more, does not constitute a waiver of the right to arbitration. Saint Agnes Medical Center v. PacifiCare of California, 31 Cal.4th 1187, 1200 - 1203 (2003). The burden of proving waiver is high, and the proof requires a demonstration of prejudice of some type to the litigant claiming a waiver has occurred. Saint Agnes, 31 Cal.4th at 1203 – 1204. Further, and significant in light of the fact that the Superior Court suit was filed primarily to support the provisional remedy of a writ of attachment, Pouladian's pursuit of such a writ in court also does not constitute a waiver of arbitration because a writ of attachment is not available in arbitration. *See,* Cal.Civ.Proc. §1281.8; Outdoor Services, Inc. v. Pabagold, 185 Cal.App.3d 676, 684 – 685 (1986).

## II.

## STATEMENT OF FACTS

### A. Deco Enterprises, Inc.

Respondent Deco Enterprises, Inc. ("Deco") is a California corporation formed on March 16, 2005. Share ownership since inception has been 30% for Pouladian, 30% for Respondent Saman Sinai, and 20% each for Respondents Babak Sinai and Siamak Sinai. Pouladian was President of Deco since the company was formed, until his resignation from the office in August 2019. Pouladian, with Respondent Saman Sinai, were the owners actively managing Deco's business operations. Approximately $300,000 of Deco's initial capital was provided by claimant's father, Abraham Pouladian.

Deco manufactures and sells commercial lighting fixtures. Currently, Deco's gross receipts are $35,000,000 to $40,000,000 annually, its accounts receivable are approximately $3,000,000, and





Yates Litigation

it holds inventory worth approximately $10,000,000. The Deco name is widely known among consumers of its products, which include many large corporations such as Rexel, CED and Graybar. The company currently employs approximately 50 persons.

Deco is a valuable company, but in the last 12 to 18 months Deco was compelled to take on more debt in order to sustain its ability to pay current obligations when due. Deco's primary lender, Siena Lending Group, LLC ("Siena"), required additional collateral to continue factoring Deco's receivables. Part of creating that collateral was subordinating promissory notes from Deco to Pouladian and to Saman Sinai given in connection with their investment of $325,000 each in Deco in October 2018 and April 2019. Notwithstanding the continuation of Siena's credit facility, Pouladian believes based on his knowledge of the financial condition of Deco through the date of his resignation that the company will need to be recapitalized in order to sustain operations over the long term.

**A. <u>The Buy Sell Agreement</u>**

The Buy Sell Agreement was agreed upon on October 1, 2013 by Pouladian and all Respondents. Three Articles of the Buy Sell Agreement are pertinent here.

The entirety of Article 6 sets forth the restrictions on transfers of shares of Deco by the four owners to third parties. Essentially, transfer is prohibited without first allowing Deco, and then the individual shareholders, the opportunity to acquire the shares from the transferor at the transfer price to the third party. Paragraph 6.03 provides that when a shareholder wishes to voluntarily disassociate from Deco, the same options to purchase the shares of the withdrawing owner by the corporation and by the other shareholders apply. Finally, paragraph 6.03 provides for a Fair Market Valuation of the shareholder's shares when a shareholder wishes to voluntary dissociate from the company.

Article 12 discusses management and control of Deco. Paragraph 12.03 itemizes the actions that require the written consent of shareholders holding 75% or more of Deco's shares. To reach this threshold, both Pouladian and Saman Sinai, the other 30% shareholder, would need to agree, along with one of the 20 % shareholders. Actions requiring 75% approval include: 12.03(a) Mergers or acquisitions involving the Corporation; 12.03(b) Amendment or repeal of the Articles of Incorporation of the Corporation; 12.03(c) Issuance of shares of any class or other rights relating to



Yates Litigation

the issuance of shares of the Corporation; 12.03(d) Transfer of all, or substantially all, the assets of the Corporation; 12.03(e) Amendment of this Agreement; 12.03(f) Acceptance of a new shareholder; and 12.03(g) Incurring debts or liabilities in the aggregate amount exceeding $100,000 annually. Most or all of these provisions would likely be implicated in any recapitalization of Deco involving a new investor, or combining Deco's assets with the assets of another entity.

Article 13 of the Buy Sell Agreement provides that it shall remain in effect until such time as Deco is voluntarily dissolved, has a single shareholder, is in bankruptcy or insolvent. Absent the occurrence of one of these events, all shareholders and Deco can terminate the Agreement by unanimously agreeing to do so.

**B. Deco's Claims That Pouladian Relinquished His Shares In Deco, And That The Buy Sell Agreement Is No Longer Applicable Because Deco Is Insolvent**

In a lengthy email sent on December 9, 2019 to attorney Yates, Deco's counsel Amy Mousavi opened by stating that Pouladian "expressly gave up his shares. He was never forced to do anything; we have written documentation from Mr. Pouladian to that effect." Ms. Mousavi reiterated the same position in a telephone call with Mr. Yates on December 19, 2019, and also stated her position that the Buy Sell Agreement is no longer in effect because Deco is insolvent.

Notwithstanding attorney Mousavi's claim that Pouladian relinquished his shares, Pouladian received no response to his email to CFO Allen offering to relinquish his shares. Allen did not accept the offer and did not respond by asserting that Pouladian had already relinquished his shares. If fact, neither Allen nor any other shareholder responded at all, and Pouladian expressly withdrew his proposal via an email sent to Allen on November 1, 2019. It is also beyond dispute that the claimed "relinquishment" of Deco shares by Pouladian did not occur in compliance with Article 6 of the Buy Sell Agreement. He did not submit a formal Offer Notice as specified by paragraph 6.02 of the Buy Sell Agreement, or state the number of shares, or the price per share. Pouladian did not receive at any time from Deco, or from any of the other shareholders, or from any new investor, any expression of interest in acquiring his shares, as required by paragraph 6.03 of the Buy Sell Agreement. He has also received no information from Deco that a valuation process was underway to determine the Fair



Yates Litigation

Market Value of his shares, as specified by paragraph 6.03. Finally, he has not signed any of the share certificates in his name to permit their transfer to any other person, and to his knowledge those certificates remain in the possession of Siena as part of the collateral for its financing of Deco.

Deco's assertion that the Buy Sell Agreement is no longer in effect because of alleged insolvency is also incorrect. At the time of Pouladian's resignation in August 2019, Deco was able to meet its debts as they came due, even though that was occasionally difficult. Within the last month, Pouladian has spoken with several suppliers, customers, and sales representatives of Deco with whom he became friends during his 14 years as Deco's President. These persons include Michael Yu of Grandlite, Eric Lee of Shanghai Supertek, Donal Drew of Dan Hengstler Priority Lighting, and Robert Lallement and John Molak of Rexel Energy Solutions. All of these individuals told Pouladian that their companies were still buying or selling to Deco, or ordering and shipping Deco products, which indicates strongly that Deco is still operating and still solvent.

Although attorney Mousavi has advised JAMS that Deco is willing to consider Pouladian as a shareholder until an arbitrator is appointed, in order to prevent any emergency proceedings, her email to JAMS' intake manager Mr. John Peterson is conspicuously silent on the issue of Deco's willingness to also consider the Buy Sell Agreement to be in full force and effect. It is not being a shareholder that permits Pouladian to be involved in any major change affecting Deco and its equity structure, it is the Buy Sell Agreement that both allows and requires that. It is Pouladian's strong belief that something is brewing at Deco by way of consolidation, merger, sale of assets, significant new debt, or some other form of recapitalization. Deco's denial of his share ownership, and of the Buy Sell Agreement's current validity, is nothing more than a way to strip him of his significant equity ownership in Deco without being consulted and without being allowed to vote his shares on any proposal on the table. Pouladian needs interim relief to maintain the *status quo*, and needs it now, while his status as a shareholder and the applicability of the Buy Sell Agreement are being litigated.



Yates Litigation

## III.

## A PRELIMINARY INJUNCTION MAINTAINING POULADIAN'S SHAREHOLDER STATUS AND MAINTAINING THE BUY SELL AGREEMENT IN EFFECT PER ITS TERMS IS WARRANTED

C.C.P. §527(a) provides that the Court may grant a preliminary injunction at any time before judgment, upon notice to the opposing party, if affidavits show sufficient grounds for the injunction. The standard for granting a preliminary injunction is well established. The Supreme Court in White v. Davis, 30 Cal.4th 528, 554 (2003), summarized the then current, and still current, applicable law as follows:

> "To obtain a preliminary injunction, a plaintiff ordinarily is required to present evidence of the irreparable injury or interim harm that it will suffer if an injunction is not issued pending an adjudication of the merits. (*See City of Torrance v. Transitional Living Centers for Los Angeles, Inc.* (1982) 30 Cal.3d 516, 526 [179 Cal. Rptr. 907, 638 P.2d 1304].)
>
> Past California decisions further establish that, as a general matter, the question whether a preliminary injunction should be granted involves two interrelated factors: (1) the likelihood that the plaintiff will prevail on the merits, and (2) the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief. As explained in *IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69-70 [196 Cal. Rptr. 715, 672 P.2d 121]: 'This court has traditionally held that trial courts should evaluate two interrelated factors when deciding whether or not to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued.' As the court in *IT Corp.* further noted: 'The ultimate goal of any test to be used in deciding whether a preliminary injunction should issue is to minimize the harm which an erroneous interim decision may cause. [Citation.]'"

Analysis of the applicable factors in connection with the facts present in this action demonstrates that a preliminary injunction should issue to prohibit Deco from treating the Buy Sell Agreement as inapplicable, and Pouladian as a non-shareholder, during the pendency of this arbitration.

Yates Litigation

A. **Pouladian Will Suffer Irreparable Harm If Deco Is Permitted To Pursue Major Changes In Equity Structure In Connection With Recapitalization While Excluding Pouladian**

Pouladian is handicapped by the information blackout on Deco's end regarding any proposals for recapitalization, merger, consolidation or acquisition that may be in play at present. Nonetheless, some likely results of any significant restructuring or recapitalization are obvious.

Initially, Deco's consideration of restructuring or recapitalization offers without providing adequate information – or in the case of Pouladian, any information -- about the proposals to the shareholders is itself irreparable harm. *See, e.g.,* In re Atheros Communications, Inc. Shareholder Litigation, No. 6124-VCN (Delaware Court of Chancery 2011) ("The shareholders, now asked to approve the sale of Atheros, are entitled to full and complete disclosure of all material facts before they vote. . .. and . . . a breach of the disclosure duty actually results in irreparable harm to the stockholders that is better addressed through an injunctive remedy."); Sealey Mattress Company of New Jersey, Inc. v. Sealey, Inc., 532 A.2d 1324, 1340 (Delaware Court of Chancery 1987); In re Staples, Inc. Shareholder Litigation, 792 A.2d 934, 960 (Delaware Court of Chancery 2001).

Most conceivable forms of recapitalization will likely involve a significant restructuring of the equity of Deco's current shareholders as a matter of necessity. Such restructuring while Pouladian is effectively presented from considering the terms constitutes irreparable harm because damages would be difficult to assess and because of the absence of effective choice by Pouladian. Sealey Mattress, *id.* at 1341; In the Matter of the Petition of XTF Global Asset Management, LLC, 2010 NY Slip Op 30422(U) (Supreme Court New York County 2010) (pledging of minority shareholder's 15% stake by majority shareholder to attract capital in restructuring constitutes irreparable harm).

Under California law, the right to vote shares owned in a corporation is a property right. Klaus v. Hi-Shear Corp., 528 F.2d 225, 234 (9th Cir. 1975), *citing,* Meyberg v. Superior Court, 19 Cal.2d 336, 342 – 344 (1942) (temporary restraining order prohibiting shareholders from interfering with minority shareholder's right to vote shares upheld). Like ownership of a specific parcel of real property, the right to vote shares in a specific company is unique. Permitting Deco to abrogate



Yates Litigation

Pouladian's property rights in any restructuring by the simple expedients of asserting that he is no longer a shareholder in Deco and the Buy Sell Agreement no longer applies will take that unique right from him permanently, and the loss is not compensable in money damages.

Finally, one very possible outcome of a recapitalization of Deco is the merger of Deco into a suitor company and the disappearance of Deco as an entity. That deal could be structured to ensure that Pouladian is unable to recover his subordinated loan of $325,000, or the "old debt" from his father Abraham's initial capitalization of approximately $300,000 that Deco has never paid. If Deco no longer exists as an entity, there is no person from which Pouladian, or Pouladian's family, could collect those debts. There would be a harm of over $600,000 in loss no longer compensable in money and thus constituting irreparable harm suitable for injunctive relief.

**B. <u>Deco Will Suffer Minimal Harm If An Injuction Issues To Maintain The Status Quo</u>**

A restructuring or recapitalization of Deco can surely occur while Pouladian is considered a shareholder of the company, and if the Buy Sell Agreement is maintained in force, during the pendency of this arbitration. Pouladian, and presumably the other shareholders as well, have no incentive to obstruct a process that could maintain some or all of the value of their current shareholding interest in Deco. Therefore, providing the shareholders with full information regarding each proposal, and permitting the shareholders to consider and vote on them will cause no harm. If at the end of this arbitration the result is that the Buy Sell Agreement was actually no longer applicable, and yet a shareholder vote was taken on a proposal, there is no harm. Similarly, if Pouladian is found to have relinquished his shares, his new interest after restructuring or recapitalization can simply be distributed pro rata to the remaining shareholders. Again, there is no harm.

## IV.

## <u>POULADIAN WILL LIKELY PREVAIL ON THE MERITS</u>

Pouladian made an offer to sell his shares at a nominal price to help Deco. The offer was terminated on November 1, 2019, and was not accepted before then by Deco or any other shareholder. Additionally, none of the processes described in paragraph 6 of the Buy Sell Agreement were followed by either Pouladian or Deco, and no Fair Market Valuation is known to be in progress. Under simple contract rules, or under the terms of the Buy Sell Agreement, Pouladian's



Yates Litigation

shares in Deco have not been transferred.

None of the events specified in the Buy Sell Agreement that terminate the Agreement are known to have occurred. The event cited by counsel for Deco – insolvency – is not present, given that the company is still producing, shipping, and buying to and from customers and its vendors.

## V.

## CONCLUSION

Something is now or soon will be happening with regard to the recapitalizing or restructuring of Deco, and Pouladian is being shut out of the process entirely. This continuing stonewall by Deco threatens Pouladian with a variety of irreparable harms, given that it is more likely than not that he remains a 30% shareholder in Deco and has the right to receive full information, and given that it is more likely than not that the Buy Sell Agreement giving Pouladian the right to vote on restructuring and recapitalization and other major changes remains in effect. Enjoining Deco from unilaterally declaring that Pouladian is no longer a shareholder, and that the Buy Sell Agreement does not apply, during the pendency of this arbitration will not harm Deco in the least, but will prevent irreparable harm to Pouladian. The preliminary injunction sought should be granted.

DATED: January 10, 2020

YATES LITIGATION

By: [signature]
JOHN R. YATES
Attorneys for Claimant
Benjamin Pouladian

# EXHIBIT 3

MOUSAVI & LEE, LLP
AMY A. MOUSAVI, SBN: 228388
19200 Von Karman Ave., Suite 940
Irvine, California 92612
Telephone: (949) 864-9667
Email: amousavi@mousavilee.com

*Attorneys for Respondent Deco Enterprises, Inc.*

PISTONE LAW GROUP, LLP
THOMAS A PISTONE, SBN: 77774
19200 Von Karman Ave., Suite 940
Irvine, California 92612
Telephone: (949) 864-9660
Email: tpistone@pistonelawgroup.com

*Attorneys for Respondents Babak Sinai, and Siamak Sinai; Special Appearance for Saman Sinai*

**JAMS**

**IN THE MATTER OF ARBITRATION**

| | |
|---|---|
| BENJAMIN POULADIAN<br><br>Claimant,<br><br>v.<br><br>DECO ENTERPRISES, INC., BABAK SINAI, SIAMAK SINAI, and SAMAN SINAI<br><br>Respondents. | JAMS Reference No. **1210037093**<br><br>**SPECIALLY APPEARING RESPONDENTS' RESPONSE TO SCHEDULING ORDER NO. 1** |

This document is submitted by the specially appearing Deco Enterprises, Inc. ("Deco"), Babak Sinai, Siamak Sinai and Saman Sinai (collectively "Sinai Parties") in response to the document dated January 15, 2020 presented as "Scheduling Order No. 1."

Please take note as follows:

1. The Deco and Sinai Parties have not submitted to the jurisdiction of JAMS, or to

arbitration at this point, in large part because there is already a pending Superior Court action, filed by the Claimant Benjamin Pouladian ("Pouladian"), which raises precisely the same issues Pouladian purports to now raise in a JAMS arbitration[1];

2. The Deco and Sinai Parties contest the ability of Pouladian to request or obtain a purported temporary restraining order and/or preliminary injunction in the arbitration that he has filed. The proper procedure would be to seek such provisional relief in Superior Court, in the pending court action, under *CCP* §1281.8 which provides for temporary protective orders or preliminary injunctions where an arbitration has been commenced;

3. Notwithstanding Rule No. 2 of the JAMS Comprehensive Arbitration Rules and Procedures, the Deco and Sinai Parties have not participated in submitting this matter to arbitration, and have not participated in any arbitrator selection procedures (to their knowledge there has been no procedure to review, qualify, or select an arbitrator). Therefore no restraining order or preliminary injunction can issue.

This document is being filed as a "special appearance" in that the Deco and Sinai Parties have not submitted or agreed to jurisdiction with respect to the arbitration that has been filed, nor have they agreed to jurisdiction for issuance of a temporary restraining order or preliminary injunction by an arbitrator who has not been selected by the parties.

Without waiving such objections, the Deco and Sinai Parties may, with proper procedures, agree to submit the issues to arbitration, after proper selection of an arbitrator, and after resolution of the fact that the same claims are already pending in a Superior Court action.

For purposes of the telephonic hearing scheduled for January 23, 2020, even if there were no procedural or jurisdictional issues, that no evidence or basis has been provided that would support issuance of any requested provisional relief. There is no showing of any risk of irreparable injury; the claim by Pouladian appears to be entirely a monetary claim, compensable in damages if successful, and issuance of any purported restraining order would interfere with the operations of

[1] Pouladian filed his First Amended Complaint on January 10, 2020. Answer to the First Amended Complaint and a Cross-Complaint were filed in the Superior Court action on January 21, 2020, but conformed copies have not yet been received.

Deco Enterprises, Inc., including its ability to obtain necessary financing for its operations.

Dated: January 22, 2020

MOUSAVI & LEE, LLP

/s/ Amy A. Mousavi

AMY A. MOUSAVI
*Attorneys for Respondent Deco Enterprises, Inc.*

Dated: January 22, 2020

PISTONE LAW GROUP, LLP

/s/ Thomas A. Pistone

THOMAS A. PISTONE
*Attorneys for Respondents Babak Sinai and Siamak Sinai; Special Appearance for Saman Sinai*

# PROOF OF SERVICE

**Pouladian v. Deco Enterprises, et al.**

**JAMS**

**JAMS Reference No. 1210037093**

I am employed in the county of Orange, State of California at **MOUSAVI & LEE, LLP.** I am over the age of 18 and not a party to the within action; my business address is 19200 Von Karman Avenue, Suite 940, Irvine, CA 92612.

On January 22, 2020 I served the foregoing document(s) described as: **SPECIALLY APPEARING RESPONDENTS' RESPONSE TO SCHEDULING ORDER NO. 1** on the following interested parties in this action:

John R. Yates, Esq.
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, CA 91436

Telephone: (818) 281-5891
Fax: (818) 561-3925
jyates@yateslitigation.com

*Attorney for Benjamin Pouladian*

**BY MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons listed above and (1) deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid, or (2) placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY ELECTRONIC SERVICE VIA ONELEGAL EFILING SERVICE:** I served the above-entitled document(s) through the OneLegal E-Filing Service at www.onelegal.com addressed to all parties appearing on the electronic service list for the above-entitled case. A copy of the One Legal Service Receipt Page/Confirmation will be maintained with the original document(s) in this office.

**BY OVERNIGHT DELIVERY:** I enclosed the documents in a sealed envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses indicated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

**BY PERSONAL SERVICE:** I personally delivered the documents to the persons at the addresses indicated above. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous

place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

XX **BY EMAIL TRANSMISSION**: I caused the aforementioned document(s) to be served via electronic mail to the electronic addressee(s) listed on the attached mailing list. Such document was transmitted successfully from my e-mail address to the indicated addressee(s).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 22, 2020 at Irvine, California.

Cheyenne Villanueva, Declarant

## PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436.**

On January 29, 2020, I served the foregoing document described as **Declaration of John Yates in Support of Ex Parte Application of Plaintiff Benjamin Pouladian for Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding, and Regarding Notice Given of Ex Parte Application**

on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

Amy Mousavi, Esq.
Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Thomas Pistone, Esq.
Pistone Law Group LLP
19200 Von Karman Ave, Suite 940
Irvine, California 92612
Email: tpistone@pistonelawgroup.com

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 29, 2020, at Encino, California.

[signature]
John R. Yates

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Fax: (818) 561-3925
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff Benjamin Pouladian
And Cross-Defendants Benjamin Pouladian
And Edith Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| Benjamin Pouladian,<br><br>Plaintiff,<br><br>vs.<br><br>Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive<br><br>Defendants. | **CASE NO.: 19STCV44475**<br><br>HON. ROBERT S. DRAPER – DEPARTMENT 78<br><br>UNLIMITED JURISDICTION<br><br>**Declaration of Benjamin Pouladian in Support of Ex Parte Application of for Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding, and Regarding Notice Given of Ex Parte Application** |
| DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,<br><br>Cross-Complainants,<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | Date: January 31, 2020<br>Time: 8:30 a.m.<br>Place: Department 78<br><br>**ACTION FILED:** December 10, 2019 |



Yates Litigation

I, Benjamin Pouladian, state that:

1. I have personal knowledge of the facts set forth herein and first-hand knowledge of same. If called upon to testify and placed under oath I could and would testify competently thereto.

2. I am the plaintiff and cross-defendant in this action and the claimant in JAMS Arbitration Case No. 1210037093.

3. I listened in on the telephonic hearing on my Motion for a Preliminary Injunction hby arbitrator Hiro N. Aragaki. Following the ruling by Mr. Aragaki on January 24, 2020 in my favor, I had an email exchange with Craig Allen, who is currently the person primarily in charge of Deco's day to day operations, and of the efforts to restructure Deco. Copies of those emails are attached to this declaration as Exhibit 1. Mr. Allen refused to provide me any information regarding any recapitalization plans or proposals currently under consideration by Deco. Mr. Allen also made sure to point out to me in his email to me of 3:01 p.m. that "additionally, as you may know, since you were on the conference call between the Arbitrator and the attorneys that any order issued by an arbitrator is not enforceable until it is confirmed in Court."

4. Based on this exchange, it is apparent to me that my shareholder voting rights upheld by the arbitrator will not be honored by Deco unless the arbitrator's interim injunctive relief is confirmed by the Court and made enforceable.

5. A copy of the Buy Sell Agreement executed in 2013 by all Deco shareholders and by Deco itself is attached to this declaration as Exhibit 2.

I swear under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 29th day of January 2020, at Los Angeles, California.

Benjamin Pouladian

Yates Litigation

# EXHIBIT 1

**John R. Yates**

| | |
|---|---|
| **From:** | Ben Pouladian <ben.pouladian@gmail.com> |
| **Sent:** | Friday, January 24, 2020 3:02 PM |
| **To:** | John R. Yates |
| **Subject:** | Fwd: Deco Updates |

---------- Forwarded message ---------
From: **Craig Allen** <callen@getdeco.com>
Date: Fri, Jan 24, 2020 at 3:01 PM
Subject: Re: Deco Updates
To: Ben Pouladian <ben.pouladian@gmail.com>

Ben,

As a shareholder, you have a limited right to inspect certain records of the corporation. You are not, under the law, entitled to see proposals. You can ask that from your attorney. As stated, the Order you sent me just states what Ms. Mousavi had already told your attorney; additionally, as you may know, since you were on the conference call between the Arbitrator and the attorneys that any order issued by an arbitrator is not enforceable until it is confirmed in Court.

On Fri, Jan 24, 2020 at 2:31 PM Ben Pouladian <ben.pouladian@gmail.com> wrote:

Craig

one of the results of being treated like a shareholder is getting the information about any planned recapitalizations.

**ARE THERE ANY PROPOSALS???**

On Fri, Jan 24, 2020 at 2:24 PM Craig Allen <callen@getdeco.com> wrote:

Ben,

It appears that the Arbitrator said what Ms. Mousavi had told your attorney previously, that for now, Deco will treat you as a shareholder. Ms. Mousavi had already sent you the financials on January 7, 2020. If you did not receive them from your attorney, here is a copy. The Arbitrator specifically stated:

For the reasons elaborated during the telephonic hearing, I am reluctant to enjoin Respondent Deco from "failing to adhere" to the Buy-Sell Agreement, or from "declaring ... that the Buy-Sell Agreement does not apply." This strikes me as too broad. Claimant has moreover failed to allege that Respondents are likely to repudiate the Buy-Sell Agreement in its entirety, other than with respect to his voting rights.

I am also reluctant to enjoin Respondent Deco from "declaring that Pouladian is no longer a shareholder." I see little imminent harm to Claimant if Deco simply declares that Pouladian is no longer a shareholder. The real harm to Claimant is if Deco were to *treat* Pouladia n as if he were no longer a shareholder (regardless of what it declares).

Finally, I decline to enjoin Respondent Deco from "treating Claimant as a non shareholder." This, too, strikes me as too broad. The crux of the issue raised by Claimant is the potential harm to him if he is prevented from exercising his right to vote as a 30% shareholder of Deco.

The Arbitrator stated:

1. Claimant's request for emergency injunctive relief is GRANTED in part and

DENIED in part.

2. A temporary injunction to preserve the status quo in shall issue in favor of Claimant, enjoining Respondent Deco from standing in the way of Claimant's exercising his right to vote as a 30% shareholder.

This is basically what Ms. Mousavi had already told your attorney, before, in writing.

On Fri, Jan 24, 2020 at 1:44 PM Ben Pouladian <ben.pouladian@gmail.com> wrote:

Craig

Following up on this please see the attached order via arbitration. I demand equal treatment to the other shareholders, full transparency and an **immediate summary** of all of Deco's current financials, along with a description of potential refinancing, and proposals for recapitalizations on the table.

On Mon, Dec 23, 2019 at 7:00 AM Ben Pouladian <ben.pouladian@gmail.com> wrote:

Craig,

Deco's lawyer has advised JAMS arbitration service that "until a regular arbitrator is appointed or the right to arbitration is established, Deco Parties will treat Mr. Pouladian as a shareholder."

That being the case, I am a 30% shareholder of Deco. I demand equal treatment to the other shareholders, full transparency and an **immediate summary** of all of Deco's current financials, along with a description of potential refinancing, and proposals for recapitalizations on the table.

Thank you
Ben

**John R. Yates**

**From:** Ben Pouladian <ben.pouladian@gmail.com>
**Sent:** Friday, January 24, 2020 2:32 PM
**To:** Craig Allen
**Cc:** John R. Yates
**Subject:** Re: Deco Updates

Craig

one of the results of being treated like a shareholder is getting the information about any planned recapitalizations.

**ARE THERE ANY PROPOSALS???**

On Fri, Jan 24, 2020 at 2:24 PM Craig Allen <callen@getdeco.com> wrote:

Ben,

It appears that the Arbitrator said what Ms. Mousavi had told your attorney previously, that for now, Deco will treat you as a shareholder. Ms. Mousavi had already sent you the financials on January 7, 2020. If you did not receive them from your attorney, here is a copy. The Arbitrator specifically stated:

For the reasons elaborated during the telephonic hearing, I am reluctant to enjoin Respondent Deco from "failing to adhere" to the Buy-Sell Agreement, or from "declaring ... that the Buy-Sell Agreement does not apply." This strikes me as too broad. Claimant has moreover failed to allege that Respondents are likely to repudiate the Buy-Sell Agreement in its entirety, other than with respect to his voting rights.

I am also reluctant to enjoin Respondent Deco from "declaring that Pouladian is no longer a shareholder." I see little imminent harm to Claimant if Deco simply declares that Pouladian is no longer a shareholder. The real harm to Claimant is if Deco were to *treat* Pouladian as if he were no longer a shareholder (regardless of what it declares).

Finally, I decline to enjoin Respondent Deco from "treating Claimant as a non shareholder." This, too, strikes me as too broad. The crux of the issue raised by Claimant is the potential harm to him if he is prevented from exercising his right to vote as a 30% shareholder of Deco.

The Arbitrator stated:

1. Claimant's request for emergency injunctive relief is GRANTED in part and

DENIED in part.

2. A temporary injunction to preserve the status quo in shall issue in favor of Claimant, enjoining Respondent Deco from standing in the way of Claimant's exercising his right to vote as a 30% shareholder.

This is basically what Ms. Mousavi had already told your attorney, before, in writing.

On Fri, Jan 24, 2020 at 1:44 PM Ben Pouladian <ben.pouladian@gmail.com> wrote:
Craig

Following up on this please see the attached order via arbitration. I demand equal treatment to the other shareholders, full transparency and an **immediate summary** of all of Deco's current financials, along with a description of potential refinancing, and proposals for recapitalizations on the table.

On Mon, Dec 23, 2019 at 7:00 AM Ben Pouladian <ben.pouladian@gmail.com> wrote:

Craig,

Deco's lawyer has advised JAMS arbitration service that "until a regular arbitrator is appointed or the right to arbitration is established, Deco Parties will treat Mr. Pouladian as a shareholder."

That being the case, I am a 30% shareholder of Deco. I demand equal treatment to the other shareholders, full transparency and an **immediate summary** of all of Deco's current financials, along with a description of potential refinancing, and proposals for recapitalizations on the table.

Thank you
Ben

**John R. Yates**

**From:** Ben Pouladian <ben.pouladian@gmail.com>
**Sent:** Friday, January 24, 2020 1:44 PM
**To:** Craig Allen
**Subject:** Re: Deco Updates
**Attachments:** Order#2.pdf

Craig

Following up on this please see the attached order via arbitration. I demand equal treatment to the other shareholders, full transparency and an **immediate summary** of all of Deco's current financials, along with a description of potential refinancing, and proposals for recapitalizations on the table.

On Mon, Dec 23, 2019 at 7:00 AM Ben Pouladian <ben.pouladian@gmail.com> wrote:

> Craig,
>
> Deco's lawyer has advised JAMS arbitration service that "until a regular arbitrator is appointed or the right to arbitration is established, Deco Parties will treat Mr. Pouladian as a shareholder."
>
> That being the case, I am a 30% shareholder of Deco. I demand equal treatment to the other shareholders, full transparency and an **immediate summary** of all of Deco's current financials, along with a description of potential refinancing, and proposals for recapitalizations on the table.
>
> Thank you
> Ben

# EXHIBIT 2

**SHAREHOLDER AND BUY-SELL AGREEMENT OF
DECO ENTERPRISES, INC.,
A CALIFORNIA CORPORATION**

THIS Shareholder and Buy-Sell Agreement (hereafter "Agreement") effective October 1, 2013, is entered into among Benjamin Pouladian, Saman Sinai, Siamak Sinai, and Babak Sinai (referred to collectively as "Shareholders" and individually as "Shareholder"), and Deco Enterprises, Inc., a California corporation (hereafter "Corporation"), with respect to all shares of the Corporation's capital stock now or hereafter outstanding, for the purpose of protecting the Corporation and the Shareholders, as well as providing continuity for the Corporation's business in the event of the occurrence of certain events discussed in this Agreement.

**AGREEMENT**

**ARTICLE 1
SHARES SUBJECT TO THIS AGREEMENT**

1.01. Business of the Corporation. The business of the Corporation is manufacturing commercial lighting fixtures and/or any other business, and all matters that are lawful as authorized under the laws of the State of California.

1.02. Shareholders. Shareholders of the Corporation are Benjamin Pouladian, Saman Sinai, Siamak Sinai, and Babak Sinai.

1.03. Initial Shares, Consideration, etc. Each of the Shareholders owns the number of shares of common share listed below:

| Name | Shares Owned |
|---|---|
| Benjamin Pouladian | 30% |
| Saman Sinai | 30% |
| Siamak Sinai | 20% |
| Babak Sinai | 20% |

The shares listed above constitute all of the issued and outstanding capital shares of the Corporation. All of the shares listed above and any additional shares of the capital share of the Corporation that may be acquired by the Shareholders in the future shall be subject to this Agreement.

**ARTICLE 2
CERTAIN DISCLOSURES, WAIVERS AND INDEMNIFICATIONS**

2.01. Representations. Each of the Shareholders acknowledges and represents that:

(a) He has full authority to enter into this Agreement and the execution and performance under the terms of this Agreement would neither violate any laws nor constitute a default;

(b) This Agreement was prepared with his knowledge and consent;

(c) He was advised by counsel to consider seeking independent legal counsel to review this Agreement on his behalf;

(d) He had adequate time to seek the advice of independent counsel and to review this Agreement;

(e) He either obtained such advice or knowingly and intentionally chose not to seek such advice;

(f) He fully understands this Agreement and all of its terms and provisions, including, but not limited to, those provisions which significantly restrict his ability to sell, transfer or otherwise dispose of his shares; and

(g) The restrictions imposed upon his shares pursuant to this Agreement are reasonable.

2.02. Title. Each of the Shareholders represents and warrants that he/she is the record and beneficial owner of the shares referred to in Article 1 above and that he has not sold, transferred, pledged or otherwise encumbered any of those shares or his interest in those shares.

2.03. Indemnity. Each Shareholder agrees to indemnify and hold the Corporation and the other Shareholders harmless from and against any and all liabilities, costs or expenses, including reasonable attorneys' fees, resulting from or arising out of any sale, transfer or other disposition of his shares otherwise than in accordance with the terms and provisions of this Agreement.

**ARTICLE 3**
**DISTRIBUTIONS**

3.01. Determination of Net Income/Net Profit and Loss. The net profits or net losses of the Corporation for each fiscal year will be determined on a ~~cash~~/accrual basis in accordance with generally accepted principles of accounting. Each Shareholder will share in the profits and losses in proportionate to his percentage of shares of the common stock of the Corporation.

3.02. Regular Distributions of Net Income. Subject to any retained earnings and to the statutory requirements related to corporate distributions, the net income of the Corporation will be distributed as authorized by the Board of Directors to the Shareholders in proportion to the number of shares of the Corporation owned by each Shareholder.

**ARTICLE 4**
**LEGEND ON SHARE CERTIFICATES**

4.01. Legend on Share Certificates. Each share certificate, whether presently owned or subsequently acquired, shall be subject to the following condition, as if it was printed on each share certificate:

> "The securities evidenced by this certificate may not be sold, transferred, assigned, pledged, hypothecated or otherwise disposed of except in accordance with, and are subject to, transfer upon certain events described in a shareholder/buy-sell agreement, dated October ____, 2013, between the issuer and the registered holder hereof, a copy of which agreement is on file at the principal office of the issuer. Any attempted transfer that would violate these limitations is void."

4.02. Deposit of Shares with Corporation. Concurrently with the execution of this Agreement, each Shareholder shall deposit his share certificates with the Secretary of the Corporation. Despite the endorsement and deposit, each Shareholder shall have the right to vote shares held of record and to receive dividends paid on them until the shares are sold or transferred, as provided in this Agreement.

## ARTICLE 5
## RESTRICTIONS ON TRANSFER

5.01. Restrictions on Transfer. To accomplish the purposes of this Agreement, any transfer, sale, assignment, hypothecation, encumbrance, or alienation of any of the shares of the Corporation, other than according to the terms of this Agreement is void, and transfers no right, title, or interest in or to those shares to the purported transferee, buyer, assignee, pledgee, or encumbrance holder. Each Shareholder shall have the right to vote shares held of record and to receive dividends paid on them until the shares are sold or transferred in accordance with this Agreement.

5.02. Transfers Are Void. A Shareholder may not, at any time, transfer all or any part of his shares to a spouse, ancestors or lineal descendants (whether natural or adopted) or the spouses of any of such persons. A Shareholder may, however, transfer the right to receive the economic interest in the Corporation, such as dividend or commissions, to other persons.

## ARTICLE 6
## RIGHT OF FIRST REFUSAL
## TRANSFER OF SHARES: VOLUNTARY OR OTHERWISE
## AND MANDATORY BUY-SELL PROVISIONS

6.01. No Right to Assign. Other than assignment or transfer to the Shareholder/Shareholders' Trust/Family Trust, this Agreement, or the rights hereunder, may not be assigned without prior written consent of all Shareholders. While this Agreement is in effect, no Shareholder shall have any right to assign, encumber, or dispose of his shares except as provided herein. The existence of the Agreement, however, shall not affect each Shareholder's right to vote his share and receive any dividends thereon until such time as he/she, or his/her personal representative, has received the purchase price for such share, as provided herein.

6.02. Right of First Refusal. The Corporation and Shareholders shall have the Right of First Refusal in any transfer of the shares of the common stock of the Corporation, whether voluntary or involuntary (death, disability, forced buyout, etc.). No Shareholder shall sell, transfer, pledge, encumber, hypothecate, or in any way dispose of any of his/her shares or any right or interest in them without obtaining prior written consent of the Corporation and of all other Shareholders, unless all of the following procedure set forth in this Section 6.02 of this Agreement is complied with as follows:

Shareholder's Duties:

(a) If a Shareholder desires to transfer any portion or all of his shares in the common stock of the Corporation, Shareholder shall first deliver to the Secretary of the

Corporation a written notice of his intention to transfer his shares (hereafter "Offer Notice"). The Offer Notice shall be in accordance with Section 16.02 of this Agreement regarding notices;

(b) The Offer Notice shall be accompanied by an executed counterpart of any document of transfer, which must include the **name and address of the proposed transferee** and specify the **number of shares to be transferred, the price per share, and the terms of payment** (hereafter "**Counterpart**").

Corporation's Duties:

(c) Promptly on receipt of the notice, the Secretary of the Corporation shall forward a copy of the Offer Notice and the executed Counterpart to each member of the Corporation's Board of Directors, and within 15 days thereafter, a meeting of the Board of Directors shall be duly called, noticed, and held to consider the proposed transfer. For **45 days following notice to the Corporation** (45 days from the date the Offer Notice and Counterpart is served on the Secretary of the Corporation), Corporation shall have the option, but not the obligation, to purchase all or any part of the shares at the price and on the terms stated in the Offer Notice and Counterpart, or at a price determined in the same manner as is provided in Article 10 of this Agreement, **whichever price is lower.**

The Corporation's right to exercise the option and to purchase the stock is subject to the restrictions governing a corporation's right to purchase its own stock in *California Corporations Code* sections 500-501 and to any other pertinent governmental restrictions that are now, or may become, effective.

(d) **If the Corporation exercises the option** within the 45-day period, the Secretary of the Corporation **shall give written notice of that fact to the offering Shareholder**. The Corporation shall pay the purchase price in the manner provided in Section 8.02 of this Agreement.

(e) **If the Corporation DOES NOT exercise the option** within the 45-day period, the Secretary of the Corporation shall immediately forward a copy of the Offer Notice and the executed Counterpart to Shareholders (in accordance with Section 16.02 re: Notice) to the remaining Shareholders, who shall have the option, but not the obligation, to purchase any shares not purchased by the Corporation, at the price and on the terms stated in the Offer Notice and Counterpart, or at a price determined in the same manner as is provided in Article 10 of this Agreement, **whichever price is lower.**

Remaining Shareholders' Duties:

(f) Within 20 days after giving the notice, any Shareholder desiring to acquire any part or all of the shares offered shall deliver to the Secretary of the Corporation a **written election to purchase the shares or a specified number of them.** If the

total number of shares specified in the elections exceeds the number of available shares, each Shareholder shall have priority, up to the number of shares specified in his or her notice of election to purchase, to purchase the available shares in the same proportion that the number of the Corporation's shares that he or she holds bears to the total number of the Corporation's shares held by all Shareholders electing to purchase. The shares not purchased on such a priority basis shall be allocated in one or more successive allocations to those Shareholders electing to purchase more than the number of shares to which they have a priority right, up to the number of shares specified in their respective notices, in the proportion that the number of shares held by each of them bears to the number of shares held by all of them.

Corporation's further Duties:

(g) Within 10 days after the mailing of the notice to the Shareholders, the Secretary of the Corporation shall notify each Shareholder of the number of shares as to which his or her election was effective, and the Shareholder shall pay the purchase price in the manner provided in Article 9, and Section 8.02 of this Agreement.

(h) If the Corporation and the remaining Shareholders do not purchase all the shares set forth in the Offer Notice and Counterpart, all the shares may be transferred to the proposed transferee on the terms specified in the notice, at any time within 3 days after expiration of the Shareholders' option. The transferee will hold the shares subject to the provisions of this Agreement. No transfer of the shares shall be made prior to the end of 95 days after service of the Offer Notice and Counterpart by the offering Shareholder upon the Secretary of the Corporation, nor shall any change in the terms of transfer be permitted without a new notice of intention to transfer and compliance with the requirements of this Article 7 of the Agreement.

**Any transfer by any shareholder in violation of this paragraph shall be null and void and of no effect.**

6.03. Voluntary Disassociation. In the event a Shareholder no longer desires to be a Shareholder in the Corporation, the Shareholder must provide the Corporation with the Offer Notice. The Corporation and the remaining Shareholders shall have the option, but not the obligation, to purchase that Shareholder's shares of common stock of the Corporation using the procedures set forth in Section 6.02, at Fair Market Value as set forth in Article 9 of this Agreement, with payment terms as set forth in Section 8.02 of this Agreement. Since the offering Shareholder does not have an intended transferee other than Corporation and the Shareholders, the offering Shareholder does not need to provide the Corporation with a Counterpart.

6.04. Sale of Shares by Majority. In the event that the Majority shareholders want to sell their shares to a prospective Buyer, such sale shall include the sale of the shares of the minority shareholder, on the same terms and price as offered for the shares of Majority Shareholders.

//

## ARTICLE 7
## OBLIGATIONS OF TRANSFEREE

7.01. Obligations of Transferee. Unless this Agreement expressly provides otherwise, each transferee, or any subsequent transferee, of shares in the Corporation, or any interest in such shares, shall hold the shares or interest in the shares subject to all provisions of this Agreement and shall make no further transfers except as provided in this Agreement. Transfer of the shares shall not be entered on the books of the Corporation until an amended copy of this Agreement has been executed by the prospective transferee. Failure or refusal to sign such an amended copy of this Agreement shall not relieve any transferee from any obligations under this Agreement.

## ARTICLE 8
## PURCHASE ON OTHER EVENTS

8.01. Upon Death or Disability of a Shareholder. Upon the death or disability of a Shareholder, that Shareholder's estate/representative shall sell, and the Corporation shall purchase, all of the shares owned by the Shareholder at the time of the death or disability, for the price and upon the terms provided in Article 8 of this Agreement. **The estate or representative of deceased/disabled shareholder would only be entitled to the economic interest in the shares, i.e., cash value of the shares**. Each Shareholder's spouse agrees that, in the event of death or disability, the spouse would only be entitled to receive the cash value of the Shareholder's shares, as determined by Article 9 of this Agreement.

8.02. Upon Divorce. Each Shareholder and/or each Shareholder's spouse agrees that in the event of divorce, that Shareholder's spouse is only entitled to economic interest in the Corporation. This means that the Shareholder's spouse does not have the right to vote, or participate in any affairs of the Corporation. The value of the shares of each Shareholder is determined per Article 9 of this Agreement. Terms of payment of the spouse's interest are set forth in this Article 8, Sections 8.03 and 8.04.

8.03. Payment. The Corporation and other Shareholders shall have the right to pay for the shares as follows: forty percent (40%) of the value of the shares in cash; the balance in equal quarterly installments evidenced by a promissory note, the note payable twelve (12) months from the date of exercise of the option, with interest at the rate of prime plus six (6 %) per annum payable at its maturity. The promissory note shall include and be subject to the provisions of Section 8.05 hereof.

8.04. Payment in the event of Death or Disability or Divorce. In the event of death, disability, or divorce, however, if the Shareholders have purchased insurance, the insurance proceeds shall be used to pay for the purchase of the shares or spouse's interest in a divorce proceeding.

8.05. Promissory Note. Each promissory note given under this Articles 8 shall include and be subject to the following provisions:

(a) Each note shall provide that, if the payments are not received within 10 days of the due date under the note, such non-payment should be a Curable Default. In that event, the note holder shall provide the obligee under the note with a written

notice, giving the obligee 10 days to cure the default. If the Curable Default is not cured within ten (10) days, that shall be deemed as Non-Curable Default. In the event of a Non-Curable Default, at the election of the holder, all notes of the series shall, without further notice, immediately become due and payable;

(b) Each note shall provide that its maker agrees to pay the reasonable expenses of collection in the event of default, including reasonable attorneys' fees;

(c) Each note shall provide for prepayment, in whole or in part, at any time without penalty but only with the consent of the holder. Such right of prepayment shall apply to those notes last due in the series in inverse order; and,

(d) Each note shall be secured in a manner acceptable to all parties at the time the notes are given.

## ARTICLE 9
## VALUATION

9.01. <u>Valuation</u>. In the event of death, disability, divorce, voluntary transfer, or any other event triggering a buyout under this Agreement or under the mandatory provisions of the *California Corporations Code*, the Fair Market Value of the Corporation and the issued shares shall be determined as follows:

The Board of Directors shall select an accredited financial institution which will appraise and determine the Fair Market Value.

## ARTICLE 10
## INSURANCE

10.01. <u>Insurance</u>. The Corporation shall have the option, but not obligation, to purchase insurance on the lives of the Shareholders. This section shall only become operative after a unanimous decision, in writing, to purchase insurance on the lives of the Shareholders:

In the event that the Corporation elects to purchase insurance on lives of the shareholders, the Corporation shall apply for, and be the owner and primary beneficiary of, all life insurance policies subject to this Agreement and shall pay the premiums on all such policies as they fall due. The Corporation may apply policy dividends to the payment of premiums. Proof of premium payments shall be furnished by the Corporation whenever a Shareholder requests such proof. If the Corporation fails to pay a premium within ten (10) days after it falls due, the insured shall have the right to pay such premium and to be reimbursed therefore by the Corporation.

So long as this Agreement remains in effect, it is expressly agreed that the Corporation shall exercise none of the rights or privileges granted to it as owner by the terms of the policies (such as the right to borrow upon, surrender for cash, change the beneficiary, or assign a policy) except with the written consent of all the Shareholders.

//

Any addition of policies or other changes affecting the insurance under this Agreement shall be recorded in Schedule "C" attached hereto, and at all times, the provisions of this Agreement shall extend to all policies recorded in said Schedule "C".

Procedure. The procedure upon the death of a Shareholder shall be as follows:

(a) The Corporation, as beneficiary, shall promptly file claims to collect in cash the death proceeds of all the policies on the deceased Shareholder's life which are subject to this Agreement;

(b) Upon the collection of such proceeds and the qualification of a personal representative for the deceased Shareholder, the Corporation shall pay over to the personal representative an amount equal to the full proceeds collected, in part or in full payment for the deceased Shareholder's shares;

(c) If the death proceeds of all the policies on the deceased Shareholder's life are less than the total purchase price for his interest as provided herein, the Corporation shall either pay the balance forthwith in cash or, in lieu of such cash payment, shall execute and deliver to the personal representative a series of six (6) promissory notes of equal amount (except that the note last falling due may be for a lesser remaining balance), payable to his order. The first note shall be payable four (4) months after its execution date, and the remaining notes shall be payable at quarterly thereafter, with interest at the rate of ten (10%) per annum, the interest on each note shall be payable at its maturity. Each promissory note shall include and be subject to the provisions of Section 9 hereof; and,

(d) The personal representative of the deceased Shareholder shall promptly execute (and shall cause any other party or parties whose signatures may be necessary to transfer a complete title to the deceased Shareholder's shares to execute) and, concurrently with receipt of the full purchase price for the deceased Shareholder's shares (either in cash, or in cash and notes, as provided above), shall deliver all instruments necessary to effectuate the transfer of the deceased Shareholder's shares to the Corporation. Transfer of such shares shall be made free and clear of all taxes, debts, claims or other encumbrances whatsoever, except for that represented by any promissory notes given under Article 10, Paragraph (c) above.

## ARTICLE 11
## SHAREHOLDER WILLS AND REVOCABLE TRUSTS

11.01. Shareholder Wills and Revocable Trusts. Each Shareholder agrees to include in his/her will or revocable trust a direction and authorization to his or her executor or trustee to comply with the provisions of this Agreement and to sell his or her shares in accordance with this Agreement. However, the failure of any Shareholder to do so shall not affect the validity or enforceability of this Agreement.

//

## ARTICLE 12
## MANAGEMENT AND CONTROL

12.01. Board of Directors. The Corporation shall have four (4) directors, all of which shall be Shareholders of the Corporation. Each Shareholder named as a director shall remain a director so long as he/she is a Shareholder, and there is no violation of the terms of this Agreement. Any act or decision made by the Directors or the Shareholders may be evidenced in writing, executed by the requisite number of Shareholders as provided in this Agreement, or otherwise, as the Shareholders agree in writing.

During the term of this Agreement, the Directors will, when appropriate:

(a) Meet at least once annually to elect the Board of Directors and officers of the Corporation;

(b) Cause tax returns and reports to be sent to the Shareholders not later than 120 days after the close of the calendar/fiscal year, unless this requirement is expressly waived in the Bylaws of the Corporation;

(c) After filing the Corporation's original Articles of Incorporation, file any informational certificates that may be required by the California Secretary of State;

(d) Cause the Corporation to maintain the books, records, and other documents required by the *California Corporations Code*;

(e) Use best efforts to make sure the business of the Corporation is conducted in accordance with sound business practices;

(f) Within three months from execution of this Agreement, and thereafter at least once a year, meet and determine the salaries of the employees and officers of the Corporation.

12.02. President and Managing Officer. The President of the Corporation will be ________________, who will be the Corporation's managing officer. The President will control the day-to-day operations of the business and affairs of the Corporation. At each annual meeting, the Shareholders will elect the officers of the Corporation.

12.03. Approval of All Shareholders. Notwithstanding the provisions in Sections 12.01 and 12.02 of this Agreement, the written consent of the all Shareholders holding 75% or more shares in the Corporation is required to approve the following actions:

(a) Mergers or consolidations involving the Corporation;

(b) Amendment or repeal of the Articles of Incorporation of the Corporation;

(c) Issuance of shares of any class or other rights relating to the issuance of shares of the Corporation;

(d) Transfer of all, or substantially all, the assets of the Corporation;

(e) Amendment of this Agreement;

(f) Acceptance of a new shareholder;

$100,000.00 B.L.

(g) Incurring debts or liabilities in the aggregate amount of ~~$50,000~~ annually; and

(h) Voluntary Dissolution of the Corporation. Voluntary dissolution of the Corporation shall require the written consent of 50% of Shareholders.

12.04. Shareholders' Meetings. The Shareholders shall meet once annually. Although there will be no required Shareholders meetings except as the annual Shareholders meeting for taking any action specified in Sections 12.02 and 12.03, a special meeting may be called at any time by any Shareholder. The meetings can be conducted over the telephone and consents or approvals bearing the Shareholders' signatures may be obtained by facsimile or electronic mail.

## ARTICLE 13
## TERMINATION

13.01. Termination of Agreement. This Agreement shall terminate on:

(a) The written agreement of all parties;

(b) The dissolution, bankruptcy, or insolvency of the Corporation; or

(c) At such time as only one Shareholder remains.

## ARTICLE 14
## ARBITRATION

14.01. Arbitration. Any claim or controversy arising out of or relating to this Agreement, or arising out of or relating to the Corporation, or the rights or obligations of the Shareholders as shareholders, directors, officers, or employees of the Corporation will be determined by binding arbitration before a single arbitrator, at JAMS, AAA, or Judicate West, in Los Angeles County, California, according to their rules in effect at the time. Each party involved in an arbitration proceeding in accordance with this section will pay its own attorneys' fees, costs and expenses. The cost of conducting the arbitration proceeding itself, including the arbitrator's fees, will be borne by each party to it in proportion to the number of shares of the Corporation owned prior to the commencement of the proceeding.

//

//

## ARTICLE 15
## AMENDMENT

15.01. Amendment of Agreement. This Agreement may be amended only by written consent of all parties to the Agreement.

## ARTICLE 16
## MISCELLANEOUS PROVISIONS

16.01. Necessary Acts. All parties to this Agreement will perform any acts, including executing any documents that may be reasonably necessary to fully carry out the provisions and intent of this Agreement.

16.02. Notices. All notices, demands, requests, or other communications required or permitted by this Agreement shall be in writing and shall be deemed duly served when personally delivered to the party or to an officer or agent of the party, or when deposited in the United States mail, first-class postage prepaid, addressed to the Corporation at [address of Corporation's principal office], or to a Shareholder at the address appearing for him or her on the books and records of the Corporation, or at any other address the party may designate by written notice to the others.

16.03. Remedies. The parties will have all the remedies available to them for breach of this Agreement by law or in equity. The parties further agree that in addition to all other remedies available at law or in equity, the parties will be entitled to specific performance of the obligations of each party to this Agreement and immediate injunctive relief. The parties also agree that, if an action is brought in equity to enforce a party's obligations, no party will argue, as a defense, that there is an adequate remedy at law.

16.04. Attorneys' Fees. In the event of any litigation concerning this Agreement between the parties to this Agreement, or the parties to this Agreement and the estate of any deceased Shareholder, the prevailing party shall be entitled to, in addition to any other relief that may be granted, reasonable attorneys' fees.

16.05. Binding on Successors and Assigns. This Agreement will be binding on the parties to the Agreement and on each of their heirs, executors, administrators, successors, and assigns.

16.06. Severability. If any provision herein is unenforceable or invalid for any reason, the remaining provisions shall be unaffected by such a holding.

16.07. Governing Law. This Agreement shall be construed according to and governed by the laws of the State of California.

16.08. Entire Agreement. This instrument, and the referenced and attached Exhibits herein, constitutes the entire Shareholder Agreement of the Corporation and correctly sets forth the rights, duties, and obligations of each Shareholder and of each Shareholder to the other. Any prior agreements, promises, negotiations, or representations concerning the Agreement's subject matter not expressly set forth in this Agreement are of no force or effect.

parties hereto to express their mutual intent. This Agreement shall be construed without regard to any presumption or rule requiring construction (i) against the party causing all or any part of such instrument to be drafted or (ii) in favor of the party receiving a particular benefit under the Agreement. No rule of strict construction will be applied against any party hereto.

16.11. Third Parties: No Interest. Nothing in this Agreement (whether express or implied) is intended to or shall (i) confer any rights or remedies under or by reason of this Agreement on any persons other than the parties hereto and their respective successors and assigns, (ii) relieve or discharge the obligation or liability of any third person to any party hereto, or (iii) give any third person any right of subrogation or action against any party to this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement on October ___, 2013, and agree that the effective date shall be October 1, 2013.

Shareholders:

Benjamin Pouladian

Babak Sinai

Siamak Sinai

Saman Sinai

DECO ENTERPRISES, INC.

By:

Its: President Benjamin Pouladian

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436.**

On January 29, 2020, I served the foregoing document described as **Declaration of Benjamin Pouladian in Support of Ex Parte Application of for Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding, and Regarding Notice Given of Ex Parte Application**

on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

Amy Mousavi, Esq.
Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Thomas Pistone, Esq.
Pistone Law Group LLP
19200 Von Karman Ave, Suite 940
Irvine, California 92612
Email: tpistone@pistonelawgroup.com

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 29, 2020, at Encino, California.

John R. Yates

Electronically FILED by Superior Court of California, County of Los Angeles on 01/30/2020 03:29 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Sanchez,Deputy Clerk

Amy A. Mousavi, Esq., SBN: 228388
MOUSAVI & LEE, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9667
amousavi@mousavilee.com

Thomas A. Pistone, Esq., SBN: 77774
PISTONE LAW GROUP, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9660
tpistone@pistonelawgroup.com

**Attorneys for Defendant Craig Allen, Cross-Complainant/Defendant Deco Enterprises, Inc., and Cross-Complainants ABS Capitol, LLC and Babak Sinai**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

| | |
|---|---|
| BENJAMIN POULADIAN<br><br>Plaintiff,<br><br>v.<br><br>DECO ENTERPRISES; CRAIG ALLEN; and DOES 1 through 10, inclusive,<br><br>Defendants.<br>DECO ENTERPRISES, INC., a California Corporation; ABS CAPITOL, LLC, a California limited liability company; BABAK SINAI, an individual;<br><br>Cross-Complainants;<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN, an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | Case No.: 19STCV44475<br>Dept.: 078<br>Assigned For All Purposes To: Hon. Judge Robert S. Draper<br><br>**OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR ORDER CONFIRMING INTERIM PRELIMINARY INJUNCTION**<br><br>**[Filed concurrently with Declaration of Amy A. Mousavi]**<br><br>**Date: January 31, 2020**<br>**Time: 8:30 a.m.**<br>**Place: Department 78**<br><br>Action Filed: December 10, 2019 |

# I.

# SUMMAY OF ARGUMENT

The Court should deny Pouladian' Ex Parte Application for the following procedural and factual defects:

A) Benjamin Pouladian (hereafter "Pouladian"), has failed to comply with *California Rules of Court*, Rule 3.1202 (c), in that **Pouladian fails to make an affirmative factual showing** in a declaration containing competent testimony based on personal knowledge **of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte**;

B. The so called "injunction" issued by the *emergency arbitrator* is void for the following reasons:

1) JAMS rules do not have superior authority over *California Code of Civil Procedure* and Pouladian has failed to comply with the mandates of *California Civil Code of Civil Procedure* §1281.8 (b) requiring that a party to arbitration seek provisional relief from the superior court;

2) Pouladian **did not, and cannot show** i) any evidence of threatened behavior, to be enjoined; ii) irreparable harm, if the unidentified behavior were to occur, iii) probability of prevailing on his claim, and iv) Pouladian has not offered, or posted bond, in violation of *CCP*§§ 527, 529, and *California Rules of Court,* Rule 3.1150(f).

3) Notwithstanding Rule No. 2 of the JAMS Comprehensive Arbitration Rules and Procedures, the Deco Enterprises, Inc. ("Deco") and other shareholders, Bob Sinai, Saman Sinai and Siamak Sinai ("Sinai Parties") have not participated in submitting this matter to arbitration, and have not participated in any arbitrator selection procedures (to their knowledge there has been no procedure to review, qualify, or select an arbitrator). Therefore, no restraining order or preliminary injunction can issue.

# II.

# PROCEDURAL HISTROY

On December 10, 2019, at 2:37 p.m., Pouladian served Deco and Sinai Parties with a Demand for Arbitration [Exhibit "1" to Mousavi Declaration.] Then, on that same day, at 5:44

p.m., Pouladian filed a Complaint in Los Angeles Superior Court. On January 10, 2020, Pouladian filed an Amended Complaint, specifically adding the sixth cause of action as a declaratory relief by this Court, adding the two issues identified in his arbitration; i.e. Pouladian is a 30% shareholder and that the Buy-Sell Agreement. [Mousavi Declaration, Exhibit "1," page 3.] Meanwhile, Pouladian asked for the appointment of an emergency arbitrator, and filed his motion for preliminary injunction with the arbitrator, after he amended his complaint and in complete disregard of the mandates of *CCP* §1281.8 (b). The injunction papers filed by Pouladian did not state any evidence of irreparable harm, probability of prevailing, and no offer to post bond, again, in violation of *CCP*§§ 527, 528 and *Civil Code* §§ 3420, 3422. Most importantly, *CCP*§526(b)(5) which specifically states that an injunction cannot be issued to "prevent a breach of contract the performance of which would not be specifically enforced…"

On January 22, 2020, Deco, ABS Capitol, LLC, an entity not party to any arbitration agreement, and which Pouladian has put up as a collateral for Deco's debt fraudulently, and Bob Sinai, whose signature has been forged by Pouladian, filed a Cross-Complaint. On the same date, Deco filed an Answer to Pouladian's Amended Complaint. Pouladian has waived his right to arbitration.

## III.

## INTRODUCTION

Pouladian was the president and a director of Deco Enterprises, Inc. (hereafter "Deco"), since 2013, and one of four shareholders. Pouladian is a cousin of the other three shareholders of Deco, and was held in a fiduciary position. In August of 2019, he called a meeting at which Craig Allen, the CFO of Deco, and other shareholders were present. In that meeting, Pouladian admitted to forging another shareholder and director's signature, and converting over $400,000 worth of funds from Deco. After meeting, in response to Bob Sinai's text about these misconduct, Pouladian stated "***Ok. I give up my shares already I'm out.***" [Exhibit "2" to Mousavi Declaration.] This text was followed by Pouladian's resignations as the president and director, in multiple e-mails. [Exhibit "3" to Mousavi Declaration.]

Mr. Pouladian has since set out to destroy Deco by, *inter alia*, and as expressed in his texts

to Craig Allen on November 27, 2020, his efforts to tie up Deco in litigation for the next three years (Mousavi Declaration, Exhibit "4," Page 1), that Deco will not be around for many months (Mousavi Declaration, Exhibit "4," Page 2), and that Deco will be liquidated. [Mousavi Declaration, Exhibit "4," Page 4.] Now Pouladian has changed his position, and claims that he is a shareholder again, but his only intent is to interfere with Deco's ability to get financing, hoping that, in his own words, "Deco isn't going to be around for many more months, everything is falling apart." [Exhibit "4" to Mousavi Declaration.]

Deco's insolvency was caused by Pouladian's breach of fiduciary duty, breach of the Buy-Sell Agreement and converting Deco's funds, as detailed in the Cross-Complaint filed against him.

## IV.

## LEGAL ARGUMENT

A. Pouladian Has Failed To Identify Any Exigent Circumstances Required For An Ex Parte Application

*California Rules of Court*, Rule 3.1202 (c) states:

"An applicant **must** make an affirmative **factual showing in a declaration** containing competent testimony based on personal knowledge **of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte**. [California Rules of Court, Rule 3.1202 (c)] [Emphasis added.]

The declaration filed in support of the current Ex Parte Application does not contain any factual sowing of irreparable harm, immediate danger, or any other statutory basis for granting relief *ex parte*. The Court should therefore deny Pouladian's Ex Parte Application. This Ex Parte Application should be denied or alternatively, should be set for regularly noticed motion.

B. The So Called "Injunction" Issued By The *Emergency Arbitrator* Is Void.

1) The Injunction Issued By The Emergency Arbitrator Is Void Because JAMS Procedure Cannot, As A Matter of Law, Supersede *California Civil Code Of Civil Procedure* §1281.8 (B).

*CCP*§1281.8 states:

"(b) **A party to an arbitration agreement may file in the court in the county in**

> **which an arbitration proceeding is pending**, or if an arbitration proceeding has not commenced, in any proper court, **an application for a provisional remedy in connection with an arbitrable controversy**, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief. **The application shall be accompanied by a complaint or by copies of the demand for arbitration and any response thereto. If accompanied by a complaint, the application shall also be accompanied by a statement stating whether the party is or is not reserving the party's right to arbitration.**"

Pouladian has failed to comply with the mandates of *CCP* §1281.8(b), and therefore, the arbitrator's order issuing an injunction is void.

2) <u>Pouladian Did Not, And Cannot Show i) Irreparable Harm, ii) Probability of Prevailing On His Claim, and/or iii) Pouladian Has Not Offered, Or Posted Bond</u>.

In balancing a claim by a party seeking injunction on a summary basis, the legislature has created safeguards to avoid a situation, just as here.

- *CCP* §527(c)(1) requires showing of irreparable harm to applicant as follows:

> "No temporary restraining order shall be granted without notice to the opposing party, unless both of the following requirements are satisfied:
> (1) It appears from facts shown by affidavit or by the verified complaint that great or irreparable injury will result to the applicant before the matter can be heard on notice."

- *CCP* §529 (a) requires an undertaking prior to issuance of an injunction as follows:

  "On granting an injunction, **the court or judge must require an undertaking** on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction."

- *California Rules of Court,* Rule 3.1150(f) requires a proposed order for an undertaking.

3) <u>Pouladian Has Waived His Right To Arbitration</u>.

Deco and the individual shareholders also claim that Pouladian has waived his right to arbitration by:

- Filing a complaint after a demand for arbitration;
- Amending the Complaint to specifically add the issues identified in his demand

Arbitration;

- Deco has filed an Answer and a Cross-Complaint against Pouladian; and
- One of the Plaintiffs in the Cross-Complaint, ABS Capitol, LLC is not a party to the arbitration clause in the Buy-Sell Agreement;

Notwithstanding Rule No. 2 of the JAMS Comprehensive Arbitration Rules and Procedures, Deco and the other shareholders have not participated in submitting this matter to arbitration, and have not participated in any arbitrator selection procedures (to their knowledge there has been no procedure to review, qualify, or select an arbitrator). Therefore no restraining order or preliminary injunction can issue.

## V.

## CONCLUSION

Based on the foregoing reasons, Deco respectfully requests the Court to deny Pouladian's Ex Parte Application.

Dated: January 30, 2020

**MOUSAVI & LEE, LLP**
**PISTONE LAW GROUP, LLP**

**By:** Amy A. Mousavi
**Amy A. Mousavi, Esq.**
**Thomas A. Pistone, Esq.**

Attorneys for Defendant Craig Allen, Cross-Complainant/Defendant Deco Enterprises, Inc., and Cross-Complainants ABS Capitol, LLC and Babak Sinai

# PROOF OF SERVICE

**Pouladian v. Deco Enterprises, et al.**

**Los Angeles Superior Court**

**Case No. 19STCV44475**

I am employed in the county of Orange, State of California at **MOUSAVI & LEE, LLP.** I am over the age of 18 and not a party to the within action; my business address is 19200 Von Karman Avenue, Suite 940, Irvine, CA 92612.

On January 30, 2020 I served the foregoing document(s) described as: **OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR ORDER CONFIRMING INTERIM PRELIMINARY INJUNCTION** on the following interested parties in this action:

| | |
|---|---|
| John R. Yates, Esq.<br>YATES LITIGATION<br>16000 Ventura Boulevard<br>Tenth Floor, Suite 1000<br>Encino, CA 91436<br><br>Telephone: (818) 281-5891<br>Fax: (818) 561-3925<br>jyates@yateslitigation.com | *Attorney for Plaintiff Benjamin Pouladian* |

**BY MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons listed above and (1) deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid, or (2) placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

XX **BY ELECTRONIC SERVICE VIA ONELEGAL EFILING SERVICE:** I served the above-entitled document(s) through the OneLegal E-Filing Service at www.onelegal.com addressed to all parties appearing on the electronic service list for the above-entitled case. A copy of the One Legal Service Receipt Page/Confirmation will be maintained with the original document(s) in this office.

**BY OVERNIGHT DELIVERY:** I enclosed the documents in a sealed envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses indicated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

**BY PERSONAL SERVICE:** I personally delivered the documents to the persons at the addresses indicated above. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a

receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

**BY EMAIL TRANSMISSION**: I caused the aforementioned document(s) to be served via electronic mail to the electronic addressee(s) listed on the attached mailing list. Such document was transmitted successfully from my e-mail address to the indicated addressee(s).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 30, 2020 at Irvine, California.

/s/ Cheyenne Villanueva

Cheyenne Villanueva, Declarant

Electronically FILED by Superior Court of California, County of Los Angeles on 01/30/2020 03:29 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Sanchez,Deputy Clerk

Amy A. Mousavi, Esq., SBN: 228388
MOUSAVI & LEE, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9667
amousavi@mousavilee.com

Thomas A. Pistone, Esq., SBN: 77774
PISTONE LAW GROUP, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9660
tpistone@pistonelawgroup.com

**Attorneys for Defendant Craig Allen, Cross-Complainant/Defendant Deco Enterprises, Inc., and Cross-Complainants ABS Capitol, LLC and Babak Sinai**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

| | |
|---|---|
| BENJAMIN POULADIAN<br><br>Plaintiff,<br><br>v.<br><br>DECO ENTERPRISES; CRAIG ALLEN; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 19STCV44475<br>Dept.: 078<br>Assigned For All Purposes To: Hon. Judge Robert S. Draper<br><br>**DECLARATION OF AMY A. MOUSAVI IN SUPPORT OF OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR ORDER CONFIRMING INTERIM PRELIMINARY INJUNCTION**<br><br>**[Filed concurrently with Opposition to Plaintiff's Ex Parte Application]**<br><br>**Date: January 31, 2020**<br>**Time: 8:30 a.m.**<br>**Place: Department 78**<br><br>Action Filed: December 10, 2019 |
| DECO ENTERPRISES, INC., a California Corporation; ABS CAPITOL, LLC, a California limited liability company; BABAK SINAI, an individual;<br><br>Cross-Complainants;<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN, an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | |

# DECLARATION OF AMY A. MOUSAVI

1. I am an attorney duly licensed to practice before all Courts of the State of California, and am the attorney of record for Defendant Craig Allen and Cross-Complainant/Defendant Deco Enterprises. I make this declaration in support of Defendants' Opposition to Plaintiff's Ex Parte Application for Order Confirming Interim Preliminary Injunction. I have personal knowledge of the facts contained herein, and would and could competently testify thereto if called upon to do so.

2. On December 10, 2019, at 2:37 p.m., Mr. John Yates, counsel for Plaintiff Benjamin Pouladian ("Pouladian"), served Defendants Craig Allen and Deco Enterprises ("Deco") with a Demand for Arbitration. A true and correct copy of the Demand for Arbitration is attached hereto as Exhibit "1".

3. Then, on that same day, at 5:44 p.m., Pouladian filed a Complaint in the Los Angeles Superior Court.

4. On January 10, 2020, Pouladian filed an amended complaint, specifically adding the sixth cause of action as a declaratory relief by this Court, adding the two issues identified in his arbitration: i.e. Pouladian is a 30% shareholder and the Buy-Sell Agreement.

5. Meanwhile, Pouladian asked for the appointment of an emergency arbitrator, and filed his motion for preliminary injunction with the arbitrator, after he amended his complaint and in complete disregard to mandates of *CCP* §1281.8 (b).

6. On or about August 14, 2020, in response to Bob Sinai's text about his misconduct, he stated "***Ok. I give up my shares already I'm out.***" A true and correct copy of the text sent by Pouladian to Bob Sinai is attached hereto as Exhibit "2."

7. This text was followed by Pouladian's resignations as the president and director, in multiple e-mails. True and correct copies of the emails sent by Pouladian are attached hereto as Exhibit "3."

8. Pouladian has since set out to destroy Deco by *inter alia*, and in Pouladian's own words, his efforts to tie up Deco in litigation for the next three years, and that "Deco isn't going to be around for many more months, everything is falling apart." A true and correct copy of

Pouladian's text is attached hereto as Exhibit "4."

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 30th day of January 2020, at Irvine, California.

/s/ Amy A. Mousavi

AMY A. MOUSAVI

# EXHIBIT 1.

# Demand for Arbitration Form

## Instructions for Submittal of Arbitration to JAMS

## INSTRUCTIONS

Please submit this form to your local JAMS Resolution Center. Once the below items are received, a JAMS professional will contact all parties to commence and coordinate the arbitration process, including the appointment of an arbitrator and scheduling a hearing date.

**1-800-352-JAMS**
**www.jamsadr.com**

If you wish to proceed with an arbitration by executing and serving a Demand for Arbitration on the appropriate party, please submit the following items to JAMS with the requested number of copies:

A. **Demand for Arbitration** *(2 copies)*

B. **Proof of service of the Demand on the appropriate party** *(2 copies)*

C. **Entire contract containing the arbitration clause** *(2 copies)*
   - *To the extent there are any court orders or stipulations relevant to this arbitration demand, e.g. an order compelling arbitration, please also include two copies.*

D. **Administrative Fees**
   - *For two-party matters, the Filing Fee is $1,500. For matters involving three or more parties, the filing fee is $2,000. The entire Filing Fee must be paid in full to expedite the commencement of the proceedings. Thereafter, a Case Management Fee of 12% will be assessed against all Professional Fees, including time spent for hearings, pre- and post-hearing reading and research and award preparation. JAMS also charges a $1,500 filing fee for counterclaims. For matters involving consumers, the consumer is only required to pay $250. See JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses. For matters based on a clause or agreement that is required as a condition of employment, the employee is only required to pay $400. See JAMS Policy on Employment Arbitrations, Minimum Standards of Fairness. JAMS may apply its Employment Minimum Standards where an individual claims to have been misclassified as an independent contractor or otherwise improperly placed into a category other than employee or applicant for employment.*
   - *A refund of $600 will be issued if the matter is withdrawn within five days of filing. After five days, the filing fee is non-refundable.*

**Once completed, please submit to your local JAMS Resolution Center.**
*Resolution Center locations can be found on the JAMS website at: http://www.jamsadr.com/locations/.*

JAMS

# Demand for Arbitration Form (continued)

## Instructions for Submittal of Arbitration to JAMS

Add more respondents on page 6.

### TO RESPONDENT (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

RESPONDENT NAME: Deco Enterprises, Inc.

ADDRESS: 2915 Vail Avenue

CITY: Commerce STATE: CA ZIP: 90040

PHONE: 310-409-4616 FAX: EMAIL: sam@getdeco.com

### RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

REPRESENTATIVE/ATTORNEY: Amy Mousavi, Esq.

FIRM/COMPANY: Mousavi & Lee LLP

ADDRESS: 19200 Von Karman Avenue, Suite 940

CITY: Irvine STATE: CA ZIP: 92612

PHONE: 949-864-9667 FAX: EMAIL: amousavi@mousavilee.com

Add more claimants on page 7.

### FROM CLAIMANT

CLAIMANT NAME: Benjamin Pouladian

ADDRESS: 205 South Carmelina Avenue

CITY: Los Angeles STATE: CA ZIP: 90049

PHONE: 858-344-1554 FAX: EMAIL: ben.pouladian@gmail.com

### CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

REPRESENTATIVE/ATTORNEY: John R. Yates, Esq.

FIRM/COMPANY: Yates Litigation

ADDRESS: 16000 Ventura Boulevard, Suite 1000, Tenth Floor

CITY: Encino STATE: CA ZIP: 91436

PHONE: 818-381-5891 FAX: EMAIL: jyates@yateslitigation.com

# Demand for Arbitration Form (continued)

**Instructions for Submittal of Arbitration to JAMS**

## MEDIATION IN ADVANCE OF THE ARBITRATION

☐ If mediation in advance of the arbitration is desired, please check here and a JAMS Case Manager will assist the parties in coordinating a mediation session.

## NATURE OF DISPUTE / CLAIMS & RELIEF SOUGHT BY CLAIMANT

CLAIMANT HEREBY DEMANDS THAT YOU SUBMIT THE FOLLOWING DISPUTE TO FINAL AND BINDING ARBITRATION.
A MORE DETAILED STATEMENT OF CLAIMS MAY BE ATTACHED IF NEEDED.

(1) Is Claimant Benjamin Pouladian still a shareholder of Respondent Deco Enterprises, Inc.?

(2) Is the Shareholder and Buy-Sell Agreement of Deco Enterprises, Inc., a California Corporation, still in force and effect as to the signatories to the Buy-Sell Agreement?

AMOUNT IN CONTROVERSY (US DOLLARS) __________

# Demand for Arbitration Form (continued)

## Instructions for Submittal of Arbitration to JAMS

## ARBITRATION AGREEMENT

This demand is made pursuant to the arbitration agreement which the parties made as follows. ***Please cite location of arbitration provision and attach two copies of entire agreement.***

ARBITRATION PROVISION LOCATION

The arbitration agreement is at Article 14 ("Arbitration") of the Shareholder and Buy-Sell Agreement of Deco Enterprises, Inc., a California Corporation. Two copies of the Agreement are enclosed.

## RESPONSE

The respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. ***Send the original response and counter-claim to the claimant at the address stated above with two copies to JAMS.***

## REQUEST FOR HEARING

REQUESTED LOCATION 1925 Century Park East, 14th Floor, Los Angeles, California 90067

## ELECTION FOR EXPEDITED PROCEDURES (IF COMPREHENSIVE RULES APPLY)

*See:* ***Comprehensive Rule 16.1***

☐ By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.

## SUBMISSION INFORMATION

SIGNATURE [signature] DATE December 10, 2109

NAME (PRINT/TYPED) John R. Yates

# EXHIBIT 2.

5:49 PM

AUGUST 14, 2019

Good morning.
Very intense and disappointing meeting yesterday.
I could Not sleep last night thinking what Saman and Ben have done with our trust and our life saving .
I can only tell you that I personally will hold both of you responsible for your miss behaviors and been dishonest .
My family invested too much of hard time and money and you both crossed your boundaries.
Please be prepared to pav

dishonest .
My family invested too much of hard time and money and you both crossed your boundaries.
Please be prepared to pay for your actions and to be removed from Deco as principals.
Me and my brother Siamak will file a lawsuit to recover our properties with Ciena .
Saman and Ben you both figure it out how you can work together to rescue Deco biz or file a bankruptcy . 7:51 AM

Ok. I give up my shares already I'm out. 8:06 AM

# EXHIBIT 3.

**Amy Mousavi**

**Subject:** FW: Letter of Resignation

---------- Forwarded message ---------
From: **Ben Pouladian** <ben@getdeco.com>
Date: Fri, Aug 16, 2019 at 4:49 PM
Subject: Letter of Resignation
To: Sam Sinai <sam@getdeco.com>
Cc: Craig Allen <Callen@getdeco.com>, Sheree Nelson <snelson@getdeco.com>, Sam Sinai <sam@capitalelectricalsupply.com>, Bob Sinai <bob@orionracking.com>

Mr. Saman Sam Sinai

CEO

Dear Sam:
In light of the disputes among the partners in Deco Enterprises, Inc., I have reached the conclusion that the best course of action for me is to resign as President of the company rather than invest new capital in Deco. This letter is my resignation, and it is effective immediately.

I support your efforts to locate another investor to take my place and will cooperate as needed and requested with any potential new investor or investors you locate, including but not limited to transferring my shares to the new partner(s) for a nominal sum.

Wishing you and Deco Lighting all the best!

Sincerely,
Thank you,

**Ben Pouladian** | President
Deco Lighting | 2917 Vail Avenue | Commerce CA 90040
tel: (310) 366-6866 ext 208 | fax: (310) 366-6855
ben@getdeco.com | www.getdeco.com

**Amy Mousavi**

**Subject:** FW: Resignation from board of Deco Enterprises, Inc.

---------- Forwarded message ---------
From: **Ben Pouladian** <ben.pouladian@gmail.com>
Date: Tue, Aug 20, 2019 at 10:49 AM
Subject: Resignation from board of Deco Enterprises, Inc.
To: <ara@encorelaw.com>
Cc: Craig Allen <callen@getdeco.com>, sam@getdeco.com <sam@getdeco.com>, <sam@capitalelectricsupply.com>, Bob Sinai <bob@orionracking.com>

Gentlemen,

Please take notice that I am resigning as a Director of Deco Lighting, Inc., effective immediately with the transmission of this email on August 20, 2019.

I am also sending my resignation via US Mail to Mr. Ara Babaian at Encore Law.

Very truly yours,

Ben Pouladian

# EXHIBIT 4.



VZW Wi-Fi 11:22 AM

Delete All Cancel

Craig

Hi Craig, as an employee you have nothing to win in this fight, but everything to lose!
I'd rather not have you sucked into our Two generation old Iranian family dispute.
Now is your last chance to get out ahead
Go and try getting a job in the next 3 years while you have pending litigation for your personal act of converting my credit card funds into your $250,000 salary
And let's be honest with


VZW Wi-Fi
11:23 AM
Delete All
Cancel
Craig
And let's be honest with ourselves, Deco isn't going to be around for many more months, everything is falling apart.
You have no job stability here.
Don't ruin the rest of your further work career by getting involved in our ugly family shareholder dispute
You have already caused me Major financial harm, as a shareholder I want you out of this company as of Today! You have a very critical choice to make today and so do I.

VZW Wi-Fi 11:23 AM

Delete All CA Cancel

Craig

And let's be honest with ourselves, Deco isn't going to be around for many more months, everything is falling apart. You have no job stability here.
Don't ruin the rest of your further work career by getting involved in our ugly family shareholder dispute
You have already caused me Major financial harm, as a shareholder I want you out of this company as of Today! You have a very critical choice to make today and so do I.

VZW Wi-Fi 11:23 AM

Delete All CA Cancel

Craig

further work career by getting involved in our ugly family shareholder dispute
You have already caused me Major financial harm, as a shareholder I want you out of this company as of Today! You have a very critical choice to make today and so do I. The next move you make will affect the rest of your life's business career. I don't want you to get stuck in the middle of this war, it is about to get Very ugly as the company will be liquidated.

**PROOF OF SERVICE**

**Pouladian v. Deco Enterprises, et al.**

**Los Angeles Superior Court**

**Case No. 19STCV44475**

I am employed in the county of Orange, State of California at **MOUSAVI & LEE, LLP.** I am over the age of 18 and not a party to the within action; my business address is 19200 Von Karman Avenue, Suite 940, Irvine, CA 92612.

On January 30, 2020 I served the foregoing document(s) described as: **DECLARATION OF AMY A. MOUSAVI IN SUPPORT OF OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR ORDER CONFIRMING INTERIM PRELIMINARY INJUNCTION** on the following interested parties in this action:

| | |
|---|---|
| John R. Yates, Esq.<br>YATES LITIGATION<br>16000 Ventura Boulevard<br>Tenth Floor, Suite 1000<br>Encino, CA 91436<br><br>Telephone: (818) 281-5891<br>Fax: (818) 561-3925<br>jyates@yateslitigation.com | *Attorney for Plaintiff Benjamin Pouladian* |

**BY MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons listed above and (1) deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid, or (2) placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

XX **BY ELECTRONIC SERVICE VIA ONELEGAL EFILING SERVICE:** I served the above-entitled document(s) through the OneLegal E-Filing Service at www.onelegal.com addressed to all parties appearing on the electronic service list for the above-entitled case. A copy of the One Legal Service Receipt Page/Confirmation will be maintained with the original document(s) in this office.

**BY OVERNIGHT DELIVERY:** I enclosed the documents in a sealed envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses indicated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

**BY PERSONAL SERVICE:** I personally delivered the documents to the persons at the addresses indicated above. (1) For a party represented by an attorney, delivery was made

(a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

**BY EMAIL TRANSMISSION**: I caused the aforementioned document(s) to be served via electronic mail to the electronic addressee(s) listed on the attached mailing list. Such document was transmitted successfully from my e-mail address to the indicated addressee(s).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 30, 2020 at Irvine, California.

/s/ Cheyenne Villanueva

Cheyenne Villanueva, Declarant

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Fax: (818) 561-3925
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff Benjamin Pouladian
And Cross-Defendants Benjamin Pouladian
And Edith Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

Benjamin Pouladian,

Plaintiff,

vs.

Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive

Defendants.

DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,

Cross-Complainants,

v.

BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,

Cross-Defendants.

**CASE NO.: 19STCV44475**

HON. ROBERT S. DRAPER – DEPARTMENT 78

UNLIMITED JURISDICTION

**[Proposed} Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding JAMS No. 1210037093**

Date: January 31, 2020
Time: 8:30 a.m.
Place: Department 78

**ACTION FILED:** December 10, 2019



Yates Litigation

GOOD CAUSE APPEARING, IT IS HEREBY ORDERED THAT:

1. A temporary injunction to preserve the *status quo* in shall issue in favor of plaintiff and cross-defendant Benjamin Pouladian, enjoining defendant and cross-complainant Deco Enterprises, Inc. from standing in the way of Pouladian's exercising his right to vote as a 30% shareholder of Deco Enterprises, Inc.; and
2. This temporary injunction shall remain in place until the earlier of: (a) a contrary determination by the Arbitrator appointed to the arbitration proceeding or by the Court; (b) a determination on the merits of Deco Enterprises, Inc.'s claim that Pouladian relinquished ownership of his shares and is no longer a shareholder; or (c) other good cause shown.

DATED: ______________________

______________________
HONORABLE ROBERT S. DRAPER
JUDGE OF THE SUPERIOR COURT

Yates Litigation

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436**.

On January 29, 2020, I served the foregoing document described as **[Proposed} Order Confirming Interim Preliminary Injunction Awarded in Arbitration Proceeding JAMS No. 1210037093**

on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

Amy Mousavi, Esq.
Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Thomas Pistone, Esq.
Pistone Law Group LLP
19200 Von Karman Ave, Suite 940
Irvine, California 92612
Email: tpistone@pistonelawgroup.com

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 29, 2020, at Encino, California.

John R. Yates

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Fax: (818) 561-3925
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff Benjamin Pouladian
And Cross-Defendants Benjamin Pouladian
And Edith Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| Benjamin Pouladian,<br><br>Plaintiff,<br><br>vs.<br><br>Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive<br><br>Defendants. | **CASE NO.: 19STCV44475**<br><br>HON. MITCHELL L. BECKLOFF – DEPARTMENT 86<br><br>UNLIMITED JURISDICTION<br><br>**Supplemental Brief in Support of Motion for Preliminary Injunction to Preserve Plaintiff Benjamin Pouladian's Voting Rights as a 30% Shareholder of Defendant Deco Enterprises, Inc.**<br><br>**Declarations of John Yates and Benjamin Pouladian Filed Concurrently.** |
| DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,<br><br>Cross-Complainants,<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | Date: February 21, 2020<br>Time: 9:30 a.m.<br>Place: Department 86<br><br>**ACTION FILED:** December 10, 2019 |



Yates Litigation

Yates Litigation

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

### A. Deco Enterprises, Inc.

Respondent Deco Enterprises, Inc. ("Deco") is a California corporation formed on March 16, 2005. Share ownership since inception has been 30% for Pouladian, 30% for Respondent Saman Sinai, and 20% each for Respondents Babak Sinai and Siamak Sinai. Pouladian was President of Deco since the company was formed, until his resignation from the office in August 2019. Pouladian, with Respondent Saman Sinai, were the owners actively managing Deco's business operations. Approximately $300,000 of Deco's initial capital was provided by claimant's father, Abraham Pouladian.

Deco manufactures and sells commercial lighting fixtures. Currently, Deco's gross receipts are $35,000,000 to $40,000,000 annually, its accounts receivable are approximately $3,000,000, and it holds inventory worth approximately $10,000,000. The Deco name is widely known among consumers of its products, which include many large corporations such as Rexel, CED and Graybar. The company currently employs approximately 50 persons.

Deco is a valuable company, but in the last 12 to 18 months Deco was compelled to take on more debt in order to sustain its ability to pay current obligations when due. Deco's primary lender, Siena Lending Group, LLC ("Siena"), required additional collateral to continue factoring Deco's receivables. Part of creating that collateral was subordinating promissory notes from Deco to Pouladian and to Saman Sinai given in connection with their investment of $325,000 each in Deco in October 2018 and April 2019. Notwithstanding the continuation of Siena's credit facility, Pouladian believes based on his knowledge of the financial condition of Deco through the date of his resignation that the company will need to be recapitalized in order to sustain operations over the long term.

### A. The Buy Sell Agreement

The Buy Sell Agreement was agreed upon on October 1, 2013 by Pouladian, the other three shareholders, and Deco. Three Articles of the Buy Sell Agreement are pertinent here.

The entirety of Article 6 sets forth the restrictions on transfers of shares of Deco by the four owners to third parties. Essentially, transfer is prohibited without first allowing Deco, and then the individual shareholders, the opportunity to acquire the shares from the transferor at the transfer price to the third party. Paragraph 6.03 provides that when a shareholder wishes to voluntarily disassociate from Deco, the same options to purchase the shares of the withdrawing owner by the corporation and by the other shareholders apply. Finally, paragraph 6.03 provides for a Fair Market Valuation of the shareholder's shares when a shareholder wishes to voluntary dissociate from the company.

Article 12 discusses management and control of Deco. Paragraph 12.03 itemizes the actions that require the written consent of shareholders holding 75% or more of Deco's shares. To reach this threshold, both Pouladian and Saman Sinai, the other 30% shareholder, would need to agree, along with one of the 20 % shareholders. Actions requiring 75% approval include: 12.03(a) Mergers or acquisitions involving the Corporation; 12.03(b) Amendment or repeal of the Articles of Incorporation of the Corporation; 12.03(c) Issuance of shares of any class or other rights relating to the issuance of shares of the Corporation; 12.03(d) Transfer of all, or substantially all, the assets of the Corporation; 12.03(e) Amendment of this Agreement; 12.03(f) Acceptance of a new shareholder; and 12.03(g) Incurring debts or liabilities in the aggregate amount exceeding $100,000 annually. Most or all of these provisions would likely be implicated in any recapitalization of Deco involving a new investor, or combining Deco's assets with the assets of another entity.

Article 13 of the Buy Sell Agreement provides that it shall remain in effect until such time as Deco is voluntarily dissolved, has a single shareholder, is in bankruptcy or insolvent. Absent the occurrence of one of these events, all shareholders and Deco can terminate the Agreement by unanimously agreeing to do so.

### B. Deco's Claims That Pouladian Relinquished His Shares In Deco, And That The Buy Sell Agreement Is No Longer Applicable Because Deco Is Insolvent

In a lengthy email sent on December 9, 2019 to attorney Yates, Deco's counsel Amy Mousavi opened by stating that Pouladian "expressly gave up his shares. He was never forced to do anything; we have written documentation from Mr. Pouladian to that effect." Ms. Mousavi reiterated

the same position in a telephone call with Mr. Yates on December 19, 2019, and also stated her position that the Buy Sell Agreement is no longer in effect because Deco is insolvent.

Notwithstanding attorney Mousavi's claim that Pouladian relinquished his shares, Pouladian received no response to his email to CFO Allen offering to relinquish his shares. Allen did not accept the offer and did not respond by asserting that Pouladian had already relinquished his shares. If fact, neither Allen nor any other shareholder responded at all, and Pouladian expressly withdrew his proposal via an email sent to Allen on November 1, 2019. It is also beyond dispute that the claimed "relinquishment" of Deco shares by Pouladian did not occur in compliance with Article 6 of the Buy Sell Agreement. He did not submit a formal Offer Notice as specified by paragraph 6.02 of the Buy Sell Agreement, or state the number of shares, or the price per share. Pouladian did not receive at any time from Deco, or from any of the other shareholders, or from any new investor, any expression of interest in acquiring his shares, as required by paragraph 6.03 of the Buy Sell Agreement. He has also received no information from Deco that a valuation process was underway to determine the Fair Market Value of his shares, as specified by paragraph 6.03. Finally, he has not signed any of the share certificates in his name to permit their transfer to any other person, and to his knowledge those certificates remain in the possession of Siena as part of the collateral for its financing of Deco.

Deco's assertion that the Buy Sell Agreement is no longer in effect because of alleged insolvency is also incorrect. At the time of Pouladian's resignation in August 2019, Deco was able to meet its debts as they came due, even though that was occasionally difficult. Within the last month, Pouladian has spoken with several suppliers, customers, and sales representatives of Deco with whom he became friends during his 14 years as Deco's President. These persons include Michael Yu of Grandlite, Eric Lee of Shanghai Supertek, Donal Drew of Dan Hengstler Priority Lighting, and Robert Lallement and John Molak of Rexel Energy Solutions. All of these individuals told Pouladian that their companies were still buying or selling to Deco, or ordering and shipping Deco products, which indicates strongly that Deco is still operating and still solvent.

Deco's denial of Pouladian's share ownership, and of the Buy Sell Agreement's current validity, is nothing more than a way to strip him of his significant equity ownership in Deco without being consulted and without being allowed to vote his shares on any proposal on the table. Pouladian



Yates Litigation

needs interim relief to maintain the *status quo*, and needs it now, while his status as a shareholder and the applicability of the Buy Sell Agreement are being litigated.

**II.**

**A PRELIMINARY INJUNCTION MAINTAINING POULADIAN'S SHAREHOLDER STATUS AND MAINTAINING THE BUY SELL AGREEMENT IN EFFECT PER ITS TERMS IS WARRANTED**

C.C.P. §527(a) provides that the Court may grant a preliminary injunction at any time before judgment, upon notice to the opposing party, if affidavits show sufficient grounds for the injunction. The standard for granting a preliminary injunction is well established. The Supreme Court in White v. Davis, 30 Cal.4th 528, 554 (2003), summarized the then current, and still current, applicable law as follows:

> "To obtain a preliminary injunction, a plaintiff ordinarily is required to present evidence of the irreparable injury or interim harm that it will suffer if an injunction is not issued pending an adjudication of the merits. (*See City of Torrance v. Transitional Living Centers for Los Angeles, Inc.* (1982) 30 Cal.3d 516, 526 [179 Cal. Rptr. 907, 638 P.2d 1304].)
>
> Past California decisions further establish that, as a general matter, the question whether a preliminary injunction should be granted involves two interrelated factors: (1) the likelihood that the plaintiff will prevail on the merits, and (2) the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief. As explained in *IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69-70 [196 Cal. Rptr. 715, 672 P.2d 121]: 'This court has traditionally held that trial courts should evaluate two interrelated factors when deciding whether or not to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued.' As the court in *IT Corp.* further noted: 'The ultimate goal of any test to be used in deciding whether a preliminary injunction should issue is to minimize the harm which an erroneous interim decision may cause. [Citation.]'"

Analysis of the applicable factors in connection with the facts present in this action demonstrates that a preliminary injunction should issue to prohibit Deco from treating the Buy Sell Agreement as inapplicable, and Pouladian as a non-shareholder, during the pendency of this arbitration.





Yates Litigation

A. Pouladian Will Suffer Irreparable Harm If Deco Is Permitted To Pursue Major Changes In Equity Structure In Connection With Recapitalization While Excluding Pouladian

Pouladian is handicapped by the information blackout on Deco's end regarding any proposals for recapitalization, merger, consolidation or acquisition that may be in play at present. Nonetheless, some likely results of any significant restructuring or recapitalization are obvious.

Initially, Deco's consideration of restructuring or recapitalization offers without providing adequate information – or in the case of Pouladian, any information -- about the proposals to the shareholders is itself irreparable harm. *See, e.g.*, In re Atheros Communications, Inc. Shareholder Litigation, No. 6124-VCN (Delaware Court of Chancery 2011) ("The shareholders, now asked to approve the sale of Atheros, are entitled to full and complete disclosure of all material facts before they vote. . .. and . . . a breach of the disclosure duty actually results in irreparable harm to the stockholders that is better addressed through an injunctive remedy."); Sealey Mattress Company of New Jersey, Inc. v. Sealey, Inc., 532 A.2d 1324, 1340 (Delaware Court of Chancery 1987); In re Staples, Inc. Shareholder Litigation, 792 A.2d 934, 960 (Delaware Court of Chancery 2001).

Most conceivable forms of recapitalization will likely involve a significant restructuring of the equity of Deco's current shareholders as a matter of necessity. Such restructuring while Pouladian is effectively presented from considering the terms constitutes irreparable harm because damages would be difficult to assess and because of the absence of effective choice by Pouladian. Sealey Mattress, *id.* at 1341; In the Matter of the Petition of XTF Global Asset Management, LLC, 2010 NY Slip Op 30422(U) (Supreme Court New York County 2010) (pledging of minority shareholder's 15% stake by majority shareholder to attract capital in restructuring constitutes irreparable harm).

Under California law, the right to vote shares owned in a corporation is a property right. Klaus v. Hi-Shear Corp., 528 F.2d 225, 234 (9th Cir. 1975), *citing*, Meyberg v. Superior Court, 19 Cal.2d 336, 342 – 344 (1942) (temporary restraining order prohibiting shareholders from interfering with minority shareholder's right to vote shares upheld). Like ownership of a specific parcel of real property, the right to vote shares in a specific company is unique. Permitting Deco to abrogate



Yates Litigation

Pouladian's property rights in any restructuring by the simple expedients of asserting that he is no longer a shareholder in Deco and the Buy Sell Agreement no longer applies will take that unique right from him permanently, and the loss is not compensable in money damages.

Finally, one very possible outcome of a recapitalization of Deco is the merger of Deco into a suitor company and the disappearance of Deco as an entity. That deal could be structured to ensure that Pouladian is unable to recover his subordinated loan of $325,000, or the "old debt" from his father Abraham's initial capitalization of approximately $300,000 that Deco has never paid. If Deco no longer exists as an entity, there is no person from which Pouladian, or Pouladian's family, could collect those debts. There would be a harm of over $600,000 in loss no longer compensable in money and thus constituting irreparable harm suitable for injunctive relief.

**B. <u>Deco Will Suffer Minimal Harm If An Injuction Issues To Maintain The Status Quo</u>**

A restructuring or recapitalization of Deco can surely occur while Pouladian is considered a shareholder of the company, and if his voting rights under the Buy Sell Agreement are maintained in force, during the pendency of this litigation. Pouladian, and presumably the other shareholders as well, have no incentive to obstruct a process that could maintain some or all of the value of their current shareholding interest in Deco. Therefore, providing the shareholders with full information regarding each proposal, and permitting the shareholders to consider and vote on them will cause no harm. If at the end of this litigation the result is that Pouladian had actually relinquished his voting rights and yet a shareholder vote was taken on a proposal, there is no harm. Similarly, if Pouladian is found to have relinquished his shares, his new interest after restructuring or recapitalization can simply be distributed pro rata to the remaining shareholders. Again, there is no harm.

## IV.

## POULADIAN WILL LIKELY PREVAIL ON THE MERITS

Pouladian made an offer to sell his shares at a nominal price to help Deco. The offer was terminated on November 1, 2019, and was not accepted before then by Deco or any other shareholder. Additionally, none of the processes described in paragraph 6 of the Buy Sell Agreement were followed by either Pouladian or Deco, and no Fair Market Valuation is known to be in progress. Under simple contract rules, or under the terms of the Buy Sell Agreement, Pouladian's



Yates Litigation

shares in Deco have not been transferred.

None of the events specified in the Buy Sell Agreement that terminate the Agreement are known to have occurred. The event cited by counsel for Deco – insolvency – is not present, given that the company is still producing, shipping, and buying to and from customers and its vendors.

## V.

## CONCLUSION

Something is now or soon will be happening with regard to the recapitalizing or restructuring of Deco, and Pouladian is being shut out of the process entirely. This continuing stonewall by Deco threatens Pouladian with a variety of irreparable harms, given that it is more likely than not that he remains a 30% shareholder in Deco and has the right to receive full information, and given that it is more likely than not that the Buy Sell Agreement giving Pouladian the right to vote on restructuring and recapitalization and other major changes remains in effect. Enjoining Deco from unilaterally declaring that Pouladian is no longer a shareholder, and that he no longer has voting rights under the Buy Sell Agreement, during the pendency of this litigation will not harm Deco in the least, but will prevent irreparable harm to Pouladian. The preliminary injunction sought should be granted, so that Pouladian must be treated as if he were a 30% shareholder of Deco, and his voting rights as a shareholder under Article 12 of the Buy Sell Agreement are preserved so long as the Agreement remains in effect pursuant to its terms.

DATED: February 3, 2020

YATES LITIGATION

By: [signature]
JOHN R. YATES
Attorneys for Plaintiff
Benjamin Pouladian

Yates Litigation

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436**.

On February 3, 2020, I served the foregoing document described as **Supplemental Brief in Support of Motion for Preliminary Injunction to Preserve Plaintiff Benjamin Pouladian's Voting Rights as a 30% Shareholder of Defendant Deco Enterprises, Inc.**

on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

**SEE ATTACHED LIST**

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 3, 2020, at Encino, California.

John R. Yates

Amy Mousavi, Esq.

Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Attorney for Deco Enterprises, Inc. and Craig Allen

Thomas Pistone, Esq.
Pistone Law Group LLP
19200 Von Karman Ave, Suite 940
Irvine, California 92612
Email: tpistone@pistonelawgroup.com

Attorney for Babak Sinai, Saman Sinai and Siamak Sinai

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Fax: (818) 561-3925
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff Benjamin Pouladian
And Cross-Defendants Benjamin Pouladian
And Edith Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| Benjamin Pouladian,<br>Plaintiff,<br>vs.<br>Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive<br>Defendants. | **CASE NO.: 19STCV44475**<br>HON. MITCHELL L. BECKLOFF – DEPARTMENT 86<br>UNLIMITED JURISDICTION<br>**Declaration of John Yates in Support of Motion for Preliminary Injunction**<br>Date: February 21, 2020<br>Time: 9:30 a.m.<br>Place: Department 86<br>**ACTION FILED:** December 10, 2019 |
| DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,<br>Cross-Complainants,<br>v.<br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br>Cross-Defendants. | |

Yates Litigation

I, John Yates, state that:

1. I have personal knowledge of the facts set forth herein and first-hand knowledge of same. If called upon to testify and placed under oath I could and would testify competently thereto.

2. I am counsel of record for claimant Benjamin Pouladian in this proceeding and am familiar with the facts underlying it.

3. Attorney Amy Mousavi of Mousavi & Lee LLP is counsel of record for Deco Enterprises, Inc. I learned on January 9, 2020 that attorney Thomas Pistone is representing Babak Sinai and Siamak Sinai. As far as I am aware, Saman Sinai is still unrepresented by counsel.

4. In an email to me dated December 10, 2019, which was copied to Mr. Pouladian, Ms. Mousavi advised me that Pouladian had given up his shares in Deco via a text message responding to another shareholder, and orally at a meeting.

5. In a lengthy telephone conversation with Ms. Mousavi on December 19, 2019, she continued to assert that Mr. Pouladian had given up his shares in Deco. She also asserted that the Buy Sell Agreement among all shareholders and Deco no longer applied because Deco was insolvent. Finally, at that time, in response to my inquiry as to whether Ms. Mousavi represented Deco, only, or Deco plus one or more shareholders, she stated that she represented only Deco.

6. On December 10, 2019 I sent to Ms. Mousavi a demand for inspect Deco's financials since Mr. Pouladian resigned as President until the present, based on Mr. Pouladian's status as a 30% shareholder of Deco. Ms. Mousavi advised that for the purposes of that inspection demand, Deco would consider Mr. Pouladian to be a shareholder, and would provide the information requested. As of December 24, none of the information requested has been received. During the first week of 2020, Ms. Mousavi did provide financials for Deco, but no information concerning any potential restructuring or recapitalization of the company.

7. On December 10, 2019 I also filed an action on Mr. Pouladian's behalf against Deco in the Los Angeles Superior Court, seeking recovery of over $400,000 in business expenses owed by Deco to Mr. Pouladian, which Deco refuses to pay. I did not view the recovery of unpaid business expenses as a subject of mandatory arbitration under the Buy Sell Agreement and will review that determination. At present, no answer or other responsive pleading has been filed by Deco.



Yates Litigation

8. The shareholders in Deco other than Mr. Pouladian are all members of the Sinai family and all have Sinai as their last name. In the first week of December, I was using the California Secretary of State "business entity search" function on another case and I decided to type in "Sinai." When I clicked on the search function for LLCs, on page 2 of the results I noted Ms. Mousavi's name. She was the Organizer for Sinai Development Company, LLC. A copy of the print-out of that document is attached to Mr. Pouladian's declaration.

I swear under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 10th day of January 2020, at Los Angeles, California.

[signature]
John Yates

Yates Litigation

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436.**

On February 3, 2020, I served the foregoing document described as **Declaration of John Yates in Support of Motion for Preliminary Injunction**

on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

**SEE ATTACHED LIST**

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 3, 2020, at Encino, California.

John R. Yates

Amy Mousavi, Esq.

Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Attorney for Deco Enterprises, Inc. and Craig Allen

Thomas Pistone, Esq.
Pistone Law Group LLP
19200 Von Karman Ave, Suite 940
Irvine, California 92612
Email: tpistone@pistonelawgroup.com

Attorney for Babak Sinai, Saman Sinai and Siamak Sinai

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Fax: (818) 561-3925
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff Benjamin Pouladian
And Cross-Defendants Benjamin Pouladian
And Edith Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| Benjamin Pouladian,<br><br>Plaintiff,<br><br>vs.<br><br>Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive<br><br>Defendants. | **CASE NO.: 19STCV44475**<br><br>HON. MITCHELL L. BECKLOFF – DEPARTMENT 86<br><br>UNLIMITED JURISDICTION<br><br>**Declarations of Benjamin Pouladian in Support of Motion for Preliminary Injunction** |
| DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,<br><br>Cross-Complainants,<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | Date: February 21, 2020<br>Time: 9:30 a.m.<br>Place: Department 86<br><br>**ACTION FILED:** December 10, 2019 |

I, Benjamin Pouladian, state that:

1. I have personal knowledge of the facts set forth herein and first-hand knowledge of same. If called upon to testify and placed under oath I could and would testify competently thereto.

2. Respondent Deco Enterprises, Inc. ("Deco") is a California corporation formed on March 16, 2005. Share ownership since inception has been 30% for me, 30% for Respondent Saman Sinai, and 20% each for Respondents Babak Sinai and Siamak Sinai. Approximately $750,000 of Deco's initial capital was provided by my father, Abraham Pouladian, of which $412,000 has been repaid. Between March 2005 until around the middle of 2017, Deco generated additional capital from operations and was a profitable company.

3. I was President of Deco beginning with the formation of the company until I resigned from the office in August 2019. Saman Sinai and I were the two owners who actively managed Deco's business operations.

4. Deco manufactures and sells commercial lighting fixtures. As of the date of my resignation, Deco was on track to gross approximately $35,000,000 in sales in 2019, which is down from about $45,000,000 four and five years ago. As of August 2019, Deco had accounts receivable of approximately $3,000,000, and inventory worth approximately $10,000,000. The Deco name is widely known among consumers of its products, which include many large corporations such as Rexel, CED and Graybar. In August, Deco employed approximately 50 persons.

5. Deco is a valuable company, but in August 2017 Deco was compelled to acquire outside financing in order to maintain its operations. At that time, Deco began factoring its receivables with Siena Lending Group, LLC ("Siena"). Siena's collateral is a lien on all of Deco's receivables, and all of Deco's remaining corporate property. Siena also has a lien on all shares of Deco, and the certificates are in Siena's possession. Finally, Siena has a lien on the warehouse leased by Deco from ABS Capitol, LLC ("ABS"). ABS is owned 50% by Siamak Sinai, 25% by Babak Sinai, and 25% by the Pouladian Family Trust, of which I am the Trustee.

6. In October 2018 and April 2019, Saman Sinai and I each provided $325,000 in additional capital to Deco in exchange for promissory notes from Deco. That debt is subordinated to Siena's liens by agreement, with several restrictions on repayment prior to full satisfaction of Siena's





Yates Litigation

liens. It is my belief that Deco will need to be recapitalized in the foreseeable near future in order to continue to maintain its operations in light of the decline in sales experienced over the last several years.

7. On October 1, 2013, all of the shareholders of Deco and Deco itself executed the Shareholder and Buy Sell Agreement of Deco Enterprises, Inc., a California Corporation, ("the Buy Sell Agreement"), a true and correct copy of which is attached as Exhibit 1. Articles 6, 12 and 13 of the Buy Sell Agreement are particularly relevant.

8. Article 6 sets forth the restrictions on transfers of shares of Deco by the four owners to third parties. Essentially, transfer is prohibited without first allowing Deco, and then the individual shareholders, the opportunity to acquire the shares from the transferor at the transfer price to the third party. In case a shareholder simply wishes to disassociate from Deco, paragraph 6.03 provides for the same options to purchase the shares of the withdrawing owner by the corporation, and then by the other shareholders. A "Fair Market Valuation" of the shares of the disassociating shareholder is also required. Finally, paragraph 6.04 provides that in the event that 75% of the shareholding interests wish to sell the entire company, all shareholders shall receive the same price for their shares from the acquiring entity.

9. Article 12 discusses management and control of Deco. Paragraph 12.03 itemizes the actions that require the written consent of shareholders holding 75% or more of Deco's shares. Given the 30-30-20-20 shareholding structure of the company, the 75% rule means that both the 30% shareholders must agree on any major decision, plus at least one 20% shareholder. Actions requiring approval of 75% of outstanding shares are: 12.03(a) Mergers or acquisitions involving the Corporation; 12.03(b) Amendment or repeal of the Articles of Incorporation of the Corporation; 12.03(c) Issuance of shares of any class or other rights relating to the issuance of shares of the Corporation; 12.03(d) Transfer of all, or substantially all, the assets of the Corporation; 12.03(e) Amendment of this Agreement; 12.03(f) Acceptance of a new shareholder; and 12.03(g) Incurring debts or liabilities in the aggregate amount of $100,000 or greater annually.

Yates Litigation

10. Article 13 of the Buy Sell Agreement provides that it shall remain in effect until such time as Deco is voluntarily dissolved, has a single shareholder, is in bankruptcy or insolvent, or the shareholders and Deco unanimously agree that the Buy Sell Agreement is terminated.

I have a claim against Deco to recover over $450,000 in unpaid business expenses charged to credit cards that I permitted Deco to use. I have not received a notice of bankruptcy by Deco, which I would receive as a creditor upon any bankruptcy filing. I have not agreed to the termination of the Buy Sell Agreement, and to my knowledge there has been no dissolution of the company. At the time of my resignation, Deco was able to meet its debts as they came due, even though that was occasionally difficult. I have within the last 30 days spoken with several suppliers, customers, and sales representatives of Deco with whom I became friends during my 14 years as President of Deco. These persons include Michael Yu of Grandlite, Eric Lee of Shanghai Supertek, Donal Drew Osram, Dan Hengstler Priority Lighting, Robert Lallement of Rexel Energy Solutions, and John Molak of Vertical Lighting. All of these individuals told me that their companies were still buying or selling to Deco, or ordering and shipping Deco products, which causes me to believe that Deco is still operating and still solvent.

11. I did express a willingness to relinquish my shares in Deco to a new investor at a nominal price in order to help the company return to better financial health. I sent an email to Craig Allen, Deco's Chief Financial Officer, advising him of this, but I did not submit a formal Offer Notice as specified by paragraph 6.02 of the Buy Sell Agreement, or state the number of shares, or the price for which I would sell. At no time did I receive from Deco, or from any of the other shareholders, or from any new investor, any expression of interest in acquiring my shares, as required by paragraph 6.03 of the Buy Sell Agreement. I also received no response advising me that I had already relinquished my shares. I have received no information from Deco that a valuation process was underway to determine the Fair Market Value of my shares, as specified by paragraph 6.03. I have not signed any of the share certificates in my name to permit their transfer to any other person, and to my knowledge those certificates are still in the possession of Siena as part of the collateral for its financing of Deco. Finally, on November 1, 2019, I notified Deco by email to its



Yates Litigation

Chief Financial Officer Craig Allen that I was withdrawing my offer to sell my shares and continuing as a Deco shareholder. A true copy of that email is attached hereto as Exhibit 2.

12. My attorney via some routine due diligence found out that Babak Sinai had formed a new corporation, Sinai Development Group, LLC, on November 27, 2019. A copy of the Statement of Information is attached hereto as Exhibit 3.

13. Deco and I share the same accountant, and during a recent conversation about my 2019 taxes I asked the accountant what was happening with Deco. He advised that Deco had received a high-level term sheet from a third party, but it didn't affect my taxes since I wasn't selling any shares.

14. Based on my knowledge of Deco's sales and revenues in August, it is my belief that the company will need to take substantial measures to recapitalize in 2020. This could take the form of a merger or consolidation with another entity, taking on of additional debt, or the wholesale transfer of Deco's assets to a new entity to receive financing from a new investor. Any of these measures would in all likelihood involve a significant change in the shareholding structure of Deco, and I would like to have the opportunity to consider and accept or reject any proposals made, just like any other shareholder. The formation of a new corporation and the existence of a "high-level term sheet" suggest strongly to me that, at least, a financing proposal or acquisition proposal has been made.

15. As a 30% shareholder in Deco, it is obviously in my interest to maintain the value of my ownership interest at the highest possible level. If the alternatives are Deco terminating operations and liquidating voluntarily, by foreclosure by Siena, or via a bankruptcy proceeding, on the one hand, and reduction of my ownership share as part of a recapitalization to include a new investor, or to facilitate a combination of Deco's assets and operations with those of another entity in the lighting industry, on the other hand, I am going to choose the latter option to maintain the value of what I currently own. I am not interested in using my voting rights under the Buy Sell Agreement to block Deco's survival or its recapitalization or, as attorney Mousavi claims, to foreclose on the property owned by ABS Capitol, LLC. I don't know where or how that latter claim arose, as I have no liens on the property of ABS Capitol, LLC that would permit me to foreclose. If Siena does





Yates Litigation

foreclose its liens and the ABS Capitol, LLC warehouse is sold, it would be sold at a public sale to the highest bidder, rather than preserved in some manner so that I, alone, could acquire the property, as Ms. Mousavi suggests.

16. Since I resigned as President of Deco, I have received no information about no information concerning any proposals by Deco or to Deco from a third party regarding recapitalization of the company.

I swear under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 10 day of January 2020, at Los Angeles, California.

Benjamin Pouladian

Yates Litigation

# EXHIBIT 1

# SHAREHOLDER AND BUY-SELL AGREEMENT OF DECO ENTERPRISES, INC., A CALIFORNIA CORPORATION

THIS Shareholder and Buy-Sell Agreement (hereafter "Agreement") effective October 1, 2013, is entered into among Benjamin Pouladian, Saman Sinai, Siamak Sinai, and Babak Sinai (referred to collectively as "Shareholders" and individually as "Shareholder"), and Deco Enterprises, Inc., a California corporation (hereafter "Corporation"), with respect to all shares of the Corporation's capital stock now or hereafter outstanding, for the purpose of protecting the Corporation and the Shareholders, as well as providing continuity for the Corporation's business in the event of the occurrence of certain events discussed in this Agreement.

## AGREEMENT

## ARTICLE 1
## SHARES SUBJECT TO THIS AGREEMENT

1.01. Business of the Corporation. The business of the Corporation is manufacturing commercial lighting fixtures and/or any other business, and all matters that are lawful as authorized under the laws of the State of California.

1.02. Shareholders. Shareholders of the Corporation are Benjamin Pouladian, Saman Sinai, Siamak Sinai, and Babak Sinai.

1.03. Initial Shares, Consideration, etc. Each of the Shareholders owns the number of shares of common share listed below:

| Name | Shares Owned |
|---|---|
| Benjamin Pouladian | 30% |
| Saman Sinai | 30% |
| Siamak Sinai | 20% |
| Babak Sinai | 20% |

The shares listed above constitute all of the issued and outstanding capital shares of the Corporation. All of the shares listed above and any additional shares of the capital share of the Corporation that may be acquired by the Shareholders in the future shall be subject to this Agreement.

## ARTICLE 2
## CERTAIN DISCLOSURES, WAIVERS AND INDEMNIFICATIONS

2.01. Representations. Each of the Shareholders acknowledges and represents that:

(a) He has full authority to enter into this Agreement and the execution and performance under the terms of this Agreement would neither violate any laws nor constitute a default;

(b) This Agreement was prepared with his knowledge and consent;

(c) He was advised by counsel to consider seeking independent legal counsel to review this Agreement on his behalf;

(d) He had adequate time to seek the advice of independent counsel and to review this Agreement;

(e) He either obtained such advice or knowingly and intentionally chose not to seek such advice;

(f) He fully understands this Agreement and all of its terms and provisions, including, but not limited to, those provisions which significantly restrict his ability to sell, transfer or otherwise dispose of his shares; and

(g) The restrictions imposed upon his shares pursuant to this Agreement are reasonable.

2.02. Title. Each of the Shareholders represents and warrants that he/she is the record and beneficial owner of the shares referred to in Article 1 above and that he has not sold, transferred, pledged or otherwise encumbered any of those shares or his interest in those shares.

2.03. Indemnity. Each Shareholder agrees to indemnify and hold the Corporation and the other Shareholders harmless from and against any and all liabilities, costs or expenses, including reasonable attorneys' fees, resulting from or arising out of any sale, transfer or other disposition of his shares otherwise than in accordance with the terms and provisions of this Agreement.

## ARTICLE 3
## DISTRIBUTIONS

3.01. Determination of Net Income/Net Profit and Loss. The net profits or net losses of the Corporation for each fiscal year will be determined on a ~~cash~~/accrual basis in accordance with generally accepted principles of accounting. Each Shareholder will share in the profits and losses in proportionate to his percentage of shares of the common stock of the Corporation.

3.02. Regular Distributions of Net Income. Subject to any retained earnings and to the statutory requirements related to corporate distributions, the net income of the Corporation will be distributed as authorized by the Board of Directors to the Shareholders in proportion to the number of shares of the Corporation owned by each Shareholder.

## ARTICLE 4
## LEGEND ON SHARE CERTIFICATES

4.01. Legend on Share Certificates. Each share certificate, whether presently owned or subsequently acquired, shall be subject to the following condition, as if it was printed on each share certificate:

> "The securities evidenced by this certificate may not be sold, transferred, assigned, pledged, hypothecated or otherwise disposed of except in accordance with, and are subject to, transfer upon certain events described in a shareholder/buy-sell agreement, dated October ____, 2013, between the issuer and the registered holder hereof, a copy of which agreement is on file at the principal office of the issuer. Any attempted transfer that would violate these limitations is void."

4.02. Deposit of Shares with Corporation. Concurrently with the execution of this Agreement, each Shareholder shall deposit his share certificates with the Secretary of the Corporation. Despite the endorsement and deposit, each Shareholder shall have the right to vote shares held of record and to receive dividends paid on them until the shares are sold or transferred, as provided in this Agreement.

## ARTICLE 5
## RESTRICTIONS ON TRANSFER

5.01. Restrictions on Transfer. To accomplish the purposes of this Agreement, any transfer, sale, assignment, hypothecation, encumbrance, or alienation of any of the shares of the Corporation, other than according to the terms of this Agreement is void, and transfers no right, title, or interest in or to those shares to the purported transferee, buyer, assignee, pledgee, or encumbrance holder. Each Shareholder shall have the right to vote shares held of record and to receive dividends paid on them until the shares are sold or transferred in accordance with this Agreement.

5.02. Transfers Are Void. A Shareholder may not, at any time, transfer all or any part of his shares to a spouse, ancestors or lineal descendants (whether natural or adopted) or the spouses of any of such persons. A Shareholder may, however, transfer the right to receive the economic interest in the Corporation, such as dividend or commissions, to other persons.

## ARTICLE 6
## RIGHT OF FIRST REFUSAL
## TRANSFER OF SHARES: VOLUNTARY OR OTHERWISE
## AND MANDATORY BUY-SELL PROVISIONS

6.01. No Right to Assign. Other than assignment or transfer to the Shareholder/Shareholders' Trust/Family Trust, this Agreement, or the rights hereunder, may not be assigned without prior written consent of all Shareholders. While this Agreement is in effect, no Shareholder shall have any right to assign, encumber, or dispose of his shares except as provided herein. The existence of the Agreement, however, shall not affect each Shareholder's right to vote his share and receive any dividends thereon until such time as he/she, or his/her personal representative, has received the purchase price for such share, as provided herein.

6.02. Right of First Refusal. The Corporation and Shareholders shall have the Right of First Refusal in any transfer of the shares of the common stock of the Corporation, whether voluntary or involuntary (death, disability, forced buyout, etc.). No Shareholder shall sell, transfer, pledge, encumber, hypothecate, or in any way dispose of any of his/her shares or any right or interest in them without obtaining prior written consent of the Corporation and of all other Shareholders, unless all of the following procedure set forth in this Section 6.02 of this Agreement is complied with as follows:

Shareholder's Duties:

(a) If a Shareholder desires to transfer any portion or all of his shares in the common stock of the Corporation, Shareholder shall first deliver to the Secretary of the

Corporation a written notice of his intention to transfer his shares (hereafter "Offer Notice"). The Offer Notice shall be in accordance with Section 16.02 of this Agreement regarding notices;

(b) The Offer Notice shall be accompanied by an executed counterpart of any document of transfer, which must include the **name and address of the proposed transferee** and specify the **number of shares to be transferred, the price per share, and the terms of payment** (hereafter "**Counterpart**").

Corporation's Duties:

(c) Promptly on receipt of the notice, the Secretary of the Corporation shall forward a copy of the Offer Notice and the executed Counterpart to each member of the Corporation's Board of Directors, and within 15 days thereafter, a meeting of the Board of Directors shall be duly called, noticed, and held to consider the proposed transfer. For **45 days following notice to the Corporation** (45 days from the date the Offer Notice and Counterpart is served on the Secretary of the Corporation), Corporation shall have the option, but not the obligation, to purchase all or any part of the shares at the price and on the terms stated in the Offer Notice and Counterpart, or at a price determined in the same manner as is provided in Article 10 of this Agreement, **whichever price is lower.**

The Corporation's right to exercise the option and to purchase the stock is subject to the restrictions governing a corporation's right to purchase its own stock in *California Corporations Code* sections 500-501 and to any other pertinent governmental restrictions that are now, or may become, effective.

(d) **If the Corporation exercises the option** within the 45-day period, the Secretary of the Corporation **shall give written notice of that fact to the offering Shareholder.** The Corporation shall pay the purchase price in the manner provided in Section 8.02 of this Agreement.

(e) **If the Corporation DOES NOT exercise the option** within the 45-day period, the Secretary of the Corporation shall immediately forward a copy of the Offer Notice and the executed Counterpart to Shareholders (in accordance with Section 16.02 re: Notice) to the remaining Shareholders, who shall have the option, but not the obligation, to purchase any shares not purchased by the Corporation, at the price and on the terms stated in the Offer Notice and Counterpart, or at a price determined in the same manner as is provided in Article 10 of this Agreement, **whichever price is lower.**

Remaining Shareholders' Duties:

(f) Within 20 days after giving the notice, any Shareholder desiring to acquire any part or all of the shares offered shall deliver to the Secretary of the Corporation a **written election to purchase the shares or a specified number of them.** If the

total number of shares specified in the elections exceeds the number of available shares, each Shareholder shall have priority, up to the number of shares specified in his or her notice of election to purchase, to purchase the available shares in the same proportion that the number of the Corporation's shares that he or she holds bears to the total number of the Corporation's shares held by all Shareholders electing to purchase. The shares not purchased on such a priority basis shall be allocated in one or more successive allocations to those Shareholders electing to purchase more than the number of shares to which they have a priority right, up to the number of shares specified in their respective notices, in the proportion that the number of shares held by each of them bears to the number of shares held by all of them.

Corporation's further Duties:

(g) Within 10 days after the mailing of the notice to the Shareholders, the Secretary of the Corporation shall notify each Shareholder of the number of shares as to which his or her election was effective, and the Shareholder shall pay the purchase price in the manner provided in Article 9, and Section 8.02 of this Agreement.

(h) If the Corporation and the remaining Shareholders do not purchase all the shares set forth in the Offer Notice and Counterpart, all the shares may be transferred to the proposed transferee on the terms specified in the notice, at any time within 3 days after expiration of the Shareholders' option. The transferee will hold the shares subject to the provisions of this Agreement. No transfer of the shares shall be made prior to the end of 95 days after service of the Offer Notice and Counterpart by the offering Shareholder upon the Secretary of the Corporation, nor shall any change in the terms of transfer be permitted without a new notice of intention to transfer and compliance with the requirements of this Article 7 of the Agreement.

**Any transfer by any shareholder in violation of this paragraph shall be null and void and of no effect.**

6.03. Voluntary Disassociation. In the event a Shareholder no longer desires to be a Shareholder in the Corporation, the Shareholder must provide the Corporation with the Offer Notice. The Corporation and the remaining Shareholders shall have the option, but not the obligation, to purchase that Shareholder's shares of common stock of the Corporation using the procedures set forth in Section 6.02, at Fair Market Value as set forth in Article 9 of this Agreement, with payment terms as set forth in Section 8.02 of this Agreement. Since the offering Shareholder does not have an intended transferee other than Corporation and the Shareholders, the offering Shareholder does not need to provide the Corporation with a Counterpart.

6.04. Sale of Shares by Majority. In the event that the Majority shareholders want to sell their shares to a prospective Buyer, such sale shall include the sale of the shares of the minority shareholder, on the same terms and price as offered for the shares of Majority Shareholders.

//

## ARTICLE 7
## OBLIGATIONS OF TRANSFEREE

7.01. Obligations of Transferee. Unless this Agreement expressly provides otherwise, each transferee, or any subsequent transferee, of shares in the Corporation, or any interest in such shares, shall hold the shares or interest in the shares subject to all provisions of this Agreement and shall make no further transfers except as provided in this Agreement. Transfer of the shares shall not be entered on the books of the Corporation until an amended copy of this Agreement has been executed by the prospective transferee. Failure or refusal to sign such an amended copy of this Agreement shall not relieve any transferee from any obligations under this Agreement.

## ARTICLE 8
## PURCHASE ON OTHER EVENTS

8.01. Upon Death or Disability of a Shareholder. Upon the death or disability of a Shareholder, that Shareholder's estate/representative shall sell, and the Corporation shall purchase, all of the shares owned by the Shareholder at the time of the death or disability, for the price and upon the terms provided in Article 8 of this Agreement. **The estate or representative of deceased/disabled shareholder would only be entitled to the economic interest in the shares, i.e., cash value of the shares.** Each Shareholder's spouse agrees that, in the event of death or disability, the spouse would only be entitled to receive the cash value of the Shareholder's shares, as determined by Article 9 of this Agreement.

8.02. Upon Divorce. Each Shareholder and/or each Shareholder's spouse agrees that in the event of divorce, that Shareholder's spouse is only entitled to economic interest in the Corporation. This means that the Shareholder's spouse does not have the right to vote, or participate in any affairs of the Corporation. The value of the shares of each Shareholder is determined per Article 9 of this Agreement. Terms of payment of the spouse's interest are set forth in this Article 8, Sections 8.03 and 8.04.

8.03. Payment. The Corporation and other Shareholders shall have the right to pay for the shares as follows: forty percent (40%) of the value of the shares in cash; the balance in equal quarterly installments evidenced by a promissory note, the note payable twelve (12) months from the date of exercise of the option, with interest at the rate of prime plus six (6 %) per annum payable at its maturity. The promissory note shall include and be subject to the provisions of Section 8.05 hereof.

8.04. Payment in the event of Death or Disability or Divorce. In the event of death, disability, or divorce, however, if the Shareholders have purchased insurance, the insurance proceeds shall be used to pay for the purchase of the shares or spouse's interest in a divorce proceeding.

8.05. Promissory Note. Each promissory note given under this Articles 8 shall include and be subject to the following provisions:

(a) Each note shall provide that, if the payments are not received within 10 days of the due date under the note, such non-payment should be a Curable Default. In that event, the note holder shall provide the obligee under the note with a written

notice, giving the obligee 10 days to cure the default. If the Curable Default is not cured within ten (10) days, that shall be deemed as Non-Curable Default. In the event of a Non-Curable Default, at the election of the holder, all notes of the series shall, without further notice, immediately become due and payable;

(b) Each note shall provide that its maker agrees to pay the reasonable expenses of collection in the event of default, including reasonable attorneys' fees;

(c) Each note shall provide for prepayment, in whole or in part, at any time without penalty but only with the consent of the holder. Such right of prepayment shall apply to those notes last due in the series in inverse order; and,

(d) Each note shall be secured in a manner acceptable to all parties at the time the notes are given.

**ARTICLE 9**
**VALUATION**

9.01. Valuation. In the event of death, disability, divorce, voluntary transfer, or any other event triggering a buyout under this Agreement or under the mandatory provisions of the *California Corporations Code*, the Fair Market Value of the Corporation and the issued shares shall be determined as follows:

The Board of Directors shall select an accredited financial institution which will appraise and determine the Fair Market Value.

**ARTICLE 10**
**INSURANCE**

10.01. Insurance. The Corporation shall have the option, but not obligation, to purchase insurance on the lives of the Shareholders. This section shall only become operative after a unanimous decision, in writing, to purchase insurance on the lives of the Shareholders:

In the event that the Corporation elects to purchase insurance on lives of the shareholders, the Corporation shall apply for, and be the owner and primary beneficiary of, all life insurance policies subject to this Agreement and shall pay the premiums on all such policies as they fall due. The Corporation may apply policy dividends to the payment of premiums. Proof of premium payments shall be furnished by the Corporation whenever a Shareholder requests such proof. If the Corporation fails to pay a premium within ten (10) days after it falls due, the insured shall have the right to pay such premium and to be reimbursed therefore by the Corporation.

So long as this Agreement remains in effect, it is expressly agreed that the Corporation shall exercise none of the rights or privileges granted to it as owner by the terms of the policies (such as the right to borrow upon, surrender for cash, change the beneficiary, or assign a policy) except with the written consent of all the Shareholders.

//

Any addition of policies or other changes affecting the insurance under this Agreement shall be recorded in Schedule "C" attached hereto, and at all times, the provisions of this Agreement shall extend to all policies recorded in said Schedule "C".

Procedure. The procedure upon the death of a Shareholder shall be as follows:

(a) The Corporation, as beneficiary, shall promptly file claims to collect in cash the death proceeds of all the policies on the deceased Shareholder's life which are subject to this Agreement;

(b) Upon the collection of such proceeds and the qualification of a personal representative for the deceased Shareholder, the Corporation shall pay over to the personal representative an amount equal to the full proceeds collected, in part or in full payment for the deceased Shareholder's shares;

(c) If the death proceeds of all the policies on the deceased Shareholder's life are less than the total purchase price for his interest as provided herein, the Corporation shall either pay the balance forthwith in cash or, in lieu of such cash payment, shall execute and deliver to the personal representative a series of six (6) promissory notes of equal amount (except that the note last falling due may be for a lesser remaining balance), payable to his order. The first note shall be payable four (4) months after its execution date, and the remaining notes shall be payable at quarterly thereafter, with interest at the rate of ten (10%) per annum, the interest on each note shall be payable at its maturity. Each promissory note shall include and be subject to the provisions of Section 9 hereof; and,

(d) The personal representative of the deceased Shareholder shall promptly execute (and shall cause any other party or parties whose signatures may be necessary to transfer a complete title to the deceased Shareholder's shares to execute) and, concurrently with receipt of the full purchase price for the deceased Shareholder's shares (either in cash, or in cash and notes, as provided above), shall deliver all instruments necessary to effectuate the transfer of the deceased Shareholder's shares to the Corporation. Transfer of such shares shall be made free and clear of all taxes, debts, claims or other encumbrances whatsoever, except for that represented by any promissory notes given under Article 10, Paragraph (c) above.

## ARTICLE 11
## SHAREHOLDER WILLS AND REVOCABLE TRUSTS

11.01. Shareholder Wills and Revocable Trusts. Each Shareholder agrees to include in his/her will or revocable trust a direction and authorization to his or her executor or trustee to comply with the provisions of this Agreement and to sell his or her shares in accordance with this Agreement. However, the failure of any Shareholder to do so shall not affect the validity or enforceability of this Agreement.

//

**ARTICLE 12**
**MANAGEMENT AND CONTROL**

12.01. Board of Directors. The Corporation shall have four (4) directors, all of which shall be Shareholders of the Corporation. Each Shareholder named as a director shall remain a director so long as he/she is a Shareholder, and there is no violation of the terms of this Agreement. Any act or decision made by the Directors or the Shareholders may be evidenced in writing, executed by the requisite number of Shareholders as provided in this Agreement, or otherwise, as the Shareholders agree in writing.

During the term of this Agreement, the Directors will, when appropriate:

(a) Meet at least once annually to elect the Board of Directors and officers of the Corporation;

(b) Cause tax returns and reports to be sent to the Shareholders not later than 120 days after the close of the calendar/fiscal year, unless this requirement is expressly waived in the Bylaws of the Corporation;

(c) After filing the Corporation's original Articles of Incorporation, file any informational certificates that may be required by the California Secretary of State;

(d) Cause the Corporation to maintain the books, records, and other documents required by the *California Corporations Code*;

(e) Use best efforts to make sure the business of the Corporation is conducted in accordance with sound business practices;

(f) Within three months from execution of this Agreement, and thereafter at least once a year, meet and determine the salaries of the employees and officers of the Corporation.

12.02. President and Managing Officer. The President of the Corporation will be __________________, who will be the Corporation's managing officer. The President will control the day-to-day operations of the business and affairs of the Corporation. At each annual meeting, the Shareholders will elect the officers of the Corporation.

12.03. Approval of All Shareholders. Notwithstanding the provisions in Sections 12.01 and 12.02 of this Agreement, the written consent of the all Shareholders holding 75% or more shares in the Corporation is required to approve the following actions:

(a) Mergers or consolidations involving the Corporation;

(b) Amendment or repeal of the Articles of Incorporation of the Corporation;

(c) Issuance of shares of any class or other rights relating to the issuance of shares of the Corporation;

(d) Transfer of all, or substantially all, the assets of the Corporation;

(e) Amendment of this Agreement;

(f) Acceptance of a new shareholder; $100,000.00

(g) Incurring debts or liabilities in the aggregate amount of ~~$50,000~~ annually; and

(h) Voluntary Dissolution of the Corporation. Voluntary dissolution of the Corporation shall require the written consent of 50% of Shareholders.

12.04. Shareholders' Meetings. The Shareholders shall meet once annually. Although there will be no required Shareholders meetings except as the annual Shareholders meeting for taking any action specified in Sections 12.02 and 12.03, a special meeting may be called at any time by any Shareholder. The meetings can be conducted over the telephone and consents or approvals bearing the Shareholders' signatures may be obtained by facsimile or electronic mail.

## ARTICLE 13
## TERMINATION

13.01. Termination of Agreement. This Agreement shall terminate on:

(a) The written agreement of all parties;

(b) The dissolution, bankruptcy, or insolvency of the Corporation; or

(c) At such time as only one Shareholder remains.

## ARTICLE 14
## ARBITRATION

14.01. Arbitration. Any claim or controversy arising out of or relating to this Agreement, or arising out of or relating to the Corporation, or the rights or obligations of the Shareholders as shareholders, directors, officers, or employees of the Corporation will be determined by binding arbitration before a single arbitrator, at JAMS, AAA, or Judicate West, in Los Angeles County, California, according to their rules in effect at the time. Each party involved in an arbitration proceeding in accordance with this section will pay its own attorneys' fees, costs and expenses. The cost of conducting the arbitration proceeding itself, including the arbitrator's fees, will be borne by each party to it in proportion to the number of shares of the Corporation owned prior to the commencement of the proceeding.

//

//

## ARTICLE 15
## AMENDMENT

15.01. Amendment of Agreement. This Agreement may be amended only by written consent of all parties to the Agreement.

## ARTICLE 16
## MISCELLANEOUS PROVISIONS

16.01. Necessary Acts. All parties to this Agreement will perform any acts, including executing any documents that may be reasonably necessary to fully carry out the provisions and intent of this Agreement.

16.02. Notices. All notices, demands, requests, or other communications required or permitted by this Agreement shall be in writing and shall be deemed duly served when personally delivered to the party or to an officer or agent of the party, or when deposited in the United States mail, first-class postage prepaid, addressed to the Corporation at [address of Corporation's principal office], or to a Shareholder at the address appearing for him or her on the books and records of the Corporation, or at any other address the party may designate by written notice to the others.

16.03. Remedies. The parties will have all the remedies available to them for breach of this Agreement by law or in equity. The parties further agree that in addition to all other remedies available at law or in equity, the parties will be entitled to specific performance of the obligations of each party to this Agreement and immediate injunctive relief. The parties also agree that, if an action is brought in equity to enforce a party's obligations, no party will argue, as a defense, that there is an adequate remedy at law.

16.04. Attorneys' Fees. In the event of any litigation concerning this Agreement between the parties to this Agreement, or the parties to this Agreement and the estate of any deceased Shareholder, the prevailing party shall be entitled to, in addition to any other relief that may be granted, reasonable attorneys' fees.

16.05. Binding on Successors and Assigns. This Agreement will be binding on the parties to the Agreement and on each of their heirs, executors, administrators, successors, and assigns.

16.06. Severability. If any provision herein is unenforceable or invalid for any reason, the remaining provisions shall be unaffected by such a holding.

16.07. Governing Law. This Agreement shall be construed according to and governed by the laws of the State of California.

16.08. Entire Agreement. This instrument, and the referenced and attached Exhibits herein, constitutes the entire Shareholder Agreement of the Corporation and correctly sets forth the rights, duties, and obligations of each Shareholder and of each Shareholder to the other. Any prior agreements, promises, negotiations, or representations concerning the Agreement's subject matter not expressly set forth in this Agreement are of no force or effect.

parties hereto to express their mutual intent. This Agreement shall be construed without regard to any presumption or rule requiring construction (i) against the party causing all or any part of such instrument to be drafted or (ii) in favor of the party receiving a particular benefit under the Agreement. No rule of strict construction will be applied against any party hereto.

16.11. Third Parties: No Interest. Nothing in this Agreement (whether express or implied) is intended to or shall (i) confer any rights or remedies under or by reason of this Agreement on any persons other than the parties hereto and their respective successors and assigns, (ii) relieve or discharge the obligation or liability of any third person to any party hereto, or (iii) give any third person any right of subrogation or action against any party to this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement on October ___, 2013, and agree that the effective date shall be October 1, 2013.

Shareholders:

Benjamin Pouladian

Babak Sinai

Siamak Sinai

Saman Sinai

DECO ENTERPRISES, INC.

By: ______________________

Its: President Benjamin Pouladian

# EXHIBIT 2

**John R. Yates**

**From:** Ben Pouladian <ben.pouladian@gmail.com>
**Sent:** Friday, November 1, 2019 5:00 PM
**To:** Craig Allen
**Cc:** John R. Yates; sam@getdeco.com; Bob Sinai; sam@capitalelectricsupply.com
**Subject:** DECO

Craig,

It's been a couple of months since I suggested that I would be willing to relinquish my shares in Deco for a nominal sum, to help the company remain in business and obtain new financing.

I've received no reports from you since then regarding the business or its efforts to obtain new financing. I also have not been reimbursed for the business expenses on my company credit cards, for which I remain liable, despite multiple requests.

I withdraw my offer to relinquish my shares for a nominal sum, effective immediately.

Thank you,

Ben

# EXHIBIT 3

Alex Padilla
California Secretary of State

# Business Search - Entity Detail

The California Business Search is updated daily and reflects work processed through Thursday, January 9, 2020. Please refer to document Processing Times for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity. Not all images are available online.

## 201933710220 SINAI DEVELOPMENT GROUP, LLC

| | |
|---|---|
| **Registration Date:** | 11/27/2019 |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Type:** | DOMESTIC |
| **Status:** | ACTIVE |
| **Agent for Service of Process:** | AMY A MOUSAVI ESQ.<br>19200 VON KARMAN AVENUE, SUITE 940<br>IRVINE CA 92612 |
| **Entity Address:** | 15826 HAWTHORNE BOULEVARD<br>LAWNDALE CA 90260 |
| **Entity Mailing Address:** | 15826 HAWTHORNE BOULEVARD<br>LAWNDALE CA 90260 |
| **LLC Management** | Member Managed |

A Statement of Information is due within 90 days of registration and then EVERY ODD-NUMBERED year beginning five months before and through the end of November.

| Document Type | File Date | PDF |
|---|---|---|
| REGISTRATION | 11/27/2019 | |

* Indicates the information is not contained in the California Secretary of State's database.

**Note:** If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report.

- For information on checking or reserving a name, refer to **Name Availability**.
- If the image is not available online, for information on ordering a copy refer to **Information Requests**.
- For information on ordering certificates, status reports, certified copies of documents and copies of documents not currently available in the Business Search or to request a more extensive search for records, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Frequently Asked Questions**.

Modify Search | New Search | Back to Search Results

**California Secretary of State**
Electronic Filing

**FILED**
Secretary of State
State of California

# LLC Registration – Articles of Organization

Entity Name: Sinai Development Group, LLC

Entity (File) Number: 201933710220
File Date: 11/27/2019
Entity Type: Domestic LLC
Jurisdiction: California

Detailed Filing Information

1. Entity Name: Sinai Development Group, LLC

2. Business Addresses:
   a. Initial Street Address of Designated Office in California: 15826 Hawthorne Boulevard
   Lawndale, California 90260
   United States

   b. Initial Mailing Address: 15826 Hawthorne Boulevard
   Lawndale, California 90260
   United States

3. Agent for Service of Process: Amy A Mousavi Esq.
   19200 Von Karman Avenue, Suite 940
   Irvine California 92612
   United States

4. Management Structure: All LLC Member(s)

5. Purpose Statement: The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

Electronic Signature:

The organizer affirms the information contained herein is true and correct.

Organizer: Amy Mousavi

## PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436**.

On February 3, 2020, I served the foregoing document described as **Declaration of Benjamin Pouladian in Support of Motion for Preliminary Injunction**

on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

**SEE ATTACHED LIST**

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 3, 2020, at Encino, California.

John Yates

John R. Yates

Amy Mousavi, Esq.

Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Attorney for Deco Enterprises, Inc. and Craig Allen

Thomas Pistone, Esq.
Pistone Law Group LLP
19200 Von Karman Ave, Suite 940
Irvine, California 92612
Email: tpistone@pistonelawgroup.com

Attorney for Babak Sinai, Saman Sinai and Siamak Sinai

Electronically FILED by Superior Court of California, County of Los Angeles on 02/07/2020 03:15 PM Sherri R. Carter, Executive Officer/Clerk of Court, by E. Gregg,Deputy Clerk

Amy A. Mousavi, Esq., SBN: 228388
MOUSAVI & LEE, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9667
amousavi@mousavilee.com

Thomas A. Pistone, Esq., SBN: 77774
PISTONE LAW GROUP, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9660
tpistone@pistonelawgroup.com

**Attorneys for Defendant Craig Allen, Cross-Complainant/Defendant Deco Enterprises, Inc., and Cross-Complainants ABS Capitol, LLC and Babak Sinai**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

| | |
|---|---|
| BENJAMIN POULADIAN<br><br>Plaintiff,<br><br>v.<br><br>DECO ENTERPRISES; CRAIG ALLEN; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 19STCV44475<br>Dept.: 078<br>Assigned For All Purposes To: Hon. Judge Robert S. Draper<br><br>**OPPOSITION TO PLAINTIFF BENJAMIN POULADIAN'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**[Filed concurrently with Declaration of Amy A. Mousavi and Declaration of Craig Allen]**<br><br>**Date: February 21, 2020**<br>**Time: 9:30 a.m.**<br>**Dept.: 86**<br><br>Action Filed: December 10, 2019 |
| DECO ENTERPRISES, INC., a California Corporation; ABS CAPITOL, LLC, a California limited liability company; BABAK SINAI, an individual;<br><br>Cross-Complainants;<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN, an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | |

## I.

## SUMMAY OF ARGUMENT

The Court should deny Plaintiff BENJAMIN POULADIAN'S ("Pouladian") Motion for Preliminary Injunction for the following Reasons:

A. Pouladian did not, and cannot show:

i) any evidence of threatened behavior, to be enjoined;

ii) irreparable harm, if the unidentified behavior were to occur;

iii) probability of prevailing on his claim;

iv) that he had offered, or posted, bond, in violation of *CCP* §§527, 529, and California Rules of Court, Rule 3.1150(f); and

v) the claims for injunctive relief are barred by the equitable doctrine of unclean hands.

## II.

## PROCEDURAL HISTROY

Ex Parte to Confirm Arbitration Award:

On January 31, 2020, the Court heard Pouladian's Ex Parte Application to Confirm an emergency arbitrator's order, prior to even selecting an arbitrator, and despite Deco's challenge to a right to arbitrate.

The Court denied the Ex Parte Application stating specifically that Pouladian had failed to comply with the mandates of *California Code of Civil Procedure* §1281.8(b) requiring that a party to arbitration seek provisional relief from the Superior Court. The Court then treated Pouladian's application as an Ex Parte Application for TRO, until the hearing on the Preliminary Injunction, and gave the parties time to brief it, specifically asking the parties to brief the amount of bond. The Court then asked Pouladian to give notice. So far, no Notice of Ruling has been filed.

Prior to Hearing *Ex Parte* Application

On December 10, 2019, at 2:37 p.m., Pouladian served DECO ENTERPRISES, INC. ("Deco"), BABAK SINAI ("Bob Siani"), Saman Sinai, and Siamak Sinai (collectively "Sinai

Parties") with a Demand for Arbitration [Exhibit "1" to Mousavi Declaration to Ex Parte.] Then, on that same day, at 5:44 p.m., Pouladian filed a Complaint in the Los Angeles Superior Court. On January 10, 2020, Pouladian filed an Amended Complaint, specifically adding the sixth cause of action for declaratory relief by this Court and adding the two issues identified in his arbitration; i.e. Pouladian is a 30% shareholder and the Buy-Sell Agreement. [Mousavi Declaration to Ex Parte, Exhibit "1," page 3.] Meanwhile, Pouladian asked for the appointment of an emergency arbitrator, and filed his motion for preliminary injunction with the arbitrator, after he amended his complaint and in complete disregard of the mandates of *CCP* §1281.8 (b). The injunction papers filed by Pouladian did not state any evidence of irreparable harm, probability of prevailing, and no offer to post bond, which is again in violation of *CCP* §§527, 528 and *Civil Code* §§3420, 3422. Most importantly, *CCP* §526(b)(5) specifically states that an injunction cannot be issued to "prevent a breach of contract the performance of which would not be specifically enforced..."

On January 22, 2020, Deco, ABS CAPITOL, LLC, an entity not party to any arbitration agreement and which Pouladian has fraudulently put up as a collateral for Deco's debt, and Bob Sinai, whose signature was forged by Pouladian, filed a Cross-Complaint. On the same date, Deco filed an answer to Pouladian's Amended Complaint. Thus, Pouladian has waived his right to arbitration.

## III.

## STATEMENT OF FACTS

Deco is a California Corporation with 100,000 shares (Exhibit "1" to Mousavi Declaration), of which only 10,000 shares have been issued to four shareholders, Pouladian and his cousins, Bob Sinai, Saman Sinai, and Siamak Sinai. [Exhibit "2" to Mousavi Declaration] This leaves 90,000 authorized shares that are free to be issued.

Pouladian was the president and a director of Deco since 2013, and one of four shareholders. Pouladian is a cousin of the other three shareholders and was held in a fiduciary position. In August of 2019, he called a meeting, at which CRAIG ALLEN, the CFO of Deco, and the other shareholders were present. In that meeting, Pouladian admitted to, *inter alia*, ***forging another shareholder and director's signature*** (Bob Sinai's signature) in May 2019, to

borrow an additional two million dollars ($2,000,000)on behalf of Deco; putting up as collateral, a building that belongs to another entity, ABC Capitol, LLC, which is 75% owned by Bob Sinai and Siamak Sinai, both shareholders of Deco. Additionally, Pouladian admitted to embezzling over $400,000 of company credit card reward points in 2018.

While Deco was suffering due to Pouladian's breach of his fiduciary duties, mismanagement, and fraud, Pouladian was engaged in a lavish lifestyle at the expense of Deco. In breach of the Shareholder and Buy-Sell Agreement, Section 12.01(f), which requires the board to meet once annually to determine the salaries if its officer, Pouladian, without approval of the board of directors, increased his own salary, resulting in Pouladian receiving an ***excess salary*** of **$792,583.32**, from 2014 to 2019, as follows:

$115,000 from 2014 – 2015;

$579,000 from 4/30/16 – 4/30/19; and

$98,583.32 from 5/1/19 – 8/15/19. [Allen Declaration, ¶ 5.]

Additionally, Pouladian, despite admitting that Deco was not doing well and "in the past 12 to 18 months Deco was compelled to take more debt in order to sustain its ability to pay its obligations when due" (*see* Pouladian's Supplemental Brief, Page 2:17-18), and despite the his self-imposed salaries, treated Deco as his piggy bank, incurring $106,628.09 in expenses just between 2017-2019, and ***over $60,000 just in 2018*** when, as admitted by Pouladian, Deco had to borrow funds to be able to meet its obligations, as follows:

| | |
|---|---|
| 2017 | $33,261.27 |
| 2018 | $60,811.24 |
| 2019 (partial) | $12,555.82 |
| Total: | **$106,628.09** |

After the meeting in August, where Pouladian admitted to forging Bob Sinai's signature and embezzling over $400,000 of Deco's property, in response to Bob Sinai's confrontation text about his this misconduct, Pouladian stated "***Ok. I give up my shares already I'm out.***" [Exhibit "3" to Mousavi Declaration.] The offer was made to Bob Sinai, a shareholder and director, and it was accepted. The parties' conduct establishes that Pouladian was completely out, resigned his

positions as President and a director of Deco (Exhibit "4" to Mousavi Declaration), and had nothing to do with Deco, until 3 months later, when Pouladian heard of a "high-level term sheet" (see Pouladian Dec. ¶13), that he changed his mind, thinking he was going to miss out, and decided to be a shareholder again.

When Pouladian gave up his shares and left Deco, Deco was completely ***insolvent***, in that Deco's liabilities were far in excess of its assets, and Deco could not meet its payroll. [Exhibit "7" to Allen Dec., Allen Dec.¶7.] The Internal Revenue Service defines insolvent as follows:

"A taxpayer is insolvent when his or her total liabilities exceed his or her total assets." [Exhibit "6" to Allen Declaration.] As evident from Exhibit "7", in August 2019, when Pouladian left Deco, Deco was insolvent in that its liabilities of $18,045,156 far exceeded its assets $13,031,269.

Paragraph 13.01 of the Shareholder and Buy-Sell Agreement states:

"13.01.Termination of Agreement. This Agreement shall terminate on:

(a) The written agreement of all parties;

(b) The dissolution, bankruptcy, **or insolvency** of the Corporation; or

(c) At such time as only one Shareholder remains." [Pouladian Dec., Exhibit 1, Page 10.

Pouladian's assertion that Deco is not insolvent because it is still buying products and selling products[1], is just another contention not supported by law or the Internal Revenue Service guidelines. As early as July, but definitely in August 2019, when Pouladian left Deco, the company was insolvent, which is a condition that terminated the Buy-Sell Agreement.

Pouladian is well aware that Deco is insolvent, and on November 27, 2019, in his communication with Craig Allen, Chief Financial Officer of Deco, Pouladian expressed his efforts to tie up Deco in litigation for the next three years (Mousavi Declaration, Exhibit "5," Page 1), stating that **Deco will not be around for many months** (Mousavi Declaration, Exhibit "5," Page 2), and that **Deco will be liquidated**. [Mousavi Declaration, Exhibit "5," Page 4.]

[1] Pouladian's Supplemental Brief, Page 4:17-25; Pouladian Dec. ¶10.

Deco's insolvency was caused by Pouladian's breach of fiduciary duty, breach of the Buy-Sell Agreement and converting Deco's funds, as detailed in the Cross-Complaint filed against him.

## IV.

## LEGAL ARGUMENT

A. Pouladian Did Not, and Cannot Show i) Irreparable Harm, ii) Probability of Prevailing On His Claim, and/or iii) Pouladian Has Not Offered, or Posted Bond.

In balancing a claim by a party seeking injunction on a summary basis, the legislature has created safeguards to avoid a situation, just as here.

- *CCP* §527(c)(1) requires showing of irreparable harm to applicant as follows:

"No temporary restraining order shall be granted without notice to the opposing party, unless both of the following requirements are satisfied:
(1) It appears from facts shown by affidavit or by the verified complaint that great or irreparable injury will result to the applicant before the matter can be heard on notice."

- *CCP* §529 (a) requires an undertaking prior to issuance of an injunction as follows:

  "On granting an injunction, **the court or judge must require an undertaking** on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction."

- *California Rules of Court,* Rule 3.1150(f) requires a proposed order for an undertaking. Even after Deco expressed this defect in its Opposition to Pouladian's *Ex Parte* Application to confirm the Arbitration award, Pouladian did not care to remedy this defect.

The grant or denial of a preliminary injunction is within the discretion of the trial court. *Tahoe Keys Property Owners' Assn. v. State Water Resources Control Bd.* (1994) 23 Cal.App.4th 1459, 1470. The test most commonly applied by courts in determining whether to issue a preliminary injunction considers the following two interrelated factors:

1. The likelihood that the plaintiff will succeed on the merits at trial.

2. The interim harm that the plaintiff will suffer if the injunction is not issued compared to the interim harm that the defendant will suffer if it is. *Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286. This showing of harm that a plaintiff must make to support a request for preliminary injunction is often couched in terms of whether there is an adequate legal remedy available to plaintiff and whether plaintiff will suffer irreparable injury. *Tahoe Keys Property Owners' Assn. v. State Water Resources Control Bd.* (1994) 23 Cal.App.4th 1459, 1471.

In balancing the hardships, the trial court must exercise its discretion in favor of the party that is more likely to be injured by that exercise. *Mitsui Mfrs. Bank v. Texas Commerce Bank-Fort Worth* (1984) 159 Cal.App.3d 1051, 1059.

Here, Pouladian has failed to identify an irreparable harm to Pouladian. In the event that Deco needs to issue shares, Deco has 90,000 shares that are authorized and would not need to use Pouladian or any other shareholder's shares.

Deco does not have any offers from any third party to invest in Deco, however, even if Deco had such an investor that was willing to put money in Deco that is literally on the verge of bankruptcy, the value of Pouladian's shares would actually increase. Assuming arguendo that the value of Pouladian's shares decreases, the remedy is still monetary damages, and therefore, there would be no irreparable harm.

As a shareholder of Deco, Pouladian has no right to participate in management of Deco and his rights of inspection are limited to *California Corporations Code* §1601, and nothing more.

Additionally, Paragraph 13.01 of the Buy-Sell Agreement states that the agreement is terminated upon, *inter alia*, insolvency of the Deco. That provision is specifically designed for the circumstances under which the company needs to bring in investors, or take other measures, without a single shareholder being able to cripple the company's ability to survive. Pouladian admits that the Buy-Sell Agreement terminates upon Deco's insolvency, but contends that Deco is not insolvent because it is still buying and selling products. This position however is not supported by law, or the IRS guidelines.

<u>Balance of Harm and Requirement of Bond</u>

Pouladian in unable to identify the conduct that would harm him or any irreparable injury to him if the unidentified behavior occurred. Additionally, Pouladian cannot show probability of prevailing especially in light of the express language of the Buy-Sell Agreement and Pouladian's misunderstanding as to "insolvency" and what it means.

In contrast, if an injunction is issued, and Pouladian who has already threatened to tie up Deco in litigation for three years despite knowing that Deco is insolvent and "will be liquidated in a few months", the damage caused to Deco would be substantial, eliminating any opportunity for Deco to survive. Pouladian's Motion should be denied. However, in the event that the Court is inclined to grant the Motion, then the Court should require Pouladian to post bond in the minimum amount of five million dollars ($5,000,000).

The cases cited by Pouladian are either from other jurisdictions, mostly the State of Delaware and which are **not binding,** or they are completely inapplicable. Pouladian has cited two California cases, without the slightest analysis or analogy to the case at hand. In fact those two cases have nothing in common with this case.

In *Klaus v. Hi-Shear Corp.*, 528 F.2d 225, appellant attempted to gain control of appellee corporation for years through various maneuvers. Never successful in those attempts, appellant filed an action alleging violations of the Securities Exchange Act (SEA) and that appellee's management breached a fiduciary duty to stockholders. The lower court issued a number of preliminary injunctions against the voting of certain shares of appellee corporation's stock while denying other injunctive relief requested by appellant. Appellant sought review. ***On appeal, the court determined that all the preliminary injunctions were improperly issued*** because they were based on a mistaken theory of the law. ***The court found that appellant failed to establish a likelihood of success under the SEA claims***, so no injunctions should have been issued on that basis. ***Further, appellant could not establish irreparable harm***, appellant failed to join an indispensable party, and an injunction on the exercise of stock options was improper as untimely. ***Therefore, the court vacated all the preliminary injunctions which were issued.***

///

///

B. <u>The Plaintiff's Claims For Injunctive Relief Are Barred By The Equitable Doctrine Of Unclean Hands.</u>

Pouladian, by his present motion, seeks the equitable remedy of a preliminary injunction. However, the Plaintiff is not entitled to invoke this Court's equitable powers through the extraordinary relief of a preliminary injunction because the undisputed facts establish that Pouladian ***forged Bob Sinai's signature***, ***stole over $400,000*** of Deco's cash rewards for purchases Deco made, engaged in self-dealing, took an excess salary of **$792,583.32** from 2014 to 2019, and used Deco as his personal piggy bank. Additionally, as detailed in the Cross-Complaint, Pouladian mismanaged Deco, misrepresented facts to third party vendors, resulting in loss of $2,000,000 of annual sales for Deco.

It is a fundamental principle of law that one who seeks to invoke the Court's equitable powers **must do so with clean hands**, that is, the party must demonstrate to the Court's satisfaction that he has not engaged in any conduct which may be found to be wrongful so that the Court's invocation of its equitable powers allows the party to benefit from his wrongful conduct. *Bennett v. Lew* (1984) 151 Cal.App.3d 1177, 1186; *see* also, *Samuelson v. Ingraham* (1969) 272 Cal.App.2d 804.

**V.**

## CONCLUSION

Based on the foregoing reasons, Deco respectfully requests the Court to deny Pouladian's Motion for Preliminary Injunction.

Dated: February 13, 2020

**MOUSAVI & LEE, LLP**
**PISTONE LAW GROUP, LLP**

**By:** Amy A. Mousavi
**Amy A. Mousavi, Esq.**
**Thomas A. Pistone, Esq.**

Attorneys for Defendant Craig Allen, Cross-Complainant/Defendant Deco Enterprises, Inc., and Cross-Complainants ABS Capitol, LLC and Babak Sinai

**PROOF OF SERVICE**

**POULADIAN v. DECO ENTERPRISES ET. AL.**

**Los Angeles Superior Court**

**Case No.: 19STCV44475**

I am employed in the county of Orange, State of California at **MOUSAVI & LEE, LLP.** I am over the age of 18 and not a party to the within action; my business address is 19200 Von Karman Avenue, Suite 940, Irvine, CA 92612.

On February 13, 2020, I served the foregoing document(s) described as:

**OPPOSITION TO PLAINTIFF BENJAMIN POULADIAN'S MOTION FOR PRELIMINARY INJUNCTION** on the following interested parties in this action:

| | |
|---|---|
| John R. Yates Esq.<br>Yates Litigation<br>16000 Ventura Boulevard<br>Tenth Floor, Suite 1000<br>Encino, California 91436<br><br>Telephone: (818) 281-5891<br>E-Mail: jyates@yateslitigation.com | *Attorney for Plaintiff*<br>*Benjamin Pouladian* |

XX **BY ELECTRONIC SERVICE VIA ONELEGAL EFILING SERVICE:** I served the above-entitled document(s) through the OneLegal E-Filing Service at www.onelegal.com addressed to all parties appearing on the electronic service list for the above-entitled case. A copy of the One Legal Service Receipt Page/Confirmation will be maintained with the original document(s) in this office.

XX **BY EMAIL TRANSMISSION**: I caused the aforementioned document(s) to be served via electronic mail to the electronic addressee(s) listed on the attached mailing list. Such document was transmitted successfully from my e-mail address to the indicated addressee(s).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February February 13, 2020 at Irvine, California.

/s/ Stephanie Huerta

Stephanie Huerta Declarant

Electronically FILED by Superior Court of California, County of Los Angeles on 01/13/2020 03:15 PM Sherri R. Carter, Executive Officer/Clerk of Court, by E. Gregg,Deputy Clerk

Amy A. Mousavi, Esq., SBN: 228388
MOUSAVI & LEE, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9667
amousavi@mousavilee.com

Thomas A. Pistone, Esq., SBN: 77774
PISTONE LAW GROUP, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9660
tpistone@pistonelawgroup.com

**Attorneys for Defendant Craig Allen, Cross-Complainant/Defendant Deco Enterprises, Inc., and Cross-Complainants ABS Capitol, LLC and Babak Sinai**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

| | |
|---|---|
| BENJAMIN POULADIAN<br><br>Plaintiff,<br><br>v.<br><br>DECO ENTERPRISES; CRAIG ALLEN; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 19STCV44475<br>Dept.: 078<br>Assigned For All Purposes To: Hon. Judge Robert S. Draper<br><br>**DECLARATION OF AMY A. MOUSAVI IN SUPPORT OF OPPOSITION TO PLAINTIFF'S PRELIMINARY INJUNCTION** |
| DECO ENTERPRISES, INC., a California Corporation; ABS CAPITOL, LLC, a California limited liability company; BABAK SINAI, an individual;<br><br>Cross-Complainants;<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN, an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | **[Filed concurrently with Opposition to Plaintiff's Preliminary Injunction and Declaration of Craig Allen in Support of Opposition to Plaintiff's Preliminary Injunction]**<br><br>**Date: January 31, 2020**<br>**Time: 8:30 a.m.**<br>**Place: Department 86**<br><br>Action Filed: December 10, 2019 |

# DECLARATION OF AMY A. MOUSAVI

1. I am an attorney duly licensed to practice before all Courts of the State of California, and am the attorney of record for Defendants Deco Enterprises, Inc. (hereafter "Deco") and Craig Allen. Deco is also the Cross-Complainant.

2. I make this declaration in support of Defendants' Opposition to Plaintiff's Motion for Preliminary. I have personal knowledge of the facts contained herein, and would and could competently testify thereto if called upon to do so.

3. Attached hereto as Exhibit "1" is a true and correct copy of Deco's Articles of Incorporation, showing Deco has 100,000 authorized shares.

4. 10,000 shares of Deco have been issued to four shareholders, Pouladian and his cousins, Bob Sinai, Saman Sinai, and Siamak Sinai. A correct copy of Deco Enterprises, INC. A true and correct copy of Deco's Stock Ledger as of 2005 is attached hereto as Exhibit "2".

5. On or about August 14, 2020, in response to Bob Sinai's text about his misconduct, he stated "***Ok. I give up my shares already I'm out.***" A true and correct copy of the text sent by Pouladian to Bob Sinai is attached hereto as Exhibit "3."

6. This text was followed by Pouladian's resignations as the president and director, in multiple e-mails. True and correct copies of the emails sent by Pouladian are attached hereto as Exhibit "4."

7. Pouladian has since set out to destroy Deco by *inter alia*, and in Pouladian's own words, his efforts to tie up Deco in litigation for the next three years, and that "Deco isn't going to be around for many more months, everything is falling apart." A true and correct copy of Pouladian's text is attached hereto as Exhibit "4."

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 13th of February, 2020, at Irvine, California.

/s/ Amy A. Mousavi

AMY A. MOUSAVI

# EXHIBIT 1.

2701960

FILED
In the office of the Secretary of State
of the State of California

MAR 1 6 2005

# ARTICLES OF INCORPORATION

# OF

# DECO ENTERPRISES, INC.

I

The name of this corporation is DECO ENTERPRISES, INC.

II

The purpose of this corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

III

The name and address in the State of California of this corporation's initial agent for service of process is:

Saman Sinai
16311 Ventura Boulevard, Suite 1111
Encino, CA 91436-2150

IV

This corporation is authorized to issue only one class of shares of stock; and the total number of shares which this corporation is authorized to issue is One Hundred Thousand (100,000).

Dated: March 1, 2005

Saman Sinai

I hereby declare that I am the person who executed the foregoing Articles of Incorporation, which execution is my act and deed.

Saman Sinai

C:\1\1A\DecE02_124\DecEArts124.02D.doc

# EXHIBIT 2.

**STOCK LEDGER**

**DECO ENTERPRISES, INC.**

**As of July 1, 2005**

| Name of Shareholder | Certificate Number | Date Issued | Number of Shares | Date Cancelled |
|---|---|---|---|---|
| Saman Sinai | 1 | 7-1-2005 | 3,000 | |
| Benjamin Pouladian | 2 | 7-1-2005 | 3,000 | |
| Siamak Sinai | 3 | 7-1-2005 | 2,000 | |
| Babak Sinai | 4 | 7-1-2005 | 2,000 | |
| TOTAL | | | 10,000 | |

# EXHIBIT 3.

5:49 PM

AUGUST 14, 2019

Good morning.
Very intense and disappointing meeting yesterday.
I could Not sleep last night thinking what Saman and Ben have done with our trust and our life saving .
I can only tell you that I personally will hold both of you responsible for your miss behaviors and been dishonest .
My family invested too much of hard time and money and you both crossed your boundaries.
Please be prepared to pav

dishonest .
My family invested too much of hard time and money and you both crossed your boundaries.
Please be prepared to pay for your actions and to be removed from Deco as principals.
Me and my brother Siamak will file a lawsuit to recover our properties with Ciena .
Saman and Ben you both figure it out how you can work together to rescue Deco biz or file a bankruptcy . 7:51 AM

Ok. I give up my shares already I'm out. 8:06 AM

# EXHIBIT 4.

**Amy Mousavi**

**Subject:** FW: Letter of Resignation

---------- Forwarded message ---------
From: **Ben Pouladian** <ben@getdeco.com>
Date: Fri, Aug 16, 2019 at 4:49 PM
Subject: Letter of Resignation
To: Sam Sinai <sam@getdeco.com>
Cc: Craig Allen <Callen@getdeco.com>, Sheree Nelson <snelson@getdeco.com>, Sam Sinai <sam@capitalelectricalsupply.com>, Bob Sinai <bob@orionracking.com>

Mr. Saman Sam Sinai

CEO

Dear Sam:
In light of the disputes among the partners in Deco Enterprises, Inc., I have reached the conclusion that the best course of action for me is to resign as President of the company rather than invest new capital in Deco. This letter is my resignation, and it is effective immediately.

I support your efforts to locate another investor to take my place and will cooperate as needed and requested with any potential new investor or investors you locate, including but not limited to transferring my shares to the new partner(s) for a nominal sum.

Wishing you and Deco Lighting all the best!

Sincerely,
Thank you,

**Ben Pouladian** | President
Deco Lighting | 2917 Vail Avenue | Commerce CA 90040
tel: (310) 366-6866 ext 208 | fax: (310) 366-6855
ben@getdeco.com | www.getdeco.com

**Amy Mousavi**

**Subject:** FW: Resignation from board of Deco Enterprises, Inc.

---------- Forwarded message ---------
From: **Ben Pouladian** <ben.pouladian@gmail.com>
Date: Tue, Aug 20, 2019 at 10:49 AM
Subject: Resignation from board of Deco Enterprises, Inc.
To: <ara@encorelaw.com>
Cc: Craig Allen <callen@getdeco.com>, sam@getdeco.com <sam@getdeco.com>, <sam@capitalelectricsupply.com>, Bob Sinai <bob@orionracking.com>

Gentlemen,

Please take notice that I am resigning as a Director of Deco Lighting, Inc., effective immediately with the transmission of this email on August 20, 2019.

I am also sending my resignation via US Mail to Mr. Ara Babaian at Encore Law.

Very truly yours,

Ben Pouladian

# PROOF OF SERVICE

**Pouladian v. Deco Enterprises, et al.**

**Los Angeles Superior Court**

**Case No. 19STCV44475**

I am employed in the county of Orange, State of California at **MOUSAVI & LEE, LLP.** I am over the age of 18 and not a party to the within action; my business address is 19200 Von Karman Avenue, Suite 940, Irvine, CA 92612.

On February 13, 2020 I served the foregoing document(s) described as: **DECLARATION OF AMY A. MOUSAVI IN SUPPORT OF OPPOSITION TO PLAINTIFF'S PRELIMINARY INJUNCTION** on the following interested parties in this action:

John R. Yates, Esq.
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, CA 91436

Telephone: (818) 281-5891
Fax: (818) 561-3925
jyates@yateslitigation.com

*Attorney for Plaintiff Benjamin Pouladian*

XX **BY ELECTRONIC SERVICE VIA ONELEGAL EFILING SERVICE:** I served the above-entitled document(s) through the OneLegal E-Filing Service at www.onelegal.com addressed to all parties appearing on the electronic service list for the above-entitled case. A copy of the One Legal Service Receipt Page/Confirmation will be maintained with the original document(s) in this office.

XX **BY EMAIL TRANSMISSION**: I caused the aforementioned document(s) to be served via electronic mail to the electronic addressee(s) listed on the attached mailing list. Such document was transmitted successfully from my e-mail address to the indicated addressee(s).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 13, 2020 at Irvine, California.

/s/ Stephanie Huerta

Stephanie Huerta, Declarant

Electronically FILED by Superior Court of California, County of Los Angeles on 01/13/2020 05:15 PM Sherri R. Carter, Executive Officer/Clerk of Court, by E. Gregg,Deputy Clerk

Amy A. Mousavi, Esq., SBN: 228388
MOUSAVI & LEE, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9667
amousavi@mousavilee.com

Thomas A. Pistone, Esq., SBN: 77774
PISTONE LAW GROUP, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9660
tpistone@pistonelawgroup.com

Attorneys for Defendant Craig Allen, Cross-Complainant/Defendant Deco Enterprises, Inc., and Cross-Complainants ABS Capitol, LLC and Babak Sinai

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

| | |
|---|---|
| BENJAMIN POULADIAN<br><br>Plaintiff,<br><br>v.<br><br>DECO ENTERPRISES; CRAIG ALLEN; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 19STCV44475<br>Dept.: 078<br>Assigned For All Purposes To: Hon. Judge Robert S. Draper<br><br>**DECLARATION OF CRAIG ALLEN IN SUPPORT OF OPPOSITION TO PLAINTIFF'S PRELIMINARY INJUNCTION** |
| DECO ENTERPRISES, INC., a California Corporation; ABS CAPITOL, LLC, a California limited liability company; BABAK SINAI, an individual;<br><br>Cross-Complainants;<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN, an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | **[Filed concurrently with Opposition to Plaintiff's Preliminary Injunction and Declaration of Amy A. Mousavi in Support of Opposition to Plaintiff's Preliminary Injunction]**<br><br>**Date: January 31, 2020**<br>**Time: 8:30 a.m.**<br>**Place: Department 86**<br><br>Action Filed: December 10, 2019 |

**DECLARATION OF CRAIG ALLEN**

I, Craig Allen, declare and state:

1. I am a party to this action and I make this declaration in support of Deco Enterprises, Inc.'s Opposition to Pouladian's Motion for Preliminary Injunction.

2. I have personal knowledge of the facts contained herein, and would and could competently testify thereto if called upon to do so.

3. I am the Chief Financial Officer of Deco Enterprises, Inc. (hereafter "Deco").

4. I was present at the meeting in August of 2019 called by Benjamin Pouladian (hereafter "Pouladian") in which Pouladian admitted to forging Bob Sinai's signature to borrow an additional 2 million dollars on behalf of Deco.

5. Pouladian increased his salaries between 2014 and 2019 as follows:

$115,000 from 2014-2015;

$579,000 from 4/30/16 – 4/30/19; and

$98,583.32 from 5/1/19 – 8/15/19.

6. Attached hereto as Exhibit "6" is a true and correct copy of the IRS guidelines as to insolvency. This information is available by clicking on the following link: https://www.irs.gov/newsroom/what-if-i-am-insolvent.

7. In August of 2019, Deco was completely insolvent, as defined by the Internal Revenue Service, in that Deco's liabilities were $18,045,156 which exceeded Deco's assets of $13,031,269 by approximately five million dollars. Additionally, in mid-August 2019, Deco could not meet its payroll and had to borrow funds to cover its payroll. A true and correct copy of Deco's balance sheet showing Deco's assets and liabilities are attached hereto as Exhibit "7."

8. On November 27, 2019, Benjamin Pouladian sent me a series of texts. A true and correct copy of the texts are attached hereto as Exhibit "5."

9. I was in communication with Pouladian in November of 2019 regarding Pouladian's litigation efforts involving Deco and Deco's liquidation.

I declare under the penalty of perjury under the laws of the State of California that the

foregoing is true and correct. Executed on this 13th day of February 2020, at Irvine, California.

/s/ Craig Allen

Craig Allen

# EXHIBIT 5.

VZW Wi-Fi 11:22 AM

Delete All CA Cancel

Craig

Hi Craig, as an employee you have nothing to win in this fight, but everything to lose!
I'd rather not have you sucked into our Two generation old Iranian family dispute.
Now is your last chance to get out ahead
Go and try getting a job in the next 3 years while you have pending litigation for your personal act of converting my credit card funds into your $250,000 salary
And let's be honest with

VZW Wi-Fi 11:23 AM

Delete All CA Cancel

Craig

And let's be honest with ourselves, Deco isn't going to be around for many more months, everything is falling apart. You have no job stability here.
Don't ruin the rest of your further work career by getting involved in our ugly family shareholder dispute
You have already caused me Major financial harm, as a shareholder I want you out of this company as of Today! You have a very critical choice to make today and so do I.

VZW Wi-Fi 11:23 AM

Delete All CA Cancel

Craig

And let's be honest with ourselves, Deco isn't going to be around for many more months, everything is falling apart. You have no job stability here.
Don't ruin the rest of your further work career by getting involved in our ugly family shareholder dispute
You have already caused me Major financial harm, as a shareholder I want you out of this company as of Today! You have a very critical choice to make today and so do I.

VZW Wi-Fi 11:23 AM

Delete All CA Cancel

Craig

further work career by getting involved in our ugly family shareholder dispute
You have already caused me Major financial harm, as a shareholder I want you out of this company as of Today! You have a very critical choice to make today and so do I. The next move you make will affect the rest of your life's business career. I don't want you to get stuck in the middle of this war, it is about to get Very ugly as the company will be liquidated.

# EXHIBIT 6.

IRS

# What if I am insolvent?

A taxpayer is insolvent when his or her total liabilities exceed his or her total assets. The forgiven debt may be excluded as income under the "insolvency" exclusion. Normally, a taxpayer is not required to include forgiven debts in income to the extent that the taxpayer is insolvent. The forgiven debt may also qualify for exclusion if the debt was discharged in a Title 11 bankruptcy proceeding or if the debt is qualified farm indebtedness or qualified real property business indebtedness. If you believe you qualify for any of these exceptions, see the instructions for Form 982.

Return to What If?

*Page Last Reviewed or Updated: 20-Dec-2019*

# EXHIBIT 7.

**Deco Lighting**
**Balance Sheet**

| | Actual Jan-19 | Actual Feb-19 | Actual Mar-19 | Actual Apr-19 | Actual May-19 | Actual Jun-19 | Actual Jul-19 | Actual Aug-19 | Actual Sep-19 | Actual Oct-19 | Actual Nov-19 | Actual Dec-19 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Assets:** | | | | | | | | | | | | |
| Cash | 450,613 | 442,054 | 347,226 | 510,992 | 197,351 | 411,661 | 47,371 | 50,107 | 152,784 | 243,535 | 84,433 | 223,759 |
| Accounts Receivable | 6,077,422 | 5,371,592 | 5,045,267 | 4,111,714 | 4,079,823 | 3,908,237 | 3,514,336 | 3,412,438 | 3,185,091 | 2,721,060 | 3,361,735 | 2,834,497 |
| Allowance for Doubtful Accts | (472,671) | (300,968) | (300,968) | (300,968) | (300,968) | (300,968) | (300,968) | (269,431) | (269,431) | (269,431) | (269,431) | (633,794) |
| **Trade A/R** | 5,604,751 | 5,070,625 | 4,744,300 | 3,810,747 | 3,778,855 | 3,607,269 | 3,213,369 | 3,143,007 | 2,915,660 | 2,451,629 | 3,092,304 | 2,200,704 |
| A/R Other | 97,337 | 13,975 | 45,993 | 163,103 | 141,352 | 172,441 | 193,172 | 231,616 | 274,022 | 274,295 | 275,626 | 275,830 |
| Employee Advances | (140) | 1,024 | 6,160 | 11,045 | 16,466 | 2,524 | 4,310 | 2,420 | 2,420 | 2,170 | 2,170 | 2,170 |
| **Other A/R** | 97,197 | 14,999 | 52,153 | 174,149 | 157,818 | 174,965 | 197,481 | 234,036 | 276,442 | 276,464 | 277,796 | 278,000 |
| Inventory | 13,266,028 | 13,086,943 | 12,033,140 | 11,896,932 | 11,103,378 | 9,994,475 | 10,028,977 | 9,175,376 | 8,410,191 | 7,647,741 | 7,051,668 | 6,816,926 |
| Inventory Reserve | (1,193,781) | (1,082,641) | (655,415) | (668,298) | (678,473) | (678,473) | (678,473) | (678,473) | (678,473) | (678,473) | (678,473) | (4,548,018) |
| Inventory in Transit | 1,035,851 | 648,142 | 420,460 | 586,178 | 616,382 | 520,990 | 462,579 | 74,297 | 34,653 | 26,495 | 73,488 | 91,377 |
| WIP INVENTORY ACCOUNT | 421,618 | 421,411 | 427,444 | 276,003 | 223,866 | 353,225 | 333,432 | 364,671 | 290,298 | 317,573 | 334,242 | 235,593 |
| **Inventory** | 13,529,716 | 13,073,854 | 12,225,629 | 12,090,814 | 11,265,152 | 10,190,216 | 10,146,515 | 8,935,870 | 8,056,669 | 7,313,335 | 6,780,925 | 2,595,878 |
| **Due to Officer - Saman Sinai** | 71,743 | 71,742.55 | 71,742.55 | 71,742.55 | 71,743 | 71,743 | 71,743 | 71,743 | - | - | - | - |
| Prepaid Expenses | 211,060 | 187,430 | 207,256 | 218,328 | 62,309 | 44,277 | 84,687 | 85,529 | 85,529 | 67,764 | 103,354 | 103,354 |
| Prepaid Insurance & Others | 27,264 | 25,791 | 22,086 | 23,588 | 16,129 | 47,515 | 40,532 | 40,942 | 35,341 | 31,133 | 26,922 | 22,963 |
| Prepaid Property Taxes | 22,538 | 17,981 | 13,424 | 8,868 | 7,598 | 3,041 | (1,028) | (5,343) | (8,830) | 35,077 | 30,693 | 26,308 |
| Deposits - Inventory | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 |
| Prepaid Freight In | - | - | - | - | - | - | - | - | - | - | - | - |
| **Prepaid and other** | 268,113 | 238,452 | 250,016 | 258,034 | 93,286 | 102,083 | 131,440 | 128,378 | 119,291 | 141,225 | 168,219 | 159,875 |
| **Current Assets** | 20,022,133 | 18,911,727 | 17,691,066 | 16,916,478 | 15,564,205 | 14,557,937 | 13,807,919 | 12,563,140 | 11,520,846 | 10,426,189 | 10,403,677 | 5,458,215 |
| Computers | | | | | | | | | | | | |
| Booth | 95,071 | 95,071 | 95,071 | 95,071 | 95,071 | 95,071 | 95,071 | 95,071 | 95,071 | 95,071 | 95,071 | 95,071 |
| Furniture & Fixtures | 175,327 | 175,327 | 175,327 | 175,327 | 175,327 | 175,327 | 175,327 | 175,327 | 175,327 | 175,327 | 175,327 | 175,327 |
| Machinery & Equipment | 63,000 | 63,000 | 63,000 | 63,000 | 63,000 | 63,000 | 63,000 | 63,000 | 63,000 | 63,000 | 110,000 | 110,000 |
| Loan Origination Costs | 202,967 | 202,967 | 202,967 | 202,967 | 202,967 | 202,967 | 202,967 | 202,967 | 202,967 | 202,967 | 202,967 | 202,967 |
| Trucks & Automobiles | 91,697 | 91,697 | 91,697 | 91,697 | 91,697 | 91,697 | 91,697 | 91,697 | 91,697 | 91,697 | 91,697 | 91,697 |
| Computers & Office Equipment | 784,880 | 784,880 | 784,880 | 784,880 | 886,114 | 886,114 | 941,890 | 947,946 | 947,946 | 949,317 | 957,373 | 965,429 |
| Leasehold Improvements | 690,272 | 690,272 | 690,272 | 690,272 | 690,272 | 690,272 | 690,272 | 690,272 | 690,272 | 690,272 | 690,272 | 690,272 |
| Bluetooth Software Program | - | - | - | - | - | - | - | - | - | - | - | - |
| Machinery, Tools & Warehouse | 248,307 | 248,307 | 248,307 | 248,307 | 248,307 | 248,307 | 248,307 | 248,307 | 248,307 | 248,307 | 248,307 | 248,307 |
| Accumulated Depreciation | (1,765,956) | (1,806,321) | (1,846,686) | (1,887,051) | (1,927,416) | (1,967,781) | (2,006,704) | (2,047,069) | (2,087,434) | (2,127,799) | (2,168,164) | (2,208,529) |
| **Fixed Assets** | 585,564 | 545,199 | 504,834 | 464,469 | 525,338 | 484,973 | 501,826 | 467,517 | 427,152 | 388,158 | 402,849 | 370,540 |
| **Total Asset** | 20,608,308 | 19,457,538 | 18,196,512 | 17,381,559 | 16,090,154 | 15,043,521 | 14,310,356 | 13,031,269 | 11,948,609 | 10,814,958 | 10,807,137 | 5,829,366 |
| **Liabilities:** | | | | | | | | | | | | |
| **Accounts Payable - Trade** | 11,079,760 | 11,655,371 | 10,664,551 | 10,703,331 | 9,186,641 | 9,011,047 | 9,782,982 | 9,540,900 | 9,232,782 | 9,023,326 | 8,935,453 | 8,924,879 |
| Accrued Salaries & Wages | 189,284 | 206,646 | 228,635 | 144,762 | 191,109 | 287,298 | 242,424 | 181,148 | 196,857 | 245,247 | 187,422 | 216,670 |
| GOODS RECEIVED NOT INVOICED | (43,970) | 89,818 | 50,984 | 46,255 | 37,030 | 33,928 | 28,388 | 44,083 | 215 | 23,578 | 11,306 | (3,388) |
| AFLAC Payable | (998) | (1,002) | (1,030) | (1,140) | (1,133) | (1,090) | (1,180) | (1,170) | (800) | (1,243) | (1,250) | (1,283) |
| Sales Taxes Payable | 28,378 | 28,546 | 28,508 | 28,536 | 30,445 | 31,432 | 128,517 | 133,423 | 132,396 | 128,072 | 132,318 | 127,983 |
| Accrued Expenses - Other | 2,813,687 | 2,215,044 | 2,550,621 | 2,528,035 | 2,469,527 | 1,771,996 | 1,492,613 | 1,159,726 | 1,239,283 | 1,388,586 | 1,403,723 | 1,306,686 |
| **Accrued Liabilities** | 3,053,183 | 2,587,353 | 2,909,639 | 2,778,037 | 2,792,418 | 2,196,277 | 1,926,755 | 1,544,980 | 1,595,721 | 1,811,022 | 1,764,471 | 1,677,622 |
| **Accrued Warranties** | 844,205 | 844,205 | 844,205 | 844,205 | 844,205 | 844,205 | 844,205 | 844,205 | 844,205 | 844,205 | 844,205 | 844,205 |
| ABL Loan | 7,736,778 | 6,875,238 | 6,598,504 | 5,954,197 | 4,899,373 | 4,690,656 | 3,861,504 | 3,367,462 | 2,969,769 | 2,127,213 | 2,434,036 | 1,991,319 |
| **Line of Credit** | 7,736,778 | 6,875,238 | 6,598,504 | 5,954,197 | 4,899,373 | 4,690,656 | 3,861,504 | 3,367,462 | 2,969,769 | 2,127,213 | 2,434,036 | 1,991,319 |
| Notes Payable - | 335,246 | 335,246 | 335,246 | 735,246 | 735,246 | 735,246 | 735,246 | 735,246 | 410,246 | 410,246 | 410,246 | 410,246 |
| Due to Officer - B. Sinai | - | - | - | - | - | - | - | - | - | - | - | - |
| Due to Officer - Sam Sinai | 43,613 | 43,613 | 43,613 | 43,613 | 43,613 | 43,613 | 43,613 | 43,613 | 43,613 | 43,613 | 43,613 | 43,613 |
| **Notes Payable - Related Party** | 378,859 | 378,859 | 378,859 | 778,859 | 778,859 | 778,859 | 778,859 | 778,859 | 453,859 | 453,859 | 453,859 | 453,859 |
| **Current Liabilities** | 23,095,804 | 22,343,457 | 21,397,584 | 21,059,849 | 18,502,107 | 17,521,045 | 17,194,304 | 16,076,407 | 15,096,336 | 14,259,625 | 14,432,024 | 13,891,885 |
| Siena Stretch | | | | | 1,250,000 | 1,239,583 | 1,229,167 | 1,218,750 | 1,208,333 | 1,197,917 | 1,187,500 | 1,177,083 |
| Junior Debt | | | | | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Bank Term Loans** | - | - | - | - | 2,000,000 | 1,989,583 | 1,979,167 | 1,968,750 | 1,958,333 | 1,947,917 | 1,937,500 | 1,927,083 |
| **Long-Term Liabilities** | (0) | - | - | - | 2,000,000 | 1,989,583 | 1,979,167 | 1,968,750 | 1,958,333 | 1,947,917 | 1,937,500 | 1,927,083 |
| **Liabilities** | 23,095,804 | 22,343,457 | 21,397,584 | 21,059,849 | 20,502,107 | 19,510,628 | 19,173,471 | 18,045,156 | 17,054,669 | 16,207,542 | 16,369,524 | 15,818,968 |
| **Equity:** | | | | | | | | | | | | |
| Capital Stock | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 |
| Retained Earnings | (1,940,342) | (2,338,765) | (2,653,918) | (3,131,136) | (3,864,799) | (3,919,953) | (4,315,961) | (4,466,734) | (4,558,906) | (4,845,430) | (5,015,232) | (9,442,448) |
| Distribution - B. Sinai | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) |
| Distribution - B. Pouladian | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) |
| Distribution - Saman Sinai | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) | (259,800) |
| Distribution - Siamak Sinai | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) | (173,200) |
| Paid in capital | 168,846 | 168,846 | 168,846 | 168,846 | 168,846 | 168,846 | 168,846 | 168,846 | 168,846 | 168,846 | 168,846 | 168,846 |
| **Equity** | (2,487,496) | (2,885,919) | (3,201,072) | (3,678,290) | (4,411,953) | (4,467,107) | (4,863,115) | (5,013,888) | (5,106,060) | (5,392,584) | (5,562,386) | (9,989,602) |
| | | | | | - | - | - | - | - | - | - | - |

**PROOF OF SERVICE**

**POULADIAN v. DECO ENTERPRISES ET. AL.**

**Los Angeles Superior Court**

**Case No.: 19STCV44475**

I am employed in the county of Orange, State of California at **MOUSAVI & LEE, LLP.** I am over the age of 18 and not a party to the within action; my business address is 19200 Von Karman Avenue, Suite 940, Irvine, CA 92612.

On February 13, 2020, I served the foregoing document(s) described as:

**DECLARATION OF CRAIG ALLEN IN SUPPORT OF OPPOSITION TO PLAINTIFF'S PRELIMINARY INJUNCTION** on the following interested parties in this action:

| | |
|---|---|
| John R. Yates Esq.<br>Yates Litigation<br>16000 Ventura Boulevard<br>Tenth Floor, Suite 1000<br>Encino, California 91436<br><br>Telephone: (818) 281-5891<br>E-Mail: jyates@yateslitigation.com | *Attorney for Plaintiff*<br>*Benjamin Pouladian* |

XX **BY ELECTRONIC SERVICE VIA ONELEGAL EFILING SERVICE:** I served the above-entitled document(s) through the OneLegal E-Filing Service at www.onelegal.com addressed to all parties appearing on the electronic service list for the above-entitled case. A copy of the One Legal Service Receipt Page/Confirmation will be maintained with the original document(s) in this office.

XX **BY EMAIL TRANSMISSION**: I caused the aforementioned document(s) to be served via electronic mail to the electronic addressee(s) listed on the attached mailing list. Such document was transmitted successfully from my e-mail address to the indicated addressee(s).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February February 13, 2020 at Irvine, California.

/s/ Stephanie Huerta

Stephanie Huerta Declarant

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Fax: (818) 561-3925
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff Benjamin Pouladian
And Cross-Defendants Benjamin Pouladian
And Edith Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| Benjamin Pouladian,<br><br>Plaintiff,<br><br>vs.<br><br>Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive<br><br>Defendants. | **CASE NO.: 19STCV44475**<br><br>HON. MITCHELL L. BECKLOFF – DEPARTMENT 86<br><br>UNLIMITED JURISDICTION<br><br>**Supplemental Declaration of Benjamin Pouladian in Support of Motion for Preliminary Injunction** |
| DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,<br><br>Cross-Complainants,<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | Date: February 21, 2020<br>Time: 9:30 a.m.<br>Place: Department 86<br><br>**ACTION FILED:** December 10, 2019 |



Yates Litigation

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| Benjamin Pouladian,<br><br>Plaintiff,<br><br>vs.<br><br>Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive<br><br>Defendants.<br><br>DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,<br><br>s,<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>s. | **CASE NO.: 19STCV44475**<br><br>HON. MITCHELL L. BECKLOFF – DEPARTMENT 86<br><br>UNLIMITED JURISDICTION<br><br>**Supplemental Declaration of Benjamin Pouladian in Support of Motion for Preliminary Injunction**<br><br>Date: February 21, 2020<br>Time: 9:30 a.m.<br>Place: Department 86<br><br>**ACTION FILED:** December 10, 2019 |

I, Benjamin Pouladian, state that:

1. I have personal knowledge of the facts set forth herein and first-hand knowledge of same. If called upon to testify and placed under oath, I could and would testify competently thereo.

2. I am one of the Trustees of the Abraham and Delara Pouladian Family Trust. The Trust is one of the owners (25%) of ABS Capitol, LLC. ABS owns the land on which Deco Enterprises, Inc. has its headquarters and warehouse.

3. As I stated in paragraph 5 of my declaration in support of the Preliminary Injunction requested, Siena Lending Group, LLC has a lien on the ABS real estate as part of the security for Deco's debt to Siena. There is a first lien of about $2.8 million in favor of another lender, and Siena's lien has second position.

4. The ABS real estate at present is worth about $8,000,000 or more in a free market sale. After paying off the liens, the net would be approximately $3,000,000 to $4,000,000.

I swear under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 17th day of February 2020 at Los Angeles, California.

Benjamin Pouladian

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436.**

On February 18, 2020, I served the foregoing document described as **Supplemental Declaration of Benjamin Pouladian in Support of Motion for Preliminary Injunction**

on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

Amy Mousavi, Esq.
Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Attorney for Deco Enterprises, Inc. and Craig Allen

Thomas Pistone, Esq.
Pistone Law Group LLP
19200 Von Karman Ave, Suite 940
Irvine, California 92612
Email: tpistone@pistonelawgroup.com

Attorney for Babak Sinai, Saman Sinai and Siamak Sinai

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 18, 2020, at Encino, California.

John R. Yates

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Fax: (818) 561-3925
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff Benjamin Pouladian
And Cross-Defendants Benjamin Pouladian
And Edith Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| Benjamin Pouladian,<br><br>Plaintiff,<br><br>vs.<br><br>Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive<br><br>Defendants. | **CASE NO.: 19STCV44475**<br><br>HON. MITCHELL L. BECKLOFF – DEPARTMENT 86<br><br>UNLIMITED JURISDICTION<br><br>**Reply Brief in Support of Motion for Preliminary Injunction to Preserve Plaintiff Benjamin Pouladian's Voting Rights as a 30% Shareholder of Defendant Deco Enterprises, Inc.** |
| DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,<br><br>Cross-Complainants,<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | Date: February 21, 2020<br>Time: 9:30 a.m.<br>Place: Department 86<br><br>**ACTION FILED:** December 10, 2019 |



Yates Litigation

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTORY REMARKS

Deco's Opposition focuses on attacking the character and alleged past actions of Mr. Pouladian, instead of explaining why he should not be allowed to vote his shares in the company in the event of a major restructuring, or why allowing him to vote his shares will cause harm to Deco. This is an interesting stance given that the past actions of the three other Deco shareholders are as bad or worse than anything alleged against Mr. Pouladian, as recounted in the cross-complaint and third party complaint filed earlier this week and attached hereto as Exhibit A, yet they will be permitted to vote their shares.

As discussed below, the factual and legal arguments of the Opposition are not persuasive. The Court should grant the injunction that Mr. Pouladian seeks, which will simply maintain the existing *status quo* while the Buy Sell Agreement is in effect by its terms.

## II.

## POULADIAN IS STILL A 30% SHAREHOLDER OF DECO

The Opposition repeats the same tired claim that Pouladian relinquished his Deco shares by a simple announcement and a text. As Pouladian explained, the oral statements and texts offered to support the claim of relinquishment are not the method in which shares in Deco are relinquished according to the terms of the Buy Sell Agreement. There is a procedure, and no part of that procedure was followed. Subsequently, Pouladian did offer his shares at a nominal price – though again not following the procedure laid out in the Buy Sell -- but the offer was not accepted and withdrawn. As a matter of the terms of the Buy Sell Agreement, and of the rules of basic contract law, Pouladian remains a 30% shareholder in Deco.

## III.

## DECO IS STILL SOLVENT AND THE BUY SELL AGREEMENT IS IN EFFECT

According to the unverified financials submitted by Deco, its liabilities exceed its assets by three to ten million dollars, depending on the specific month that is considered. If Deco is correct, then there should have been a vote of the shareholders, including Mr. Pouladian, to declare Deco



Yates Litigation

insolvent and the Buy Sell Agreement to be no longer in force and effect. Deco does not mention or present evidence of any such vote, or that a shareholders meeting has been scheduled to take a vote on this issue. The terms of the Buy Sell Agreement are not self-executing based on mere conclusions of a non-shareholder such as Mr. Allen.

In addition to providing no evidence of a shareholder vote to declare insolvency, Deco provides no evidence that it is not actually operating and paying its bill as they become due, just as if it were solvent. In fact, the evidence from Deco's vendors and customers recounted in Mr. Pouladian's declaration indicate that Deco is operating and paying its bills as they become due, which conflicts with the claim of insolvency. Just because Deco has some large liabilities, that does not imply that those liabilities are 100% due and payable now, rather than payable over time so that Deco's cash flow can support them.

Finally, the balance sheets submitted by Deco do not include the value of the ABS Capitol, LLC property upon which Deco's primary lender, Siena, also has a lien. As stated in Mr. Pouladian's supplemental declaration, the net value of the ABS property after payment of all liens is three to four million dollars. Addition of that equity to Deco's purported balance sheet makes Deco solvent once more.

## IV.

## DECO HAS PRESENTED NO EVIDENCE THAT IT WILL BE HARMED IF POULADIAN RETAINS HIS RIGHT TO VOTE HIS 30% INTEREST

Deco has presented no evidence of any harm that would befall Deco if Pouladian were still permitted to vote his 30% shareholder interest. Supposedly, Pouladian is out to destroy Deco but that claim is contradicted by Pouladian's declaration stating that his incentive is to do what is necessary to keep the value of his shares at the highest possible level. That does not include a "no" vote on a proposal to recapitalize, the disapproval of which would send Deco into dissolution and sale of assets. That is not economically rational behavior. Even though Deco swears there are no recapitalization proposals, that claim is highly suspicious given Deco's economic difficulties, and given Deco's vigorous opposition to any shareholder rights for Pouladian and refusal to provide any information regarding proposals. If there aren't any proposals, then why oppose Pouladian's right to



Yates Litigation

Yates Litigation

vote his shares?

V.

**POULADIAN WILL SUFFER IRREPARABLE HARM IF DECO IS PERMITTED TO PURSUE MAJOR CHANGES IN EQUITY STRUCTURE IN CONNECTION WITH RECAPITALIZATION WHILE EXCLUDING POULADIAN**

Deco's comment on the New York and Delaware chancery court decisions regarding irreparable harm to shareholders presented by Pouladian is that these cases are not binding in California. That is true. They were not cited because they are binding, but rather because they are suggestive of what courts that routinely deal with complex disputes between shareholders and corporations consider to be "irreparable harm" warranting injunctive relief. Unfortunately, there are few such decisions in California because unlike Delaware and New York, California is not a focal point of shareholder litigation.

To summarize, corporate consideration of restructuring or recapitalization offers without providing shareholders adequate information, and pledging the shares of minority shareholders without their consent, have both been adjudicated to constitute irreparable harm, and both are present here. *See, e.g.*, In re Atheros Communications, Inc. Shareholder Litigation, No. 6124-VCN (Delaware Court of Chancery 2011) ("The shareholders, now asked to approve the sale of Atheros, are entitled to full and complete disclosure of all material facts before they vote. . .. and . . . a breach of the disclosure duty actually results in irreparable harm to the stockholders that is better addressed through an injunctive remedy."); Sealey Mattress Company of New Jersey, Inc. v. Sealey, Inc., 532 A.2d 1324, 1340 (Delaware Court of Chancery 1987); In re Staples, Inc. Shareholder Litigation, 792 A.2d 934, 960 (Delaware Court of Chancery 2001); In the Matter of the Petition of XTF Global Asset Management, LLC, 2010 NY Slip Op 30422(U) (Supreme Court New York County 2010) (pledging of minority shareholder's 15% stake by majority shareholder to attract capital in restructuring constitutes irreparable harm).

Under California law, the right to vote shares owned in a corporation is a property right, which supports a preliminary injunction to prevent its violation. Klaus v. Hi-Shear Corp., 528 F.2d 225, 234 (9th Cir. 1975), *citing*, Meyberg v. Superior Court, 19 Cal.2d 336, 342 – 344 (1942)

(temporary restraining order prohibiting shareholders from interfering with minority shareholder's right to vote shares upheld).

Pouladian has been kept completely in the dark and his property right of voting his shares ignored. The preliminary injunction requested should be granted to prevent irreparable harm and uphold his rights.

VI.

**POULADIAN WILL LIKELY PREVAIL ON THE MERITS**

Pouladian made an offer to sell his shares at a nominal price to help Deco. The offer was terminated on November 1, 2019, and was not accepted before then by Deco or any shareholder of Deco. Additionally, none of the processes described in paragraph 6 of the Buy Sell Agreement were followed by either Pouladian or Deco, and no Fair Market Valuation is known to be in progress. Under simple contract rules, or under the terms of the Buy Sell Agreement, Pouladian's shares in Deco have not been transferred.

None of the events specified in the Buy Sell Agreement that terminate the Agreement are known to have occurred. The event cited by counsel for Deco – insolvency – is not present, given that the company is still producing, shipping, and buying to and from customers and its vendors.

V.

**THE BOND REQUIRED SHOULD BE NOMINAL**

Deco appears to believe that Pouladian must post a bond at the time of filing of the Motion for Preliminary Injunction. In fact, the Court sets the bond amount after hearing, and makes the injunction conditional on the posting of the bond.

Deco claims that the bond should be $5,000,000 but offers not a shred of evidence why it should be so high. We are talking about voting rights of a shareholder, which doesn't implicate the balance sheet or overall financial status of Deco in any way demonstrated by the Opposition. In the

///

///

///

///



Yates Litigation

absence of any rational basis for the enormous bond requested by Deco, the bond should be nominal, such as $10,000, until some basis for increasing it is demonstrated.

DATED: February 18, 2020

YATES LITIGATION

By: /s/ [signature]
JOHN R. YATES
Attorneys for Plaintiff and Cross-Defendant
Benjamin Pouladian

Yates Litigation

# EXHIBIT "A"

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff, Cross-Defendant,
Third-Party Plaintiff and Cross-Complainant
Benjamin Pouladian And for Cross-Defendant Edith Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| Benjamin Pouladian,<br><br>Plaintiff,<br><br>vs.<br><br>Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive<br><br>Defendants. | **CASE NO.: 19STCV44475**<br><br>HON. ROBERT S. DRAPER – DEPARTMENT 78<br><br>UNLIMITED JURISDICTION<br><br>**Cross-Complaint of Third-Party Plaintiff and Cross-Complainant Benjamin Pouladian for Equitable Indemnity** |
| DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,<br><br>Cross-Complainants,<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | **ACTION FILED:** December 10, 2019 |



Yates Litigation

Benjamin Pouladian,

Cross-Complainant,

v..

Babak Sinai,

Cross-Defendant.

Benjamin Pouladian,

Third-Party Plaintiff,

v.

Siamak Sinai; Saman Sinai; Craig Allen; and Moes 1through 10, inclusive,

Third Party Defendants.

Cross-Complainant and Third-Party Plaintiff Benjamin Pouladian ("Pouladian") for his cross-complaint against cross-defendant Babak Sinai and third-party complaint against Siamak Sinai, Saman Sinai, and Moes 1 through 10, and each of them, alleges as follows:

1. Pouladian is a founder and President of defendant Deco Enterprises, Inc. ("Deco").

2. Cross-Defendant Babak Sinai ("Babak") is a 20% shareholder of Deco.

3. Third Party Defendant Siamak Sinai ("Siamak") is a 20% shareholder of Deco.

4. Third Party Defendant Saman Sinai ("Saman") is a 30% shareholder of Deco.

5. Third Party Defendant Craig Allen ("Allen") is the Chief Financial Officer of Deco, since 2016.

6. Defendants Moes 1 through 10 are persons whose names are currently unknown to plaintiff, but on information and belief Moes 1 through 10 are agents or employees of Babak, Siamak, Saman, and/or Allen and each of them, and Moes 1 through 10 are legally responsible for the damages Pouladian may suffer as a result of the claims made by Deco, ABS Capitol, LLC and Babak against Pouladian.

7. Deco manufactures and sells commercial lighting fixtures. The Deco name is widely known among consumers of its products, which include many large corporations such as Rexel, CED and Graybar.



Yates Litigation

8. Under the management of Pouladian as President of Deco since its formation in 2005, the company grew from a handful of employees and a few million dollars per year in revenue to approximately 50 employees and more than $40,000,000 in revenue by 2016. Pouladian was responsible for the day to day business operations of Deco from 2005 and continuing thereafter until about August 2019. Saman occasionally took an active role also, while Siamak and Babak were completely uninvolved in Deco because they were devoting all of their time to other business interests.

9. Beginning in or about 2015 and continuing through 2019, Deco began to experience cash flow difficulties. Some of these problems were due to increased competition and fierce price-cutting in the industry, and others were due to the diversion of funds from Deco by Saman, Siamak and Babak as alleged herein, and the failure of Allen to terminate the diversion.

10. Allen was hired by Deco as Chief Financial Officer in 2016 and was responsible for tracking Deco's income and expenditures and ensuring that revenues were used for the reasonable business purposes of Deco. Unfortunately for Deco, Allen proved less than equal to the task and permitted his decision-making and financial oversight to be dominated by Saman.

11. In 2017, Deco obtained financing from Siena Lending Group, LLC ("Siena"), which factored Deco's receivables and inventory and stabilized Deco's cash flow. Additionally, Pouladian in 2017 and 2018 contributed $350,000 of his own funds to improve Deco's financial condition, accepting promissory notes in return, which were subordinated to Siena's collateral liens.

12. While Deco's cash flow stabilized, market conditions caused a decrease in revenues from over $40,000,000 annually to about $35,000,000 annually. Additionally, the continued diversion of funds and focus from Deco took their toll. Saman admitted he was bored with Deco and started three other companies to excite him. Thus, Deco had to turn to Siena in 2018 and again in 2019 to obtain additional funding by increasing Deco's debt load.

13. By the summer of 2019, Deco's financial situation had become dire. In July, Pouladian notified Saman, Siamak and Babak that the usual lending channels were unavailable to Deco, and offered to increase his own personal investment in Deco in exchange for control of the



Yates Litigation

company via increased share ownership. Pouladian also offered to exchange his shares in several other entities for Saman's, Siamak's and Babak's shares in Deco.

14. Instead of welcoming the opportunity to exit a troubled Deco and obtain a financial stake in other entities in return, Saman, Siamak and Babak responded that Pouladian should resign his post, although he would be permitted to retain his shareholder stake of 30%. Saman also said to Allen that he would "never sell Deco to me over his dead body." Pouladian resigned in August 2019, Deco under the guidance of Saman and Allen has been increasing its debt load while revenues remain flat or decrease.

15. Following Pouladian's resignation, Saman, Siamak, Babak and Allen have made numerous accusations against Pouladian, and have claimed falsely that Pouladian relinquished his shares in Deco. Despite remaining as one of the two largest shareholders in the company, Deco, Saman and Allen have maintained a complete information blackout against Pouladian. On information and belief, Deco, Saman, Siamak, Babak and Allen have the ultimate goal of divesting Pouladian of his stake in Deco via a deal with a third party to recapitalize the company, while at the same time maintaining their stakes and enhancing their value.

## FIRST CAUSE OF ACTION

(For Equitable Indemnity Against Babak Sinai, Siamak Sinai, Saman Sinai, Craig Allen, and Moes 1 through 10)

16. Pouladian incorporates by this reference the allegations of paragraphs 1 through 15, above, as if set forth in full.

17. Deco in January 2020 asserted claims against Pouladian alleging that Pouladian committed a variety of tortious or unlawful actions against Deco that were alleged to be a substantial cause of Deco's current financial difficulties. Such allegations include claims that Pouladian used Deco funds for personal purposes, raised his own salary without authorization, purchased excessive inventory that remains unsold, caused several customers to seek other suppliers or to cancel orders from Deco, and caused liens in favor of Siena to attach to the real property leased to Deco for its warehouse and headquarters by ABS Capitol, LLC ("ABS").



Yates Litigation

18. Pouladian denies Deco's allegations, but if Pouladian is found liable to Deco on any of the claims asserted, Pouladian is entitled to equitable indemnity from each cross-defendant and each third-party defendant based on their tortious or unlawful acts and their breaches of fiduciary duty to Deco and to their co-shareholders, as alleged in detail herein.

19. Siamak and Babak formed a business known as Orion Solar Racking, Inc. ("Orion") and together owned approximately 75% of the shares of the business. Orion utilized for its own business purposes approximately a quarter of the warehouse space Deco was renting from ABS in the City of Commerce, which amounts to 9,000 to 10,000 square feet. At a fair market rate of $1.00 per square foot, plus its share of the utilities charges, Orion should have paid Deco $10,000 per month for the ten years it has been occupying Deco's space. Orion paid nothing, costing Deco more than $1,000,000 and effectively transferring a windfall to Siamak and Babak at the expense of Deco. Orion's failure to pay rent and utilities charges to Deco was never approved by a vote of Deco's directors or shareholders, and Allen did nothing to make Orion pay a fair market rent, despite his role as the purported "Chief Financial Officer" of Deco.

20. Saman and Babak through Orion cost Deco another $150,000 by buying product from Deco for which Orion never paid.

21. Siamak and Babak also routinely used Deco's employees to carry out Orion's warehousing and graphical work without paying any compensation to Deco. Orion's website also claimed falsely that it was a part of Deco, and this claim caused Deco to be sued for Orion's actions in two cases: *Aluminio de Baja v. Orion and Deco* and *Molly Scott v. Orion and Deco.* The first action was generated by Siamak's use of Deco letterhead to write a letter stating that Deco would guarantee Orion's accounts payable, which was never presented to or approved by Ben, Deco, or Saman. These two lawsuits cost Deco a substantial sum in attorneys' fees for which Babak, Siamak, and Orion have never contributed even one dollar.

22. Babak never played any role in managing the business of Deco. Yet, Babak received a yearly salary of $100,000 which, to date, has cost Deco more than $1,000,000 for nothing in return. At all times since he joined Deco in 2016, Allen knew that Babak was on the payroll although



Yates Litigation

he performed no work for Deco, and Allen did nothing to stop those payments. The cost to Deco from Allen's mismanagement and Babak and Siamak's looting has been over two million dollars.

23. Siamak created a fake "property management company" called SS Property Management in order to bill Deco for fake "fees" for absolutely nothing. Siamak obtained $15,000 in payments from that scam.

24. Saman created three companies, SupplyHub, Inc, Sam Marcel Cosmetics, and RPT Fitness, Inc. into which he diverted over $3,000,000 from Deco's revenues, most of which went to Supplyhub. Among other things, Saman hired employees and contractors for SupplyHub and paid them with Deco's money, which he achieved by forcing Deco's payables department and its personnel to write the checks he needed. This outright theft was never approved by a vote of Deco's shareholders or directors. Saman also used Deco employees during working hours to work on tasks for Sam Marcel Cosmetics and RPT Fitness, Inc. Allen knew about Saman's diversion of funds but did nothing to stop him. In fact, Allen simply paid what Saman told him to pay, and transferred money Saman told him to transfer and hid the spending from Deco's primary lender.

25. Additionally, since Deco was founded, Saman has recorded virtually all of his personal expenses as Deco business expenses, with the sole exception of his mortgage, costing Deco thousands of dollars each month due to Saman's extravagant spending habits. By way of example, only, Saman expensed a $15,000 down payment on a Porsche automobile, along with lavish European vacations, clothing, restaurants, other persons' hotel rooms, lap dances and airline tickets to Deco in exchange for cash,. Allen knew about the improper categorization of Saman's personal expenses as Deco business expenses but did nothing to stop the practice, which over the years has cost Deco over a million dollars.

26. Saman redeemed over $140,000 worth of American Express card rewards points generated on cards for which Deco paid the charges incurred, in addition to benefitting from the points generated by his personal card usage, most of which was charged to Deco as a business expense. Once again, Allen knew of this but did nothing to recover the value of the points for Deco.

27. In 2018, Deco's primary secured lender, Siena Lending Group, LLC ("Siena"), demanded additional collateral from Deco in order to continue factoring Deco's receivables. The



Yates Litigation

only source of additional collateral available was the real property on which Deco's warehouse and headquarters were located. That real property was and is owned by ABS, a limited liability corporation owned by Siamak (50%), Babak (25%), and the Pouladian Family Trust (25%). Saman signed his brothers' names on the approval documents required by Siena without Babak's or Siamak's knowledge or permission in order to secure additional funding from Siena, even though Saman did not personally own any interest in the real estate, which was then the subject of the new lien in favor of Siena. The Sinai brothers frequently signed documents with legal importance for each other.

28. The lien on ABS' real property in favor of Siena was only a second position lien. Previously, ABS' real estate had been used to secure a $2,585,900 loan for the benefit of Deco made by Harvest Small Business Finance, LLC, and guaranteed by the Small Business Administration, which closed on or about July 19, 2018.

29. Saman, Siamak and Babak took yearly (or more frequent) vacation trips outside the United States and were especially fond of Mexico. All of these personal vacations were paid for by Deco as Saman, Siamak and Babak used Deco credit cards for all of their expenses.. In their most recent foreign adventure to Cabo San Lucas, Mexico, Saman, Siamak and Babak stayed in a luxury rental home, ate gourmet meals prepared by a hired chef, drank gourmet liquor, and enjoyed female escorts provided to them via Enrique Villanueva Ramírez, the principal or manager of a Capital Electric Supply of Southbay client based in Mexico, who the brothers flew in to join them in the fun. All of these costs were expensed to Deco as allegedly legitimate business expenses when Siamak, Babak, and Saman knew they were not legitimate business expenses. As the purported Chief Financial Officer, Allen was supposed to scrutinize these expenses and instruct Deco's accounting department not to pay them. On information and belief, Allen simply approved payment, as he always did when demanded by Saman.

30. The actions of Saman, Siamak, Babak and Allen as alleged herein, in addition to being tortious, unlawful, and/or fraudulent, also constitute breaches of the Shareholder and Buy-Sell Agreement of Deco Enterprises, Inc. (the Buy-Sell"), a copy of which is attached to Deco's cross-



Yates Litigation

complaint against Pouladian, as to paragraphs 3.01, 3.02, 12.01 and 12.03, by Saman, Siamak and Babak.

## PRAYER FOR RELIEF

**WHEREFORE**, cross-complainant and third-party plaintiff Benjamin Pouladian prays for relief against cross-defendant Babak Sinai and third-party defendants Siamak Sinai, Saman Sinai, Craig Allen, and Moes 1 through 10, and each of them, as set forth below.

A. For a judgment declaring that the actions of cross-defendant and third-party defendants are the sole cause, or substantial causes, of the financial losses to Deco as alleged in Deco's cross-complaint against Pouladian, and that therefore cross-defendant and the third-party defendants are liable to Pouladian for some or all of any sums for which Pouladian is adjudged to be liable to Deco;

B. For costs of suit;

C. For attorneys' fees as permitted by paragraph 16.04 of the Buy-Sell Agreement, by statute, or by common law; and

D. For such other and further relief as the Court may deem just and proper.

DATED: February 18, 2020 YATES LITIGATION

By: [signature]
JOHN R. YATES
Attorneys for Plaintiff, Cross-Defendant, Third-Party Plaintiff and Cross-Complainant Benjamin Pouladian

## PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436**.

On February 18, 2020, I served the foregoing document described as **Reply Brief in Support of Motion for Preliminary Injunction to Preserve Plaintiff Benjamin Pouladian's Voting Rights as a 30% Shareholder of Defendant Deco Enterprises, Inc.**

on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

Amy Mousavi, Esq.
Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Attorney for Deco Enterprises, Inc. and Craig Allen

Thomas Pistone, Esq.
Pistone Law Group LLP
19200 Von Karman Ave, Suite 940
Irvine, California 92612
Email: tpistone@pistonelawgroup.com

Attorney for Babak Sinai, Saman Sinai and Siamak Sinai

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 18, 2020, at Encino, California.

John R. Yates

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff, Cross-Defendant,
Third-Party Plaintiff and Cross-Complainant
Benjamin Pouladian And for Cross-Defendant Edith Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| Benjamin Pouladian,<br><br>Plaintiff,<br><br>vs.<br><br>Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive<br><br>Defendants.<br><br>---<br><br>DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,<br><br>Cross-Complainants,<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | **CASE NO.: 19STCV44475**<br><br>HON. ROBERT S. DRAPER – DEPARTMENT 78<br><br>UNLIMITED JURISDICTION<br><br>**Reservation ID: 616074762027**<br><br>**Notice of Demurrer and Demurrer to Eighth and Ninth Causes of Action of Cross-Complainant Deco Enterprises, Inc.'s, et, al Cross-Complaint by Benjamin Pouladian and Edith Pouladian;**<br><br>**Declaration of John Yates pursuant to C.C.P. §430.41.**<br><br>Date: May 14, 2020<br>Time: 8:30 a.m.<br>Location: Department 78<br><br>**ACTION FILED:** December 10, 2019 |

Yat

| |
|---|
| Benjamin Pouladian,<br>Cross-Complainant,<br>v..<br>Babak Sinai,<br>Cross-Defendant. |
| Benjamin Pouladian,<br>Third-Party Plaintiff,<br>v.<br>Siamak Sinai; Saman Sinai; Craig Allen; and Moes 1through 10, inclusive,<br>Third Party Defendants. |

TO CROSS-COMPLAINANT DECO ENTERPRISES, INC. AND TO ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 14, 2020 at 8:30 a.m. in Department 78 of the above-entitled Court, located at 111 North Hill Street, Los Angeles, California 90012, cross-defendants Benjamin Pouladian and Edith Pouladian will demur to the causes of action of cross-complainant's Cross-Complaint identified below, on each of the grounds stated:

1) The eighth cause of action for unjust enrichment does not state facts sufficient to constitute a cause of action because unjust enrichment is a remedy rather than a cause of action; [C.C.P. §430.10(e)];

2) The ninth cause of action for declaratory relief, as to cross-defendant Edith Pouladian only, does not state facts sufficient to constitute a cause of action, because it contains no charging allegations against Edith Pouladian. [C.C.P. §430.10(e)]

It does not appear that any of the defects of cross-complainants' Cross-Complaint are curable by amendment. Accordingly, cross-defendants' demurrers should be sustained without leave to amend.

This demurrer is based on the complaint, on such other pleadings and papers of which the Court may and does take judicial notice, and on argument of counsel at the hearing of the demurrer.

DATED: February 18, 2020

YATES LITIGATION

By: ______________________
JOHN R. YATES
Attorneys for Plaintiff, Cross-Defendant, Third-Party Plaintiff and Cross-Complainant Benjamin Pouladian, and for Cross-Defendant Edith Pouladian

Yates Litigation

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## THE FIRST AMENDED CROSS-COMPLAINT

Deco's Cross-Complaint presents a lengthy litany of alleged improper behavior by plaintiff and cross-defendant Benjamin Pouladian, most of which will be well within the protection of the Business Judgment Rule. In contrast, the cross-complaint barely mentions cross-defendant Edith Pouladian at all, possibly because Edith had no role whatsoever in managing or owning Deco.

This demurrer challenges the eighth and ninth causes of action on the ground that "unjust enrichment" is no longer a recognized cause of action in the Second Appellate District, and because the ninth cause of action has no charging allegations against Edith Pouladian.

## II.

## DECO'S EIGHTH CAUSE OF ACTION FOR UNJUST ENRICHMENT FAILS TO STATE FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION

The eighth cause of action fails because in the Second Appellate District, unjust enrichment is no longer considered to be a cause of action. Instead, "unjust enrichment" is a finding that supports the relief of restitution. The latest citable appellate decision on the issue held as set forth below in sustaining a demurrer to an "unjust enrichment" cause of action without leave to amend, Everett v. Mountains Recreation & Conservation Authority, 239 Cal.App.4th 541, 553 (2015):

> The only issue argued in the parties' briefs on appeal regarding the issue of Everett's cause of action for "unjust enrichment" is whether California pleading law recognizes a "cause of action for unjust enrichment." We find "there is no cause of action in California for unjust enrichment." (*Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793 [131 Cal. Rptr. 2d 347].) Accordingly, we affirm the judgment in Everett's current case.

Benjamin and Edith Pouladian's demurrer to the eighth cause of action for unjust enrichment should be sustained and, because there is no possibility of pleading around the fact that the cause of action does not exist, sustained without leave to amend.

Yates Litigation

**III.**

**DECO'S NINTH CAUSE OF ACTION FOR DECLARATORY RELIEF FAILS TO STATE FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION AGAINST EDITH POULADIAN**

Deco's ninth cause of action alleges mismanagement, breach of fiduciary duty, and conversion of Deco's funds against Benjamin Pouladian and seeks a declaration against Benjamin Pouladian that the Buy-Sell Agreement is terminated because Deco has become insolvent. There are no allegations against Edith Pouladian. The sole allegation pertaining to Edith is paragraph 36, incorporated by reference into the ninth cause of action. Paragraph 36 states: "Pouladian used the funds he converted from Deco's credit cards to purchase a house in July of 2018, with his wife Edith Pouladian, to purchase a house for over $5,000,000."

At best, paragraph 36 provides that Benjamin and Edith are both on title to the home. So what? The cause of action seeks declaratory relief relating to the Buy-Sell Agreement, with which Edith Pouladian has absolutely nothing to do. She didn't sign it, there is no allegation that she did, and there could be no truthful allegation that she did because she did not. (See, Exhibit 1 to First Amended Cross-Complaint, p. 12.) Edith Pouladian's demurrer to the ninth cause of action should be sustained without leave to amend.

**IV.**

**CONCLUSION**

The demurrers should be granted as prayed, and without leave to amend.

DATED: February 18, 2020

YATES LITIGATION

By: [signature]
JOHN R. YATES
Attorneys for Plaintiff, Cross-Defendant, Third-Party Plaintiff and Cross-Complainant Benjamin Pouladian and Cross-Defendant Edith Pouladian

# Journal Technologies Court Portal

# Make a Reservation

BENJAMIN POULADIAN vs DECO ENTERPRISES, INC., et al.

Case Number: 19STCV44475 Case Type: Civil Unlimited Category: Other Employment Complaint Case
Date Filed: 2019-12-10 Location: Stanley Mosk Courthouse - Department 78

## Reservation

Case Name:
BENJAMIN POULADIAN vs DECO ENTERPRISES, INC., et al.

Case Number:
19STCV44475

Type:
Demurrer - without Motion to Strike

Status:
RESERVED

Filing Party:
Benjamin Pouladian (Plaintiff)

Location:
Stanley Mosk Courthouse - Department 78

Date/Time:
05/14/2020 8:30 AM

Number of Motions:
1

Reservation ID:
616074762027

Confirmation Code:
CR-QFN4FE73ZJWAIY5UD

## Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Demurrer - without Motion to Strike | 60.00 | 1 | 60.00 |
| Credit Card Percentage Fee (2.75%) | 1.65 | 1 | 1.65 |
| TOTAL | | | $61.65 |

## Payment

Amount:
$61.65

Type:
AmericanExpress

Account Number:
XXXX3001

Authorization:
246067

Print Receipt | Reserve Another Hearing | View My Reservations

Copyright © Journal Technologies, USA. All rights reserved.

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436**.

On February ~~18~~ 19, 2020, I served the foregoing document described as **Notice of Demurrer and Demurrer to Eighth and Ninth Causes of Action of Cross-Complainant Deco Enterprises, Inc.'s First Amended Complaint by Benjamin Pouladian and Edith Pouladian**

on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

Amy Mousavi, Esq.
Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Attorney for Deco Enterprises, Inc. and Craig Allen

Thomas Pistone, Esq.
Pistone Law Group LLP
19200 Von Karman Ave, Suite 940
Irvine, California 92612
Email: tpistone@pistonelawgroup.com

Attorney for Babak Sinai, Saman Sinai and Siamak Sinai

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February ~~18~~ 19, 2020, at Encino, California.

John R. Yates

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff, Cross-Defendant,
Third-Party Plaintiff and Cross-Complainant
Benjamin Pouladian And for Cross-Defendant Edith Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

Benjamin Pouladian,

Plaintiff,

vs.

Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive

Defendants.

---

DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,

Cross-Complainants,

v.

BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,

Cross-Defendants.

**CASE NO.: 19STCV44475**

HON. ROBERT S. DRAPER – DEPARTMENT 78

UNLIMITED JURISDICTION

**Declaration of John Yates pursuant to C.C.P. §430.41 re Demurrer**

**Reservation ID: 616074762027**

Date: May 14, 2020
Time: 8:30 a.m.
Location: Department 78

**ACTION FILED:** December 10, 2019

Yates Litigation

Yates Litigation

| | |
|---|---|
| Benjamin Pouladian,<br>Cross-Complainant,<br>v..<br>Babak Sinai,<br>Cross-Defendant. | |
| Benjamin Pouladian,<br>Third-Party Plaintiff,<br>v.<br>Siamak Sinai; Saman Sinai; Craig Allen; and Moes 1through 10, inclusive,<br>Third Party Defendants. | |

I, John Yates, state that:

1. I have personal knowledge of the facts set forth herein and first-hand knowledge of same. If called upon to testify and placed under oath, I could and would testify competently thereto.

2. Yates Litigation is counsel of record for Benjamin and Elizabeth Pouladian in this action, and I am the principal of Yates Litigation.

3. On February 4, 2020, I emailed attorney Amy Mousavi, counsel for Deco Enterprises and its CFO Craig Allen, regarding the flaws in the First Amended Cross-Complaint. A true and correct copy of that email is attached as Exhibit 1 to this declaration.

4. I requested that Ms. Mousavi dismiss the Eighth Cause of Action entirely, and the Ninth Cause of Action as to Edith Pouladian only and requested that she provide me with any authority she had for not doing so. I followed up twice, but never received any substantive response regarding my inquiry.

I swear under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 18th day of February 2020, at Encino, California.

John Yates

# EXHIBIT 1

**John R. Yates**

**From:** John R. Yates
**Sent:** Tuesday, February 4, 2020 3:12 PM
**To:** Amy Mousavi; Tom Pistone
**Subject:** Pouladian v. Deco et al; Deco, et al v. Pouladian

**Importance:** High

Counsel,

This email is the "meet and confer" required by CCP 430.41 prior to the filing of any demurrer.

With regard to the cross-complaint, a cause of action for "unjust enrichment" is alleged against Ben and Edith Pouladian. According to the latest citable decision in the Second Appellate District where this action is pending, there is no cause of action for unjust enrichment. Everett v. Mountains Recreation & Conservation Authority, 239 Cal. App. 4th 541, 553 (2015) ("The only issue argued in the parties' briefs on appeal regarding the issue of Everett's **cause of action** for "**unjust enrichment**" is whether California pleading law recognizes a "**cause of action** for **unjust enrichment**." We find "there is no **cause of action** in California for **unjust enrichment**." (*Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793 [131 Cal. Rptr. 2d 347].) Accordingly, we affirm the judgment in Everett's current case.")

The Ninth Cause of Action for "Declaratory Relief" is also stated to be against Ben and Edith Pouladian. Yet, there are no allegations in the Ninth Cause of Action that assert that any justiciable dispute exists between Deco and Edith Pouladian.

Based on the foregoing, I request that you either (a) file an amended cross-complaint or (b) dismiss the Eighth Cause of Action entirely, and the Ninth Cause of Action as to Edith Pouladian.

Please let me know how you will proceed, or if you believe you have authorities contrary to those cited above.

Sincerely,

John R. Yates

Yates Litigation
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Fax: (818) 561-3925
Mobile: (213) 300-4425
jyates@yateslitigation.com
yatesjohnr@gmail.com

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436.**

On February ~~18,~~ 19 2020, I served the foregoing document described as **Declaration of John Yates pursuant to C.C.P. §430.41 re Demurrer**

on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

Amy Mousavi, Esq.
Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Attorney for Deco Enterprises, Inc. and Craig Allen

Thomas Pistone, Esq.
Pistone Law Group LLP
19200 Von Karman Ave, Suite 940
Irvine, California 92612
Email: tpistone@pistonelawgroup.com

Attorney for Babak Sinai, Saman Sinai and Siamak Sinai

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February ~~18~~ 19, 2020, at Encino, California.

John R. Yates

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff, Cross-Defendant, Third-Party Plaintiff and Cross-Complainant Benjamin Pouladian And for Cross-Defendant Edith Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| Benjamin Pouladian,<br><br>Plaintiff,<br><br>vs.<br><br>Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive<br><br>Defendants. | **CASE NO.: 19STCV44475**<br><br>HON. ROBERT S. DRAPER – DEPARTMENT 78<br><br>UNLIMITED JURISDICTION<br><br>**Cross-Complaint of Third-Party Plaintiff and Cross-Complainant Benjamin Pouladian for Equitable Indemnity** |
| DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,<br><br>Cross-Complainants,<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | **ACTION FILED:** December 10, 2019 |



Yates Litigation

| | |
|---|---|
| Benjamin Pouladian,<br>Cross-Complainant,<br>v..<br>Babak Sinai,<br>Cross-Defendant. | |
| Benjamin Pouladian,<br>Third-Party Plaintiff,<br>v.<br>Siamak Sinai; Saman Sinai; Craig Allen; and Moes 1through 10, inclusive,<br>Third Party Defendants. | |

Cross-Complainant and Third-Party Plaintiff Benjamin Pouladian ("Pouladian") for his cross-complaint against cross-defendant Babak Sinai and third-party complaint against Siamak Sinai, Saman Sinai, and Moes 1 through 10, and each of them, alleges as follows:

1. Pouladian is a founder and President of defendant Deco Enterprises, Inc. ("Deco").

2. Cross-Defendant Babak Sinai ("Babak") is a 20% shareholder of Deco.

3. Third Party Defendant Siamak Sinai ("Siamak") is a 20% shareholder of Deco.

4. Third Party Defendant Saman Sinai ("Saman") is a 30% shareholder of Deco.

5. Third Party Defendant Craig Allen ("Allen") is the Chief Financial Officer of Deco, since 2016.

6. Defendants Moes 1 through 10 are persons whose names are currently unknown to plaintiff, but on information and belief Moes 1 through 10 are agents or employees of Babak, Siamak, Saman, and/or Allen and each of them, and Moes 1 through 10 are legally responsible for the damages Pouladian may suffer as a result of the claims made by Deco, ABS Capitol, LLC and Babak against Pouladian.

7. Deco manufactures and sells commercial lighting fixtures. The Deco name is widely known among consumers of its products, which include many large corporations such as Rexel, CED and Graybar.



Yates Litigation

8. Under the management of Pouladian as President of Deco since its formation in 2005, the company grew from a handful of employees and a few million dollars per year in revenue to approximately 50 employees and more than $40,000,000 in revenue by 2016. Pouladian was responsible for the day to day business operations of Deco from 2005 and continuing thereafter until about August 2019. Saman occasionally took an active role also, while Siamak and Babak were completely uninvolved in Deco because they were devoting all of their time to other business interests.

9. Beginning in or about 2015 and continuing through 2019, Deco began to experience cash flow difficulties. Some of these problems were due to increased competition and fierce price-cutting in the industry, and others were due to the diversion of funds from Deco by Saman, Siamak and Babak as alleged herein, and the failure of Allen to terminate the diversion.

10. Allen was hired by Deco as Chief Financial Officer in 2016 and was responsible for tracking Deco's income and expenditures and ensuring that revenues were used for the reasonable business purposes of Deco. Unfortunately for Deco, Allen proved less than equal to the task and permitted his decision-making and financial oversight to be dominated by Saman.

11. In 2017, Deco obtained financing from Siena Lending Group, LLC ("Siena"), which factored Deco's receivables and inventory and stabilized Deco's cash flow. Additionally, Pouladian in 2017 and 2018 contributed $350,000 of his own funds to improve Deco's financial condition, accepting promissory notes in return, which were subordinated to Siena's collateral liens.

12. While Deco's cash flow stabilized, market conditions caused a decrease in revenues from over $40,000,000 annually to about $35,000,000 annually. Additionally, the continued diversion of funds and focus from Deco took their toll. Saman admitted he was bored with Deco and started three other companies to excite him. Thus, Deco had to turn to Siena in 2018 and again in 2019 to obtain additional funding by increasing Deco's debt load.

13. By the summer of 2019, Deco's financial situation had become dire. In July, Pouladian notified Saman, Siamak and Babak that the usual lending channels were unavailable to Deco, and offered to increase his own personal investment in Deco in exchange for control of the

Yates Litigation

company via increased share ownership. Pouladian also offered to exchange his shares in several other entities for Saman's, Siamak's and Babak's shares in Deco.

14. Instead of welcoming the opportunity to exit a troubled Deco and obtain a financial stake in other entities in return, Saman, Siamak and Babak responded that Pouladian should resign his post, although he would be permitted to retain his shareholder stake of 30%. Saman also said to Allen that he would "never sell Deco to me over his dead body." Pouladian resigned in August 2019, Deco under the guidance of Saman and Allen has been increasing its debt load while revenues remain flat or decrease.

15. Following Pouladian's resignation, Saman, Siamak, Babak and Allen have made numerous accusations against Pouladian, and have claimed falsely that Pouladian relinquished his shares in Deco. Despite remaining as one of the two largest shareholders in the company, Deco, Saman and Allen have maintained a complete information blackout against Pouladian. On information and belief, Deco, Saman, Siamak, Babak and Allen have the ultimate goal of divesting Pouladian of his stake in Deco via a deal with a third party to recapitalize the company, while at the same time maintaining their stakes and enhancing their value.

**FIRST CAUSE OF ACTION**

(For Equitable Indemnity Against Babak Sinai, Siamak Sinai, Saman Sinai, Craig Allen, and Moes 1 through 10)

16. Pouladian incorporates by this reference the allegations of paragraphs 1 through 15, above, as if set forth in full.

17. Deco in January 2020 asserted claims against Pouladian alleging that Pouladian committed a variety of tortious or unlawful actions against Deco that were alleged to be a substantial cause of Deco's current financial difficulties. Such allegations include claims that Pouladian used Deco funds for personal purposes, raised his own salary without authorization, purchased excessive inventory that remains unsold, caused several customers to seek other suppliers or to cancel orders from Deco, and caused liens in favor of Siena to attach to the real property leased to Deco for its warehouse and headquarters by ABS Capitol, LLC ("ABS").

Yates Litigation

18. Pouladian denies Deco's allegations, but if Pouladian is found liable to Deco on any of the claims asserted, Pouladian is entitled to equitable indemnity from each cross-defendant and each third-party defendant based on their tortious or unlawful acts and their breaches of fiduciary duty to Deco and to their co-shareholders, as alleged in detail herein.

19. Siamak and Babak formed a business known as Orion Solar Racking, Inc. ("Orion") and together owned approximately 75% of the shares of the business. Orion utilized for its own business purposes approximately a quarter of the warehouse space Deco was renting from ABS in the City of Commerce, which amounts to 9,000 to 10,000 square feet. At a fair market rate of $1.00 per square foot, plus its share of the utilities charges, Orion should have paid Deco $10,000 per month for the ten years it has been occupying Deco's space. Orion paid nothing, costing Deco more than $1,000,000 and effectively transferring a windfall to Siamak and Babak at the expense of Deco. Orion's failure to pay rent and utilities charges to Deco was never approved by a vote of Deco's directors or shareholders, and Allen did nothing to make Orion pay a fair market rent, despite his role as the purported "Chief Financial Officer" of Deco.

20. Saman and Babak through Orion cost Deco another $150,000 by buying product from Deco for which Orion never paid.

21. Siamak and Babak also routinely used Deco's employees to carry out Orion's warehousing and graphical work without paying any compensation to Deco. Orion's website also claimed falsely that it was a part of Deco, and this claim caused Deco to be sued for Orion's actions in two cases: *Aluminio de Baja v. Orion and Deco* and *Molly Scott v. Orion and Deco.* The first action was generated by Siamak's use of Deco letterhead to write a letter stating that Deco would guarantee Orion's accounts payable, which was never presented to or approved by Ben, Deco, or Saman. These two lawsuits cost Deco a substantial sum in attorneys' fees for which Babak, Siamak, and Orion have never contributed even one dollar.

22. Babak never played any role in managing the business of Deco. Yet, Babak received a yearly salary of $100,000 which, to date, has cost Deco more than $1,000,000 for nothing in return. At all times since he joined Deco in 2016, Allen knew that Babak was on the payroll although

Yates Litigation

he performed no work for Deco, and Allen did nothing to stop those payments. The cost to Deco from Allen's mismanagement and Babak and Siamak's looting has been over two million dollars.

23. Siamak created a fake "property management company" called SS Property Management in order to bill Deco for fake "fees" for absolutely nothing. Siamak obtained $15,000 in payments from that scam.

24. Saman created three companies, SupplyHub, Inc, Sam Marcel Cosmetics, and RPT Fitness, Inc. into which he diverted over $3,000,000 from Deco's revenues, most of which went to Supplyhub. Among other things, Saman hired employees and contractors for SupplyHub and paid them with Deco's money, which he achieved by forcing Deco's payables department and its personnel to write the checks he needed. This outright theft was never approved by a vote of Deco's shareholders or directors. Saman also used Deco employees during working hours to work on tasks for Sam Marcel Cosmetics and RPT Fitness, Inc. Allen knew about Saman's diversion of funds but did nothing to stop him. In fact, Allen simply paid what Saman told him to pay, and transferred money Saman told him to transfer and hid the spending from Deco's primary lender.

25. Additionally, since Deco was founded, Saman has recorded virtually all of his personal expenses as Deco business expenses, with the sole exception of his mortgage, costing Deco thousands of dollars each month due to Saman's extravagant spending habits. By way of example, only, Saman expensed a $15,000 down payment on a Porsche automobile, along with lavish European vacations, clothing, restaurants, other persons' hotel rooms, lap dances and airline tickets to Deco in exchange for cash. Allen knew about the improper categorization of Saman's personal expenses as Deco business expenses but did nothing to stop the practice, which over the years has cost Deco over a million dollars.

26. Saman redeemed over $140,000 worth of American Express card rewards points generated on cards for which Deco paid the charges incurred, in addition to benefitting from the points generated by his personal card usage, most of which was charged to Deco as a business expense. Once again, Allen knew of this but did nothing to recover the value of the points for Deco.

27. In 2018, Deco's primary secured lender, Siena Lending Group, LLC ("Siena"), demanded additional collateral from Deco in order to continue factoring Deco's receivables. The





Yates Litigation

only source of additional collateral available was the real property on which Deco's warehouse and headquarters were located. That real property was and is owned by ABS, a limited liability corporation owned by Siamak (50%), Babak (25%), and the Pouladian Family Trust (25%). Saman signed his brothers' names on the approval documents required by Siena without Babak's or Siamak's knowledge or permission in order to secure additional funding from Siena, even though Saman did not personally own any interest in the real estate, which was then the subject of the new lien in favor of Siena. The Sinai brothers frequently signed documents with legal importance for each other.

28. The lien on ABS' real property in favor of Siena was only a second position lien. Previously, ABS' real estate had been used to secure a $2,585,900 loan for the benefit of Deco made by Harvest Small Business Finance, LLC, and guaranteed by the Small Business Administration, which closed on or about July 19, 2018.

29. Saman, Siamak and Babak took yearly (or more frequent) vacation trips outside the United States and were especially fond of Mexico. All of these personal vacations were paid for by Deco as Saman, Siamak and Babak used Deco credit cards for all of their expenses.. In their most recent foreign adventure to Cabo San Lucas, Mexico, Saman, Siamak and Babak stayed in a luxury rental home, ate gourmet meals prepared by a hired chef, drank gourmet liquor, and enjoyed female escorts provided to them via Enrique Villanueva Ramírez, the principal or manager of a Capital Electric Supply of Southbay client based in Mexico, who the brothers flew in to join them in the fun. All of these costs were expensed to Deco as allegedly legitimate business expenses when Siamak, Babak, and Saman knew they were not legitimate business expenses. As the purported Chief Financial Officer, Allen was supposed to scrutinize these expenses and instruct Deco's accounting department not to pay them. On information and belief, Allen simply approved payment, as he always did when demanded by Saman.

30. The actions of Saman, Siamak, Babak and Allen as alleged herein, in addition to being tortious, unlawful, and/or fraudulent, also constitute breaches of the Shareholder and Buy-Sell Agreement of Deco Enterprises, Inc. (the Buy-Sell"), a copy of which is attached to Deco's cross-

Yates Litigation

complaint against Pouladian, as to paragraphs 3.01, 3.02, 12.01 and 12.03, by Saman, Siamak and Babak.

## PRAYER FOR RELIEF

**WHEREFORE**, cross-complainant and third-party plaintiff Benjamin Pouladian prays for relief against cross-defendant Babak Sinai and third-party defendants Siamak Sinai, Saman Sinai, Craig Allen, and Moes 1 through 10, and each of them, as set forth below.

A. For a judgment declaring that the actions of cross-defendant and third-party defendants are the sole cause, or substantial causes, of the financial losses to Deco as alleged in Deco's cross-complaint against Pouladian, and that therefore cross-defendant and the third-party defendants are liable to Pouladian for some or all of any sums for which Pouladian is adjudged to be liable to Deco;

B. For costs of suit;

C. For attorneys' fees as permitted by paragraph 16.04 of the Buy-Sell Agreement, by statute, or by common law; and

D. For such other and further relief as the Court may deem just and proper.

DATED: February 18, 2020

YATES LITIGATION

By: [signature]
JOHN R. YATES
Attorneys for Plaintiff, Cross-Defendant, Third-Party Plaintiff and Cross-Complainant Benjamin Pouladian

## PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436**.

On February 19, 2020, I served the foregoing document described as **Cross-Complaint of Third-Party Plaintiff and Cross-Complainant Benjamin Pouladian for Equitable Indemnity**

on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

Amy Mousavi, Esq.
Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Thomas Pistone, Esq.
Pistone Law Group LLP
19200 Von Karman Ave, Suite 940
Irvine, California 92612
Email: tpistone@pistonelawgroup.com

Attorneys for Defendant Craig Allen and Cross-Complainants Deco Enterprises, Inc., ABS Capitol, LLC, and Babak Sinai

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 19, 2020, at Encino, California.

John R. Yates

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff, Cross-Defendant,
Third-Party Plaintiff and Cross-Complainant
Benjamin Pouladian And for Cross-Defendant Edith Pouladian

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

Benjamin Pouladian,

Plaintiff,

vs.

Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive

Defendants.

---

DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,

Cross-Complainants,

v.

BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,

Cross-Defendants.

**CASE NO.: 19STCV44475**

HON. ROBERT S. DRAPER – DEPARTMENT 78

UNLIMITED JURISDICTION

**ANSWER OF BENJAMIN POULADIAN TO CROSS-COMPLAINT OF DECO ENTERPRISES, INC., ABS CAPITOL, LLC, AND BABAK SINAI**

**ACTION FILED:** December 10, 2019



Yates Litigation

Yates Litigation

Cross-defendant Benjamin Pouladian ("Pouladian"), appearing for himself alone, responds to the allegations of cross-complainants Deco Enterprises, Inc., ABS Capitol, LLC, and Babak Sinai ("cross-complainants") unverified cross-complaint as follows.

GENERAL DENIAL

Pursuant to C.C.P. §431.30(b)(1), Pouladian generally denies each and every allegation of cross-complainants' unverified cross-complaint, and further denies that cross-complainant has been damaged in any manner by the alleged actions of Pouladian.

AFFIRMATIVE DEFENSES

FIRST AFFIRMATIVE DEFENSE

(Statutes of Limitation)

The cross-complaint and each purported cause of action therein are barred by the applicable statutes of limitation specified by C.C.P. §§337, 338, and 339.

SECOND AFFIRMATIVE DEFENSE

(Laches)

The cross-complaint and each purported cause of action therein are barred by the equitable doctrine of laches.

THIRD AFFIRMATIVE DEFENSE

(Estoppel)

Cross-complainants are estopped by their own actions from asserting a cause of action for breach of contract against Pouladian.

FOURTH AFFIRMATIVE DEFENSE

(Waiver)

Cross-complainants through their own intentional actions have waived their purported cause of action for breach of contract against defendants.

FIFTH AFFIRMATIVE DEFENSE

(Failure to State a Cause of Action)

Cross-complainants' purported causes of action fail to state facts sufficient to allege a cause of action.

Yates Litigation

SIXTH AFFIRMATIVE DEFENSE

(Unclean Hands)

Cross-complainants' cross-complaint and all of the purported causes of action therein are barred by cross-complainants' unclean hands.

SEVENTH AFFIRMATIVE DEFENSE

(Unjust Enrichment)

Cross-complainants' recovery of damages, restitution or disgorgement in any amount from Pouladian would result in the unjust enrichment of cross-complainants.

EIGHTH AFFIRMATIVE DEFENSE

(Consent)

Cross-complainants consented to each and every wrongful act of Pouladian alleged in the cross-complaint.

NINTH AFFIRMATIVE DEFENSE

(Comparative Fault)

Cross-complainants are responsible for their alleged damages in a degree greater than Pouladian, if Pouladian alleged actions have caused cross-complainants any damages at all.

TENTH AFFIRMATIVE DEFENSE

(Business Judgment Rule)

Pouladian's alleged wrongful actions must be evaluated under the Business Judgment Rule.

WHEREFOR defendant Benjamin Pouladian prays that cross-complainants take nothing by their complaint, and that the Court award defendant his costs of suit, attorneys' fees as authorized by contract or statute, and such other relief as may be just and proper.

DATED: February 19, 2020 YATES LITIGATION

By: ______________________
JOHN R. YATES
Attorneys for Plaintiff, Cross-Defendant, Third-Party Plaintiff and Cross-Complainant
Benjamin Pouladian

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436**.

On February 19, 2020, I served the foregoing document described as **ANSWER OF BENJAMIN POULADIAN TO CROSS-COMPLAINT OF DECO ENTERPRISES, INC., ABS CAPITOL, LLC, AND BABAK SINAI**

on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

Amy Mousavi, Esq.
Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Thomas Pistone, Esq.
Pistone Law Group LLP
19200 Von Karman Ave, Suite 940
Irvine, California 92612
Email: tpistone@pistonelawgroup.com

Attorneys for Defendant Craig Allen and Cross-Complainants Deco Enterprises, Inc., ABS Capitol, LLC, and Babak Sinai

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 19, 2020, at Encino, California.

John R. Yates

Electronically FILED by Superior Court of California, County of Los Angeles on 02/20/2020 01:34 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Lara,Deputy Clerk

Amy A. Mousavi, Esq., SBN: 228388
MOUSAVI & LEE, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9667
amousavi@mousavilee.com

Thomas A. Pistone, Esq., SBN: 77774
PISTONE LAW GROUP, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9660
tpistone@pistonelawgroup.com

**Attorneys for Defendant Craig Allen, Cross-Complainant/Defendant Deco Enterprises, Inc., and Cross-Complainants ABS Capitol, LLC and Babak Sinai**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

| | |
|---|---|
| BENJAMIN POULADIAN<br><br>Plaintiff,<br><br>v.<br><br>DECO ENTERPRISES; CRAIG ALLEN; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 19STCV44475<br>Dept.: 078<br>Assigned For All Purposes To: Hon. Judge Robert S. Draper |
| DECO ENTERPRISES, INC., a California Corporation; ABS CAPITOL, LLC, a California limited liability company; BABAK SINAI, an individual;<br><br>Cross-Complainants;<br><br>v.<br><br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN, an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br><br>Cross-Defendants. | **NOTICE OF AUTOMATIC STAY DUE TO BANKRUPTCY**<br><br>Action Filed: December 10, 2019 |

**TO THE COURT, TO ALL INTERESTED PARTIES, AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that, on February 20, 2020, Debtor Deco Enterprises, Inc. filed a Petition for relief under Chapter 11 of the United States Bankruptcy Code (**Exhibit "A"**), and was assigned Case No. 2:20-bk-11846-BB, by reason of which this proceeding is automatically stayed as of February 20, 2020.

Respectfully submitted,

Dated: February 20, 2020

**MOUSAVI & LEE, LLP**
**PISTONE LAW GROUP, LLP**

**By:** Amy A. Mousavi
**Amy A. Mousavi, Esq.**
**Thomas A. Pistone, Esq.**

Attorneys for Defendant Craig Allen, Cross-Complainant/Defendant Deco Enterprises, Inc., and Cross-Complainants ABS Capitol, LLC and Babak Sinai

# Exhibit A

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

CENTRAL DISTRICT OF CALIFORNIA

Case number *(if known)* ____________ Chapter 11

☐ Check if this an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

02/20

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

| | | | |
|---|---|---|---|
| 1. | **Debtor's name** | Deco Enterprises, Inc. | |
| 2. | **All other names debtor used in the last 8 years**<br>Include any assumed names, trade names and *doing business as* names | **DBA Deco Lighting** | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **76-0785767** | |
| 4. | **Debtor's address** | **Principal place of business**<br><br>**2917 South Vail Avenue**<br>**Commerce, CA 90040**<br>Number, Street, City, State & ZIP Code<br><br>**Los Angeles**<br>County | **Mailing address, if different from principal place of business**<br><br>P.O. Box, Number, Street, City, State & ZIP Code<br><br>**Location of principal assets, if different from principal place of business**<br><br>Number, Street, City, State & ZIP Code |
| 5. | **Debtor's website** (URL) | | |
| 6. | **Type of debtor** | ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP)<br>☐ Other. Specify: | |

Debtor **Deco Enterprises, Inc.**
Name

Case number (*if known*) ______

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

______

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check all that apply:*

- ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625 (amount subject to adjustment on 4/01/22 and every 3 years after that).
- ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
- ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.
- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
- ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
- ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

District ______ When ______ Case number ______

District ______ When ______ Case number ______

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list

☐ No

■ Yes.

***See, attached continuation page, also attached to Form F 1015-2.1. "Statement Of Related Cases Information Required By LBR 1015-2."**

Debtor **Orion Solar Racking, Inc.** Relationship **Common shareholder**

District **Central District of California** When **12/30/19** Case number, if known **2:19-bk-25155-BB**

***Attachment to Part 10 (Page 2) of Official Form 201: "Voluntary Petition For Non-Individuals Filing For Bankruptcy"***

**Babak Sinai, President, Chief Executive Officer and authorized agent with 20% ownership interest in debtor, Deco Enterprises, LLC ("Deco" or "Debtor") has 100% ownership interest in Orion Solar Racking, Inc. ("Orion"). Orion is currently proceeding under chapter 11, before the United States Bankruptcy Court for the Central District of California [Los Angeles Division] as *In re Orion Solar Racking, Inc.;* Case No. 2:19-bk-25155-BB, before the Honorable Sheri Bluebond.**

**The location of the principal assets of both Debtor and Orion are located at that certain real property, located at 2917 South Vail Avenue, Commerce, California 90040 ("South Vail Avenue Property"). ABS Capitol, LLC. ("ABS") is the owner and lessor of the South Vail Avenue Property and is the guarantor of the asset-based loan by Siena Lending Group, LLC ("Siena Loan"), Debtor's primary secured creditor. The South Vail Avenue Property collaterizes the Siena Loan by ABS, as guarantor.**

**The ownership interests as they pertain to Debtor, Orion and ABS is as follows:**

1. **Deco Enterprises, Inc.:**
   a. **Babak Sinai - 20% interest;**
   b. **Siamak Sinai - 20% interest;**
   c. **Benjamin Pouladian - 30% interest.;**

2. **Orion Solar Racking, Inc.:**
   a. **Babak Sinai - 100% interest;**

3. **ABS Capitol, LLC**
   a. **Babak Sinai - 25% interest;**
   b. **Siamak Sinai - 50% interest; and**
   c. **Pouladian Family Trust (Benjamin Pouladian) - 25% interest.**

**Both Babak Sinai and Debtor are alleged guarantors of a debt of Orion to Aluminio de Baja California, S.A.**

**Molly Scott has sued both Debtor and Orion, claiming $325,000.00, and is therefore one of the twenty largest unsecured creditors.**

Debtor **Deco Enterprises, Inc.**
Name

Case number (*if known*) ______________________

**11. Why is the case filed in *this district?***

*Check all that apply:*

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? ______________________

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other ______________________

**Where is the property?** ______________________

Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency ______________________

Contact name ______________________

Phone ______________________

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ■ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ■ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

Debtor **Deco Enterprises, Inc.**
Name

Case number (*if known*)

**Request for Relief, Declaration, and Signatures**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 2/20/2020
MM / DD / YYYY

X
Signature of authorized representative of debtor

**Babak Sinai**
Printed name

Title **President/Chief Executive Officer**

**18. Signature of attorney**

X
Signature of attorney for debtor

Date 2.20.20
MM / DD / YYYY

**Raymond H. Aver**
Printed name

**Law Offices of Raymond H. Aver, A Professional Corporation**
Firm name

**10801 National Boulevard, Suite 100**
**Los Angeles, CA 90064**
Number, Street, City, State & ZIP Code

Contact phone **(310) 571-3511** Email address **ray@averlaw.com**

**109577 CA**
Bar number and State

## PROOF OF SERVICE

**POULADIAN v. DECO ENTERPRISES ET. AL.**

**Los Angeles Superior Court**

**Case No.: 19STCV44475**

I am employed in the county of Orange, State of California at **MOUSAVI & LEE, LLP.** I am over the age of 18 and not a party to the within action; my business address is 19200 Von Karman Avenue, Suite 940, Irvine, CA 92612.

On February 20, 2020, I served the foregoing document(s) described as:

NOTICE OF AUTOMATIC STAY DUE TO BANKRUPTCY on the following interested parties in this action:

John R. Yates Esq.
Yates Litigation
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436

Telephone: (818) 281-5891
E-Mail: jyates@yateslitigation.com

*Attorney for Plaintiff Benjamin Pouladian*

XX **BY ELECTRONIC SERVICE VIA ONELEGAL EFILING SERVICE:** I served the above-entitled document(s) through the OneLegal E-Filing Service at www.onelegal.com addressed to all parties appearing on the electronic service list for the above-entitled case. A copy of the One Legal Service Receipt Page/Confirmation will be maintained with the original document(s) in this office.

XX **BY EMAIL TRANSMISSION**: I caused the aforementioned document(s) to be served via electronic mail to the electronic addressee(s) listed on the attached mailing list. Such document was transmitted successfully from my e-mail address to the indicated addressee(s).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February February 20, 2020 at Irvine, California.

/s/ Stephanie Huerta
Stephanie Huerta Declarant

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | FILED<br>Superior Court of California<br>County of Los Angeles<br>03/23/2020<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: S. Hahn Deputy |
| PLAINTIFF(S):<br>Benjamin Pouladian | |
| DEFENDANT(S):<br>Deco Enterprises, Inc. et al | |
| **NOTICE RE: CONTINUANCE OF HEARING AND ORDER** | CASE NUMBER:<br>19STCV44475 |

TO THE PLAINTIFF(S) AND ATTORNEY(S) OF RECORD AND / OR PARTIES IN PROPRIA PERSONA:

You are hereby notified that the Case Management Conference previously set for hearing on 04/08/2020 in Department 78 has been reset for hearing in the same department on 05/14/2020 at 8:30 AM.

---

**ORDER**

You are ordered to give notice by mail forthwith of such fact to all parties and to file proof of service of such notice forthwith in the assigned department, located at Stanley Mosk Courthouse 111 North Hill Street, Los Angeles, CA 90012.

Dated: 03/23/2020

Robert S. Draper / Judge
Judicial Officer

**NOTICE RE: CONTINUANCE OF HEARING AND ORDER**

LACIV XXX
LASC Approved 00-00

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>03/23/2020<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: S. Hahn Deputy |
| PLAINTIFF/PETITIONER:<br>*Benjamin Pouladian* | |
| DEFENDANT/RESPONDENT:<br>Deco Enterprises, Inc. et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>19STCV44475 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice Re: Continuance of Hearing and Order upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

✓ Amy A. Mousavi
Mousavi & Lee, LLP
19200 Von Karman Avenue, Suite 940
Irvine, CA 92612

John R. Yates
Yates Litigation
16000 Ventura Boulevard
10th FL, Suite 1000
Encino, CA 91436

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 03/23/2020

By: S. Hahn
Deputy Clerk

Amy A. Mousavi, Esq., SBN: 228388
MOUSAVI & LEE, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9667
amousavi@mousavilee.com

Thomas A. Pistone, Esq., SBN: 77774
PISTONE LAW GROUP, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9660
tpistone@pistonelawgroup.com

Attorneys Craig Allen, Deco Enterprises, Inc., ABS Capitol, LLC and Babak Sinai

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

| | |
|---|---|
| Benjamin Pouladian<br><br>Plaintiff,<br>v.<br><br>Deco Enterprises, Inc.; Craig Allen; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 19STCV44475<br>Dept.: 078<br>Assigned For All Purposes To: Hon. Judge Robert S. Draper |
| DECO ENTERPRISES, INC., a California Corporation; ABS CAPITOL, LLC, a California limited liability company; BABAK SINAI, an individual;<br>Cross-Complainants;<br>v.<br>BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN, an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,<br>Cross-Defendants. | **BABAK SINAI'S ANSWER TO CROSS-COMPLAINT OF BENJAMIN POULADIAN FOR EQUITABLE INDEMNITY** |
| Benjamin Pouladian,<br>Cross-Complainants,<br>v.<br>Babak Sinai,<br>Cross-Defendant | |
| Benjamin Pouladian,<br>Third Party Plaintiff,<br>v.<br>Siamak Sinai; Saman Sinai; Craig Allen; and Moes 1 through 10, inclusive,<br>Third Party Defendants. | |

## I.

## GENERAL DENIAL

Pursuant to *California Code of Civil Procedure* §431.30(d), Cross-Defendant BABAK SINAI (hereafter "CROSS-DEFENDANT"), files this Answer and General Denial to Cross-Complaint of Benjamin Pouladian for Equitable Indemnity. CROSS-DEFENDANT denies, generally and specifically, each and every allegation contained in the CROSS-COMPLAINT, and denies that CROSS-COMPLAINANT has suffered or will sustain injuries or damages in the sum or sums alleged, or at all.

## II.

## AFFIRMATIVE DEFENSES

For a further answer to the CROSS-COMPLAINT, and by way of affirmative defenses, CROSS-DEFENDANT alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

**(Failure to State a Claim)**

1. The CROSS-COMPLAINT and each cause of action alleged therein, fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

**(Offset)**

2. If any of the causes of action alleged are found to have any value at all, CROSS-COMPLAINANT's claims are subject to an offset.

### THIRD AFFIRMATIVE DEFENSE

**(Lack of Standing)**

3. CROSS-COMPLAINANT has no standing to assert the claims set forth in the CROSS-COMPLAINT.

### FOURTH AFFIRMATIVE DEFENSE

**(Statute of Limitations)**

4. The claims set forth in the CROSS-COMPLAINT are barred by the applicable statutes of limitation, including *CCP* §§ 335 *et seq*.

**FIFTH AFFIRMATIVE DEFENSE**

**(Laches)**

5. The claims set forth in the CROSS-COMPLAINT are barred by laches.

**SIXTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate)**

6. CROSS-DEFENDANT is informed and believes, and upon that ground, alleges that each purported cause of action of the CROSS-COMPLAINT is barred by reason of CROSS-COMPLAINANT's failure to mitigate his alleged injuries, damages, and losses.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Waiver)**

7. CROSS-DEFENDANT is informed and believes, and upon that ground, alleges that each purported cause of action in the CROSS-COMPLAINT is barred by the equitable doctrine of waiver.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Estoppel)**

8. CROSS-DEFENDANT is informed and believes, and upon that ground, alleges that each purported cause of action in the CROSS-COMPLAINT is barred by the equitable doctrine of estoppel.

**NINTH AFFIRMATIVE DEFENSE**

**(Contribution/Apportionment)**

9. CROSS-DEFENDANT is entitled to contribution and/or apportionment of liability, in accordance with CROSS-COMPLAINANT's and other parties' fault as determined at trial.

**TENTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

10. CROSS-DEFENDANT is informed and believes, and upon that ground, alleges that, to the extent the CROSS-COMPLAINANTS seek equitable relief, CROSS-COMPLAINANT's inequitable conduct constitutes unclean hands and bars granting any relief.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(No damages)**

11. CROSS-COMPLAINANTS have not been injured nor have incurred any damages by CROSS-DEFENDANT.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Consent)**

12. CROSS-COMPLAINANTS' claims are barred by the doctrine of consent.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Performance Excused)**

13. CROSS-DEFENDANT is informed and believes, and thereon alleges, that CROSS-DEFENDANT's performance is excused.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Lack of Authority)**

14. CROSS-COMPLAINANTS lack authority to bring this lawsuit.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Identify the Injured Party)**

15. THIRD-PARTY COMPLAINANT has failed to identify the injured party to whom the THIRD-PARTY COMPLAINANT and THIRD-PARTY DEFENDANTS allegedly owe a joint obligation.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Statute of Frauds)**

16. CROSS-COMPLAINANTS' claims fail due to the Statute of Frauds.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Reservation of Right)**

17. CROSS-COMPLAINANTS' claims fail due to the Statute of Frauds.

WHEREFORE, CROSS-DEFENDANT prays as follows:

1. That CROSS-COMPLAINANTS take nothing by way of his CROSS-COMPLAINT and that the CROSS-COMPLAINT be dismissed;

2. That CROSS-DEFENDANT be awarded attorneys fees and the costs of suit herein incurred; and

3. For such other and further relief as the Court may deem just and proper.

Dated: April 15, 2020

**MOUSAVI & LEE, LLP**
**PISTONE LAW GROUP, LLP**

**By:** /s/ *Thomas A. Pistone*
**Amy A. Mousavi, Esq.**
**Thomas A. Pistone, Esq.**

Attorneys for Defendant Craig Allen, Cross-Complainant/Defendant Deco Enterprises, Inc., and Cross-Complainants ABS Capitol, LLC and Babak Sinai

**PROOF OF SERVICE**

**Pouladian v. Deco Enterprises, et al.**

**Los Angeles Superior Court**

**Case No. 19STCV44475**

I am employed in the county of Orange, State of California at **MOUSAVI & LEE, LLP.** I am over the age of 18 and not a party to the within action; my business address is 19200 Von Karman Avenue, Suite 940, Irvine, CA 92612.

On April 20, 2020 I served the foregoing document(s) described as: **BABAK SINAI'S ANSWER TO CROSS- COMPLAINT OF BENJAMIN POULADIAN FOR EQUITABLE INDEMNITY** on the following interested parties in this action:

| | |
|---|---|
| John R. Yates, Esq.<br>YATES LITIGATION<br>16000 Ventura Boulevard<br>Tenth Floor, Suite 1000<br>Encino, CA 91436<br><br>Telephone: (818) 281-5891<br>Fax: (818) 561-3925<br>jyates@yateslitigation.com | *Attorney for Plaintiff Benjamin Pouladian* |

**BY MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons listed above and (1) deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid, or (2) placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

XX **BY ELECTRONIC SERVICE VIA ONELEGAL EFILING SERVICE:** I served the above-entitled document(s) through the OneLegal E-Filing Service at www.onelegal.com addressed to all parties appearing on the electronic service list for the above-entitled case. A copy of the One Legal Service Receipt Page/Confirmation will be maintained with the original document(s) in this office.

**BY OVERNIGHT DELIVERY:** I enclosed the documents in a sealed envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses indicated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

**BY PERSONAL SERVICE:** I personally delivered the documents to the persons at the addresses indicated above. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a

receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

**BY EMAIL TRANSMISSION**: I caused the aforementioned document(s) to be served via electronic mail to the electronic addressee(s) listed on the attached mailing list. Such document was transmitted successfully from my e-mail address to the indicated addressee(s).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 20, 2020 at Irvine, California.

/s/ *Amy A. Mousavi*

Amy A. Mousavi, Declarant

Saman Sinai, In Pro Per
2917 Vail Avenue
Commerce CA 90040
Tel: (310) 366-6866 ext. 206
sam@getdeco.com

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

Benjamin Pouladian

Plaintiff,

v.

Deco Enterprises, Inc.; Craig Allen; and DOES 1 through 10, inclusive,

Defendants.

DECO ENTERPRISES, INC., a California Corporation; ABS CAPITOL, LLC, a California limited liability company; BABAK SINAI, an individual;

Cross-Complainants;

v.

BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN, an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,

Cross-Defendants.

Benjamin Pouladian,

Cross-Complainants,

v.

Babak Sinai,

Cross-Defendant

Benjamin Pouladian,

Third Party Plaintiff,

v.

Siamak Sinai; Saman Sinai; Craig Allen; and Moes 1 through 10, inclusive,

Third Party Defendants.

Case No.: 19STCV44475
Dept.: 078
Assigned For All Purposes To: Hon. Judge Robert S. Draper

**SAMAN SINAI'S ANSWER TO THIRD-PARTY COMPLAINT OF BENJAMIN POULADIAN FOR EQUITABLE INDEMNITY**

**I.**

**GENERAL DENIAL**

Pursuant to *California Code of Civil Procedure* §431.30(d), Third-Party Defendant Saman SINAI (hereafter "THIRD-PARTY DEFENDANT"), files this Answer and General Denial to Third-Party Complaint of Benjamin Pouladian for Equitable Indemnity (hereafter "THIRD-PARTY COMPLAINT"). THIRD-PARTY DEFENDANT denies, generally and specifically, each and every allegation contained in the THIRD-PARTY COMPLAINT, and denies that THIRD-PARTY COMPLAINANT has suffered or will sustain injuries or damages in the sum or sums alleged, or at all.

**II.**

**AFFIRMATIVE DEFENSES**

For a further answer to the THIRD-PARTY COMPLAINT, and by way of affirmative defenses, THIRD-PARTY DEFENDANT alleges as follows:

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim)**

1. The THIRD-PARTY COMPLAINT and each cause of action alleged therein, fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

**(Offset)**

2. If any of the causes of action alleged are found to have any value at all, THIRD-PARTY COMPLAINANT's claims are subject to an offset.

**THIRD AFFIRMATIVE DEFENSE**

**(Lack of Standing)**

3. THIRD-PARTY COMPLAINANT has no standing to assert the claims set forth in the THIRD-PARTY COMPLAINT.

**FOURTH AFFIRMATIVE DEFENSE**

**(Statute of Limitations)**

4. The claims set forth in the THIRD-PARTY COMPLAINT are barred by the

applicable statutes of limitation, including *CCP* §§ 335 *et seq*.

**FIFTH AFFIRMATIVE DEFENSE**

**(Laches)**

5. The claims set forth in the THIRD-PARTY COMPLAINT are barred by laches.

**SIXTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate)**

6. THIRD-PARTY DEFENDANT is informed and believes, and upon that ground, alleges that each purported cause of action of the THIRD-PARTY COMPLAINT is barred by reason of THIRD-PARTY COMPLAINANT's failure to mitigate his alleged injuries, damages, and losses.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Waiver)**

7. THIRD-PARTY DEFENDANT is informed and believes, and upon that ground, alleges that each purported cause of action in the THIRD-PARTY COMPLAINT is barred by the equitable doctrine of waiver.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Estoppel)**

8. THIRD-PARTY DEFENDANT is informed and believes, and upon that ground, alleges that each purported cause of action in the THIRD-PARTY COMPLAINT is barred by the equitable doctrine of estoppel.

**NINTH AFFIRMATIVE DEFENSE**

**(Contribution/Apportionment)**

9. THIRD-PARTY DEFENDANT is entitled to contribution and/or apportionment of liability, in accordance with THIRD-PARTY COMPLAINANT's and other parties' fault as determined at trial.

**TENTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

10. THIRD-PARTY DEFENDANT is informed and believes, and upon that ground,

alleges that, to the extent the THIRD-PARTY COMPLAINANT seek equitable relief, THIRD-PARTY COMPLAINANT's inequitable conduct constitutes unclean hands and bars granting any relief.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(No damages)**

11. THIRD-PARTY COMPLAINANT has not been injured nor has incurred any damages by THIRD-PARTY DEFENDANT.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Consent)**

12. THIRD-PARTY COMPLAINANT' claims are barred by the doctrine of consent.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Performance Excused)**

13. THIRD-PARTY DEFENDANT is informed and believes, and thereon alleges, that THIRD-PARTY DEFENDANT's performance is excused.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Lack of Authority)**

14. THIRD-PARTY COMPLAINANT lacks authority to bring this lawsuit.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Identify the Injured Party)**

15. THIRD-PARTY COMPLAINANT has failed to identify the injured party to whom the THIRD-PARTY COMPLAINANT and THIRD-PARTY DEFENDANTS allegedly owe a joint obligation.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Statute of Frauds)**

16. THIRD-PARTY COMPLAINANT's claims fail due to the Statute of Frauds.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Reservation of Right)**

17. CROSS-COMPLAINANTS' claims fail due to the Statute of Frauds.

WHEREFORE, THIRD-PARTY DEFENDANT prays as follows:

1. That THIRD-PARTY COMPLAINANT take nothing by way of his THIRD-PARTY COMPLAINT and that the THIRD-PARTY COMPLAINT be dismissed;

2. That THIRD-PARTY DEFENDANT be awarded attorneys fees and the costs of suit herein incurred; and

3. For such other and further relief as the Court may deem just and proper.

Dated: April 20, 2020

SAMAN SINAI, IN PRO PER

***/S/ Saman Sinai***

Saman Sinai, In Prop per

**PROOF OF SERVICE**

**Pouladian v. Deco Enterprises, et al.**

**Los Angeles Superior Court**

**Case No. 19STCV44475**

I am an individual living in the Los Angeles County, State of California. I am over the age of 18 and am a party to the within action; my address is 2917 Vail Avenue, Commerce CA 90040.

On April 20, 2020 I served the foregoing document(s) described as: **SAMAN SINAI'S ANSWER TO THIRD-PARTY COMPLAINT OF BENJAMIN POULADIAN FOR EQUITABLE INDEMNITY** on the following interested parties in this action:

| | |
|---|---|
| John R. Yates, Esq.<br>YATES LITIGATION<br>16000 Ventura Boulevard<br>Tenth Floor, Suite 1000<br>Encino, CA 91436<br><br>Telephone: (818) 281-5891<br>Fax: (818) 561-3925<br>jyates@yateslitigation.com | *Attorney for Plaintiff Benjamin Pouladian* |

XX **BY MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons listed above and (1) deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid, or (2) placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY ELECTRONIC SERVICE VIA ONELEGAL EFILING SERVICE:** I served the above-entitled document(s) through the OneLegal E-Filing Service at www.onelegal.com addressed to all parties appearing on the electronic service list for the above-entitled case. A copy of the One Legal Service Receipt Page/Confirmation will be maintained with the original document(s) in this office.

**BY OVERNIGHT DELIVERY:** I enclosed the documents in a sealed envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses indicated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

**BY PERSONAL SERVICE:** I personally delivered the documents to the persons at the addresses indicated above. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the

office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

**BY EMAIL TRANSMISSION**: I caused the aforementioned document(s) to be served via electronic mail to the electronic addressee(s) listed on the attached mailing list. Such document was transmitted successfully from my e-mail address to the indicated addressee(s).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 20, 2020 at Irvine, California.

/s/ *Saman Sinai*

Saman Sinai, Declarant

Amy A. Mousavi, Esq., SBN: 228388
MOUSAVI & LEE, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9667
amousavi@mousavilee.com

Thomas A. Pistone, Esq., SBN: 77774
PISTONE LAW GROUP, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612
Tel: (949) 864-9660
tpistone@pistonelawgroup.com

Attorneys Craig Allen, Deco Enterprises, Inc., ABS Capitol, LLC and Babak Sinai

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

Benjamin Pouladian

Plaintiff,

v.

Deco Enterprises, Inc.; Craig Allen; and DOES 1 through 10, inclusive,

Defendants.

DECO ENTERPRISES, INC., a California Corporation; ABS CAPITOL, LLC, a California limited liability company; BABAK SINAI, an individual;

Cross-Complainants;

v.

BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN, an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,

Cross-Defendants.

Benjamin Pouladian,

Cross-Complainants,

v.

Babak Sinai,

Cross-Defendant

Benjamin Pouladian,

Third Party Plaintiff,

v.

Siamak Sinai; Saman Sinai; Craig Allen; and Moes 1 through 10, inclusive,

Third Party Defendants.

Case No.: 19STCV44475
Dept.: 078
Assigned For All Purposes To: Hon. Judge Robert S. Draper

**CRAIG ALLEN AND SIAMAK SINAI'S ANSWER TO THIRD-PARTY COMPLAINT OF BENJAMIN POULADIAN FOR EQUITABLE INDEMNITY**

**I.**

**GENERAL DENIAL**

Pursuant to *California Code of Civil Procedure* §431.30(d), Third-Party Defendants CRAIG ALLEN and SIAMAK SINAI (hereafter "THIRD-PARTY DEFENDANTS"), file this Answer and General Denial to Third-Party Complaint of Benjamin Pouladian for Equitable Indemnity (hereafter "THIRD-PARTY COMPLAINT"). THIRD-PARTY DEFENDANTS deny, generally and specifically, each and every allegation contained in the THIRD-PARTY COMPLAINT, and deny that THIRD-PARTY COMPLAINANT has suffered or will sustain injuries or damages in the sum or sums alleged, or at all.

**II.**

**AFFIRMATIVE DEFENSES**

For a further answer to the THIRD-PARTY COMPLAINT, and by way of affirmative defenses, THIRD-PARTY DEFENDANTS alleges as follows:

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim)**

1. The THIRD-PARTY COMPLAINT and each cause of action alleged therein, fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

**(Offset)**

2. If any of the causes of action alleged are found to have any value at all, THIRD-PARTY COMPLAINANT's claims are subject to an offset.

**THIRD AFFIRMATIVE DEFENSE**

**(Lack of Standing)**

3. THIRD-PARTY COMPLAINANT has no standing to assert the claims set forth in the THIRD-PARTY COMPLAINT.

**FOURTH AFFIRMATIVE DEFENSE**

**(Statute of Limitations)**

4. The claims set forth in the THIRD-PARTY COMPLAINT are barred by the

applicable statutes of limitation, including *CCP* §§ 335 *et seq.*

**FIFTH AFFIRMATIVE DEFENSE**

**(Laches)**

5. The claims set forth in the THIRD-PARTY COMPLAINT are barred by laches.

**SIXTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate)**

6. THIRD-PARTY DEFENDANTS are informed and believe, and upon that ground, allege that each purported cause of action of the THIRD-PARTY COMPLAINT is barred by reason of THIRD-PARTY COMPLAINANT's failure to mitigate his alleged injuries, damages, and losses.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Waiver)**

7. THIRD-PARTY DEFENDANTS are informed and believe, and upon that ground, alleges that each purported cause of action in the THIRD-PARTY COMPLAINT is barred by the equitable doctrine of waiver.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Estoppel)**

8. THIRD-PARTY DEFENDANTS are informed and believe, and upon that ground, allege that each purported cause of action in the THIRD-PARTY COMPLAINT is barred by the equitable doctrine of estoppel.

**NINTH AFFIRMATIVE DEFENSE**

**(Contribution/Apportionment)**

9. THIRD-PARTY DEFENDANTS are entitled to contribution and/or apportionment of liability, in accordance with THIRD-PARTY COMPLAINANT's and other parties' fault as determined at trial.

**TENTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

10. THIRD-PARTY DEFENDANTS are informed and believe, and upon that ground, allege that, to the extent the THIRD-PARTY COMPLAINANT seeks equitable relief, THIRD-

PARTY COMPLAINANT's inequitable conduct constitutes unclean hands and bars granting any relief.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(No damages)**

11. THIRD-PARTY COMPLAINANT has not been injured nor has incurred any damages by THIRD-PARTY DEFENDANTS.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Consent)**

12. THIRD-PARTY COMPLAINANT's claims are barred by the doctrine of consent.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Performance Excused)**

13. THIRD-PARTY DEFENDANTS are informed and believe, and thereon alleges, that THIRD-PARTY DEFENDANTS's performance is excused.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Lack of Authority)**

14. THIRD-PARTY COMPLAINANT lacks authority to bring this lawsuit.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Identify the Injured Party)**

15. THIRD-PARTY COMPLAINANT has failed to identify the injured party to whom the THIRD-PARTY COMPLAINANT and THIRD-PARTY DEFENDANTS owe a joint obligation.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Statute of Frauds)**

16. THIRD-PARTY COMPLAINANT claims fail due to the Statute of Frauds.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Reservation of Right)**

17. THIRD-PARTY DEFENDANTS reserve their right to amend their Answer at a later time.

WHEREFORE, THIRD-PARTY DEFENDANTS prays as follows:

1. That THIRD-PARTY COMPLAINANT takes nothing by way of his THIRD-PARTY COMPLAINT and that the THIRD-PARTY COMPLAINT be dismissed;

2. That THIRD-PARTY DEFENDANTS be awarded attorneys fees and the costs of suit herein incurred; and

3. For such other and further relief as the Court may deem just and proper.

Dated: April 15, 2020

**MOUSAVI & LEE, LLP**
**PISTONE LAW GROUP, LLP**

**By:** /s/ *Thomas A. Pistone*

**Amy A. Mousavi, Esq.**
**Thomas A. Pistone, Esq.**

Attorneys for Defendant Craig Allen, Cross-Complainant/Defendant Deco Enterprises, Inc., and Cross-Complainants ABS Capitol, LLC and Babak Sinai

# PROOF OF SERVICE

**Pouladian v. Deco Enterprises, et al.**

**Los Angeles Superior Court**

**Case No. 19STCV44475**

I am employed in the county of Orange, State of California at **MOUSAVI & LEE, LLP.** I am over the age of 18 and not a party to the within action; my business address is 19200 Von Karman Avenue, Suite 940, Irvine, CA 92612.

On April 20, 2020 I served the foregoing document(s) described as: **CRAIG ALLEN AND SIAMAK SINAI'S ANSWER TO THIRD-PARTY COMPLAINT OF BENJAMIN POULADIAN FOR EQUITABLE INDEMNITY** on the following interested parties in this action:

| | |
|---|---|
| John R. Yates, Esq.<br>YATES LITIGATION<br>16000 Ventura Boulevard<br>Tenth Floor, Suite 1000<br>Encino, CA 91436<br><br>Telephone: (818) 281-5891<br>Fax: (818) 561-3925<br>jyates@yateslitigation.com | *Attorney for Plaintiff Benjamin Pouladian* |

**BY MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons listed above and (1) deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid, or (2) placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

XX **BY ELECTRONIC SERVICE VIA ONELEGAL EFILING SERVICE:** I served the above-entitled document(s) through the OneLegal E-Filing Service at www.onelegal.com addressed to all parties appearing on the electronic service list for the above-entitled case. A copy of the One Legal Service Receipt Page/Confirmation will be maintained with the original document(s) in this office.

**BY OVERNIGHT DELIVERY:** I enclosed the documents in a sealed envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses indicated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

**BY PERSONAL SERVICE:** I personally delivered the documents to the persons at the addresses indicated above. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

**BY EMAIL TRANSMISSION**: I caused the aforementioned document(s) to be served via electronic mail to the electronic addressee(s) listed on the attached mailing list. Such document was transmitted successfully from my e-mail address to the indicated addressee(s).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 20, 2020 at Irvine, California.

/s/ *Amy A. Mousavi*

Amy A. Mousavi, Declarant

John R. Yates, Esq. (SBN 120344)
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, California 91436
Tel: (818) 381-5891
Mobile: (213) 300-4425
Email: jyates@yateslitigation.com

Attorneys for Plaintiff, Cross-Defendant, Third-Party Plaintiff and Cross-Complainant Benjamin Pouladian And for Cross-Defendant Edith Pouladian

Yates Litigation

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

Benjamin Pouladian,

Plaintiff,

vs.

Deco Enterprises, Inc.; Craig Allen; and Does 1 through 10, inclusive

Defendants.

DECO ENTERPRISES, INC. a California Corporation; ABS Capitol, LLC, a California limited liability company; BABAK SINAI, an individual,

Cross-Complainants,

v.

BENJAMIN POULADIAN, A.K.A., BENJAMIN PETERSEN; an individual; EDITH POULADIAN, an individual; and ROES 1 through 20,

Cross-Defendants.

**CASE NO.: 19STCV44475**

HON. ROBERT S. DRAPER – DEPARTMENT 78

UNLIMITED JURISDICTION

**Notice of Continued Hearings; Notice of Case Management Conference**

**ACTION FILED:** December 10, 2019

Benjamin Pouladian,

Cross-Complainant,

v..

Babak Sinai,

Cross-Defendant.

Benjamin Pouladian,

Third-Party Plaintiff,

v.

Siamak Sinai; Saman Sinai; Craig Allen; and Moes 1through 10, inclusive,

Third Party Defendants.

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that as a result of the current pandemic, the Court has continued various hearings in this action until July 24, 2020, in Department 78.

The Court has scheduled hearing of the pending Order to Show Cause re Preliminary Injunction, and a Status Conference, at 8:30 a.m. on July 24, 2020.

The Court has scheduled a Status Conference re Bankruptcy, plaintiff's demurrer to cross-complaint, and a Case Management Conference for 2:00 p.m. on July 24, 2020.

DATED: May 20, 2020

YATES LITIGATION

By: [signature]
JOHN R. YATES
Attorneys for Plaintiff, Cross-Defendant, Third-Party Plaintiff and Cross-Complainant Benjamin Pouladian, and for Cross-Defendant Edith Pouladian



Yates Litigation

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **16000 Ventura Boulevard, Suite 1000, Encino, California 91436**.

On May 20, 2020, I served the foregoing document described as **Notice of Continued Hearings; Notice of Case Management Conference LASC Case No. 19STCV44475**

on the interested parties in this action.

☒ ELECTRONIC SERVICE TO:

Amy Mousavi, Esq.
Mousavi & Lee, LLP
19200 Von Karman Ave., Suite 940
Irvine, California 92612
(949) 864-9667 Direct
Email: amousavi@mousavilee.com

Attorney for Deco Enterprises, Inc. and Craig Allen

Thomas Pistone, Esq.
Pistone Law Group LLP
19200 Von Karman Ave, Suite 940
Irvine, California 92612
Email: tpistone@pistonelawgroup.com

Attorney for Babak Sinai, Saman Sinai and Siamak Sinai

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 20, 2020, at Encino, California.

John R. Yates

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10801 National Boulevard, Suite 100, Los Angeles, California 90064

The foregoing document described **"NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION TO FEDERAL BANKRUPTCY COURT PURSUANT TO 28 U.S.C. § 1452(a)"** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 20, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

X Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:** On **May 20, 2020**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

X Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 20, 2020**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

Honorable Sheri Bluebond
Bin outside Suite 1534
Judge's Copy temporarily suspended by General Order 20-02

___ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| May 20, 2020 | Ani Minasyan | [signature] |
| *Date* | *Type Name* | *Signature* |

**SERVICE LIST**

**VIA NEF**

- Raymond H. Aver ray@averlaw.com, averlawfirm@gmail.com;ani@averlaw.com;katya@averlaw.com
- Scott E Blakeley seb@blakeleyllp.com, ecf@blakeleyllp.com
- Cheryl S Chang Chang@Blankrome.com, Hno@BlankRome.com
- Christine R Etheridge christine.etheridge@ikonfin.com
- Bruce G Landau bruce@landauandlandau.com
- Kenneth G Lau kenneth.g.lau@usdoj.gov
- Jonathan A Loeb jloeb@blankrome.com, fpippo@blankrome.com
- Eric A Mitnick MitnickLaw@aol.com, mitnicklaw@gmail.com
- Jason E Turner jturner@jturnerlawgroup.com, erika@jturnerlawgroup.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Eric R Von Helms evonhelms@kmksc.com
- David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

**VIA U.S. MAIL**

Los Angeles Superior Court
Stanley Mosk Courthouse
Department 78
111 North Hill Street
Los Angeles, CA 90012

Amy A. Mousavi, Esquire
MOUSAVI & LEE, LLP
19200 Von Karman Ave., Suite 940
Irvine, CA 92612

John R. Yates, Esquire
YATES LITIGATION
16000 Ventura Boulevard
Tenth Floor, Suite 1000
Encino, CA 91436

Saman Sinai
2917 Vail Avenue
Commerce, CA 90040